**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

GR OPCO, LLC

    *Plaintiff*,

vs.

ELEVEN IP HOLDINGS LLC, GRASSY CREEK
LLC, CS IRWIN LLC, IRWIN BACKCOUNTRY
GUIDES, LLC, ALAN PIKE, and CHAD PIKE

    *Defendants*.

    and

ELEVEN IP HOLDINGS, LLC

    *Counterclaim Plaintiff*,

vs.

GR OPCO, LLC, 11USA GROUP, LLC, MARC
ROBERTS, DENNIS DEGORI, MICHAEL
SIMKINS, MARC ROBERTS COMPANIES
LLC, PROPERTY MARKETS GROUP, INC.,
PMG-11TH STREET VENTURES, LLC, PMG-
11TH STREET VENTURES II, LLC, BLOCK 17
TRUSTEE, LLC, BLOCK 17 RESIDENTIAL
OWNER, LLC, and LION DEVELOPMENT
OPPORTUNITY FUND LLC

    *Counterclaim Defendants*,

BLOCK 17 TRUSTEE, LLC and BLOCK 17
RESIDENTIAL OWNER, LLC,

    *Counterclaim-Plaintiffs*,

vs.

ELEVEN IP HOLDINGS, LLC

    *Counterclaim Defendant*

Case No. 1:22-cv-24119-FAM-TORRES

13165967-1

## ELEVEN IP HOLDINGS, LLC'S SECOND AMENDED COUNTERCLAIM

Counterclaim Plaintiff Eleven IP Holdings, LLC ("Eleven IP"), through its undersigned counsel, hereby alleges against Counterclaim Defendants GR Opco, LLC ("GR"), 11USA Group LLC ("11USA"), Marc Roberts ("Roberts"), Dennis DeGori ("DeGori"), Michael Simkins ("Simkins," and along with Roberts and DeGori, the "Individual Defendants"), Marc Roberts Companies LLC ("MR Co."), Property Markets Group, Inc. ("PMG Inc."), PMG-11th Street Ventures, LLC ("PMG Ventures I"), PMG-11th Street Ventures II, LLC ("PMG Ventures II"), Block 17 Trustee, LLC ("B17 Trustee"), Block 17 Residential Owner, LLC  ("B17 Owner," and along with PMG Inc., PMG Ventures I, PMG Ventures II, B17 Trustee, "PMG"), and Lion Development Opportunity Fund LLC ("Lion Development") (collectively, "Defendants") as follows:

## NATURE OF THE ACTION

1.     Eleven IP's claims arise out of Defendants' willful infringement of Eleven IP's distinctive federal statutory and common law ELEVEN trademarks, including ELEVEN, ELEVEN EXPERIENCE, its related 11 logo (  ) ("ELEVEN Logo") and other ELEVEN-formative marks (collectively, the "ELEVEN Marks"), as well as Defendants' efforts to trade on, steal, and swamp Eleven IP's hard-earned goodwill therein.  Simply put, Defendants seek to launch a line of "Eleven" or "11" branded hotels despite Eleven IP's well-established prior rights.

2.     Since 2011, Eleven IP and its corporate affiliates (together, with Eleven IP, "Eleven") has built its brand on the quality, success, integrity, and reputation of its hotel and lodging services, which consist of the leasing and rental of world-class real estate properties and the provision of luxury amenities and accommodations.

1

3.      In recognition of Eleven IP's rights, the United States Patent and Trademark Office ("USPTO") has issued numerous trademark registrations to Eleven IP for its ELEVEN Marks.  Eleven IP publicly filed its first trademark applications for the ELEVEN Marks as early as April 7, 2011, and they were first registered as early as July 24, 2012.

4.      Eleven launched its luxury hotel business under the ELEVEN Marks on the aptly chosen date of November 11, 2011 (11/11/11), after extensive preparations.  As a result of Eleven's efforts over more than a decade spent building and investing in its ELEVEN Marks, as well as Eleven's widespread, continuous, and exclusive use thereof, Eleven and the ELEVEN Marks have become synonymous with luxury hotel and accommodation services of the highest quality.  Indeed, Eleven's goods and services, marketed and sold under the ELEVEN Marks, have enjoyed widespread media coverage in print and on the Internet, including in prominent lodging, travel, news, and consumer publications.

5.      Despite Eleven's well-established prior rights, Defendants recently decided to adopt confusingly similar E11EVEN and other ELEVEN-formative marks for similar luxury hotel and accommodation services.  Upon information and belief, prior to this dispute, in 2013, the three Individual Defendants formed GR, and DeGori formed 11USA.  Also upon information and belief, in 2014 the Individual Defendants, GR, and 11USA opened the "E11EVEN Miami" nightclub—located at 29 NE 11th St., Miami, Florida 33132 (the "E11EVEN Nightclub")— under the E11EVEN mark.

6.      Years later, in early 2021, Defendants began announcing plans for a series of infringing luxury hotels and residences under E11EVEN and other ELEVEN-formative marks, including without limitation E11EVEN HOTEL & RESIDENCES, E11EVEN RESIDENCES BEYOND, E11EVEN HOTEL, 11 HOTEL, WEST ELEVENTH RESIDENCES, and other such

ELEVEN-formative marks and related logos (collectively, the "Infringing Marks"). This expansion into luxury hotels and accommodations led to this dispute.

7.     Because Eleven IP owns publicly filed trademark registrations dating back to 2011, and Eleven uses the ELEVEN Marks extensively online, simple and standard trademark clearance efforts would have revealed Eleven's superior rights in connection with luxury hotel and accommodation services, among other services. Indeed, Eleven IP's federal registrations provide constructive nationwide notice of its claim of ownership in the ELEVEN Marks. Upon information and belief, Defendants GR, 11USA, MR Co., Lion Development, DeGori, Simkins, and Roberts ran, reviewed, and/or discussed (including through and with counsel) "knock-out" trademark clearance searches for the term "E11EVEN" (and/or other ELEVEN-formative marks) that were conducted using the USPTO's trademark database before deciding to adopt the term "E11EVEN" as a trademark for the E11EVEN Nightclub, as well as before adopting the Infringing Marks and expanding into the new service area of hotels and accommodations. Upon information and belief, the knockout searches regarding the term "E11EVEN" as a trademark for the E11EVEN Nightclub were conducted in 2013, and the knockout searches ran before adopting the Infringing Marks and expanding into the new services area of hotels and accommodations were conducted in 2016.

8.     PMG also ran and/or had counsel run trademark clearance searches for the Infringing Marks and related terms before adopting the Infringing Marks for hotels and accommodations.

9.     Upon information and belief, those various searches by Defendants revealed Eleven and its superior trademark rights, but Defendants nevertheless chose to proceed with

using the Infringing Marks in a brand-new service area without care for the rights they would be infringing.

10.     To be clear, Defendants' infringement of Eleven's trademark rights is unquestionably willful because—in addition to the clearance efforts described above—they indisputably knew about Eleven's superior rights *before* publicly announcing their new use of the Infringing Marks in connection with luxury hotels and residences.  Specifically, on June 28, 2020, the USPTO issued non-final office actions refusing registration (also known as "refusals") pursuant to Section 2(d) of the Trademark Act with respect to several trademark applications GR filed for the Infringing Marks in connection with, among other things, "real estate management of vacation homes; real estate time-sharing; assessment and management of real estate; leasing of real estate; real estate services, namely, condominium management services; real estate services, namely, leasing and management for others of residential condominiums located within hotel developments; real estate services, namely, rental of vacation homes, condominiums, cabins, and villas using pay-per-click advertising on a global computer network; rental of real estate" in Class 36 and "real estate development; real estate development and construction of commercial, residential and hotel property" in Class 37.

11.     In those refusals, which the outside counsel who was responsible for prosecuting the applications shared with the Individual Defendants, 11USA, Lion Development, and MR Co., the USPTO found the Infringing Marks were likely to cause confusion with three of Eleven IP's registrations: (a) U.S. Registration Nos. 4,384,681 (the ELEVEN Logo), (b) 4,621,491 (the ELEVEN Logo), and (c) 4,265,159 (the ELEVEN word mark).  Thus, by at least June 28, 2020, Defendants had *actual* notice that their planned use of the Infringing Marks would infringe the ELEVEN Marks, but they nonetheless proceeded with their infringing activity, publicly

announcing their new planned hotel and residential developments starting in January 2021, and continuing with announcements of additional infringing properties in November 2021 and February 2023.

12. The same is true with respect to the WEST ELEVENTH RESIDENCES word and design marks, which Defendants adopted and began using in commerce *after* this lawsuit was filed. Defendants (specifically, at least GR, Simkins, DeGori, Roberts, and PMG Inc.) also have plans to further expand the Infringing Marks to additional locations, as evidenced for instance by GR's filing of additional trademark applications in foreign countries and as reflected in their internal documents.

13. Defendants' planned and actual use of the Infringing Marks is a clear and flagrant infringement of Eleven's prior trademark rights given the overwhelming similarities between the marks, including, among other things, the similar and/or identical nature of the marks, the manner in which the marks are used, the services with which they are used, the target customers of those services, and the way the services under the marks are marketed, advertised, and promoted, including the channels of trade in which they appear.

14. Accordingly, Defendants' infringing use is likely to cause both "forward" and "reverse" confusion. As to the former, consumers are likely to believe that Defendants' infringing hotel and residential properties are provided by, sponsored by, associated with, or otherwise affiliated with Eleven. As to the latter, consumers likely will believe that Eleven's goods and services are provided by, sponsored by, associated with, or otherwise affiliated with Defendants because Defendants' plans are likely to commercially overwhelm the market and saturate the public conscience with their use of the Infringing Marks, thereby weakening and diminishing the value of Eleven IP's superior rights in the ELEVEN Marks.

13165967-1

15.     Eleven IP thus seeks injunctive and monetary relief as a result of Defendants'

blatant infringement.  This relief is necessary as Defendants have shown by launching their

hotels and residences despite having actual knowledge that their intended use of the Infringing

Marks was likely to cause confusion with the ELEVEN Marks—including launching a third

infringing hotel and residence *after* this litigation began—that they will not stop harming Eleven

and innocent consumers absent a permanent injunction.  Indeed, Defendants (including at least

Roberts and/or DeGori) have publicly stated that their intention is to have "E11EVEN hotels all

over the world because everyone wants to get the E11EVEN experience"—a mantra that

shamelessly trades off of Eleven's name itself and the goodwill of the ELEVEN Marks.

16.     Moreover, Defendants' planned hotel developments are still under construction

and in the planning phases, with completion dates in 2025 to 2027, and, thus, can easily be

rebranded to something that does not infringe the ELEVEN Marks.

## PARTIES

17.     Plaintiff Eleven IP Holdings LLC is a limited liability corporation organized

under the laws of Delaware, with an address of 221 North Hogan St., Suite 403, Jacksonville,

Florida.  Eleven IP owns and licenses the ELEVEN Marks to its affiliates.

18.     Defendant GR Opco, LLC is a limited liability corporation organized under the

laws of Florida, with an address of 29 NE 11th St., Miami, Florida 33132.  GR is the owner of

record of the trademark applications and registrations for the Infringing Marks.  GR is involved

in the development of the E11EVEN Hotel & Residences, E11EVEN Residences Beyond and

West Eleventh Residences (collectively, the "E11EVEN Hotel Projects") and, upon information

and belief, directly uses the Infringing Marks in commerce in connection with the E11EVEN

Hotel Projects.  Upon information and belief, GR has entered into a license agreement with each

6

of PMG Ventures I and PMG Ventures II for use of the Infringing Marks in connection with

E11EVEN Hotel & Residences and E11EVEN Residences Beyond.  GR also has promoted and

advertised West Eleventh Residences.  Upon information and belief, GR also intentionally

induces and directs use of the Infringing Marks in the advertising, marketing, and promotion of

others, including other co-Defendants (specifically 11USA, PMG Inc., PMG Ventures I and

PMG Ventures II) as well as third-parties such as real estate brokers.

19.     Defendant 11USA Group LLC is a limited liability corporation organized under

the laws of Florida, with an address of 1112 N Miami Avenue, Miami, Florida 33136.

According to 11USA's website, https://www.11miami.com/e11even-partners, it is "a lifestyle

and nightlife management company responsible for the marketing, management and the creative

direction of E11EVEN MIAMI" and is "[l]ead [sic] by CEO and Creator" Defendant DeGori.

Upon information and belief, 11USA is involved in the development of, and directly uses the

Infringing Marks in commerce in connection with, the E11EVEN Hotel Projects, and has a

license to do so from GR.  Upon information and belief, 11USA also intentionally induces and

directs use of the Infringing Marks in the advertising, marketing, and promotion of others,

including other co-Defendants (specifically PMG Inc., PMG Ventures I, and PMG Ventures II)

as well as third-parties such as real estate brokers.

20.     Defendant Marc Roberts is an individual who, upon information and belief,

resides in Miami, Florida.  Upon information and belief, Roberts is a co-founder of GR.

According to public statements made by Roberts, he "is the co-founder and owner of Club

E11EVEN," as well as the "[o]wner and co-founder of [the] E11EVEN Hotel and Residences

and E11EVEN Beyond [developments]," either directly or through entities that he controls, and

the founder and owner of Defendant MR Co.  Roberts also holds interests in and is, in part,

responsible for the development, promotion, advertising, and sale of West Eleventh Residences. Upon information and belief, Roberts, either directly or through companies he and his family control, is involved in the development of, and directly uses the Infringing Marks in commerce in connection with, the E11EVEN Hotel Projects. Upon information and belief, Roberts was a moving force in Defendants' selection and adoption of the Infringing Marks and intentionally induces and directs use of the Infringing Marks in the advertising, marketing, and promotion of others, including other co-Defendants (specifically, GR, MR Co., and PMG) as well as third-parties such as real estate brokers.

21.     Defendant Dennis DeGori is an individual who, upon information and belief, resides in Miami, Florida. Upon information and belief, DeGori is a co-founder of Defendant GR. According to public statements, DeGori is the "co-founder and concept creator" of the E11EVEN Nightclub and CEO of 11USA. DeGori signed various of GR's trademark applications to register the Infringing Marks. Upon information and belief, DeGori is involved in the development of, and directly uses the Infringing Marks in commerce in connection with, the E11EVEN Hotel Projects. Upon information and belief, DeGori was a moving force in Defendants' selection and adoption the Infringing Marks and intentionally induces and directs use of the Infringing Marks in the advertising, marketing, and promotion of others, including other co-Defendants (specifically, GR, 11USA, PMG Inc., PMG Ventures I, and PMG Ventures II) as well as third-parties such as real estate brokers.

22.     Defendant Michael Simkins is an individual who, upon information and belief, resides in Miami, Florida. Upon information and belief, Simkins is an owner of GR and President and CEO of Defendant Lion Development. Upon information and belief, Simkins is involved in the development of, and directly uses the Infringing Marks in commerce in

connection with, the E11EVEN Hotel Projects.  Upon information and belief, Simkins was a moving force in Defendants' decision to adopt the Infringing Marks and intentionally induces and directs use of the Infringing Marks in the advertising, marketing, and promotion of others, including other co-Defendants (specifically, GR, Lion Development, and PMG) as well as third-parties such as real estate brokers.

23.     Defendant Marc Roberts Companies LLC is a limited liability corporation organized under the laws of Florida, with an address of 4167 Main Street, Jupiter, Florida 33132. Upon information and belief, MR Co. is owned by Defendant Roberts and is involved in the development of, and directly uses the Infringing Marks in commerce in connection with, the E11EVEN Hotel Projects.  Upon information and belief, MR Co. intentionally induces and directs use of the Infringing Marks in the advertising, marketing, and promotion of others, including other co-Defendants (specifically PMG), as well as third-parties such as real estate brokers.

24.     Defendant Property Markets Group, Inc. is a limited liability corporation organized under the laws of New York, with an address of 398 NE 5th Street, 13th Floor, Miami, Florida 33132.  Upon information and belief, PMG Inc. is a developer of the E11EVEN Hotel Projects.  Upon information and belief, PMG Inc. is involved in the development of, and directly uses the Infringing Marks in commerce in connection with, the E11EVEN Hotel Projects.  Upon information and belief, PMG Inc. intentionally induces and directs use of the Infringing Marks in the advertising, marketing, and promotion of others, including other co-Defendants (specifically, GR, 11USA, Lion Development, MR Co., PMG Ventures I, PMG Ventures II, B17 Trustee, and B17 Owner) as well as third-parties such as real estate brokers.

25.     Defendant PMG-11th Street Ventures, LLC is a limited liability corporation organized under the laws of Delaware, with an address of 398 NE 5th Street, 13th Floor, Miami, Florida 33132.  Upon information and belief, PMG Ventures I is a developer of E11EVEN Hotel & Residences and E11EVEN Residences Beyond.  Upon information and belief, PMG Ventures I is involved in the development of, and directly uses the Infringing Marks in commerce in connection with, E11EVEN Hotel & Residences and E11EVEN Residences Beyond.  Upon information and belief, PMG Ventures I has a license from GR to use the Infringing Marks in connection with E11EVEN Hotel & Residences. Upon information and belief, PMG Ventures I intentionally induces and directs the use of the Infringing Marks in the advertising, marketing, and promotion of others, including third-party real estate brokers.

26.     Defendant PMG-11th Street Ventures II, LLC is a limited liability corporation organized under the laws of Delaware, with an address of 398 NE 5th Street, 13th Floor, Miami, Florida 33132.  Upon information and belief, PMG Ventures II is a developer of E11EVEN Hotel & Residences and E11EVEN Residences Beyond.  Upon information and belief, PMG Ventures II is involved in the development of, and directly uses the Infringing Marks in commerce in connection with, E11EVEN Hotel & Residences and E11EVEN Residences Beyond.  Upon information and belief, PMG Ventures II has a license from GR to use the Infringing Marks in connection with E11EVEN Residences Beyond. Upon information and belief, PMG Ventures II intentionally induces and directs use of the Infringing Marks in the advertising, marketing, and promotion of others, including third-party real estate brokers.

27.     Defendant Block 17 Trustee, LLC is a limited liability corporation organized under the laws of Delaware, with an address of 398 NE 5th Street, 13th Floor, Miami, Florida 33132.  Upon information and belief, B17 Trustee is a developer of West Eleventh Residences.

Upon information and belief, B17 Trustee is involved in the development of, and directly uses the Infringing Marks in commerce in connection with, West Eleventh Residences.  Upon information and belief, B17 Trustees intentionally induces and directs use of the Infringing Marks in the advertising, marketing, and promotion of others, including third-party real estate brokers.

28.     Defendant Block 17 Residential Owner, LLC is a limited liability corporation organized under the laws of Delaware, with an address of 398 NE 5th Street, 13th Floor, Miami, Florida 33132.  Upon information and belief, B17 Owner is a developer of West Eleventh Residences and owns the WEST ELEVENTH RESIDENCES word mark and logo.  Upon information and belief, B17 Owner is involved in the development of, and directly uses the Infringing Marks in commerce in connection with, West Eleventh Residences.  Upon information and belief, B17 Owner intentionally induces and directs use of the Infringing Marks in the advertising, marketing, and promotion of others, including third-party real estate brokers.

29.     Defendant Lion Development Opportunity Fund LLC is a limited liability corporation organized under the laws of Florida, with an address of a 5080 Biscayne Blvd., Suite A, Miami, Florida 33137.  Upon information and belief, Lion Development is owned in part by Defendant Simkins and is involved in the development of, and directly uses the Infringing Marks in commerce in connection with, the E11EVEN Hotel Projects, and has a license from GR to do so.  Upon information and belief, Lion Development intentionally induces and directs use of the Infringing Marks in the advertising, marketing, and promotion of others, including other co-Defendants (specifically PMG) and third-party real estate brokers.

## JURISDICTION AND VENUE

30.     This is an action arising under the Lanham Act 15 U.S.C. § 1051 *et seq.*  This Court has original jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a), 1367(a).  This Court also has subject matter jurisdiction under 28 U.S.C. §§ 2201 and 2202.  This Court has supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

31.     This Court has personal jurisdiction over GR because, upon information and belief, GR is incorporated in Florida, conducts business in Florida, has its principal place of business in Florida, and has committed trademark infringement (and the other allegations in this Counterclaim) in Florida.

32.     This Court has personal jurisdiction over 11USA because, upon information and belief, 11USA is incorporated in Florida, conducts business in Florida, has its principal place of business in Florida, and has committed trademark infringement (and the other allegations in this Counterclaim) in Florida.

33.     This Court has personal jurisdiction over Roberts because, upon information and belief, he resides in Florida, is employed in Florida, conducts business in Florida, and has committed trademark infringement (and the other allegations in this Counterclaim) in Florida.

34.     This Court has personal jurisdiction over DeGori because, upon information and belief, he resides in Florida, is employed in Florida, conducts business in Florida, and has committed trademark infringement (and the other allegations in this Counterclaim) in Florida.

35.     This Court has personal jurisdiction over Simkins because, upon information and belief, he resides in Florida, is employed in Florida, conducts business in Florida, and has committed trademark infringement (and the other allegations in this Counterclaim) in Florida.

36.     This Court has personal jurisdiction over MR Co. because, upon information and belief, MR Co. is incorporated in Florida, conducts business in Florida, has its principal place of business in Florida, and has committed trademark infringement (and the other allegations in this Counterclaim) in Florida.

37.     This Court has personal jurisdiction over PMG Inc. because, upon information and belief, PMG Inc. conducts business in Florida, has an office in Florida, and has committed trademark infringement (and the other allegations in this Counterclaim) in Florida.

38.     This Court has personal jurisdiction over PMG Ventures I because, upon information and belief, PMG Ventures I conducts business in Florida, has its principal place of business in Florida, and has committed trademark infringement (and the other allegations in this Counterclaim) in Florida.

39.     This Court has personal jurisdiction over PMG Ventures II because, upon information and belief, PMG Ventures II conducts business in Florida, has its principal place of business in Florida, and has committed trademark infringement (and the other allegations in this Counterclaim) in Florida.

40.     This Court has personal jurisdiction over B17 Trustee because, upon information and belief, B17 Trustee conducts business in Florida, has its principal place of business in Florida, and has committed trademark infringement (and the other allegations in this Counterclaim) in Florida.

41.     This Court has personal jurisdiction over B17 Owner because, upon information and belief, B17 Owner conducts business in Florida, has its principal place of business in, and has committed trademark infringement (and the other allegations in this Counterclaim) in Florida.

42.     This Court has personal jurisdiction over Lion Development because, upon information and belief, Lion Development is incorporated in Florida, conducts business in Florida, has its principal place of business in Florida, and has committed trademark infringement (and the other allegations in this Counterclaim) in Florida.

43.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Eleven IP's claims occurred in this judicial district, and a substantial part of the property that is the subject of this action is situated in this judicial district.  Further, all Defendants reside and/or maintain a place of business in this District, and all Defendants have committed trademark infringement (and the other allegations in this Counterclaim) in this District.

## ELEVEN, ITS SERVICES AND ITS ELEVEN MARKS

44.     Eleven is a renowned and established hotel, accommodations and travel services group known for its award-winning luxury hotels, private rental homes, and unique excursions and related services in the United States and around the world.

45.     Eleven offers a range of travel and hospitality services, including hotels and rental homes branded under the ELEVEN Marks.  The ELEVEN-branded properties, which are operated by Eleven IP's licensees and affiliates, are well-appointed with luxury accommodations, including indoor saltwater pools, top-of-the-line fitness equipment, health and wellness services, immersive media/game rooms, climbing walls, marksmen's ranges, talented chefs, enticing spas, and world-class guides for nearby outdoor adventures, among other things.

46.     The ELEVEN Marks reflect Eleven's mission to provide an experience that goes above and beyond luxury, taking a normal hotel stay "up to an eleven" when the normal scale only goes to a ten.  This mission is captured on Eleven's website, located at www.elevenexperience.com (the "Eleven Website"), which launched in 2011, promotes the

brand using the ELEVEN Marks, and is the primary means that customers use for booking

Eleven's hotels and homes.  A true and correct copy of excerpts of the Eleven Website is

attached hereto as **Exhibit A**, and example screenshots are shown below.





47.     Eleven launched and began using the ELEVEN Marks in commerce in connection

with its hotel and accommodation services at least as early as November 11, 2011, with the grand

opening of its first hotel, Eleven Scarp Ridge Lodge, located in Crested Butte, Colorado.

13165967-1

48.     Even before November 11, 2011, Eleven was taking hotel reservations from the public for the Fall-Winter 2011 season at Eleven Scarp Ridge Lodge under the ELEVEN Marks. For instance, when guests called to book those rooms, Eleven employees referred to the brand as "Eleven." The Eleven Website, which advertised Eleven's hotel services, was visible and launched to the public by at least November 11, 2011.

49.     Eleven Scarp Ridge Lodge opened to the public on November 11, 2011 with a launch party that featured extensive use of the ELEVEN Marks.  The launch party included attendees from the press and potential hotel guests in Eleven's network, including many of the high net-worth individuals who form Eleven's customer base as a luxury hotel.  Eleven expended extensive resources and effort for the launch of Eleven Scarp Ridge Lodge.

50.     The publicly available Eleven Website was projected on a screen during the launch party on November 11, 2011.  During the event, Eleven employees wore name-tags branded with the ELEVEN Marks, and printed materials advertising Eleven's hotel and accommodation services under the ELEVEN Marks were given out to guests.  Promotional gift bags featuring the ELEVEN Logo were also distributed to guests.  An example of a printed advertisement given out at the launch party on November 11, 2011 is shown below:

13165967-1



51.     The ELEVEN Marks were also projected onto the walkway leading up the hotel during the launch party, as shown in the photograph below taken that evening.



52.     Accordingly, Eleven was using the ELEVEN Marks in commerce in connection with the sale or offering of hotel services, including by accepting bookings for hotel rooms, by at least as early as November 11, 2011.

53.     Since its November 2011 launch, Eleven has opened up two additional hotels and accommodations in the U.S.—Eleven Sopris House (located in Crested Butte, Colorado) and

Eleven Taylor River Lodge (located in Almont, Colorado)—and announced and is currently marketing one additional hotel—Eleven Winterlake Lodge (located in the Alaska Range). Eleven also has opened nine hotels outside the U.S., for a total of thirteen hotels worldwide. Eleven also offers nine private rental homes through the Eleven Website in the United States and elsewhere, including two in Shelter Island, New York, and two in Crested Butte, Colorado.

54.     Despite offering hotels and homes worldwide, the majority of the marketing, branding, advertising, promotion, and sales efforts for Eleven's services are based in the U.S., including primarily in Crested Butte, Colorado and Jacksonville, Florida, where the majority of Eleven's employees are based.

55.     Eleven has invested significant resources in developing and promoting its hotels, homes, and services under the ELEVEN Marks, including in South Florida.  The ELEVEN Marks appear in a wide variety of advertisements and promotional materials for Eleven's hotels and homes, including, but not limited to, brochures, websites, and social media promoting Eleven's hotels and accommodations.  Below is an example of Eleven's use of the ELEVEN Marks in a brochure for Eleven Scarp Ridge Lodge:



56.     Each of Eleven's properties is marketed to consumers under the ELEVEN Marks.
Specifically, as shown below, the properties are each identified with unique names beginning
with "Eleven"—*e.g.*, Eleven Scarp Ridge Lodge, Eleven Winterlake Lodge, Eleven Taylor River
Lodge, etc.



57.     The properties themselves are operated and managed by Eleven IP's affiliates,
pursuant to appropriate licenses and agreements.  This is similar to many other hotel brands, *e.g.*,
Kimpton and Marriott.

58.     Eleven also uses the ELEVEN Marks extensively to brand its properties and hotel
services, including on products that guests can purchase at its on-property gift shops, on

19

complimentary products in the bathrooms of the hotel rooms, on apparel worn by employees, on signage at the hotels, on menus and other printed material provided in the hotels and rooms, and on vehicles associated with the hotels.  Examples of Eleven's branding at its hotel properties are shown below:





13165967-1





59.    Eleven's hotels and homes have won a variety of prestigious awards, accolades, and praise in the media.  For instance, *Condé Nast Traveler* named Eleven's Scarp Ridge Lodge among the "9 Best Family Hotels in the World" in 2020.  In 2018, *Travel + Leisure* praised "hotel group Eleven Experience" for offering "the quintessential American ski getaway in the

height of comfort," and in 2017, *Forbes* touted Eleven as "changing the hotel industry," noting

that its services are "unparalleled when you travel with Eleven."

60.    Eleven's customers are seeking a luxury experience that caters to their needs.  For

instance, Eleven's fine dining and high-end spa facilities maximize the comfort and luxury of an

experience at Eleven's hotels.  Below are example images of spa facilities available at Eleven's

properties.





61.     The price point of Eleven's hotels and homes matches the high-end, luxury nature of its services.  Eleven's accommodations can be booked directly through the Eleven Website. In addition to selling its hotel and home stays directly to consumers, Eleven offers hotel rooms through third-party booking websites, such as Expedia, Hotels.com, and Booking.com.  Eleven's hotels and homes are also reviewed and promoted on numerous third-party travel websites, including TripAdvisor.  An example of a listing for Eleven Scarpe Ridge Lodge on Booking.com is shown below:



62.     Eleven also promotes its hotels and homes through social media, including on its Instagram page and YouTube channel on which the ELEVEN Marks are prominently featured, as shown in the examples below.





63.     In recognition of Eleven IP's rights, the USPTO has issued trademark

registrations to Eleven IP for the ELEVEN Marks.  Many of these registrations have become

incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065, meaning

that their distinctiveness, and Eleven IP's ownership and right to exclusively use the marks

cannot be challenged.  Attached hereto as **Exhibit B** are copies of the registrations for the

ELEVEN Marks at issue in this litigation (the "Registered ELEVEN Marks"), which also are set

forth below.

| Mark/Name | Filing Date | Reg. Date/No. | Date of First Use | Full Goods/Services |
|-----------|-------------|---------------|-------------------|---------------------|
| ELEVEN | April 7, 2011 | December 25, 2012<br><br>Reg. No. 4,265,159 | November 11, 2011 | Int'l Class: 43<br>(Int'l Class: 43)<br>hotels, excluding restaurant services; hotel services, namely, |

| Mark/Name | Filing Date | Reg. Date/No. | Date of First Use | Full Goods/Services |
|---|---|---|---|---|
| | | | | providing luxury hotel accommodations, excluding restaurant services; resort lodging services, excluding restaurant services; providing temporary lodging services in the nature of a tourist home, excluding restaurant services |
| ELEVEN | April 7, 2011 | July 24, 2012<br><br>Reg. No. 4,180,401 | November 11, 2011 | Int'l Class: 39, 41<br>(Int'l Class: 39) arranging and conducting skiing, back country skiing, white water rafting, fishing, mountain, mountaineering, biking, climbing, hiking and back country trek expeditions; travel and excursion arrangement; coordinating travel arrangements for individuals and groups<br><br>(Int'l Class: 41) skiing, white water rafting, fishing, mountain, mountaineering, biking, climbing, hiking and back country trek guide services; arranging and conducting live sporting adventures for skiing, white water rafting, fishing, mountain, mountaineering, biking, climbing, hiking and back country trekking; instruction in the fields of |

| Mark/Name | Filing Date | Reg. Date/No. | Date of First Use | Full Goods/Services |
|---|---|---|---|---|
| | | | | skiing, back country skiing, white water rafting, fishing, mountaineering, biking, climbing, hiking and back country trekking |
| ELEVEN | November 8, 2011 | January 1, 2013<br><br>Reg. No. 4,269,487 | November 11, 2011 | Int'l Class: 43 (Int'l Class: 43) travel agency services, namely, making reservations and booking for temporary lodging; providing travel lodging information services for travelers |
| 11 and Design<br><br> | November 8, 2011 | September 23, 2014<br><br>Reg. No. 4,610,119 | November 11, 2011 | Int'l Class: 43 (Int'l Class: 43) travel agency services, namely, making reservations and booking for temporary lodging; providing travel lodging information services for travelers |
| 11 and Design<br><br> | October 27, 2011 | August 13, 2013<br><br>Reg. No. 4,384,681 | November 11, 2011 | Int'l Class: 36 (Int'l Class: 36) rental of homes |
| 11 and Design<br><br> | October 27, 2011 | January 1, 2013<br><br>Reg. No. 4,269,438 | November 11, 2011 | Int'l Class: 39 (Int'l Class: 39) arranging and conducting skiing, back country skiing, white water rafting, fishing, mountain, |

28

| Mark/Name | Filing Date | Reg. Date/No. | Date of First Use | Full Goods/Services |
|---|---|---|---|---|
| | | | | mountaineering, biking, climbing, hiking and back country trek expeditions; travel and excursion arrangement; coordinating travel arrangements for individuals and groups |
| 11 and Design  | October 27, 2011 | September 23, 2014 Reg. No. 4,610,113 | November 11, 2011 | Int'l Class: 41 (Int'l Class: 41) skiing, white water rafting, fishing, mountain, mountaineering, biking, climbing, hiking and back country trek guide services; arranging and conducting live sporting adventures for skiing, white water rafting, fishing, mountain, mountaineering, biking, climbing, hiking and back country trekking; instruction in the fields of skiing, back country skiing, white water rafting, fishing, mountaineering, biking, climbing, hiking and back country trekking |
| 11 and Design  | October 27, 2011 | October 14, 2014 Reg. No. 4,621,491 | November 11, 2011 | Int'l Class: 43 (Int'l Class: 43) hotels; hotel services, namely, providing luxury hotel accommodations; resort lodging services; providing temporary lodging services in the nature of a home |

64.     Eleven IP's applications for the Registered ELEVEN Marks were accepted and registered by the USPTO without proof of secondary meaning or any disclaimers, reflecting that the ELEVEN Marks are inherently distinctive of Eleven IP's goods and services.

65.     As a result of Eleven's widespread and prolonged use of the ELEVEN Marks for over a decade, and the significant promotion, advertising, third-party acclaim, and commercial success thereunder, the ELEVEN Marks have developed tremendous goodwill and achieved widespread recognition and acclaim.  This makes them distinctive in the minds of consumers.

### THE E11EVEN NIGHTCLUB

66.     Upon information and belief, the Individual Defendants co-founded what is now referred to as "E11EVEN Miami"—a "global lifestyle brand" and the group comprised of GR and 11USA, among other entities—in 2013.

67.     Upon information and belief, the Individual Defendants worked together to pick a name for their new business.  Upon information and belief, in 2013, the Individual Defendants narrowed the possible names of their new business to "ELEVEN MIAMI" or "E11EVEN MIAMI," in part because their planned nightclub was to be located at 29 NE *11th St.*, Miami, Florida 33132.  This is reflected in the first two "intent to use" trademark applications that GR filed on August 1, 2013: Serial No. 86/026,240 for "ELEVEN MIAMI" and Serial No. 86/026,194 for "E11EVEN MIAMI."  Both applications covered "entertainment services in the nature of nude dancing, adult entertainment, and cabaret performances" in Class 41 and "restaurant and bar services" in Class 43.  Notably, despite filing both applications on the same day, GR stated to the USPTO that the owner of the ELEVEN MIAMI application was "GR OPCO, LLC DBA ELEVEN MIAMI," whereas the owner of the E11EVEN MIAMI application was "GR OPCO, LLC DBA E11EVEN MIAMI."

68.     Upon information and belief, prior to filing these applications and ultimately adopting "E11EVEN" as a trademark, the Individual Defendants and their related entities, GR, 11USA, Lion Development, and MR Co., did not commission a full trademark clearance search to determine whether there were pre-existing uses of the same or similar marks in connection with the same or related services.  Rather, upon information and belief, the Individual Defendants and their related entities (referenced above) ran "knockout" trademark searches using the USPTO's online trademark database (*i.e.*, "TESS").  Specifically, upon information and belief, on or before August 1, 2013, the Individual Defendants and their related entities ran knockout searches for the term "E11EVEN" in Class 41 for "entertainment services" and Class 43 for "restaurant services" and "bar services."

69.     Upon information and belief, the searches that the Individual Defendants, GR, 11USA, Lion Development, and MR Co., and their counsel ran were artificially narrow, as they only searched for identical terms.  Although the Individual Defendants failed to preserve or produce these knockout searches (despite this dispute and Eleven's repeated discovery requests), upon information and belief, had Defendants conducted or asked counsel to conduct full trademark searches, rather than "knockout" searches, their searches no doubt would have identified at least Eleven IP's registration for ELEVEN (Reg. No. 4,265,159)—and thus showed Eleven and its superior rights in the ELEVEN Marks—given it was registered on December 25, 2012 for "hotels, excluding **restaurant services**; hotel services, namely, providing luxury hotel accommodations, excluding **restaurant services**; resort lodging services, excluding **restaurant services**; providing temporary lodging services in the nature of a tourist home, excluding **restaurant services**" in Class 43.

31

70.     Upon information and belief, the Individual Defendants, GR, 11USA, Lion Development, and MR Co. eventually pivoted away from using "ELEVEN MIAMI" as a trademark, and instead began using the term "E11EVEN" as a trademark in connection with the E11EVEN Nightclub, which opened in February 2014.

71.     According to statements it has made in this litigation, GR claims to own the E11EVEN Nightclub and is the owner of record of the trademark applications and registrations for the Infringing Marks.

72.     According to its website, https://www.11miami.com/e11even-partners, 11USA is "[l]ead [sic] by CEO and Creator . . . Dennis Degori [sic]" and is "a lifestyle and nightlife management company responsible for the marketing, management and the creative direction of" the E11EVEN Nightclub.

73.     The E11EVEN Nightclub, which the Individual Defendants, GR, and 11USA bill as "the world's only 24/5 Ultraclub," offers bar services, food, live music and various performances, including topless dancers.  This is reflected in one of GR's earliest trademark applications for "E11EVEN MIAMI," filed on August 1, 2013, in Class 41 in connection with "Entertainment services in the nature of nude dancing, adult entertainment, and cabaret performances," which registered on December 22, 2015 (Reg. No. 4874841).  In connection with this application, GR claimed to first begin using E11EVEN MIAMI in commerce in connection with such services as of February 7, 2014.

74.     The E11EVEN Nightclub has been at the center of several controversies, including fights with local Miami residents about repeated noise violations (https://mixmag.net/read/miamis-24-hour-nightclubs-face-off-against-residents-with-noise-complaints-news and https://therealdeal.com/magazine/miami-june-2018/bringing-down-the-

house/), lawsuits concerning violations of labor laws

(https://avn.com/business/articles/legal/lawsuit-charges-e11even-miami-with-misclassifying-

exotic-dancers-881945.html), and repeated allegations of racism and discrimination

(https://news.yahoo.com/cardi-b-gets-involved-patrons-191000370.html?).

75.     Indeed, apart from countless online reviews and comments discussing how it is

just a "fancy strip club," public reviews of the E11EVEN Nightclub share a common theme of

negative associations, as reflected in the below examples, which appear at top-line reviews on

TripAdvisor:



## DEFENDANTS' EXPANSION INTO HOTELS AND WILLFUL INFRINGEMENT OF ELEVEN IP'S TRADEMARKS

76.     Following their use of E11EVEN in connection with the E11EVEN Nightclub,

the Individual Defendants, GR, 11USA, MR Co., and Lion Development seemingly believed that

they could use the term with whatever goods and services they wanted.  That belief, however,

was mistaken and in flagrant disregard of well-established principles of trademark law.

77.     In particular, long after Eleven IP had established rights to its ELEVEN Marks in

connection with luxury hotels and accommodations and obtained multiple trademark

13165967-1

registrations therein, upon information and belief, in or around January 2021, Defendants (specifically, the Individual Defendants, GR, 11USA, MR Co., Lion Development, PMG Inc., PMG Ventures I and PMG Ventures II) announced plans to open "E11EVEN Hotel & Residences," and in November 2021, announced plans to open "E11EVEN Residences Beyond."

78.     After Eleven IP had complained about this infringement, challenged GR's trademark related applications, and GR had initiated this litigation, in or around February 2023, Defendants (specifically, Simkins, Roberts, Lion Development, MR Co., PMG Inc., B17 Owner and B17 Trustee) announced plans to open a third infringing hotel project: "West Eleventh Residences."

79.     Each of the three luxury hotel and residential towers remain under construction and in the planning phases, and are planned to be located across the street from the E11EVEN Nightclub in Miami, Florida, as a part of Defendants' planned "District 11" (a term that Roberts coined as a reference to E11EVEN and which has been used by Defendants in marketing, promotion, and sales materials).

80.     Defendants' decision (both collectively and individually) to expand into hotels and residences under the Infringing Marks flowed from discussions that were initially between and among the Individual Defendants, and soon expanded to include PMG Inc. and its representatives, which took place at least as early as 2019.  Throughout these discussions, the Defendants' planned to call the proposed hotel "E11EVEN" or a variation of that term.

81.     Eventually, PMG Inc., PMG Ventures I, and PMG Ventures II, with GR's and the Individual Defendants' blessing, direction and encouragement, decided to incorporate the infringing E11EVEN mark into the hotel project.

82.     PMG Ventures I was created to develop, market, promote and sell the first infringing tower, E11EVEN Hotel & Residences.  Upon information and belief, Roberts, MR Co., Simkins, Lion Development, DeGori, 11USA, GR, and PMG Inc. all hold interests in and are included in the ownership structure of PMG Ventures I, either directly or through entities that they control.

83.     Similarly, PMG Ventures II was created to develop, market, promote and sell the second infringing tower, E11EVEN Residences Beyond.  Upon information and belief, Roberts, MR Co., Simkins, Lion Development, DeGori, 11USA, GR, and PMG Inc. all hold interests in and are included in the ownership structure of PMG Ventures II.

84.     After the success of the first two towers, Roberts, Simkins, and PMG decided that it was worth exploring the development of another hotel/condominium. In February 2023, they announced the third infringing E11EVEN Hotel Project: West Eleventh Residences.

85.     Each Defendant has directly caused infringement of the ELEVEN Marks by using the Infringing Marks in connection with the E11EVEN Hotel Projects.  Specifically, PMG Inc., PMG Ventures I, PMG Ventures II, 11USA (which is often referred to colloquially as E11even Partners), and the Individual Defendants have widely been identified as the developers of E11EVEN Hotel & Residences and E11EVEN Residences Beyond, including on PMG Inc.'s website (https://propertymg.com/portfolio/e11even-hotel-and-residences-miami/), the official website for E11EVEN Residences Beyond (https://e11evenresidences.com/team/), in various news articles (https://therealdeal.com/miami/2021/01/21/pmg-e11even-partners-plan-65-story-condo-hotel-tower-in-downtown-miami/ and https://oceandrive.com/e11even-beyond-residences-announcement) and sponsored real estate brokerage websites (https://hotelandresidences.e11evencollection.com/ and https://beyond.e11evencollection.com/).

PMG Inc. and 11USA are also identified as developers in internal brochures for the E11EVEN Hotel & Residences and E11EVEN Residences Beyond.

86.     GR has entered into licenses with PMG Ventures I and others for the use of the Infringing Marks in connection with the marketing and sale of the hotel/condominium units located in E11EVEN Hotel & Residences and E11EVEN Residences Beyond.  The licensing agreement with PMG Ventures I was signed by DeGori on behalf of GR.

87.     Similarly, Roberts, Simkins, PMG Inc., B17 Owner, B17 Trustee, Lion Development, and MR Co. are identified as the developers for West Eleventh Residences, including on the official website (https://www.westeleventhresidences.com/), PMG Inc.'s website (https://propertymg.com/portfolio/west-eleventh-residences/), various news articles (https://profilemiamire.com/miamirealestate/2023/2/16/pmg-lion-development-group-and-marc-roberts-companies-launch-west-eleventh-residences-in-collaboration-with-airbnb and https://therealdeal.com/miami/2023/05/31/pmg-e11even-partners-score-262m-construction-loan-expand-project/) and sponsored real estate brokerage websites (https://westeleventh.e11evencollection.com/).

88.     Upon information and belief, GR, 11USA, MR Co., PMG Inc., Lion Development, and the Individual Defendants have provided marketing materials, development services, and/or widely promoted, encouraged, advertised, publicized, and/or sold condominiums at the E11EVEN Hotel Projects using the Infringing Marks.

89.     All Defendants collaboratively work together on, review, and/or approve marketing, promotion, advertising, and sales materials for the E11EVEN Hotel Projects. Defendants have each pointed to each other as being involved in, directing, and being responsible for such materials.  At a minimum, PMG creates marketing materials, with input,

direction, and approval from GR, 11USA, MR Co., Lion Development, and the Individual Defendants.

90.     The involvement of GR and its representatives, including the Individual Defendants and their related entities (11USA, MR Co. and Lion Development) in marketing, promotion, advertising for the E11EVEN Hotel Projects, and the use of the Infringing Marks in connection with hotels and condominiums, is inherent to the licensing arrangement.  Thus, it is no surprise that such Defendants have provided materials for, reviewed, provided input on, and approved such infringing materials.  Moreover, such Defendants have also circulated such marketing materials, including by promoting the E11EVEN Hotel Projects at the E11EVEN Nightclub.  Such Defendants also have met with and provided information to third-party real estate brokers for the purpose of encouraging the infringing sales of the E11EVEN Hotel Projects.

91.     Defendants have supplied marketing and promotional materials bearing the Infringing Marks, and otherwise encouraged and assisted third parties in the advertising, marketing, publicizing, promotion, and sale of condominium units in the E11EVEN Hotel Projects using the Infringing Marks.

92.     For example, GR has worked with third-party marketing and branding agencies—including, for example, Once Upon a Time—to develop a brand essence that uses the Infringing Marks in connection with E11EVEN Hotel & Residences and E11EVEN Residences Beyond.

93.     And GR, 11USA, MR Co., PMG Inc., Lion Development, and the Individual Defendants have been involved with, provided feedback to, and approved press releases created by Levy Public Relations, Alchemy, and Rubenstein Public Relations, among others.  In fact,

upon information and belief, PMG and GR would have weekly meetings with Levy Public Relations and Alchemy regarding marketing strategies for the E11EVEN Hotel Projects.

94.     Additionally, upon information and belief, the Infringing Marks have appeared in luxury lifestyle publications, and Defendants—through their public relations firms—have sought media coverage in a variety of national and local outlets including, but not limited to, *New York Times*, *Conde Nast Traveler*, *Men's Journal*, *New York Post*, *Business Insider*, *Forbes*, *Travel + Leisure*, *Robb Report*, *Departures*, *Afar*, *Architectural Digest*, *Dujour*, *Surface Magazine*, *Financial Times*, *Wall Street Journal*, *Haute Residences*, *Haute Living*, *South Florida Business & Wealth*, and *The Miami Herald*.

95.     PMG continues to promote the E11EVEN Hotel Projects on third-party websites. PMG develops and provides both soft and hard collateral materials to many venues in order to promote the E11EVEN Hotel Projects.

96.     Upon information and belief, Defendants have also assisted and encouraged outside brokers—including Waterfront Investment Real Estate, LLC, DBA WIRE Miami, among others—in using the Infringing Marks to promote, advertise, publicize, and sell condominiums in connection with the E11EVEN Hotel Projects.

97.     For instance, WIRE Miami actively markets and promotes the E11EVEN Hotel Projects through the website https://e11evencollection.com/, which uses images and text provided by and/or approved by Defendants, including specifically PMG and GR.  Numerous other third-party brokers have promoted, advertised, and sold the infringing E11EVEN Hotel Projects, at the inducement, encouragement, and/or direction of Defendants.

98.     For instance, it is part of PMG's sales and marketing efforts to put out hard and soft collateral materials to assist these brokers in the sale of units in the E11EVEN Hotel

Projects.  For example, upon information and belief, PMG has created brochures (that were sent to and reviewed and approved by GR, the Individual Defendants, 11USA, MR Co., and Lion Development) that have been distributed to brokers and others interested in the E11EVEN Hotel Projects, including potential buyers.

99.     Similarly, PMG has commissioned renderings of the E11EVEN Hotel Projects that use the Infringing Marks.  Upon information and belief, these renderings were reviewed and approved by GR, 11USA, MR Co., Lion Development, and the Individual Defendants and are used both internally and by third parties in connection with the sale of condominiums at the E11EVEN Hotel Projects.

100.     PMG operates a sales center that promotes, advertises, markets, and sells the infringing E11EVEN Hotel Projects to potential buyers and brokers.

101.     PMG encourages, directs, and induces the infringement by third-party brokers by, for instance, upon information and belief, offering broker commissions.  The other Defendants also directly and indirectly benefit from sales through brokers, given their respective financial stakes and overall role in and control over the E11EVEN Hotel Projects.

102.     By way of example, GR has actively worked with brokers and brought in several people to purchase units in E11EVEN Residences Beyond and E11EVEN Hotel & Residences. Roberts has personally referred hundreds of people to the E11EVEN Hotel Projects, sold units in West Eleventh Residences, and worked with third-party brokers to sell units in West Eleventh Residences. And DeGori and 11USA have offered and promoted a program for employees of the Gold Rush Cabaret strip club as well as employees of the E11EVEN Miami nightclub, among others, to "earn money" in connection with the marketing of the E11EVEN Hotel & Residences and E11EVEN Residences Beyond.

103.    The E11EVEN Hotel Projects are promoted, advertised, and marketed by Defendants as being part of their "District 11" neighborhood—a marketing term created by Roberts to refer to the E11EVEN Nightclub and the surrounding area.

104.    "District 11" is a marketing term used by the Individual Defendants, GR, 11USA, MR Co., Lion Development, PMG, and third-party brokers in connection with promoting, advertising, marketing, and/or selling the E11EVEN Hotel Projects.  For example, an article posted on 11miami.com (a site owned and operated by 11USA) on July 12, 2023, states that "[d]evelopers PMG and E11EVEN Partners have unveiled yet another opportunity for buyers to take part in a lavish and Vegas-style residential concept planned for Miami's prestigious District 11" (https://www.11miami.com/news-press/new-luxury-properties-made-available-with-e11even-residences-beyond-expansion).  The www.11miami.com website separately refers to E11even Partners as being comprised of the Individual Defendants and 11USA (see https://www.11miami.com/e11even-partners).  An article posted by South Florida Business Journal on October 4, 2023 wrote that "Developer Marc Roberts said his aim is to transform the street outside his E11EVEN nightclub in Miami into a 'modern day Bourbon Street' with a focus on entertainment and hospitality" (https://www.bizjournals.com/southflorida/news/2023/10/04/marc-roberts-vision-for-e11even-miami-worldcenter.html).  Similarly, in another article posted by Axios Miami on October 23, 2023, Roberts, discussing the E11EVEN Hotel Projects, stated that "[i]n three years, nobody's going to recognize Park West. It will be known as District 11" (https://www.axios.com/local/miami/2023/10/23/e11even-marc-roberts-vegas-style-district-11). In addition, the official website for West Eleven Residences explicitly references Defendants' "District 11" neighborhood:

District 11

Located in the heart of Miami's thriving creative district, a world of art, nightlife, and culture is mere steps away from West Eleventh. Enjoy access to unlimited options for entertainment.

West Eleventh offers proximity to the best of everything, only minutes away. Shopping options range from flagship global brands to local favorites. Nearby world-class dining includes food and beverage concepts by Michelin-Star chefs.

105.    Upon information and belief, construction broke ground on E11EVEN Hotel & Residences in November 2021.  The hotel remains under construction but is scheduled for completion in 2025.  Similarly, upon information and belief, construction reportedly broke ground on E11EVEN Residences Beyond in or around June 2023, and the hotel is scheduled for completion in 2026.  Finally, upon information and belief, construction on West Eleventh Residences is expected to begin in late 2024, and the hotel is scheduled for completion in 2027.

106.    While the buildings remain under construction and in the planning phases, Defendants already have already sold most if not all of the units in the three towers under the Infringing Marks.  Upon information and belief, Defendants claim to have sold out condominiums in both E11EVEN Hotel & Residences and E11EVEN Residences Beyond, and have sold out approximately at least 98% of the condominiums in West Eleventh Residences.

107.    Upon information and belief, E11EVEN Hotel & Residences is planned to be and is advertised as a hotel and short-term rental building where buyers will be able to either choose to put their units into a "hotel program" and/or live in their unit.  Upon information and belief, E11EVEN Residences Beyond is planned to be a residential condo building, where unit owners

41

will have the option to make their units available for rental for periods of 30 days or longer (*i.e.*, as extended stay hotel units).  Upon information and belief, West Eleventh Residences is planned to be a short-term rental condo building in partnership with Airbnb, and it is marketed as "The first centrally managed luxury condo residences to grant owners the option to host 365 days on Airbnb."

108.    Upon information and belief, like Eleven's own hotels, Defendants' planned hotels will boast an in-house chef, wellness spa, health and fitness services, and other luxury resort-style amenities.  Defendants also promise customers of the E11EVEN Hotel & Residences and E11EVEN Residences Beyond access to a 300-foot private beach and beach club, which will be operated by 11USA.  Customers are encouraged to "embrace a way of being that's world's away from the rest" and "discover next level luxury" at E11EVEN.  Promotional banners at the construction site display E11EVEN prominently.  E11EVEN is and/or has also been used on numerous websites to promote the planned hotel and residences, including, but not limited to, https://e11evenresidences.com, https://www.westeleventhresidences.com/, e11evenhotelandresidences.wiremiami.com, https://e11evencollection.com/, https://westeleventh.e11evencollection.com/, https://beyond.e11evencollection.com/, and https://propertymg.com/portfolio/.  Likewise, the website and promotional materials for West Eleventh Residences advertise it as "luxury condo residences" featuring "a resort style pool with private lounge areas," among other amenities.

109.    An example of how Defendants use the Infringing Marks in connection with marketing and promoting their forthcoming hotels and residences is shown below.  For E11EVEN Hotel & Residences and E11EVEN Residences Beyond, E11EVEN appears in large, capitalized font with the numeric "11" in the middle.  For West Eleventh Residences, Defendants

use the numeric "11" prominently in a design mark next to a capitalized "W" above the large, capitalized words "WEST ELEVENTH," in a similar font.





110.    Defendants' use of the Infringing Marks is undoubtedly likely to cause both "forward" and "reverse" confusion with Eleven's existing use of the ELEVEN Marks.

111.    With respect to "forward" confusion, Defendants' use of the confusingly similar Infringing Marks in connection with hotel and residential services is likely to make consumers mistakenly believe there is a connection, sponsorship, or association between Defendants and Eleven, and/or that the E11EVEN Hotel Projects are owned, operated, and/or sponsored by, and/or affiliated with Eleven, when that is not the case.

112.    This is particularly likely given the overwhelming similarities between the marks, including, among other things, the similar and/or identical nature of the marks, the manners in which the marks are used, the services with which they are used, the target customers of those services, and the way the services under the marks are marketed, advertised, and promoted, including the channels of trade in which they appear.

113.    For example, the Infringing Marks (below on the left) are presented in a similar manner as the ELEVEN Marks (below on the right) in that they both use a large, capitalized black font and the numeric "11" in a design logo above the word "ELEVEN":



114.    Likewise, much like Eleven and the Eleven Website, Defendants' websites use images of hotels and pools with the Infringing Marks prominently displayed:

**Defendants' Website**



**Eleven's Website**



13165967-1

115.    Further, like Eleven, Defendants also promote their planned hotels through social media, including on their Instagram page and YouTube channel on which the Infringing Marks are prominently featured, as shown in the examples below:





116.    Upon information and belief, Defendants have also partnered with third-party websites, such as Airbnb, to facilitate the ability to list and book stays at condominiums in E11EVEN Hotel & Residences and West Eleventh Residences.

117.    Defendants also target and market the Infringing Marks to the same customers as Eleven—customers who are willing to pay a premium for a luxury experience.

118.    With respect to "reverse" confusion, in addition to the likely confusion between the parties' marks given the similarities described above, Defendants' expansion plans are likely to overwhelm the market and saturate the public consciousness with their use of the confusingly similar Infringing Marks in connection with hotel and accommodation services, thereby weakening and diminishing the value of Eleven IP's superior rights in the ELEVEN Marks.

119.    For example, upon information and belief, Defendants have invested in online marketing—including buying advertisements for search terms like "eleven hotel"—that is likely to detract customers from the Eleven Website to Defendants' websites.

120.    Further, Defendants' use of the Infringing Marks is only becoming more rampant as evidenced by the fact that PMG, Roberts, Simkins, MR Co., Lion Development, Block 17 Trustee and Block 17 Residential Owner launched West Eleventh Residences—*i.e.*, a third infringing hotel—*after* this litigation began.

121.    Defendants (specifically Roberts) have also publicly stated that their intention is to have "E11EVEN hotels all over the world because everyone wants to get the E11EVEN experience."  In pursuit of this objective, at least GR, 11USA, Roberts, Simkins and DeGori have actively pursued new development projects that would be branded E11EVEN.  Besides shamelessly trading on Eleven's name and the goodwill of the ELEVEN Marks by using the phrase "E11EVEN experience," this shows that Defendants have every intention of continuing to overwhelm the market and saturate the public conscience with their use of the confusingly similar Infringing Marks.

122.    Moreover, given the E11EVEN Hotel Projects are currently still under construction and in the planning phases, Defendants' use of the Infringing Marks will only continue to become more prevalent in the market once they are completed.

123.    Defendants' infringement is also unquestionably willful.  As noted above, Eleven began using the ELEVEN Marks in connection with hotel services on November 11, 2011, and Eleven IP has numerous registrations for the Registered ELEVEN Marks, the first of which was registered on July 24, 2012—nearly nine months before the Individual Defendants, GR, and 11USA began using the term E11EVEN as a trademark in connection with the E11EVEN

48

Nightclub, and eight and a half years before Defendants began to announce their intention to use the Infringing Marks in connection with the E11EVEN Hotel Projects.  Given that Eleven IP's registrations pre-date any use of the Infringing Marks by Defendants, they at least had constructive notice of Eleven IP's claim of ownership in the ELEVEN Marks in connection with hotel, lodging, hospitality, and related services prior to their adoption and use of the Infringing Marks, pursuant to 15 U.S.C. § 1072.

124.    Defendants not only had constructive notice of Eleven's superior rights in the Registered ELEVEN Marks, but actual knowledge as well.  As noted above, upon information and belief, the Individual Defendants, GR, 11USA, MR Co. and Lion Development ran, reviewed, and discussed knockout searches on or before August 1, 2013, which would have revealed at least Eleven IP's registration for ELEVEN (Reg. No. 4,265,159).

125.    Moreover, between April and August 2020—well before Defendants (specifically, GR, 11USA, MR Co., Lion Development, PMG Inc., PMG Ventures I, and the Individual Defendants) publicly announced their first E11EVEN Hotel Project in January 2021—GR filed numerous trademark applications for the marks E11EVEN and E11EVEN HOTEL AND RESIDENCES in connection with hotel, lodging, real estate, and related services (Application Serial Nos. 88899708, 88868063, 88982607, and 88982608) (together, the "E11EVEN Applications").  DeGori signed the E11EVEN Applications on behalf of GR.

126.    Upon information and belief, the Individual Defendants, GR, 11USA, MR Co. and Lion Development ran additional clearance searches in Class 43 for hotel-related services, which, once again, likely revealed Eleven IP and the Registered ELEVEN Marks.

127.    But perhaps the most compelling evidence of Defendants' actual knowledge of Eleven and the Registered ELEVEN Marks is that, on June 28, 2020, the USPTO issued *refusals*

against the E11EVEN Applications pursuant to Section 2(d) of the Trademark Act, finding a likelihood of confusion with three of Eleven IP's registrations: U.S. Registration Nos. 4,384,681 (11 stylized logo), 4,621,491 (11 stylized logo), and 4,265,159 (ELEVEN word mark).

128.    Upon information and belief, the counsel who received the June 28, 2020 refusals issued by the USPTO against the E11EVEN Applications, which expressly identified Eleven IP and the Registered ELEVEN Marks, told GR, 11USA, and the Individual Defendants.  Further, upon information and belief, these refusals were also shared with PMG, as well as with 11USA, Lion Development, and MR Co. through DeGori, Simkins, and Roberts, respectively.

129.    Thus, at least by June 28, 2020, Defendants were unquestionably on actual notice that their planned use of the Infringing Marks would infringe the ELEVEN Marks, but they nonetheless proceeded with their infringing activity.  The same is true with respect to the WEST ELEVENTH RESIDENCES word and design marks, which Defendants (specifically, PMG Inc., B17 Owner, B17 Trustee, Simkins, Roberts, MR Co., and Lion Development) adopted and began using in commerce *after* this lawsuit was filed.

130.    Defendants' actual knowledge and willful infringement are also apparent from the fact that after the USPTO issued Section 2(d) refusals (finding that there was a likelihood of confusion) against the E11EVEN Applications based on various of the Registered ELEVEN Marks, GR responded to the Office Actions arguing that confusion was unlikely to occur.  The USPTO found GR's arguments "unpersuasive," however, and maintained the refusals.  GR then requested that the USPTO divide out the Classes for which there was no Section 2(d) refusal based on Eleven IP's registrations, and eventually filed appeals for the E11EVEN Applications as to the refused Class.

131.    For example, GR filed Application Serial No. 88/871,120 for E11EVEN (stylized) in (a) Class 35 for "swimming pool management," (b) Class 36 for "Real estate management of vacation homes; Real estate rental services, namely, rental of residential housing; Real estate service, namely, rental property management; Real estate services, namely, condominium management services; Real estate services, namely, rental of vacation homes; Real estate services, namely, vacation home rental management services; Real estate time-sharing; Vacation real estate time-sharing; Vacation real estate timeshare services; Commercial and residential real estate agency services; Leasing of real estate," and (c) Class 37 for "real estate development." DeGori signed Application Serial No. 88871120 on behalf of GR.

132.    On February 9, 2021, the USPTO maintained the Section 2(d) refusal based on Eleven IP's registrations as to Class 36, and on August 3, 2021, GR requested to divide out Classes 35 and 37 and eventually filed an appeal with respect to Class 36.

133.    On March 18, 2022, shortly after Eleven IP became aware of GR's plans to use the Infringing Marks, Eleven IP sent GR a cease-and-desist letter notifying it that its planned use of the Infringing Marks for hotel, lodging, real estate, and related services would infringe Eleven IP's prior rights in the ELEVEN Marks. Accordingly, Eleven IP requested that GR abandon its registration for E11EVEN (Reg. No. 5921909) (the "E11EVEN Registration"), withdraw the E11EVEN Applications, and agree to refrain from use of ELEVEN-formative marks for hotel, lodging, real estate, and related services in the future.

134.    After GR refused to comply with Eleven IP's request, Eleven IP was left with no choice but to institute proceedings with the USPTO's Trademark Trial and Appeal Board (the "TTAB") to seek cancellation of the E11EVEN Registration and refusal of the E11EVEN

Applications, given Eleven IP's prior rights and the likelihood of confusion between the parties' respective marks.

### GR'S ALLEGEDLY ACQUIRED, *POST-HOC* COMMON LAW MARKS

135. Upon information and belief, knowing they were likely going to lose at the TTAB, GR, along with at least 11USA, MR Co., Lion Development, and the Individual Defendants, began making moves in late 2022 to put together a lawsuit that GR could bring in federal court against Eleven IP in order to stay the TTAB proceedings.

136. Specifically, in late 2022, upon information and belief, GR, through the actions of MR Co., Lion Development, 11USA and the Individual Defendants, identified two entities that purportedly own common law rights GR sought to "acquire," namely (1) SombrasGroup d/b/a The Eleven Inn, a single location hotel located in Balmorhea, Texas, and (2) 11th Avenue Corporation Inc. d/b/a 11th Avenue Hostel, a single-location hostel located in Denver, Colorado, which right GR then sought to acquire.

137. According to its pleadings, GR claims to have acquired common law rights to the terms "ELEVEN" and "ELEVEN INN," owned by The Eleven Inn, and common law rights to the terms "11," "ELEVEN," "11TH AVENUE HOSTEL," "11TH AVENUE CORPORATION INC.," and "11TH AVENUE PROPERTIES LLC," owned by 11th Avenue Hostel.

138. Upon information and belief, the Eleven Inn has eleven rooms, which range in price between $70 to $120 per night and are advertised and booked exclusively through its "informational" website http://www.theeleveninn.com/ or by directly contacting The Eleven Inn. According to statements made in this litigation, The Eleven Inn does no marketing or advertising apart from offering informational brochures, which are only available on site, and maintaining the http://www.theeleveninn.com/ website.

139.    Upon information and belief, any protectable trademark rights The Eleven Inn may have in the terms "ELEVEN" and "ELEVEN INN," or the like, if it has any at all, are narrow and geographically limited to the Balmorhea, Texas.

140.    Upon information and belief, rooms at the 11th Avenue Hostel likewise range between $50 to $150 per night and are advertised and booked primarily through the https://www.11thavenuehostel.com website.

141.    Upon information and belief, any protectable trademark rights the 11th Avenue Hostel may have in the terms "11," "ELEVEN," "11TH AVENUE HOSTEL," "11TH AVENUE CORPORATION INC.," and "11TH AVENUE PROPERTIES LLC," or the like, if it has any at all, are narrow and geographically limited to Denver, Colorado.

142.    After supposedly acquiring the alleged common law rights owned by The Eleven Inn and 11th Avenues Hostel, GR filed this lawsuit bringing an infringement claim against Eleven, as well as seeking to cancel and/or restrict Eleven IP's registrations, claiming the ELEVEN Marks are likely to cause confusion with GR's purportedly acquired common law rights.

143.    Upon information and belief, GR purchased these common law rights solely for the misguided and improper purpose of attempting to side-step its own infringement of Eleven IP's trademark rights.  Even if these entities did have common law rights to the terms "ELEVEN" or "11"—which it is not clear they do—it would not matter for purposes of Defendants' infringement.

144.    As an initial matter, neither The Eleven Inn nor the 11th Avenue Hostel is in the luxury hotel business and, thus, neither of them offers the same services as Eleven and Defendants—*i.e.*, luxury hotel accommodations and private rental homes, among other services.

Rather, as described above, both The Eleven Inn and 11th Avenue Hostel are single-location motels or hostels and offer rooms at prices that range from $50-$150 and $70-$120 per night, respectively, which is a far cry from the prices for Eleven's luxury hotels and homes and for Defendants' luxury E11EVEN Hotel Projects.  As the below screenshots show, The Eleven Inn is identified online as a "motel," while the 11th Avenue Hostel is identified as a "1-star hotel" with shared hostel-style rooms:




145.    In addition, neither The Eleven Inn nor the 11th Avenue Hostel has _ever_ challenged Eleven IP's use of the ELEVEN Marks, including by written correspondence or opposing registration of the ELEVEN Marks with the USPTO.  Rather, the parties have peacefully coexisted since at least as early as November 2011.  Thus, any claims against Eleven IP and its use of the ELEVEN Marks that are based on those rights have long since been waived.

146.    In any event, upon information and belief, GR's acquisition of the alleged common law rights in the terms "ELEVEN" or "11" constituted an invalid assignment-in-gross.

147.    Upon information and belief, GR did not acquire either of the businesses (nor any assets thereof) and did not acquire any good-will The Eleven Inn and 11th Avenue Hostel may have, if they have any at all, in connection with the terms "ELEVEN" and "11."

148.    GR does not offer, nor, upon information and belief, does it have any plans to offer, non-luxury hotel, motel or hostel services similar to the services supposedly offered by The Eleven Inn and 11th Avenue Hostel.  Rather, upon information and belief, to the extent GR acquired common law rights from The Eleven Inn and 11th Avenue Hostel, it acquired those rights in title alone and, thus, the assignments were in gross (and therefore invalid).

149.    Likewise, upon information and belief, to the extent GR acquired any common law rights in the terms "ELEVEN" or "11" from The Eleven Inn and 11th Avenue Hostel, GR has abandoned those rights through naked licensing.  Specifically, upon information and belief, GR's agreements with The Eleven Inn and 11th Avenue Hostel do not provide GR the right to exercise quality control over, or adequately supervise, the entities' use of the alleged common law marks. Additionally, upon information and belief, GR has never attempted to exercise any quality control over the entities' use of the alleged common law marks since GR supposedly acquired them in late 2022.  Rather, upon information and belief, GR's relationship with its alleged licensees began and ended with acquiring the common law trademark rights, which were purchased without any property or good will, and solely as leverage to bring a lawsuit in federal court and strong-arm Eleven IP into allowing Defendants to continue their use of the Infringing Marks.

150.    But perhaps the most compelling evidence of GR's blatant and improper gamesmanship is its own statement made in this litigation in response to Eleven's interrogatory

seeking identification of any instances of actual confusion between the ELEVEN Marks and

GR's purportedly acquired common law rights over the last 10+ years (emphasis added below):

> [GR] has contacted both SombrasGroup Inc. d/b/a ELEVEN INN and 11th Avenue Corporation Inc. d/b/a 11th AVENUE for any instances of actual confusion known to [them]. [GR] has also reviewed its online platforms for complaints, reviews, posts, or other indicia of instances of confusion. Further, [GR] has inquired internally regarding its employees (including those involved in marketing) as well as its licensees for any instances of actual confusion known to [The Eleven Inn and 11th Avenue Hostel]. ***None of the foregoing have uncovered anything that could possibly suggest anything that would remotely qualify as an instance of actual confusion.***

151.    To summarize the foregoing, prior to filing the E11EVEN Applications,

Defendants at least had constructive notice of the Registered ELEVEN Marks, and likely had

actual knowledge of Eleven based on their trademark clearance efforts.  GR, through the actions

of the Individual Defendants and 11USA, nevertheless filed the E11EVEN Applications and,

shortly thereafter, the USPTO issued refusals against them based on a likelihood of confusion

with Eleven IP's prior registrations.  At that point, Defendants unquestionably and admittedly

had actual knowledge of Eleven and its superior rights in the ELEVEN Marks.  Still, GR,

through the actions of the Individual Defendants and 11USA, tried to overcome those 2(d)

refusals, but the USPTO maintained them as final, further cementing that Defendants' planned

use of the Infringing Marks would cause confusion with the ELEVEN Marks.  Undeterred,

Defendants willfully proceeded to infringe Eleven IP's prior rights and launch the E11EVEN

Hotel Projects, including announcing a third infringing property after GR filed suit.  Then, after

receiving Eleven IP's cease and desist letter, GR and the Individual Defendants schemed up a

lawsuit and brought claims that they now admit, under *penalty of perjury*, are meritless.

152.    The above makes clear that Defendants will do whatever they want and say

whatever, regardless of whether they know it is wrong or false, and that their infringement—

which was unquestionably willful and in flagrant disregard of Eleven IP's prior rights and trademark law—will not stop absent a Court order.

## FIRST COUNTERCLAIM

### INFRINGEMENT OF REGISTERED ELEVEN MARKS
### (Section 32 of the Lanham Act, 15 U.S.C. § 1114)
### (As to all Defendants)

153.     Eleven IP repeats and incorporates herein by reference each and every one of the allegations contained in paragraphs 1 through 152 of this Counterclaim with the same force and effect as if herein again set forth in full.

154.     Eleven IP has prior rights over Defendants in and to the Registered ELEVEN Marks in the United States by virtue of its use of the Registered ELEVEN Marks in interstate commerce and as evidenced by the numerous registrations for the Registered ELEVEN Marks owned by Eleven IP.

155.     The Registered ELEVEN Marks are valid, subsisting, used in commerce, inherently distinctive and have acquired distinctiveness.  In addition, the Registered ELEVEN Marks have been declared incontestable by the USPTO.

156.     Defendants' Infringing Marks are confusingly similar to the Registered ELEVEN Marks given the overwhelming similarities between the marks, including, among other things, the similar and/or identical nature of the marks, the manners in which the marks are used, the services with which they are used, the target customers of those services, and the way the services under the marks are marketed, advertised, and promoted, including the channels of trade in which they appear.

157.     Defendants' use of the Infringing Marks is likely to cause both "forward" and "reverse" confusion.

158.    With respect to "forward" confusion, Defendants' use of the confusingly similar Infringing Marks in connection with hotel services is likely to make consumers mistakenly believe there is a connection, sponsorship, or association between Defendants and Eleven IP, and/or that the E11EVEN Hotel Projects are owned, operated, and/or sponsored by, and/or affiliated with, Eleven IP when that is not the case.

159.    With respect to "reverse" confusion, Defendants' plans are likely to overwhelm the market and saturate the public conscience with their use of the confusingly similar Infringing Marks in connection with hotel services and condominiums, thereby weakening and diminishing the value of Eleven IP's superior rights in the Registered ELEVEN Marks.

160.    Defendants knew, or should have known, that their use of the Infringing Marks was likely to cause confusion or mistake as to Eleven IP's sponsorship of, association with, or affiliation with Defendants' goods and services, and/or *vice versa*.

161.    Defendants' use of the Infringing Marks is likely to cause irreparable injury to Eleven IP's Registered ELEVEN Marks, reputation, and goodwill.  The extent of this harm cannot be quantified, and therefore leaves Eleven IP with no adequate remedy at law.

162.    Defendants' use of the Infringing Marks constitutes infringement of the Registered ELEVEN Marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

163.    Upon information and belief, the Individual Defendants actively and knowingly directed, controlled, ratified, and participated as moving forces in Defendants' decision to engage in the infringing acts described above, and otherwise caused the infringing acts described above as a whole to occur.

164.     The Individual Defendants are therefore personally liable for Defendants'
infringement of the Registered ELEVEN Marks in violation of Section 32 of the Lanham Act, 15
U.S.C. § 1114.

165.     By reason of the foregoing, Eleven IP is entitled to permanent injunctive relief
against Defendants, restraining them and all those in active concert and participation with them
from any further acts of infringement, and for all remedies available to it under 15 U.S.C.
§ 1117, including an accounting and disgorgement of Defendants' profits, recovery of any
damages (to the extent calculable) proven to have been caused by reason of their aforesaid acts,
and Eleven IP's attorneys' fees and costs, among other remedies as outlined below.

## SECOND COUNTERCLAIM

### FALSE DESIGNATION OF ORIGIN
### (Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(A))
### (As to all Defendants)

166.     Eleven IP repeats and incorporates herein by reference each and every one of the
allegations contained in paragraphs 1 through 152 of this Counterclaim with the same force and
effect as if herein again set forth in full.

167.     The ELEVEN Marks are protected as common law trademarks by virtue of
Eleven IP's longtime use of such marks in the marketplace.

168.     As discussed above, the Infringing Marks, which have been promoted, distributed,
and used in commerce by Defendants, are confusingly similar to the ELEVEN Marks.

169.     Defendants' use of the Infringing Marks implies to consumers that Defendants'
goods and services come from the same source as Eleven IP's goods and services, and/or *vice
versa*.  Such implications are false, confusing, and misleading to consumers, and material to
consumers' purchasing decisions.

170.     Defendants' unauthorized use of the Infringing Marks in connection with the promotion or sale of luxury hotel and accommodation services is likely to cause forward confusion or mistake with the ELEVEN Marks because it falsely suggests that Defendants' goods and services are provided by, connected with, sponsored by, affiliated with, or related to, Eleven IP.

171.     Defendants' unauthorized use of the Infringing Marks in connection with the promotion or sale of luxury hotel and accommodation services is also likely to cause reverse confusion or mistake with the ELEVEN Marks.  Consumers likely will mistakenly believe that Eleven IP's goods and services are provided by, sponsored by, associated with, or otherwise affiliated with Defendants because Defendants are likely to commercially overwhelm the market and saturate the public conscience with its use of the Infringing Marks, thereby weakening and diminishing the value of Eleven IP's superior rights in the ELEVEN Marks.

172.     Defendants' conduct has damaged Eleven IP and, unless enjoined by the Court, will further impair the value of Eleven IP's ELEVEN Marks, reputation, and goodwill.  This harm constitutes an injury for which Eleven IP has no adequate remedy at law.

173.     Defendants' unauthorized use of the Infringing Marks in connection with luxury hotel and accommodation services constitutes a false designation of origin in violation of 15 U.S.C. § 1125(a).

174.     Upon information and belief, the Individual Defendants actively and knowingly directed, controlled, ratified, and participated as moving forces in Defendants' decision to engaging in the infringing acts described above, and otherwise caused the infringing acts described above as a whole to occur.

175.    The Individual Defendants are therefore personally liable for Defendants' infringement of the ELEVEN Marks constituting a false designation of origin in violation of 15 U.S.C. § 1125(a).

176.    By reason of the foregoing, Eleven IP is entitled to permanent injunctive relief against Defendants, restraining them and all those in active concert and participation with them from any further acts of infringement, and for all remedies available to it under 15 U.S.C. § 1117, including an accounting and disgorgement of Defendants' profits, recovery of any damages (to the extent calculable) proven to have been caused by reason of their aforesaid acts, and Eleven IP's attorneys' fees and costs, among other remedies as outlined below.

**THIRD COUNTERCLAIM**

**COMMON LAW TRADEMARK INFRINGEMENT UNDER FLORIDA LAW**

**(As to all Defendants)**

177.    Eleven IP repeats and incorporates herein by reference each and every one of the allegations contained in paragraphs 1 through 152 of this Counterclaim with the same force and effect as if herein again set forth in full.

178.    Eleven IP has prior rights over Defendants in and to the ELEVEN Marks in connection with hotel and accommodation services in the United States by virtue of its use of the ELEVEN Marks in interstate commerce and as evidenced by the Registered ELEVEN Marks.

179.    The ELEVEN Marks are valid, subsisting, used in commerce and inherently and have acquired distinctiveness.  In addition, the Registered ELEVEN Marks have been declared incontestable by the USPTO.

180.    As discussed above, the Infringing Marks, which have been promoted, distributed, and used in commerce by Defendants, are confusingly similar to the ELEVEN Marks.

181.    Defendants' use of the Infringing Marks is likely to cause forward confusion or mistake with the ELEVEN Marks.  Consumers likely will believe there is a connection, sponsorship, or association between Defendants and Eleven IP, and/or that the E11EVEN Hotel Projects are owned, operated, and/or sponsored by, and/or affiliated with, Eleven IP when that is not the case.

182.    Defendants' use of the Infringing Marks is also likely to cause reverse confusion or mistake with the ELEVEN Marks.  Consumers likely will believe that Eleven IP's goods and services are provided by, sponsored by, associated with, or otherwise affiliated with Defendants because Defendants are likely to commercially overwhelm the market and saturate the public

conscience with its use of the Infringing Marks, thereby weakening and diminishing the value of Eleven IP's superior rights in the ELEVEN Marks.

183.    Defendants knew, or should have known, that their use of the Infringing Marks would cause confusion or mistake as to Eleven IP's sponsorship of, association with, or affiliation with Defendants' goods and services, and/or *vice versa*.

184.    Defendants' use of the Infringing Marks is likely to cause irreparable injury to Eleven IP's ELEVEN Marks, reputation, and goodwill.  The extent of this harm cannot be quantified, and therefore leaves Eleven IP with no adequate remedy at law.

185.    Defendants' use of the Infringing Marks constitutes common law infringement of the ELEVEN Marks.

186.    Upon information and belief, the Individual Defendants actively and knowingly directed, controlled, ratified, and participated as moving forces in Defendants' decision to engage in the infringing acts described above, and otherwise caused the infringing acts described above as a whole to occur.

187.    The Individual Defendants are therefore personally liable for Defendants' common law infringement of the ELEVEN Marks.

188.    By reason of the foregoing, Eleven IP is entitled to permanent injunctive relief against Defendants, restraining them and all those in active concert and participation with them from any further acts of infringement, and to recovery of any damages (to the extent calculable) proven to have been caused by reason of their aforesaid acts, among other remedies as outlined below.

## FOURTH COUNTERCLAIM

## COMMON LAW UNFAIR COMPETITION UNDER FLORIDA LAW

### (As to all Defendants)

189.    Eleven IP repeats and incorporates herein by reference each and every one of the allegations contained in paragraphs 1 through 152 of this Complaint with the same force and effect as if herein again set forth in full.

190.    The ELEVEN Marks are protected as common law trademarks by virtue of Eleven IP's longtime use of such marks in the marketplace.

191.    As discussed above, the Infringing Marks, which have been promoted, distributed, and used in commerce by Defendants, are confusingly similar to the ELEVEN Marks.

192.    Defendants' use of the Infringing Marks implies to consumers that Defendants' goods and services come from the same source as Eleven IP's goods and services, and/or *vice versa*.  Such implications are false, confusing, and misleading to consumers, and material to consumers' purchasing decisions.

193.    Defendants' unauthorized use of the Infringing Marks in connection with the promotion or sale of luxury hotel and accommodation services is likely to cause forward confusion or mistake with the ELEVEN Marks because it falsely suggests that Defendants' services are provided by, connected with, sponsored by, affiliated with, or related to, Eleven IP.

194.    Defendants' unauthorized use of the Infringing Marks in connection with the promotion or sale of luxury hotel and accommodation services is also likely to cause reverse confusion or mistake with the ELEVEN Marks.  Consumers likely will mistakenly believe that Eleven IP's goods and services are provided by, sponsored by, associated with, or otherwise affiliated with Defendants because Defendants are likely to commercially overwhelm the market

64

and saturate the public conscience with its use of the Infringing Marks, thereby weakening and diminishing the value of Eleven IP's superior rights in the ELEVEN Marks.

195.    Defendants' unauthorized use of the Infringing Marks in connection with luxury hotel and accommodation services constitutes common law unfair competition.

196.    Defendants' conduct has damaged Eleven IP and will, unless enjoined by the Court, further impair the value of Eleven IP's ELEVEN Marks, reputation, and goodwill.  This harm constitutes an injury for which Eleven IP has no adequate remedy at law.

197.    Upon information and belief, the Individual Defendants actively and knowingly directed, controlled, ratified, and participated as moving forces in Defendants' decision to engage in the infringing acts described above, and otherwise caused the infringing acts described above as a whole to occur.

198.    The Individual Defendants are therefore personally liable for Defendants' common law unfair competition.

199.    Eleven IP has been and continues to be injured and to suffer damages as a result of Defendants' unfair competition under Florida common law.

200.    Further, despite Eleven's well-established prior rights, and after GR's receipt of Eleven IP's cease and desist letter, Defendants (i) intentionally chose to trade on marks on the confusingly similar E11EVEN and other ELEVEN-formative marks for hotel and accommodation services with prior knowledge of Eleven IP's federal registrations which provide constructive nationwide notice of its claim of ownership in the ELEVEN Marks, (ii) continue to trade on the Infringing Marks with knowledge that the USPTO found the Infringing Marks were likely to cause confusion with three of Eleven IP's registrations, (iii) continue to license, and otherwise publicize, advertise, and market the Infringing Marks in connection with hotels and

accommodations, and induce others to do so, (iv) with knowledge of the harm to Eleven IP's goodwill and reputation, and have done the foregoing with malice or reckless indifference to Eleven IP's longstanding rights. As a result, Eleven IP seeks punitive damages.

201.    By reason of the foregoing, Eleven IP is entitled to permanent injunctive relief against Defendants, restraining them and all those in active concert and participation with them from any further acts of unfair competition, for the recovery of any damages proven to have been caused by reason of Defendants' aforesaid acts, among other remedies as outlined below.

## FIFTH COUNTERCLAIM
### CONTRIBUTORY TRADEMARK INFRINGEMENT
#### (Under Federal and Common Law)
#### (As to all Defendants)

202.    Eleven IP repeats and incorporates herein by reference each and every one of the allegations contained in paragraphs 1 through 152 of this Counterclaim with the same force and effect as if herein again set forth in full.

203.    As explained above, Defendants have intentionally and knowingly contributed to the direct infringement of the ELEVEN Marks by one or more of their respective co-Defendants as well as third parties who are using the Infringing Marks, such as real estate brokers who are marketing, promoting, advertising, and selling the infringing E11EVEN Hotel Projects.

### Defendant GR Opco, LLC

204.    This claim is pled as to Defendant GR.

205.    In addition to having direct liability for the preceding acts of direct infringement of the ELEVEN Marks, GR is contributorily liable for the infringing acts of Defendants 11USA, PMG Inc., PMG Ventures I and PMG Ventures II.

206.    For instance, with respect to PMG Ventures I and PMG Ventures II, GR intentionally and knowingly induces these entities to infringe the ELEVEN Marks by granting

them a license for the use of the Infringing Marks in connection with the marketing and sale of the hotel/condominium units located in E11EVEN Hotel & Residences and E11EVEN Residences Beyond.

207.    Likewise, GR intentionally and knowingly induces PMG Inc. to infringe the ELEVEN Marks by providing input, direction, and approval for marketing, promotion, advertising, and sales materials for the E11EVEN Hotel Projects.  GR has also circulated such marketing materials, including by promoting the E11EVEN Hotel Projects at the E11EVEN Nightclub.

208.    With respect to 11USA, GR intentionally and knowingly induces 11USA to infringe the ELEVEN Marks by granting it a license for the use of the Infringing Marks in connection with the marketing and sale of the hotel/condominium units located in E11EVEN Hotel & Residences and E11EVEN Residences Beyond.

209.    GR had reason to know that supplying these licenses and marketing materials to PMG Inc., PMG Ventures I, PMG Ventures II, and 11USA would result in the direct infringement of the ELEVEN Marks.

210.    In addition, GR is contributorily liable for the infringing acts of third parties.

211.    GR intentionally and knowingly induced third parties to directly infringe the ELEVEN Marks by, upon information and belief, supplying marketing and promotional materials bearing the Infringing Marks, and otherwise encouraging and assisting these third parties in the advertising, marketing, publicizing, promotion and sale of condominium units in the E11EVEN Hotel Projects using the Infringing Marks.

212.    For example, GR has supplied and approved marketing materials to national and local publications, encouraging them to publish promotional articles bearing the Infringing

Marks.  Likewise, GR has worked with third-party marketing and branding agencies and public relations firms, including Once Upon a Time, among others, to develop and use the Infringing Marks in connection with the E11EVEN Hotel Projects.

213.    GR has also assisted real estate brokers in using the Infringing Marks to promote, advertise, publicize, and sell condominiums in connection with the E11EVEN Hotel Projects.

214.    GR has also supplied and approved marketing materials, including brochures, floor plans, photos, and information sheets, to brand ambassadors, encouraging them to promote and promote, advertise, publicize, and sell condominiums in connection with the E11EVEN Hotel Projects.

215.    GR continues to supply marketing and promotional materials bearing the Infringing Marks to third parties, and otherwise encouraging and assisting these third parties in the advertising, marketing, publicizing, promotion and sale of condominium units in the E11EVEN Hotel Projects using the Infringing Marks.

216.    By supplying marketing and promotional materials bearing the Infringing Marks to third parties, and otherwise assisting in the advertising, marketing, publicizing, promotion and sale of condominium units in the E11EVEN Hotel Projects using the Infringing Marks, GR has reason to know that the ELEVEN Marks would be infringed.

217.    Upon information and belief, GR knew, or should have known, at least as early as of June 28, 2020, that supplying marketing materials using the Infringing Marks to others for use in connection with the E11EVEN Hotel Projects, as well as assisting others in using the Infringing Marks to promote, advertise, publicize, and sell condominiums therein, was likely to cause confusion with the ELEVEN Marks.

68

218.    Upon information and belief, GR's trademark applications for the Infringing Marks were rejected by the U.S. Patent and Trademark Office on or around June 28, 2020, due in part to Eleven's already-registered Marks and GR was informed of those rejections by its counsel.

219.    GR has full knowledge of Eleven IP's trademark rights and therefore, GR's contributory infringement is willful.

220.    By supplying marketing and promotional materials bearing the Infringing Marks to third parties, and otherwise assisting in the advertising, marketing, publicizing, promotion and sale of condominium units in the E11EVEN Hotel Projects using the Infringing Marks, GR had reason to know that the ELEVEN Marks would be infringed.

221.    Upon information and belief, GR also knew, or should have known, that it was foreseeable and likely that 11USA, PMG Inc., PMG Ventures I, PMG Ventures II, and other third parties would use the supplied marketing, as well as the Infringing Marks, to promote, advertise, publicize, and sell condominiums at the E11EVEN Hotel Projects, and that such promotion, advertisement, and publicity would lead to forward and/or reverse confusion as to Eleven IP's sponsorship of, association with, or affiliation with the E11EVEN Hotel Projects.

222.    GR's activities, as described herein and above, constitute contributory trademark infringement.

223.    GR's acts of contributory trademark infringement are likely to cause irreparable injury to Eleven IP's ELEVEN Marks, reputation, and goodwill.  The extent of this harm cannot be quantified, and therefore leaves Eleven IP with no adequate remedy at law.

224.    By reason of the foregoing, Eleven IP is entitled to permanent injunctive relief against GR, restraining it and all those in active concert and participation with it from any further

acts of infringement, and for all remedies available to it under 15 U.S.C. § 1117, including an accounting and disgorgement of profits, recovery of any damages (to the extent calculable) proven to have been caused by reason of GR's aforesaid acts, and Eleven IP's attorneys' fees and costs, among other remedies as outlined below.

**Defendant 11USA Group LLC**

225.    This claim is pled as to Defendant 11USA.

226.    In addition to having direct liability for the preceding acts of direct infringement of the ELEVEN Marks, 11USA is contributorily liable for the infringing acts of Defendants PMG Inc., PMG Ventures I, and PMG Ventures II.

227.    By way of example, 11USA has directed the planning and development activities for the E11EVEN Hotel and Residences and E11EVEN Residences Beyond that use the Infringing Marks, and he has provided feedback for and approved the marketing materials of the E11EVEN Hotel Projects published by PMG Inc. that feature the Infringing Marks.

228.    11USA had reason to know that its encouragement and supply of marketing materials to PMG Inc., PMG Ventures I, and PMG Ventures II would result in the direct infringement of the ELEVEN Marks.

229.    In addition, 11USA is contributorily liable for the infringing acts of third parties.

230.    11USA intentionally and knowingly induces third parties, including, but not limited to, real estate brokers, public relations firms, employees of the Gold Rush Cabaret strip club as well as employees of the E11EVEN Miami nightclub, to directly infringe the ELEVEN Marks by, upon information and belief, supplying marketing and promotional materials bearing the Infringing Marks, and otherwise encouraging and assisting these third parties in the advertising, marketing, publicizing, promotion and sale of condominium units in the E11EVEN Hotel Projects using the Infringing Marks.

231.     For example, 11USA offered and promoted a program for employees of the Gold Rush Cabaret strip club as well as employees of the E11EVEN Miami nightclub to "earn money" in connection with the marketing of the E11EVEN Hotel and Residences and E11EVEN Residences Beyond.

232.     By supplying marketing and promotional materials bearing the Infringing Marks to third parties, and otherwise assisting in the advertising, marketing, publicizing, promotion and sale of condominium units in the E11EVEN Hotel Projects using the Infringing Marks, 11USA has reason to know that the ELEVEN Marks would be infringed.

233.     Upon information and belief, 11USA knew, or should have known, at least as early as of June 28, 2020, that supplying marketing materials using the Infringing Marks to others for use in connection with the E11EVEN Hotel Projects, as well as assisting others in using the Infringing Marks to promote, advertise, publicize, and sell condominiums therein, was likely to cause confusion with the ELEVEN Marks given the USPTO's refusal on that date of the E11even Applications based on the ELEVEN Marks, of which 11USA had knowledge.

234.     11USA has full knowledge of Eleven IP's trademark rights and therefore, 11USA's contributory infringement is willful.

235.     By supplying marketing and promotional materials bearing the Infringing Marks to third parties, and otherwise assisting in the advertising, marketing, publicizing, promotion and sale of condominium units in the E11EVEN Hotel Projects using the Infringing Marks, 11USA had reason to know that the ELEVEN Marks would be infringed.

236.     Upon information and belief, 11USA also knew, or should have known, that it was foreseeable and likely that PMG Inc., PMG Ventures I, and PMG Ventures II, and other third parties would use the supplied marketing, as well as the Infringing Marks, to promote,

71

advertise, publicize, and sell condominiums at the E11EVEN Hotel Projects, and that such promotion, advertisement, and publicity would lead to forward and/or reverse confusion as to Eleven IP's sponsorship of, association with, or affiliation with the E11EVEN Hotel Projects.

237.    11USA's activities, as described herein and above, constitute contributory trademark infringement.

238.    11USA's acts of contributory trademark infringement are likely to cause irreparable injury to Eleven IP's ELEVEN Marks, reputation, and goodwill.  The extent of this harm cannot be quantified, and therefore leaves Eleven IP with no adequate remedy at law.

239.    By reason of the foregoing, Eleven IP is entitled to permanent injunctive relief against 11USA, restraining it and all those in active concert and participation with it from any further acts of infringement, and for all remedies available to it under 15 U.S.C. § 1117, including an accounting and disgorgement of profits, recovery of any damages (to the extent calculable) proven to have been caused by reason of 11USA's aforesaid acts, and Eleven IP's attorneys' fees and costs, among other remedies as outlined below.

**Defendant Marc Roberts**

240.    This claim is pled as to Defendant Roberts.

241.    To the extent Roberts is not directly liable as the moving force of GR's and MR Co.'s decision to engage in the infringing acts described above, he is contributorily liable for GR's and MR Co.'s infringing acts.  Roberts is also contributorily liable for the infringing acts of other third parties, including the infringing acts of PMG.

242.    Roberts intentionally and knowingly induced PMG to directly infringe the ELEVEN Marks because, upon information and belief, he encouraged it to adopt the Infringing Marks for the planned E11EVEN Hotel Projects, supplied marketing materials, and otherwise

provided assistance with promoting, advertising, publicizing, and selling condominiums at the E11EVEN Hotel Projects that use the Infringing Marks.

243.    By way of example, Roberts has directed the planning and development activities that use the Infringing Marks, and he has provided feedback for and approved the marketing materials of the E11EVEN Hotel Projects published by PMG that feature the Infringing Marks.

244.    Likewise, Roberts has communicated with PMG's internal sales team and directed the sale of units in the E11EVEN Hotel Projects, including, for example, the sale of units by PMG and third-party brokers.

245.    Roberts continues to assist PMG with the promotion, advertisement, publication, and sale of condominiums at the E11EVEN Hotel Projects using the Infringing Marks.

246.    Roberts, along with the other Individual Defendants, directs, controls, and supervises the actions of GR.  He is also the founder and owner of MR Co., and, upon information and belief, directs, controls, and supervises its actions.  In this role, Roberts directs and monitors the creation of marketing materials using the Infringing Marks such as brochures, floorplans, renderings, and news articles to potential and actual customers of the E11EVEN Hotel Projects.

247.    Additionally, Roberts intentionally and knowingly induces third parties, including, but not limited to, real estate brokers and public relations firms, to directly infringe the ELEVEN Marks by, upon information and belief, supplying marketing and promotional materials bearing the Infringing Marks, and otherwise encouraging and assisting these third parties in the advertising, marketing, publicizing, promotion and sale of condominium units in the E11EVEN Hotel Projects using the Infringing Marks.

248.     Upon information and belief, Roberts knew, or should have known, at least as early as of June 28, 2020, that the planned use of the Infringing Marks in connection with the E11EVEN Hotel Projects, including by supplying marketing materials and assisting others in using the Infringing Marks to promote, advertise, publicize, and sell condominiums therein, was likely to cause confusion with the ELEVEN Marks, given the USPTO's refusal on that date of the E11even Applications based on the ELEVEN Marks, of which Roberts had knowledge.

249.     Roberts had full knowledge of Eleven IP's trademark rights and therefore, Roberts' contributory infringement is willful.

250.     By supplying marketing and promotional materials bearing the Infringing Marks to third parties, and otherwise assisting in the advertising, marketing, publicizing, promotion and sale of condominium units in the E11EVEN Hotel Projects using the Infringing Marks, Roberts had reason to know that the ELEVEN Marks would be infringed.

251.     Upon information and belief, Roberts also knew, or should have known, that it was foreseeable and likely that GR, MR Co., PMG and other third parties would use the supplied marketing, as well as the Infringing Marks, to promote, advertise, publicize, and sell condominiums at the E11EVEN Hotel Projects, and that such promotion, advertisement, and publicity would lead to forward and/or reverse confusion as to Eleven IP's sponsorship of, association with, or affiliation with the E11EVEN Hotel Projects.

252.     Roberts' activities, as described herein and above, constitute contributory trademark infringement.

253.     Roberts' acts of contributory trademark infringement are likely to cause irreparable injury to Eleven IP's ELEVEN Marks, reputation, and goodwill.  The extent of this harm cannot be quantified, and therefore leaves Eleven IP with no adequate remedy at law.

254.     By reason of the foregoing, Eleven IP is entitled to permanent injunctive relief against Roberts, restraining him and all those in active concert and participation with him from any further acts of infringement, and for all remedies available to it under 15 U.S.C. § 1117, including an accounting and disgorgement of profits, recovery of any damages (to the extent calculable) proven to have been caused by reason of Roberts' aforesaid acts, and Eleven IP's attorneys' fees and costs, among other remedies as outlined below.

**Defendant Dennis DeGori**

255.     This claim is pled as to Defendant DeGori.

256.     To the extent DeGori is not directly liable as the moving force of GR's and 11USA's decision to engage in the infringing acts described above, he is contributorily liable for GR's and 11USA's infringing acts.  DeGori is also contributorily liable for the infringing acts of other third parties, including the infringing acts of PMG Inc., PMG Ventures I, and PMG Ventures II.

257.     DeGori intentionally and knowingly induced PMG Inc., PMG Ventures I, and PMG Ventures II to directly infringe the ELEVEN Marks because, upon information and belief, he encouraged them to adopt the Infringing Marks for the planned E11EVEN Hotel Projects, supplied marketing materials, and otherwise provided assistance with promoting, advertising, publicizing, and selling condominiums at the E11EVEN Hotel Projects that use the Infringing Marks.

258.     By way of example, DeGori has directed the planning and development activities for the E11EVEN Hotel and Residences and E11EVEN Residences Beyond that use the Infringing Marks, and he has provided feedback for and approved the marketing materials of the E11EVEN Hotel Projects published by PMG Inc. that feature the Infringing Marks.

259.    Likewise, DeGori has communicated with PMG Inc.'s internal sales team and directed the sale of units in the E11EVEN Hotel Projects, including, for example, the sale of units by PMG and third-party brokers.

260.    DeGori continues to assist PMG Inc., PMG Ventures I, and PMG Ventures II with the promotion, advertisement, publication, and sale of condominiums at the E11EVEN Hotel Projects using the Infringing Marks.

261.    DeGori, along with the other Individual Defendants, directs, controls, and supervises the actions of GR and 11USA.  In this role, DeGori directs and monitors the creation of marketing materials using the Infringing Marks such as brochures, floorplans, renderings, and news articles to potential and actual customers of the E11EVEN Hotel Projects.

262.    Additionally, DeGori intentionally and knowingly induces third parties, including, but not limited to, real estate brokers and public relations firms, to directly infringe the ELEVEN Marks by, upon information and belief, supplying marketing and promotional materials bearing the Infringing Marks, and otherwise encouraging and assisting these third parties in the advertising, marketing, publicizing, promotion and sale of condominium units in the E11EVEN Hotel Projects using the Infringing Marks.

263.    For example, DeGori offered and promoted a program for employees of the Gold Rush Cabaret strip club as well as employees of the E11EVEN Miami nightclub to "earn money" in connection with the marketing of the E11EVEN Hotel and Residences and E11EVEN Residences Beyond.

264.    DeGori has also supplied and approved marketing materials, including brochures, floor plans, photos, and information sheets, to brand ambassadors, encouraging them to promote

76

and promote, advertise, publicize, and sell condominiums in connection with the E11EVEN Hotel Projects.

265.    Upon information and belief, DeGori was advised by counsel that the USPTO had refused three of GR's trademark applications for E11EVEN in Class 43 based on a likelihood of confusion with Eleven IP's marks, and thus he knew, or should have known, at least as early as of June 28, 2020, that the planned use of the Infringing Marks in connection with the E11EVEN Hotel Projects, including by supplying marketing materials and assisting others in using the Infringing Marks to promote, advertise, publicize, and sell condominiums therein, was likely to cause confusion with the ELEVEN Marks, given the USPTO's refusal on that date of the E11even Applications based on the ELEVEN Marks, of which DeGori had knowledge.

266.    DeGori had full knowledge of Eleven IP's trademark rights and therefore, DeGori's contributory infringement is willful.

267.    By supplying marketing and promotional materials bearing the Infringing Marks to third parties, and otherwise assisting in the advertising, marketing, publicizing, promotion and sale of condominium units in the E11EVEN Hotel Projects using the Infringing Marks, DeGori had reason to know that the ELEVEN Marks would be infringed.

268.    Upon information and belief, DeGori also knew, or should have known, that it was foreseeable and likely that GR, 11USA, PMG Inc., PMG Ventures I, and PMG Ventures II and other third parties would use the supplied marketing, as well as the Infringing Marks, to promote, advertise, publicize, and sell condominiums at the E11EVEN Hotel Projects, and that such promotion, advertisement, and publicity would lead to forward and/or reverse confusion as to Eleven IP's sponsorship of, association with, or affiliation with the E11EVEN Hotel Projects.

269.    DeGori's activities, as described herein and above, constitute contributory trademark infringement.

270.    DeGori's acts of contributory trademark infringement are likely to cause irreparable injury to Eleven IP's ELEVEN Marks, reputation, and goodwill.  The extent of this harm cannot be quantified, and therefore leaves Eleven IP with no adequate remedy at law.

271.    By reason of the foregoing, Eleven IP is entitled to permanent injunctive relief against DeGori, restraining him and all those in active concert and participation with him from any further acts of infringement, and for all remedies available to it under 15 U.S.C. § 1117, including an accounting and disgorgement of profits, recovery of any damages (to the extent calculable) proven to have been caused by reason of DeGori's aforesaid acts, and Eleven IP's attorneys' fees and costs, among other remedies as outlined below.

**Defendant Michael Simkins**

272.    This claim is pled as to Defendant Simkins.

273.    To the extent Simkins is not directly liable as the moving force of GR's and Lion Development's decision to engage in the infringing acts described above, he is contributorily liable for GR's and Lion Development's infringing acts.  Simkins is also contributorily liable for the infringing acts of other third parties, including the infringing acts of PMG.

274.    Simkins intentionally and knowingly induced PMG to directly infringe the ELEVEN Marks because, upon information and belief, he encouraged it to adopt the Infringing Marks for the planned E11EVEN Hotel Projects, supplied marketing materials, and otherwise provided assistance with promoting, advertising, publicizing, and selling condominiums at the E11EVEN Hotel Projects that use the Infringing Marks.

275.    By way of example, Simkins has directed the planning and development activities that use the Infringing Marks, and he has provided feedback for and approved the marketing materials of the E11EVEN Hotel Projects published by PMG that feature the Infringing Marks.

276.    Likewise, Simkins has communicated with PMG's internal sales team and directed the sale of units in the E11EVEN Hotel Projects, including, for example, the sale of units by PMG and third-party brokers.

277.    Simkins continues to assist PMG with the promotion, advertisement, publication, and sale of condominiums at the E11EVEN Hotel Projects using the Infringing Marks.

278.    Simkins, along with the other Individual Defendants, directs, controls, and supervises the actions of GR.  He is also the President and CEO of Lion Development, and, upon information and belief, directs, controls, and supervises its actions.  In this role, Simkins directs and monitors the creation of marketing materials using the Infringing Marks such as brochures, floorplans, renderings, and news articles to potential and actual customers of the E11EVEN Hotel Projects.

279.    Additionally, Simkins intentionally and knowingly induces third parties, including, but not limited to, real estate brokers and public relations firms, to directly infringe the ELEVEN Marks by, upon information and belief, supplying marketing and promotional materials bearing the Infringing Marks, and otherwise encouraging and assisting these third parties in the advertising, marketing, publicizing, promotion and sale of condominium units in the E11EVEN Hotel Projects using the Infringing Marks.

280.    Upon information and belief, Simkins was advised by counsel that the USPTO had refused three of GR's trademark applications for E11EVEN in Class 43 based on a likelihood of confusion with Eleven IP's marks, and thus he knew, or should have known, at

least as early as of June 28, 2020, that the planned use of the Infringing Marks in connection with the E11EVEN Hotel Projects, including by supplying marketing materials and assisting others in using the Infringing Marks to promote, advertise, publicize, and sell condominiums therein, was likely to cause confusion with the ELEVEN Marks, given the USPTO's refusal on that date of the E11even Applications based on the ELEVEN Marks, of which Simkins had knowledge.

281.   Simkins had full knowledge of Eleven IP's trademark rights and therefore, Simkins' contributory infringement is willful.

282.   By supplying marketing and promotional materials bearing the Infringing Marks to third parties, and otherwise assisting in the advertising, marketing, publicizing, promotion and sale of condominium units in the E11EVEN Hotel Projects using the Infringing Marks, Simkins had reason to know that the ELEVEN Marks would be infringed.

283.   Upon information and belief, Simkins also knew, or should have known, that it was foreseeable and likely that GR, Lion Development, PMG and other third parties would use the supplied marketing, as well as the Infringing Marks, to promote, advertise, publicize, and sell condominiums at the E11EVEN Hotel Projects, and that such promotion, advertisement, and publicity would lead to forward and/or reverse confusion as to Eleven IP's sponsorship of, association with, or affiliation with the E11EVEN Hotel Projects.

284.   Simkins' activities, as described herein and above, constitute contributory trademark infringement.

285.   Simkins' acts of contributory trademark infringement are likely to cause irreparable injury to Eleven IP's ELEVEN Marks, reputation, and goodwill.  The extent of this harm cannot be quantified, and therefore leaves Eleven IP with no adequate remedy at law.

286.     By reason of the foregoing, Eleven IP is entitled to permanent injunctive relief against Simkins, restraining him and all those in active concert and participation with him from any further acts of infringement, and for all remedies available to it under 15 U.S.C. § 1117, including an accounting and disgorgement of profits, recovery of any damages (to the extent calculable) proven to have been caused by reason of Simkins' aforesaid acts, and Eleven IP's attorneys' fees and costs, among other remedies as outlined below.

### Defendant Marc Roberts Companies LLC

287.     This claim is pled as to Defendant MR Co.

288.     In addition to having direct liability for the preceding acts of direct infringement of the ELEVEN Marks, MR Co. is contributorily liable for the infringing acts of other third parties, including the infringing acts of PMG.

289.     By way of example, MR Co. intentionally and knowingly induced PMG to directly infringe the ELEVEN Marks because, upon information and belief, it has encouraged PMG to adopt the Infringing Marks for the planned E11EVEN Hotel Projects, supplied marketing materials, and otherwise provided assistance with promoting, advertising, publicizing, and selling condominiums at the E11EVEN Hotel Projects that use the Infringing Marks.

290.     MR Co. had reason to know that its encouragement and supply of marketing materials to PMG would result in the direct infringement of the ELEVEN Marks.

291.     In addition, MR Co. is contributorily liable for the infringing acts of third parties.

292.     MR Co. intentionally and knowingly induces third parties, including, but not limited to, real estate brokers and public relations firms, to directly infringe the ELEVEN Marks by, upon information and belief, supplying marketing and promotional materials bearing the Infringing Marks, and otherwise encouraging and assisting these third parties in the advertising,

marketing, publicizing, promotion and sale of condominium units in the E11EVEN Hotel

Projects using the Infringing Marks.

293.    By supplying marketing and promotional materials bearing the Infringing Marks

to third parties, and otherwise assisting in the advertising, marketing, publicizing, promotion and

sale of condominium units in the E11EVEN Hotel Projects using the Infringing Marks, MR Co.

has reason to know that the ELEVEN Marks would be infringed.

294.    Upon information and belief, MR Co. knew, or should have known, at least as

early as of June 28, 2020, that supplying marketing materials using the Infringing Marks to

others for use in connection with the E11EVEN Hotel Projects, as well as assisting others in

using the Infringing Marks to promote, advertise, publicize, and sell condominiums therein, was

likely to cause confusion with the ELEVEN Marks given the USPTO's refusal on that date of the

E11even Applications based on the ELEVEN Marks, of which MR Co. had knowledge.

295.    MR Co. has full knowledge of Eleven IP's trademark rights and therefore, MR

Co.'s contributory infringement is willful.

296.    By supplying marketing and promotional materials bearing the Infringing Marks

to third parties, and otherwise assisting in the advertising, marketing, publicizing, promotion and

sale of condominium units in the E11EVEN Hotel Projects using the Infringing Marks, MR Co.

had reason to know that the ELEVEN Marks would be infringed.

297.    Upon information and belief, MR Co. also knew, or should have known, that it

was foreseeable and likely that PMG and other third parties would use the supplied marketing, as

well as the Infringing Marks, to promote, advertise, publicize, and sell condominiums at the

E11EVEN Hotel Projects, and that such promotion, advertisement, and publicity would lead to

82

forward and/or reverse confusion as to Eleven IP's sponsorship of, association with, or affiliation with the E11EVEN Hotel Projects.

298.    MR Co.'s activities, as described herein and above, constitute contributory trademark infringement.

299.    MR Co.'s acts of contributory trademark infringement are likely to cause irreparable injury to Eleven IP's ELEVEN Marks, reputation, and goodwill.  The extent of this harm cannot be quantified, and therefore leaves Eleven IP with no adequate remedy at law.

300.    By reason of the foregoing, Eleven IP is entitled to permanent injunctive relief against MR Co., restraining it and all those in active concert and participation with it from any further acts of infringement, and for all remedies available to it under 15 U.S.C. § 1117, including an accounting and disgorgement of profits, recovery of any damages (to the extent calculable) proven to have been caused by reason of MR Co.'s aforesaid acts, and Eleven IP's attorneys' fees and costs, among other remedies as outlined below.

### Defendant PMG Inc.

301.    This claim is pled as to Defendant PMG Inc.

302.    In addition to having direct liability for the preceding acts of direct infringement of the ELEVEN Marks, PMG Inc. is contributorily liable for the infringing acts of other third parties, including third party real estate brokers and public relations firms, among others.

303.    PMG Inc. intentionally and knowingly induced third parties to directly infringe the ELEVEN Marks by, upon information and belief, supplying marketing and promotional materials bearing the Infringing Marks, and otherwise encouraging and assisting these third parties in the advertising, marketing, publicizing, promotion and sale of condominium units in the E11EVEN Hotel Projects using the Infringing Marks.

304.     For example, PMG Inc. has supplied and approved marketing materials to national and local publications, encouraging them to publish promotional articles bearing the Infringing Marks.  Likewise, PMG Inc. has worked with third-party marketing and branding agencies and public relations firms, including Alchemy Agency and Levy Public Relations, among others, to develop and use the Infringing Marks in connection with the E11EVEN Hotel Projects.

305.     PMG Inc. has also assisted third real estate brokers in using the Infringing Marks to promote, advertise, publicize, and sell condominiums in connection with the E11EVEN Hotel Projects.

306.     PMG Inc. has also supplied and approved marketing materials, including brochures, floor plans, photos, and information sheets, to brand ambassadors, encouraging them to promote and promote, advertise, publicize, and sell condominiums in connection with the E11EVEN Hotel Projects.

307.     PMG Inc. continues to supply marketing and promotional materials bearing the Infringing Marks to third parties, and otherwise encouraging and assisting these third parties in the advertising, marketing, publicizing, promotion and sale of condominium units in the E11EVEN Hotel Projects using the Infringing Marks.

308.     By supplying marketing and promotional materials bearing the Infringing Marks to third parties, and otherwise assisting in the advertising, marketing, publicizing, promotion and sale of condominium units in the E11EVEN Hotel Projects using the Infringing Marks, PMG Inc. has reason to know that the ELEVEN Marks would be infringed.

309.     Upon information and belief, PMG Inc. knew, or should have known, by March 2022, at the latest, that supplying marketing materials using the Infringing Marks to others for

use in connection with the E11EVEN Hotel Projects, as well as assisting others in using the

Infringing Marks to promote, advertise, publicize, and sell condominiums therein, was likely to

cause confusion with the ELEVEN Marks given the USPTO's refusal on that date of the

E11even Applications based on the ELEVEN Marks, of which PMG Inc. had knowledge.

310.    PMG Inc. has full knowledge of Eleven IP's trademark rights and therefore, PMG

Inc.'s contributory infringement is willful.

311.    By supplying marketing and promotional materials bearing the Infringing Marks

to third parties, and otherwise assisting in the advertising, marketing, publicizing, promotion and

sale of condominium units in the E11EVEN Hotel Projects using the Infringing Marks, PMG

Inc. had reason to know that the ELEVEN Marks would be infringed.

312.    Upon information and belief, PMG Inc. also knew, or should have known, that it

was foreseeable and likely that other third parties would use the supplied marketing, as well as

the Infringing Marks, to promote, advertise, publicize, and sell condominiums at the E11EVEN

Hotel Projects, and that such promotion, advertisement, and publicity would lead to forward

and/or reverse confusion as to Eleven IP's sponsorship of, association with, or affiliation with the

E11EVEN Hotel Projects.

313.    PMG Inc.'s activities, as described herein and above, constitute contributory

trademark infringement.

314.    PMG Inc.'s acts of contributory trademark infringement are likely to cause

irreparable injury to Eleven IP's ELEVEN Marks, reputation, and goodwill.  The extent of this

harm cannot be quantified, and therefore leaves Eleven IP with no adequate remedy at law.

315.    By reason of the foregoing, Eleven IP is entitled to permanent injunctive relief

against PMG Inc., restraining it and all those in active concert and participation with it from any

further acts of infringement, and for all remedies available to it under 15 U.S.C. § 1117, including an accounting and disgorgement of profits, recovery of any damages (to the extent calculable) proven to have been caused by reason of PMG Inc.'s aforesaid acts, and Eleven IP's attorneys' fees and costs, among other remedies as outlined below.

**Defendant Lion Development Opportunity Fund LLC**

316.     This claim is pled as to Defendant Lion Development.

317.     In addition to having direct liability for the preceding acts of direct infringement of the ELEVEN Marks, Lion Development is contributorily liable for the infringing acts of other third parties, including the infringing acts of PMG.

318.     By way of example, Lion Development intentionally and knowingly induced PMG to directly infringe the ELEVEN Marks because, upon information and belief, it has encouraged PMG to adopt the Infringing Marks for the planned E11EVEN Hotel Projects, supplied marketing materials, and otherwise provided assistance with promoting, advertising, publicizing, and selling condominiums at the E11EVEN Hotel Projects that use the Infringing Marks.

319.     Lion Development had reason to know that its encouragement and supply of marketing materials to PMG would result in the direct infringement of the ELEVEN Marks.

320.     In addition, Lion Development is contributorily liable for the infringing acts of third parties.

321.     Lion Development intentionally and knowingly induces third parties, including, but not limited to, real estate brokers and public relations firms, to directly infringe the ELEVEN Marks by, upon information and belief, supplying marketing and promotional materials bearing the Infringing Marks, and otherwise encouraging and assisting these third parties in the

advertising, marketing, publicizing, promotion and sale of condominium units in the E11EVEN Hotel Projects using the Infringing Marks.

322.   By supplying marketing and promotional materials bearing the Infringing Marks to third parties, and otherwise assisting in the advertising, marketing, publicizing, promotion and sale of condominium units in the E11EVEN Hotel Projects using the Infringing Marks, Lion Development has reason to know that the ELEVEN Marks would be infringed.

323.   Upon information and belief, Lion Development knew, or should have known, at least as early as of June 28, 2020, that supplying marketing materials using the Infringing Marks to others for use in connection with the E11EVEN Hotel Projects, as well as assisting others in using the Infringing Marks to promote, advertise, publicize, and sell condominiums therein, was likely to cause confusion with the ELEVEN Marks given the USPTO's refusal on that date of the E11even Applications based on the ELEVEN Marks, of which Lion Development had knowledge.

324.   Lion Development has full knowledge of Eleven IP's trademark rights and therefore, Lion Development's contributory infringement is willful.

325.   By supplying marketing and promotional materials bearing the Infringing Marks to third parties, and otherwise assisting in the advertising, marketing, publicizing, promotion and sale of condominium units in the E11EVEN Hotel Projects using the Infringing Marks, Lion Development had reason to know that the ELEVEN Marks would be infringed.

326.   Upon information and belief, Lion Development also knew, or should have known, that it was foreseeable and likely that PMG and other third parties would use the supplied marketing, as well as the Infringing Marks, to promote, advertise, publicize, and sell condominiums at the E11EVEN Hotel Projects, and that such promotion, advertisement, and

87

publicity would lead to forward and/or reverse confusion as to Eleven IP's sponsorship of, association with, or affiliation with the E11EVEN Hotel Projects.

327.    Lion Development's activities, as described herein and above, constitute contributory trademark infringement.

328.    Lion Development's acts of contributory trademark infringement are likely to cause irreparable injury to Eleven IP's ELEVEN Marks, reputation, and goodwill.  The extent of this harm cannot be quantified, and therefore leaves Eleven IP with no adequate remedy at law.

329.    By reason of the foregoing, Eleven IP is entitled to permanent injunctive relief against Lion Development, restraining it and all those in active concert and participation with it from any further acts of infringement, and for all remedies available to it under 15 U.S.C. § 1117, including an accounting and disgorgement of profits, recovery of any damages (to the extent calculable) proven to have been caused by reason of Lion Development's aforesaid acts, and Eleven IP's attorneys' fees and costs, among other remedies as outlined below.

**Defendants PMG-11th Street Ventures, LLC and PMG-11th Street Ventures II, LLC**

330.    This claim is pled as to Defendants PMG Ventures I and PMG Ventures II.

331.    In addition to having direct liability for the preceding acts of direct infringement of the ELEVEN Marks, PMG Ventures I and PMG Ventures II are contributorily liable for the infringing acts of other third parties, including third party real estate brokers.

332.    By way of example, PMG Ventures I and PMG Ventures II intentionally and knowingly induce third parties, including, but not limited to, real estate brokers, to directly infringe the ELEVEN Marks by, upon information and belief, otherwise encouraging and assisting these third parties in the advertising, marketing, publicizing, promotion and sale of condominium units in the E11EVEN Hotel Projects using the Infringing Marks.

333.    By assisting in the advertising, marketing, publicizing, promotion and sale of condominium units in the E11EVEN Hotel Projects using the Infringing Marks, PMG Ventures I and PMG Ventures II have reason to know that the ELEVEN Marks would be infringed.

334.    Upon information and belief, PMG Ventures I and PMG Ventures II knew, or should have known, by March 2022, at the latest,  that supplying marketing materials using the Infringing Marks to others for use in connection with the E11EVEN Hotel Projects, as well as assisting others in using the Infringing Marks to promote, advertise, publicize, and sell condominiums therein, was likely to cause confusion with the ELEVEN Marks given the USPTO's refusal on that date of the E11even Applications based on the ELEVEN Marks, of which PMG Ventures I and PMG Ventures II had knowledge.

335.    PMG Ventures I and PMG Ventures II have full knowledge of Eleven IP's trademark rights and therefore, PMG Ventures I's and PMG Ventures II's contributory infringement is willful.

336.    By supplying marketing and promotional materials bearing the Infringing Marks to third parties, and otherwise assisting in the advertising, marketing, publicizing, promotion and sale of condominium units in the E11EVEN Hotel Projects using the Infringing Marks, PMG Ventures I and PMG Ventures II had reason to know that the ELEVEN Marks would be infringed.

337.    PMG Ventures I's and PMG Ventures II's activities, as described herein and above, constitute contributory trademark infringement.

338.    PMG Ventures I's and PMG Ventures II's acts of contributory trademark infringement are likely to cause irreparable injury to Eleven IP's ELEVEN Marks, reputation,

and goodwill.  The extent of this harm cannot be quantified, and therefore leaves Eleven IP with no adequate remedy at law.

339.    By reason of the foregoing, Eleven IP is entitled to permanent injunctive relief against PMG Ventures I and PMG Ventures II, restraining it and all those in active concert and participation with it from any further acts of infringement, and for all remedies available to it under 15 U.S.C. § 1117, including an accounting and disgorgement of profits, recovery of any damages (to the extent calculable) proven to have been caused by reason of PMG Ventures I's and PMG Ventures II's aforesaid acts, and Eleven IP's attorneys' fees and costs, among other remedies as outlined below.

### Defendants Block 17 Trustee, LLC and Block 17 Residential Owner, LLC

340.    This claim is pled as to Defendant B17 Trustee and B17 Owner.

341.    In addition to having direct liability for the preceding acts of direct infringement of the ELEVEN Marks, B17 Trustee and B17 Owner are contributorily liable for the infringing acts of other third parties, including third party real estate brokers.

342.    By way of example, B17 Trustee and B17 Owner intentionally and knowingly induce third parties, including, but not limited to, real estate brokers, to directly infringe the ELEVEN Marks by, upon information and belief, encouraging and assisting these third parties in the advertising, marketing, publicizing, promotion and sale of condominium units in the E11EVEN Hotel Projects using the Infringing Marks.

343.    By assisting in the advertising, marketing, publicizing, promotion and sale of condominium units in the E11EVEN Hotel Projects using the Infringing Marks, B17 Trustee and B17 Owner have reason to know that the ELEVEN Marks would be infringed.

344.    Upon information and belief, B17 Trustee and B17 Owner knew, or should have known, by August 2022, at the latest,  that supplying marketing materials using the Infringing

Marks to others for use in connection with the E11EVEN Hotel Projects, as well as assisting others in using the Infringing Marks to promote, advertise, publicize, and sell condominiums therein, was likely to cause confusion with the ELEVEN Marks given the USPTO's refusal on that date of the E11even Applications based on the ELEVEN Marks, of which B17 Trustee and B17 Owner had knowledge.

345.   B17 Trustee and B17 Owner have full knowledge of Eleven IP's trademark rights and therefore, B17 Trustee's and B17 Owner's contributory infringement is willful.

346.   By supplying marketing and promotional materials bearing the Infringing Marks to third parties, and otherwise assisting in the advertising, marketing, publicizing, promotion and sale of condominium units in the E11EVEN Hotel Projects using the Infringing Marks, B17 Trustee and B17 Owner had reason to know that the ELEVEN Marks would be infringed.

347.   B17 Trustee's and B17 Owner's activities, as described herein and above, constitute contributory trademark infringement.

348.   B17 Trustee's and B17 Owner's acts of contributory trademark infringement are likely to cause irreparable injury to Eleven IP's ELEVEN Marks, reputation, and goodwill.  The extent of this harm cannot be quantified, and therefore leaves Eleven IP with no adequate remedy at law.

349.   By reason of the foregoing, Eleven IP is entitled to permanent injunctive relief against B17 Trustee and B17 Owner, restraining it and all those in active concert and participation with it from any further acts of infringement, and for all remedies available to it under 15 U.S.C. § 1117, including an accounting and disgorgement of profits, recovery of any damages (to the extent calculable) proven to have been caused by reason of B17 Trustee's and

B17 Owner's aforesaid acts, and Eleven IP's attorneys' fees and costs, among other remedies as outlined below.

## PRAYER FOR RELIEF

**WHEREFORE**, Eleven IP demands a trial by jury, and respectfully prays that the Court enter judgment in its favor on each and every claim for relief set forth above and award it relief including, but not limited to, the following:

A.    An Order declaring that Eleven IP has prior rights in use of the ELEVEN Marks in connection with luxury hotel and accommodation services, and that Defendants' use of the Infringing Marks in connection with hotels, residences, hotel services, temporary lodging services, travel agency services, booking services, or any other services similar to those offered by Eleven IP infringes the ELEVEN Marks and constitutes unfair competition under federal and/or state law, as detailed above;

B.    An injunction permanently enjoining Defendants and all those in active concert or participation with them (including, but not limited to all of their respective officers, directors, agents, principals, servants, wholesalers, distributors, retailers, employees, representatives, attorneys, subsidiaries, related companies, affiliates, successors, assigns, licensees and contracting parties) from:

1.    using anywhere in the United States, applying to register in the United States, or maintaining a registration in the United States for the Infringing Marks, or any other trademark that is confusingly similar to the ELEVEN Marks in connection with hotels, residences, hotel services, temporary

        lodging services, travel agency services, booking services, or any other services similar to those offered by Eleven IP;

2.      seeking to oppose or challenge any of Eleven IP's applications to register its ELEVEN Marks, or seeking to cancel or challenge any of Eleven IP's registrations for the ELEVEN Marks.

C.      An Order directing that Defendants and all those in active concert or participation with them (including, but not limited to, their respective officers, directors, agents, principals, servants, wholesalers, distributors, retailers, employees, representatives, attorneys, subsidiaries, related companies, affiliates, successors, assigns, licensees and contracting parties) take affirmative steps in the United States to dispel false impressions that heretofore have been created by their use of the Infringing Marks, including, but not limited to, recalling from any and all channels of trade any and all infringing services and associated materials and undertaking corrective advertising.

D.      An Order awarding Eleven IP damages resulting from Defendants' unfair competition in violation of Florida common law;

E.      An Order awarding Eleven IP punitive damages resulting from Defendants' unlawful acts committed with malice and reckless indifference towards Eleven IP's longstanding trademark rights, goodwill, and reputation, under Florida common law;

F.      An Order directing that Defendants account to Eleven IP for their collective and individual profits and any damages sustained by Eleven IP, to the extent

calculable, arising from the foregoing acts of trademark infringement, false designation of origin, deceptive acts and practices in the United States.

G.     An Order requiring that, in accordance with such accounting, Defendants pay to Eleven IP Defendants' profits from their infringing conduct, and Eleven IP's damages and a trebling of such award, and costs of the action, pursuant to 15 U.S.C. § 1117.

H.     An Order requiring that, in accordance with such accounting, Defendants pay to Eleven IP treble damages.

I.     An Order requiring that Defendants compensate Eleven IP for Eleven IP's costs, including its reasonable attorneys' fees and disbursements in this action, pursuant to 15 U.S.C. § 1117.

J.     An Order requiring that Defendants file with the Court and serve on counsel for Eleven IP within thirty (30) days after entry of any injunction issued by the Court in this action, a sworn written statement pursuant to 15 U.S.C. § 1116(a) setting forth in detail the manner and form in which Defendants have complied with any injunction which the Court may enter in this action.

K.     All such other relief as the Court may deem just and proper.

September 5, 2024                          BERGER SINGERMAN LLP

                                          */s/ Gavin C. Gaukroger*
                                          Gavin C. Gaukroger
                                          Florida Bar No. 76489
                                          ggaukroger@bergersingerman.com
                                          BERGER SINGERMAN LLP
                                          1450 Brickell Avenue, Suite 1900
                                          Miami, FL 33131

                                          Dale M. Cendali (admitted *pro hac vice*)
                                          dale.cendali@kirkland.com
                                          Claudia Ray (admitted *pro hac vice*)
                                          claudia.ray@kirkland.com
                                          Shanti Sadtler Conway (admitted *pro hac vice*)
                                          shanti.conway@kirkland.com
                                          Mary Mazzello (admitted *pro hac vice*)
                                          Mary.mazzello@kirkland.com
                                          Eric Loverro (admitted *pro hac vice*)
                                          eric.loverro@kirkland.com
                                          Justin Taylor (admitted *pro hac vice*)
                                          justin.taylor@kirkland.com
                                          KIRKLAND & ELLIS LLP
                                          601 Lexington Avenue
                                          New York, NY  10022
                                          Telephone: (212) 446-4800

                                          Miranda D. Means (admitted *pro hac vice*)
                                          Miranda.means@kirkland.com
                                          KIRKLAND & ELLIS LLP
                                          Telephone: (305) 755-9500
                                          200 Clarendon Street
                                          Boston, MA 02116
                                          Telephone: (617) 385-7500

                                          *Attorneys for Eleven IP Holdings LLC*