## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

GR OPCO, LLC

     *Plaintiff,*

vs.

ELEVEN IP HOLDINGS LLC, GRASSY CREEK
LLC, CS IRWIN LLC, IRWIN BACKCOUNTRY
GUIDES, LLC, ALAN PIKE, and CHAD PIKE

     *Defendants.*

     and

ELEVEN IP HOLDINGS LLC

     *Counterclaim Plaintiff,*

vs.

GR OPCO, LLC, 11USA GROUP, LLC, MARC
ROBERTS, DENNIS DEGORI, MICHAEL
SIMKINS, MARC ROBERTS COMPANIES
LLC, PROPERTY MARKETS GROUP, INC.,
PMG-11TH STREET VENTURES, LLC, PMG-
11TH STREET VENTURES II, LLC, BLOCK 17
TRUSTEE, LLC, BLOCK 17 RESIDENTIAL
OWNER, LLC, and LION DEVELOPMENT
OPPORTUNITY FUND LLC

     *Counterclaim Defendants,*

BLOCK 17 TRUSTEE, LLC and BLOCK 17
RESIDENTIAL OWNER, LLC,

     *Counterclaim Plaintiffs,*

vs.

ELEVEN IP HOLDINGS LLC

     *Counterclaim Defendant*

Case No. 1:22-cv-24119-FAM-TORRES

**DEFENDANTS AND
COUNTERCLAIM-PLAINTIFF'S
OPPOSITION TO PLAINTIFF AND
COUNTERCLAIM-DEFENDANTS'
AMENDED JOINT MOTION FOR
SUMMARY JUDGMENT (D.E. 482)**

<u>**TABLE OF CONTENTS**</u>

INTRODUCTION.................................................................................................................1

    A.    Eleven is a Well-Known Brand in the Hotel and Accommodations
        Industry.................................................................................................3

    B.    Movants' Expansion into Luxury Hotels/Condominiums .........................3

    C.    GR Buys "The Eleven Inn" and "11th Avenue Hostel" ........................4

LEGAL STANDARD ........................................................................................................4

ARGUMENT ....................................................................................................................4

I.      ELEVEN HAS VALID AND ENFORCEABLE MARKS. ...............................4

II.     ELEVEN HAS PRIORITY OF RIGHTS..........................................................6

    A.    Movants' "Real Property" Argument Is a Red Herring..........................6

    B.    GR Does Not Own Prior Rights Based on its Alleged Predecessors. ...............7

        1.    GR Could Not Acquire *Relevant* Prior Trademark Rights..................7

        2.    GR Never Acquired the Allegedly Acquired Marks.........................8

        3.    Any Alleged Acquisition by GR Is Invalid. ...............................8

III.    THE LIKELIHOOD OF CONFUSION FACTORS FAVOR ELEVEN. ...............9

    A.    The ELEVEN Marks Are Conceptually and Commercially Strong.............10

    B.    The ELEVEN Marks and the Infringing Marks Are Similar. .....................13

    C.    The Parties Offer Identical and Highly Related Goods/Services. ...................16

    D.    The Parties Offer Services in Like Channels, to Like Consumers.................17

    E.    The Parties Advertise Their Services in the Same Places. .............................18

    F.    Movants Acted in Bad Faith. ................................................................19

    G.    There Is Extensive Evidence of Actual Confusion.............................20

    H.    Consumer Sophistication........................................................................21

IV.    REVERSE CONFUSION IS LIKELY. .......................................................22

V.     CONTRIBUTORY INFRINGEMENT APPLIES.........................................23

VI.    DESCRIPTIVE FAIR USE DOES NOT APPLY TO THE WEST
       ELEVENTH MARKS. ........................................................................23

VII.   *RES JUDICATA* DOES NOT BAR ELEVEN'S UNCLEAN HANDS
       DEFENSE. .........................................................................................25

VIII.  SUBSTANTIAL EVIDENCE SHOWS 11USA'S DIRECT
       INFRINGEMENT..............................................................................25

CONCLUSION ...............................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*1-800 Contacts, Inc. v. Lens.com, Inc.*,
  722 F.3d 1229 (10th Cir. 2013) ...........................................................................23

*3Lions Publ'g, Inc. v. Interactive Media Corp.*,
  389 F. Supp. 3d 1031 (M.D. Fla. 2019)..............................................................23

*Abitron Austria GmbH v. Hetronic Int'l, Inc.*,
  600 U.S. 412 (2023) ............................................................................................20

*Alfa Corp. v. Alpha Warranty Services, Inc.*,
  696 F. Supp. 3d 1086 (M.D. Ala. 2023) ..........................................14, 18, 19, 20

*Am. Historic Racing Motorcycle Ass'n, Ltd. v. Team Obsolete Promotions*,
  33 F. Supp. 2d 1000 (M.D. Fla. Dec. 8, 1998) ...................................................10

*Am. Home Prod. Corp. v. Johnson Chem. Co.*,
  589 F.2d 103 (2d Cir. 1978)................................................................................15

*AmBrit, Inc. v. Kraft*, *Inc.*,
  812 F.2d 1531 (11th Cir. 1986) ..........................................................................21

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)...............................................................................................4

*Armstrong Cork v. World Carpets, Inc.*,
  597 F.2d 496 (5th Cir. 1979) ..............................................................................14

*Aronowitz v. Health-Chem Corp.*,
  513 F.3d 1229 (11th Cir. 2008) ..........................................................................21

*Assa Realty, LLC v. Solution Grp. Corp.*,
  2018 U.S. Dist. LEXIS 39503 (S.D. Fla. Mar. 9, 2018)......................................25

*Atlanta Allergy & Asthma Clinic, P.A. v. Allergy & Asthma of Atlanta, LLC*,
  685 F. Supp. 2d 1360 (N.D. Ga. 2010)..................................................................9

*Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*,
  457 F.3d 1062 (9th Cir. 2006) ............................................................................21

*B&B Hardware, Inc. v. Hargis Indus., Inc.*,
  575 U.S. 138 (2015)..................................................................................7, 17, 25

*Babbit Elecs., Inc. v. Dynascan Corp.*,
  38 F.3d 1161 (11th Cir. 1994) ...............................................................6, 16

*Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*,
  289 F.3d 589 (9th Cir. 2002) ......................................................................9

*Bd. of Regents of the Univ. Sys. of Ga. v. Buzas Baseball, Inc.*,
  176 F. Supp. 2d 1338 (N.D. Ga. 2001) .....................................................12

*Bd. of Supvrs. for Louisiana State Univ. Agr. & Mech. College v. Smack Apparel Co.*,
  550 F.3d 465 (5th Cir. 2008) ....................................................................15

*Beer Nuts, Inc. v. Clover Club Foods Co.*,
  711 F.2d 934 (10th Cir. 1983) ..................................................................24

*Blue Mountain Holdings Ltd. v. Bliss Nutraceticals, LLC*,
  2022 WL 2316386 (N.D. Ga. 2022) ...........................................................8

*Blue Mtn. Holdings Ltd. v. Bliss Nutraceticals, LLC*,
  2023 WL 5164472 (11th Cir. 2023) ............................................................9

*Blumenfeld Dev. Corp. v. Carnival Cruise Lines, Inc.*,
  669 F. Supp. 1297 (E.D. Pa. Sept. 25, 1987) .....................................16, 18

*Boathouse Grp., Inc. v. Tigerlogic Corp.*,
  777 F. Supp. 2d 243 (D. Mass. 2011) .........................................................8

*In re Bose Corp.*,
  580 F.3d 1240 (Fed. Cir. 2009) ..................................................................5

*Breakers of Palm Beach, Inc. v. Int'l Beach Hotel Dev. Inc.*,
  824 F. Supp. 1576 (S.D. Fla. 1993) ............................................................6

*Brookfield Commc'ns, Inc. v. West Coast Case Entm't Corp*,
  174 F.3d 1036 (9th Cir. 1999) ..................................................................20

*Brother Records, Inc. v. Jardine*,
  318 F.3d 900 (9th Cir. 2003) ....................................................................24

*Buccellati Holding Italia SPA v. Buccellati, LLC*,
  5 F. Supp. 3d 1368 (S.D. Fla. 2014) .........................................................24

*Cacciamani v. Target Corp.*,
  622 F. App'x 800 (11th Cir. 2015) ..............................................................5

*Carnival Brand Seafood Co. v. Carnival Brands, Inc.*,
  187 F.3d 1307 (11th Cir. 1999) .............................................................7, 10

*Carnival Corp. v. SeaEscape Casino Cruises, Inc.*,
  74 F. Supp. 2d 1261 (S.D. Fla. 1999) (Moreno, J.) ......................................................12, 21

*Chanel, Inc. v. Italian Activewear of Fla., Inc.*,
  931 F.2d 1472 (11th Cir. 1991) ......................................................................................19

*Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*,
  269 F.3d 270 (3d Cir. 2001)......................................................................................16, 17

*Churchill Downs Inc. v. Commemorative Derby Promotions*,
  2013 WL 5350830 (N.D.Ga. Sept. 23, 2013) ...............................................................18

*Coach House Rest., Inc. v. Coach & Six Rest., Inc.*,
  934 F.2d 1551,1562 (11th Cir. 1991) ...........................................................................17

*Coach Servs., Inc. v. 777 Lucky Accessories, Inc.*,
  2010 WL 2266023 (S.D. Fla. June 4, 2010) (Moreno, J.) ..............................................9

*Coach, Inc. v. Chung Mei Wholesale, Inc.*,
  2016 WL 7470001 (S.D. Fla. June 17, 2016) .................................................................9

*Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*,
  214 F.3d 432 (3d Cir. 2000)...........................................................................................22

*Commodores Ent. Corp. v. Thomas McClary*,
  2015 WL 12843872 (M.D. Fla. Mar. 10, 2015) ............................................................24

*Conagra, Inc. v. Singleton*,
  743 F.2d 1508 (11th Cir. 1984) ......................................................................................14

*Costa Farms, LLC v. Costa Tropicals and Flowers*, *Inc.*,
  2013 WL 12092473 (S.D. Fla. Aug. 19, 2013)...............................................................10

*Cumulus Media, Inc. v. Clear Channel Comm., Inc.*,
  2001 WL 34104923 (N.D. Fla., 2001), *aff'd*, 304 F.3d 1167 (11th Cir. 2002) .....................21

*DCS Real Est. Invs., LLC v. Yapor Corp.*,
  2015 WL 12780447 (M.D. Fla. Feb. 26, 2015) .............................................................24

*In re Dermahose, Inc.*,
  82 U.S.P.Q.2d 1793, 2007 WL 499919 (T.T.A.B. 2007).........................................................6

*Dewberry Eng. Inc. v. Dewberry Grp., Inc.*,
  2021 WL 5217016 (E.D. Va. Aug. 11, 2021)..................................................................22

*Dieter v. B & H Indus. of Southwest Fla., Inc.*,
  880 F.2d 322 (11th Cir. 1989) ........................................................................................10

*Dominion Bankshares Corp. v. Devon Holding Co.*,
    690 F. Supp. 338 (E.D. Pa. 1988) .................................................................................21, 22

*Dreamwerks Prod. Grp., Inc. v. SKG Studio*,
    142 F.3d 1127 (9th Cir. 1998) .................................................................................22

*Drew Est. Holding Co., LLC v. Fantasia Distrib., Inc.*,
    875 F. Supp. 2d 1360 (S.D. Fla. 2012) .................................................................................16

*E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.*,
    756 F.2d 1525 (11th Cir. 1985) .................................................................................6, 16, 21

*Earth, Wind & Fire IP, LLC v. Substantial Music Grp. LLC*,
    2024 WL 1025265 (S.D. Fla. Mar. 4, 2024) .................................................................................22

*Estee Lauder Inc. v. The Gap, Inc.*,
    108 F. 3d 1503 (2d Cir. 1997) .................................................................................11

*Ewe Group, Inc. v. Bread Store, LLC*,
    54 F. Supp. 3d 1343 (N.D. Ga. 2014) .................................................................................13, 18, 19, 21

*Exxon Corp. v. Texas Motor Exch. of Houston, Inc.*,
    628 F.2d 500 (5th Cir. 1980) .................................................................................20

*FCOA LLC v. Foremost Title & Escrow Servs. LLC*,
    57 F.4th 939 (11th Cir. 2023) ................................................................................. *passim*

*Fisher v. Ciba Specialty Chems. Corp.*,
    2007 WL 2995525 (S.D. Ala. Oct. 11, 2007) .................................................................................5

*Fitzgerald v. McNae*,
    2024 WL 3982322 (S.D. Fla. July 29, 2024) .................................................................................5

*Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*,
    830 F.3d 1242 (11th Cir. 2016) .................................................................................12, 19, 21

*Flowers Bakeries Brands, Inc. v. Interstate Bakeries Corp.*,
    2010 WL 2662720 (N.D. Ga. June 30, 2010) .................................................................................9, 10

*Ford Motor Co. v. O.E. Wheel Distrib., LLC*,
    868 F. Supp. 2d 1350 (M.D. Fla. 2012) .................................................................................10

*Franklin Square Holdings, L.P. v. Growmark, Inc.*,
    2022 WL 1768846 (E.D. Pa. Apr. 15, 2022) .................................................................................9, 13

*Frehling Enters. Inc. v. Int'l Select Grp., Inc.*,
    192 F.3d 1330 (11th Cir. 1999) ................................................................................. *passim*

*Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*,
    111 F.3d 993 (2d Cir. 1997)...........................................................................21

*George Basch Co., Inc. v. Blue Coral, Inc.*,
    968 F.2d 1532 (2d Cir.1992).........................................................................12

*Gold Kist, Inc. v. ConAgra, Inc.*,
    708 F. Supp. 1291 (N.D. Ga. 1989) .............................................................12

*Gov't Emps. Ins. Co. v. Seco*,
    2023 WL 5955647 (S.D. Fla. Aug. 7, 2023)...................................................5

*Greenlon, Inc. v. Greenlawn, Inc.*,
    542 F. Supp. 890 (S.D. Ohio 1982) ...............................................................9

*Grotrian, Helfferich v. Steinway & Sons*,
    523 F.2d 1331 (2d Cir. 1975)........................................................................21

*Guantanamera Cigars Co. v. SMCI Holding, Inc.*,
    2023 WL 3781628 (S.D. Fla. June 2, 2023) .................................................18

*Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*,
    2017 WL 9521905 (S.D. Fla. June 2, 2017) .............................................9, 21

*Hard Rock Cafe Int'l v. RockStar Hotels, Inc.*,
    2018 WL 7825183 (S.D. Fla. June 13, 2018) ...........................................15, 17

*Harold F. Ritchie, Inc. v. Cheseborough-Pond's Inc.*,
    281 F.2d 755 (2d Cir. 1960)..........................................................................20

*Heron Dev. Corp. v. Vacation Tours, Inc.*,
    2017 WL 2895921 (S.D. Fla. Apr. 13, 2017) ...............................................25

*Hi-Tech Pharms., Inc. v. Nutrition Res. Servs., Inc.*,
    2024 WL 649235 (N.D. Ga. Feb. 15, 2024) ................................................12

*Interstate Brands Corp.*,
    53 U.S.P.Q.2d 1910, 2000 WL 187204 (T.T.A.B. 2000)..............................13

*InterState NetBank v. Netb@nk, Inc.*,
    348 F. Supp. 2d 340 (D.N.J. 2004) .................................................................9

*Inwood Labs., Inc. v. Ives Labs., Inc.*,
    456 U.S. 844 (1982).......................................................................................23

*Israel Discount Bank Ltd. v. Entin*,
    951 F.2d 311 (11th Cir. 1992) .......................................................................25

*ITT Corp. v. Xylem Grp., LLC*,
    963 F. Supp. 2d 1309 (N.D. Ga. 2013) ................................................................. 9

*J & J Snack Foods Corp. v. Earthgrains Co.*,
    220 F. Supp. 2d 358 (D.N.J. 2002) ..................................................................... 11

*Jellibeans, Inc. v. Skating Clubs of Ga., Inc.*,
    716 F.2d 833 (11th Cir. 1983) ............................................................................. 9

*JFJ Toys, Inc. v. Sears Holdings Corp.*,
    237 F. Supp. 3d 311 (D. Md. 2017) ............................................................... 10, 12

*Lexington Mgmt Corp. v. Lexington Capital Ptrs.*,
    10 F. Supp. 2d 271 (S.D.N.Y. 1998) ................................................................... 13

*Lockheed Martin Corp. v. Network Sols., Inc.*,
    194 F.3d 980 (9th Cir. 1999) ............................................................................. 23

*Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*,
    122 F.3d 1379 (11th Cir. 1997) ........................................................................... 7

*Luxottica Grp., S.p.A. v. Airport Mini Mall, LLC*,
    932 F.3d 1303 (11th Cir. 2019) ......................................................................... 23

*Marks v. Cayo Hueso, Ltd.*,
    437 So. 2d 775 (Fla. 3d DCA 1983) ..................................................................... 6

*Matrix Health Grp. v. Sowersby*,
    2019 WL 4929917 (S.D. Fla. Oct. 7, 2019) ........................................................... 5

*MC3 Invs. LLC v. Loc. Brand, Inc.*,
    661 F. Supp. 3d 1145 (N.D. Fla. 2023) ..................................................... 12, 14, 19

*MedAvante, Inc. v. Proxymed, Inc.*,
    2006 WL 2927623 (D.N.J. Oct. 12, 2006) ........................................................... 22

*Medscript Pharmacy, LLC v. D&D Pharma LTC, LLC*,
    444 F. Supp. 3d 909 (N.D. Ill. 2020) ................................................................... 9

*Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*,
    702 F.3d 1312 (11th Cir. 2012) ......................................................................... 11

*Mini Melts, Inc. v. Reckitt Benckiser, Inc.*,
    2009 WL 10677599 (E.D. Tex. Feb. 26, 2009) ..................................................... 6

*Mister Donut of Am., Inc. v. Mr. Donut, Inc.*,
    418 F.2d 838 (9th Cir. 1969) ............................................................................. 9

*Mobil Oil Corp v. Pegasus Petroleum Corp.*,
   818 F.2d 254 (2d Cir. 1987)...................................................................................20

*Morningside Grp. Ltd. v. Morningside Cap. Grp., L.L.C.*,
   182 F.3d 133 (2d Cir. 1999).............................................................................21, 22

*Mutual of Omaha Ins. Co. v. Novak*,
   836 F.2d 397 (8th Cir. 1987) ...............................................................................20

*Nakava, LLC v. S. Pac. Elixir Co.*,
   2020 WL 4601641 (S.D. Fla. Aug. 10, 2020).........................................................18

*Natura N.Y. LLC v. Importaciones Defalla, LLC*,
   2016 U.S. Dist. LEXIS 147620 (S.D. Fla. Oct. 24, 2016).................................13, 14

*Natural Answers, Inc. v. SmithKline Beecham Corp.*,
   529 F.3d 1325 (11th Cir. 2008) ...............................................................................8

*Okonkwo v. Callins L. Firm, LLC*,
   2015 WL 12880529 (N.D. Ga. Dec. 14, 2015).........................................................4

*Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*,
   496 F.3d 1231 (11th Cir. 2007) .............................................................................23

*Outlawlessness Prods., Inc. v. Paul*,
   2011 WL 13177705 (M.D. Fla. Apr. 6, 2011) ...........................................................8

*Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*,
   2011 WL 2174012 (S.D. Fla. June 2, 2011) .............................................................5

*PepsiCo, Inc. v. Grapette Co.*,
   416 F.2d 285 (8th Cir. 1969) ...................................................................................8

*Perfumebay.com Inc. v. eBay, Inc.*,
   506 F.3d 1165 (9th Cir. 2007) ...............................................................................19

*Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp., LLC*,
   2019 WL 7376779 (S.D. Fla. Sept. 19, 2019) .........................................................4

*Planetary Motion, Inc. v. Techsplosion, Inc.*,
   261 F.3d 1188 (11th Cir. 2001) ...............................................................................6

*PlayNation Play Sys., Inc. v. Velex Corp.*,
   924 F.3d 1159 (11th Cir. 2019) ....................................................................... *passim*

*Playtex Prods., Inc. v. Georgia-Pac. Corp.*,
   390 F.3d 158 (2d Cir. 2004)...................................................................................10

*Plus Prods. v. Plus Disc. Foods, Inc.*,
  722 F.2d 999 (2d Cir. 1983)........................................................................................11

*Pro Video Instruments, LLC v. Thor Fiber, Inc.*,
  2020 WL 11421203 (M.D. Fla. Apr. 22, 2020)........................................................19

*Provide Commerce, Inc. v. Preferred Commerce, Inc.*,
  2008 WL 926777 (S.D. Fla. April 4, 2008)...................................................9, 19, 20

*R&R Partners, Inc. v. Tovar*,
  447 F. Supp. 2d 1141 (D. Nev. 2006).........................................................................9

*In re Ralston Purina Co.*,
  191 U.S.P.Q. 237 (T.T.A.B. May 27, 1976)..............................................................11

*RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*,
  655 F. Supp. 2d 679 (S.D. Tex. 2009) .................................................................21, 22

*Realvirt, LLC v. Lee*,
  179 F. Supp. 3d 604 (E.D. Va. 2016) .......................................................................25

*Regions Hosp. v. Shalala*,
  522 U.S. 448 (1998)...................................................................................................25

*Resort Int'l, Inc v. Great Bay Hotel & Casino, Inc.*,
  1991 WL 352487 (D.N.J. Jan. 18, 1991)..................................................................24

*Rice v. Brand Imports, L.L.C.*,
  2010 WL 11549769 (N.D. Ga. Sept. 16, 2010) ........................................................20

*River Hotel Co. v. La Mansion On The Bay, Inc.*,
  1985 WL 5995 (N.D. Fla. Oct. 31, 1985) ...................................................................6

*Rolex Watch U.S.A., Inc. v. Agarwal*,
  2012 WL 12886444 (C.D. Cal. Dec. 17, 2012) ........................................................24

*Safeway Stores, Inc. v. Safeway Disc. Drugs, Inc.*,
  675 F.2d 1160 (11th Cir. 1982) .....................................................................12, 13, 21

*Sands, Taylor & Wood Co. v. Quaker Oats, Inc.*,
  978 F.2d 947 (7th Cir.1992) ................................................................................15, 24

*Sara Lee Corp v. Kayser Roth Corp.*,
  81 F.3d 455 (4th Cir. 1996) ......................................................................................20

*Savannah College of Art & Design, Inc. v. Sportswear, Inc.*,
  983 F.3d 1273 (11th Cir. 2020) .......................................................10, 13, 18, 20

*Scott v. Harris*,
  550 U.S. 372 (2007).................................................................................................4

*Setai Hotel Acquisition, LLC v. Miami Beach Luxury Rentals, Inc.*,
  2017 WL 3503371 (S.D. Fla. Aug. 15, 2017)....................................................6, 20

*Sharpe v. Glob. Sec. Int'l*,
  766 F. Supp. 2d 1272 (S.D. Ala. 2011), and GR ...................................................5

*Sierra On-Line, Inc. v. Phoenix Software, Inc.*,
  739 F.2d 1415 (9th Cir. 1984) .............................................................................24

*Silverton Mortgage Specialists, Inc. v. FDIC for Silverton Bank, N.A.*,
  2012 WL 13001592 (N.D. Ga. Sep. 28, 2012) ..........................................14, 15, 21

*Slip-N-Slide Recs., Inc. v. TVT Recs., LLC*,
  2007 WL 473273 (S.D. Fla. Feb. 8, 2007) ............................................................9

*Smith v. Wal-Mart Stores, Inc.*,
  537 F. Supp. 2d 1302 (N.D. Ga. 2008).................................................................19

*Soc'y of Fin. Exam'rs v. Nat'l Ass'n of Certified Fraud Exam'rs Inc.*,
  41 F.3d 223 (5th Cir. 1995) ..................................................................................9

*Sovereign Mil. Hospitaller v. Fla. Priory of Knights Hospitallers*,
  702 F.3d 1279 (11th Cir. 2012) ........................................................................5, 13

*Sterling Drug, Inc. v. Bayer AG*,
  14 F.3d 733 (2d Cir. 1994)...................................................................................22

*Suntree Techs., Inc. v. Ecosense Int'l, Inc.*,
  693 F.3d 1338 (11th Cir. 2012) ...........................................................................23

*Talent Mobile Dev. v. Headios Grp.*,
  2017 WL 6940548 (C.D. Cal. Oct. 3, 2017)...........................................................5

*Tally- Ho, Inc. v. Coast Cmty. Coll. Dist.*,
  889 F.2d 1018 (11th Cir. 1989) .............................................................................7

*Tana v. Dantanna's*,
  611 F.3d 767 (11th Cir. 2010) ...........................................................7, 8, 11, 17

*Theia Techs. LLC v. Theia Grp., Inc.*,
  2021 WL 291313 (E.D. Pa. Jan. 28, 2021)......................................................22, 23

*Tortoise Island Homeowners Ass'n, Inc. v. Tortoise Island Realty, Inc.*,
  790 So. 2d 525 (Fla. 5th DCA 2001) .....................................................................6

*TracFone Wireless, Inc. v. SND Cellular, Inc.*,
  715 F. Supp. 2d. 1246 (S.D. Fla. 2010) ..................................................................10

*Tree Tavern Products, Inc. v. Conagra, Inc.*,
  640 F. Supp. 1263 (D. Del. 1986) ..........................................................................24

*Tuna Family Mgmt. Inc. v. All Trust Mgmt. Inc.*,
  2022 WL 2257008 (S.D. Fla. June 22, 2022) ..................................................18, 25

*Turner v. HMH Pub. Co.*,
  380 F.2d 224 (5th Cir. 1967) .................................................................................13

*Uber Promotions, Inc. v. Uber Techs., Inc.*,
  162 F. Supp. 3d 1253 (N.D. Fla. 2016).................................................................22

*Vernon v. Ziel*,
  2020 WL 4501802 (S.D. Fla. June 15, 2020) .......................................................25

*Victoria's Cyber Secret Ltd. P'Ship v. V Secret Catalogue, Inc.*,
  161 F. Supp. 2d 1339 (S.D. Fla. Sept. 10, 2001) ............................................18, 25

*Visa Int'l Serv. Ass'n v. Visa Hotel Grp., Inc.*,
  561 F. Supp. 984 (D. Nev. Apr. 8, 1983).............................................................16

*Visa Int'l Servs. Ass'n v. JSL Corp.*,
  533 F. Supp. 2d 1089 (D. Nev. Dec. 27, 2007) ..............................................11, 23

*Vital Pharms., Inc. v. Monster Energy Co.*,
  472 F. Supp. 3d 1237 (S.D. Fla. 2020) ...................................................................8

*VOX Amplification Ltd. v. Meussdorffer*,
  50 F. Supp. 3d 355 (E.D.N.Y. 2014), B17.............................................................24

*In re Vox Populi Registry Ltd.*,
  25 F.4th 1348 (Fed. Cir. 2022) .............................................................................25

*Welding Servs., Inc. v. Forman*,
  509 F.3d 1351 (11th Cir. 2007) .............................................................................10

*WheelImage Corp. v. Axial Mfg.*,
  2024 WL 1012847 (C.D. Cal. Mar. 5, 2024)...........................................................9

*Wreal LLC v. Amazon.com, Inc.*,
  38 F.4th 114 (11th Cir. 2022) .....................................................................9, 14, 22

*Zimmerman v. Holiday Inns of Am., Inc.*,
  438 Pa. 528 (1970), *cert. denied*, 400 U.S. 992 (1971) .........................................8

*Zurco Inc. v. Sloan Valve Co.*,
    785 F. Supp. 2d 476 (W.D. Pa. 2011).................................................................................9, 13

**Statutes**

15 U.S.C. §1057........................................................................................................................7

**Rules**

Fed. R. Civ. P. 26......................................................................................................................5

Fed. R. Civ. P. 56......................................................................................................................4

**Other Authorities**

McCarthy on Trademarks and Unfair Competition (5th ed.)....................................... *passim*

## TABLE OF ABBREVIATIONS

| Abbreviation | Meaning |
|---|---|
| EIP | Defendant/Counterclaim-Plaintiff Eleven IP Holdings LLC. |
| Grassy Creek | Defendant Grassy Creek LLC. |
| CS Irwin | Defendant CS Irwin LLC. |
| IBG | Defendant Irwin Backcountry Guides, LLC. |
| Eleven | Collectively, EIP, Grassy Creek, CS Irwin, and IBG. |
| ELEVEN Registrations | The "ELEVEN Registrations" include U.S. Registration Nos. 4265159, 4180401, 4269487, 4610119, 4384681, 4269438, 4610113, and 4621491. D.E. 248 ("SOF") ¶ 2. |
| ELEVEN Marks | Eleven's registered and common law marks for ELEVEN, its "11" logo, and other ELEVEN-formative marks including the ELEVEN Registrations. SOF ¶3. |
| GR | Plaintiff and Counterclaim-Defendant GR Opco LLC. |
| 11USA | Counterclaim-Defendant 11USA Group LLC. |
| Movants | Collectively, GR, 11USA, Marc Roberts, Dennis DeGori, Michael Simkins, Marc Roberts Companies LLC, Property Markets Group, Inc., PMG-11th Street Ventures, LLC, PMG-11th Street Ventures II, LLC, Lion Development Opportunity Fund LLC, Block 17 Trustee, LLC and Block 17 Residential Owner. |
| Motion or Mot. | Movants' Amended Joint Motion for Summary Judgment. D.E. 482. |
| B17 | Collectively, Block 17 Trustee, LLC and Block 17 Residential Owner. |
| Infringing Marks | The "Infringing Marks" include E11EVEN, E11EVEN HOTEL & RESIDENCES, E11EVEN RESIDENCES BEYOND, 11 HOTEL, and WEST ELEVENTH RESIDENCES, and other such ELEVEN-formative marks and related logos. SOF ¶33. |
| WEST ELEVENTH Marks | WEST ELEVENTH RESIDENCES, W11, WEST ELEVENTH, and B17's related logos. SOF ¶118. |
| Alleged Predecessors | Collectively, SombasGroup LLC (aka "The Eleven Inn") and 11th Avenue Corporation (aka "11th Avenue Hostel"). |
| Allegedly Acquired Marks | The common law trademarks GR claims to have acquired from the Alleged Predecessors. SOF ¶¶ 50-51, 53. |
| E11even Hotel | E11even Hotel & Residences |
| E11even Beyond | E11even Residences Beyond |
| West Eleventh | West Eleventh Residences |
| Infringing Hotels | Collectively, E11even Hotel, E11even Beyond, and West Eleventh. |
| PTO | U.S. Patent and Trademark Office. |

**<u>INTRODUCTION</u>**

The Motion is replete with misrepresentations of facts, selective and misleading quotes, and critical omissions. But Movants cannot change the undisputed facts and relevant law. In 2011, Eleven coined and began using an arbitrary mark for its luxury hotels and homes. In recognition of EIP's rights, the PTO granted the now-incontestable ELEVEN Registrations. Incontestability is a powerful protection that, among other things, gives notice of EIP's exclusive, nationwide rights. Movants, disregarding these rights entirely, chose nearly identical marks for its nearly identical services. The PTO already refused to grant Movants rights for hotel-related services based on EIP's registrations, finding them confusingly similar. Indeed, both parties provide luxury hotels and homes and market to the same high-end consumers. *All* of the likelihood-of-confusion factors favor Eleven, and there already is evidence of actual confusion. Faced with this record, Movants attempt to rewrite the facts, misrepresent the law, and distract from their own misconduct. They all fail.

*First*, seeking to sidestep their own infringement, Movants argue that Alan Pike may not have signed the trademark filings for the ELEVEN Registrations. This unsupported argument is nowhere alleged in GR's Complaint. Regardless, Movants cannot meet their heavy burden. GR's own expert admits there is no evidence Mr. Pike lied to the PTO. In fact, he routinely signed for EIP, including these filings. Movants offer no evidence to the contrary, and only speculation.

*Second*, Movants try to avoid liability by limiting the ELEVEN Marks' scope. They say EIP lacks priority because its marks do not cover "real property sales" and GR has priority for "hotel services" through its Alleged Predecessors. Both arguments fail. EIP has trademark rights for hotels and vacation homes, which Movants also offer with their Infringing Hotels. Movants' contrived distinction for "real property sales" is unsupported by law and fact. GR applied to register the Infringing Marks in connection with "hotel services." And neither identical products/services, nor competition, are needed for confusion to be likely. Movants use the Infringing Marks to promote, advertise, and sell luxury hotels and condos, which are at least highly related to Eleven's offerings, and commonly come from one source (*e.g.*, Four Seasons, Ritz Carlton). Movants' priority argument fails. Nor can GR rely on the Alleged Predecessors for priority. As a threshold matter, GR's common law rights, if any, are irrelevant. The Alleged Predecessors' rights are (at most) geographically limited to where they operate, far from the Infringing Hotels and Eleven's nearest hotel. GR has no prior rights to hotel services in Miami. Nor can GR rely on the claimed acquisitions, because (1) ███████████████████████

1

██████████████████████████, (2) any transfer was an invalid assignment in gross as no goodwill transferred, and GR seeks to use different marks for different services, and (3) even if the transfer were valid, any rights were abandoned due to naked licensing. GR has not communicated with the licensees or visited the properties and has done nothing else to oversee the quality of the services. Faced with these realities, GR cannot maintain its claim of priority.

*Third*, the Motion shows why summary judgment on likelihood of confusion is disfavored. Every factor favors Eleven: (1) the ELEVEN Marks are conceptually and commercially strong given that they are arbitrary for hotels, and given Eleven's incontestable registrations, over a decade of use, extensive promotion, and sales; (2) ELEVEN and the Infringing Marks are highly similar—both prominently use "eleven" and "11," they are pronounced the same, and the parties' uses are similar; (3) the parties sell identical, overlapping and highly related services, which commonly come from a single source; (4) the services are sold in the same channels to similar consumers; (5) the parties advertise in the same places; (6) Movants' utter disregard for and/or intentional blindness to Eleven's incontestable rights shows bad faith intent; (7) anecdotal and survey evidence shows actual confusion; and (8) evidence does not support that the relevant consumers are "sophisticated" in the sense that they are unlikely to be confused.

*Fourth*, Movants' reverse confusion arguments are equally deficient. Movants purport to be "well-known," "world-famous," and a global "phenomenon," so are poised to swamp Eleven's brand. Not only do Movants have greater economic power, but the effects of their prolific advertising can be seen. Survey evidence shows actual reverse confusion and Google search results reflect that Movants have started to flood the marketplace. This is classic reverse confusion.

*Fifth*, Movants challenge only the first element of contributory infringement, arguing Eleven cannot prove the "predicate act" of direct infringement. But the likelihood of confusion factors favor Eleven, and thus Movants' argument fails for the same reasons discussed above. And, as Movants do not contest, there is ample evidence that Movants have knowingly contributed to the direct infringement of their co-Movants and third parties.

*Sixth*, B17's descriptive fair use defense also fails. Contrary to the Motion, evidence of secondary meaning is not relevant to the defense. B17 also cannot meet its burden. B17 uses the WEST ELEVENTH Marks (including its logos) as attention-getting symbols and the branded name of its property—thus, they are used as marks. "West Eleventh Residences" does not identify the address and is not used merely descriptively. B17 could have used the address if it chose, but

instead it wanted a term and logos that would signify a brand. Fair use does not apply.

*Seventh*, GR's challenge to Eleven's affirmative defense of unclean hands fails. *Res judicata* does not apply because the issue of GR's use has not been fully litigated.

*Finally*, 11USA cannot escape liability. It is a licensee and user of the Infringing Marks.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

### A.    Eleven is a Well-Known Brand in the Hotel and Accommodations Industry

Eleven is a renowned hotel, accommodations, and travel services group that provides luxury hotels and vacation homes under its federally registered and common law ELEVEN Marks. SOF ¶¶1-3, 5, 8. Eleven launched its ELEVEN Marks in 2011 and has built them into a globally recognized luxury hotel brand, winning prestigious awards (*e.g.*, Hotel of the Year), accolades, and industry praise. SAF ¶¶10-18; D.E. 253-01. It has hundreds of employees, over ████ in sales, and has spent almost ██████ on advertising. SOF ¶¶15, 18-19. It has 13 luxury hotels, and 6 vacation homes in the U.S. and abroad. *Id.* ¶21. Given the strength of Eleven's brand, it is no wonder Movants became interested in launching the Infringing Hotels.

### B.    Movants' Expansion into Luxury Hotels/Condominiums

Movants adopted the Infringing Marks for three luxury hotels/condos, ████████ ████. SOF ¶¶26, 42; D.E. 472 ¶12. Movants work together to promote and sell the Infringing Hotels. SOF ¶¶26, 32, 37, 40-41. In 2014, GR and its affiliates opened E11EVEN Miami nightclub, which is not at issue. *Id.* ¶25; D.E. 128 ¶3. In January 2021, Movants announced plans for the first Infringing Hotel: E11even Hotel. SOF ¶26. Before then, Movants had not owned, operated, or licensed the Infringing Marks for hotels. *Id.* ¶117. Given the E11even Hotel's sales success, Movants announced E11even Beyond in November 2021, and West Eleventh in February 2023. *Id.* ¶¶31-32, 35-36. The Infringing Hotels are adjacent to each other, on the same street, across from the E11EVEN club, and in what Movants coined and promoted as "District 11." *Id.* ¶¶33, 37, 41, 118. They have been collectively marketed, promoted, and sold, including at the same sales center. SAF ¶¶33-38, 43-44. The Infringing Hotels all function and are advertised as hotels, offering short-term rentals and "luxury resort-style amenities." SOF ¶¶27-30, 43, 38-39.

GR tried to register various Infringing Marks for hotel services starting in April 2020. *Id.* ¶43. The PTO refused the applications due to likely confusion with the ELEVEN Marks. *Id.* ¶44.

---

[1] Eleven incorporates its Response to Movants' Statement of Material Facts ("RSOF") and Statement of Additional Facts ("SAF"). All emphasis is added unless otherwise noted.

"Since [GR's] mark consists of E11EVEN HOTEL," the PTO found that consumers were likely "to believe those services come from the same source which would be indistinguishable to the same pair of eyes viewing [Eleven's] mark ELEVEN." SAF ¶83. GR deleted services to overcome the refusals. SOF ¶45. Eleven objected to GR's use and registration. *Id.* ¶¶46-47.

### C.   GR Buys "The Eleven Inn" and "11th Avenue Hostel"



In September and November 2022,

SOF ¶48.

*Id.* ¶¶82-86. Trying to manufacture a claim,

. *Id.* ¶48. G

*Id.* ¶¶49- 50.

*Id.* ¶¶52, 57. GR has not visited the properties. *Id.* ¶¶51, 54.

### LEGAL STANDARD

Movants must show that "there is no genuine dispute as to any material fact" and they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[2] The Court must "view the facts and draw reasonable inferences in the light most favorable to" the non-moving party. *Scott v. Harris,* 550 U.S. 372, 378 (2007). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions." *Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp., LLC*, 2019 WL 7376779, at *2 (S.D. Fla. Sept. 19, 2019).

### ARGUMENT

### I.   ELEVEN HAS VALID AND ENFORCEABLE MARKS.

Movants do not dispute that EIP owns incontestable registrations for its ELEVEN Marks and has used them for over a decade.[3] Instead, they try to invalidate the ELEVEN Registrations by asserting a wholly new theory of fraud, arguing Alan Pike's signatures on EIP's trademark filings are fake, and contradicting their actual claims which are based on the fact that Mr. Pike did sign

---

[2] On the issues where the parties filed cross-motions, the standard of review considers whether summary judgment is appropriate based on undisputed facts. *Okonkwo v. Callins L. Firm, LLC*, 2015 WL 12880529 at *3 (N.D. Ga. Dec. 14, 2015), *aff'd*, 668 F. App'x 875 (11th Cir. 2016).
[3] The Motion's introduction purports to move on B17's counterclaim that the ELEVEN Marks are invalid as merely descriptive, D.E. 468 ¶¶92-99, but then provides no argument. As discussed in EIP's Motion for Partial Summary Judgment, the claim should be dismissed. D.E. 247 at 22-24.

and submit those filings. D.E. 140 ¶¶186-201. Movants' failure to plead this claim is enough to deny the Motion.[4] *Cacciamani v. Target Corp.*, 622 F. App'x 800, 803-04 (11th Cir. 2015).

Even if this new fraud claim were timely, Movants fail to mention their "heavy" burden for proving fraud on the PTO, which must "be proven 'to the hilt,'" with "no room for speculation, inference or surmise." *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009). "[A]ny doubt must be resolved against" Movants. *Id.* They cannot show "clear and convincing evidence" that the Mr. Pike knowingly made a false, material representation with intent to deceive. *Sovereign Mil. Hospitaller v. Fla. Priory of Knights Hospitallers*, 702 F.3d 1279, 1289 (11th Cir. 2012).

As GR's PTO expert admitted, she lacks "any evidence that [Mr. Pike] [was] lying" to the PTO. SOF ¶99. Mr. Pike has been a "Manager" since EIP was formed and routinely served as an authorized signatory, including on EIP's trademark filings. SAF ¶1-2. His practice was to review materials before signing. *Id.* ¶2. EIP's attorney sent him filings for his review and signature, and Mr. Pike did exactly that. *Id.* ¶3; SOF ¶¶93, 97. Movants offer zero evidence to the contrary. Instead, they cobble together parts of Mr. Pike's deposition, with no context, to argue (without specificity or basis) his signatures were forged.[5] Mot. 5-6. This is insufficient. *Talent Mobile Dev. v. Headios Grp.*, 2017 WL 6940548, at *4 (C.D. Cal. Oct. 3, 2017). The Motion should be denied, and EIP's motion on this issue granted.[6] D.E. 247 at 13-18; *Sovereign*, 702 F.3d at 1292; *Pandora*

---

[4] GR's Complaint does not allege that Mr. Pike did not sign the filings. Only after Eleven pointed out this deficiency on summary judgment did GR then include an affirmative defense on this issue in its Answer to Eleven's Second Amended Counterclaim ("SACC"). D.E. 472 at 66-67.

[5] GR never asked Mr. Pike whether he signed the filings, or even showed him the applications. SAF ¶1. If they had, as Mr. Pike's declaration makes clear, he would have told them he signed. *Id.* ¶3. In contrast, GR showed Mr. Pike 14 other documents—*e.g.*, agreements—and asked if he recognized his signature. SAF ¶1. But for the trademark filings, GR asked only, as a general matter, whether Mr. Pike remembered reviewing or signing documents submitted to the PTO. *Id.* These vague questions are not the same as actually *showing* Mr. Pike the filings GR now claims he did not sign and *confirming* whether he signed—which GR's counsel chose not to do. *Fisher v. Ciba Specialty Chems. Corp.*, 2007 WL 2995525, at *4 (S.D. Ala. Oct. 11, 2007). Mr. Pike's Declaration is admissible and clarifies his testimony about Eleven's trademarks and his specific role over a decade ago. SAF ¶¶1-3. *Gov't Emps. Ins. Co. v. Seco*, 2023 WL 5955647, at *5 (S.D. Fla. Aug. 7, 2023); *Fisher*, 2007 WL 2995525, at *4.

[6] The Bell Declaration also is admissible as it is submitted for rebuttal purposes, based on Ms. Bell's personal knowledge. SAF ¶¶2-3. *Fitzgerald v. McNae*, 2024 WL 3982322, at *3 (S.D. Fla. July 29, 2024); Fed. R. Civ. P. 26(a)(1)(A)(i). Courts have considered declarations in similar circumstances, *Sharpe v. Glob. Sec. Int'l*, 766 F. Supp. 2d 1272, 1278-79 (S.D. Ala. 2011), and GR has been aware of Ms. Bell for the entirety of this case, but chose not to depose her, *Matrix Health Grp. v. Sowersby*, 2019 WL 4929917, at *3 (S.D. Fla. Oct. 7, 2019).

5

*Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, 2011 WL 2174012, at *14 (S.D. Fla. June 2, 2011).[7]

## II.    ELEVEN HAS PRIORITY OF RIGHTS.

Movants' arguments that they have prior rights fail. Mot. 2-4.

### A.    Movants' "Real Property" Argument Is a Red Herring.

Movants claim the ELEVEN Marks do not extend to "real property," so EIP cannot maintain a claim. Mot. 2-3. This is legally and factually wrong; there is no priority issue here. EIP's rights are not narrowly limited to specific goods/services in its registrations, but "extend to any goods[/services] related in the minds of consumers in the sense that a single producer is likely to put out both." *E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.* ("*Martin*"), 756 F.2d 1525, 1530 (11th Cir. 1985); *see Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1201 (11th Cir. 2001). This makes sense, as products need not be highly similar for there to be infringement. *Infra* §III.C. "[T]he likelihood of confusion, ***not competition***, is the real test[.]" *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1179 (11th Cir. 1994). Courts have rejected the hotel/condo divide that Movants assert, finding "condominiums and hotels are rapidly losing any things that distinguish them one from the other, that the fields are merging, and the market that they are attempting to reach is rapidly converging." *River Hotel Co. v. La Mansion On The Bay, Inc.*, 1985 WL 5995, at *2 (N.D. Fla. Oct. 31, 1985); *see also Setai Hotel Acquisition, LLC v. Miami Beach Luxury Rentals, Inc.*, 2017 WL 3503371, at *11 (S.D. Fla. Aug. 15, 2017); *Marks v. Cayo Hueso, Ltd.*, 437 So. 2d 775, 777 (Fla. 3d DCA 1983); *Breakers of Palm Beach, Inc. v. Int'l Beach Hotel Dev. Inc.*, 824 F. Supp. 1576, 1585 (S.D. Fla. 1993); *Tortoise Island Homeowners Ass'n, Inc. v. Tortoise Island Realty, Inc.*, 790 So. 2d 525, 535 (Fla. 5th DCA 2001).

Movants' attempt to distinguish between "real property" and luxury "hotel" services is also at odds with their conduct. In 2020, GR applied to register the Infringing Marks for hotel, lodging, real estate, and related services. SOF ¶43. The PTO refused the applications, finding likely confusion with the ELEVEN Marks given the "relatedness of the compared goods and/or services." *Id.* ¶44. Movants' own marketing materials also show that "real property" and luxury "hotel" services are highly related—they tout the Infringing Hotels as "hotel[s]" offering "short-term rentals," a ███████████████████. *Id.* ¶27; SAF ¶¶35-37. That Movants treat luxury

---

[7] Movants' cases are inapposite. Mr. Pike's signature is on the filings, and there is no evidence someone else signed. *Dermahose*, 82 U.S.P.Q.2d 1793, 2007 WL 499919, at *3 (T.T.A.B. 2007); *Mini Melts, Inc. v. Reckitt Benckiser, Inc.*, 2009 WL 10677599, at *2 (E.D. Tex. Feb. 26, 2009).

condos and hotels as related is not surprising. Many luxury hotel brands— ███████

██████████████████████████████ —offer both hotels and residences. SAF

¶4. And contrary to Movants' contention (at 3), the ELEVEN Marks are not limited to "experiential

travel and remote lodging services." Eleven has valid, incontestable registrations for the ELEVEN

Marks for "luxury hotel accommodations" and related services. SOF ¶2. These registrations are

"prima facie" evidence of priority. 15 U.S.C. §1057(b); *Lone Star Steakhouse & Saloon, Inc. v.*

*Longhorn Steaks, Inc.*, 122 F.3d 1379, 1382 (11th Cir. 1997). Eleven has clear priority.[8]

> **B.      GR Does Not Own Prior Rights Based on its Alleged Predecessors.**

Movants concede that the purported assignments from GR's Alleged Predecessors were

merely a litigation tactic. Mot 4. This tactic is unavailing.

> 1.      GR Could Not Acquire *Relevant* Prior Trademark Rights.

Assuming *arguendo* GR acquired rights—as discussed below, it did not—that would not

impact EIP's claims, as any such rights would be narrow and irrelevant. Common law rights are

limited to the geographic areas where a mark is actually used in commerce and a zone of reasonable

expansion. *Tally-Ho*, 889 F.2d at 1027-28. The scope of protection is "coextensive only with the

territory throughout which it is known and from which it has drawn its trade." *Tana v. Dantanna's*,

611 F.3d 767, 780 (11th Cir. 2010); *see* 4 McCarthy §26:27 (5th ed.). The owner has the burden

to show rights through actual use in a given territory. *Tana*, 611 F.3d at 780. A plaintiff with

geographically limited rights cannot prevent another's use in a different area.[9] *Id.* at 776.

Critically, GR has no common law rights in Florida, where the Infringing Hotels are

located. Nor can GR meet its burden of showing that common law rights in the Allegedly Acquired

Marks extend anywhere other than Balmorhea, Texas and Denver, Colorado. SOF ¶48. The

Alleged Predecessors admit their rights are limited to those places, and they do not operate or

advertise outside them. *Id.* ¶¶82–86. The Eleven Inn does not advertise at all, and its promotional

activities are strictly "located in West Texas." *Id.* ¶¶83–84. 11th Avenue Hostel only competes

with hostels in and around Denver. *Id.* ¶85. Crested Butte (where Eleven has hotels/homes) is

---

[8] Movants' cases support this understanding, Mot. 3, as they did not involve "distinctly different"
goods/services. *Carnival Brand Seafood Co. v. Carnival Brands, Inc.*, 187 F.3d 1307, 1312 (11th
Cir. 1999); *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1024 (11th Cir. 1989).
[9] This is in contrast to a federal registration, which grants *nationwide* rights to the registrant. *FCOA*
*LLC v. Foremost Title & Escrow Servs. LLC* ("*FCOA*"), 57 F.4th 939, 954 (11th Cir. 2023); *B&B*
*Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 159, (2015).

hundreds of miles from Alleged Predecessors. SAF ¶9. Because any rights GR acquired would be geographically limited, it cannot use them to bless its infringement in Miami, nor claim prior rights outside of (at most) West Texas and Denver. SOF ¶¶21, 85. *Tana*, 611 F.3d at 780; *Zimmerman v. Holiday Inns of Am., Inc.*, 438 Pa. 528, 535-38 (1970), *cert. denied*, 400 U.S. 992 (1971).

Nor do the Allegedly Acquired Marks give GR priority with respect to the services at issue here—luxury hotels/condos. "[A]n assignment is ineffective to transfer the assignor's priority if the assignee uses the mark on substantially different goods or services." *Boathouse Grp., Inc. v. Tigerlogic Corp.*, 777 F. Supp. 2d 243, 250-51 (D. Mass. 2011); *see also PepsiCo, Inc. v. Grapette Co.*, 416 F.2d 285, 290 (8th Cir. 1969); 2 McCarthy § 18:27 (collecting cases). Here, the Alleged Predecessors offer a low-budget motel and hostel, which are "not luxury" and "do not compete" with the Infringing Hotels.[10] SOF ¶¶58-67. This is in stark contrast to the "luxury" hotel/condos Movants offer under the Infringing Marks, which offer extensive luxury amenities (*e.g.*, spa services, rooftop helipad, and fine-dining).[11] Mot. 7; SOF ¶¶ 30, 34, 39, 60-61.

2.   GR Never Acquired the Allegedly Acquired Marks.

The Motion provides no evidence of a transfer to GR. It cites only to ██████████ ████████████████████████████ Mot. 4; SOF ¶¶24-25. ██████████ ██████ and GR provided no other agreements. SOF ¶¶52, 56, 57. Thus, GR cannot claim rights. *Outlawlessness Prods., Inc. v. Paul*, 2011 WL 13177705, at *5-6 (M.D. Fla. Apr. 6, 2011); *Blue Mountain Holdings Ltd. v. Bliss Nutraceticals, LLC*, 2022 WL 2316386, *4 (N.D. Ga. 2022).

3.   Any Alleged Acquisition by GR Is Invalid.

Even if GR cleared this hurdle, the assignments were in gross and, thus, invalid. *Vital Pharms., Inc. v. Monster Energy Co.*, 472 F. Supp. 3d 1237, 1262 (S.D. Fla. 2020). In determining whether there was a transfer of goodwill, courts look to the "substance of the transaction" not simply whether the agreement recites a transfer of goodwill. *Id.* at 1267 n.14. As Movants concede,

[10] Movants rely on 11th Avenue Hostel's discontinued use of the term "hotel," Mot. 4, but the hostel intentionally ceased using that term to "distance [itself] from the perception of what a hotel is" because they did not want consumers to "be disappointed when they get here." SAF ¶¶6-8. Nor could GR assert rights in "11th Avenue Hotel," which already was abandoned. *Natural Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325, 1329-30 (11th Cir. 2008).
[11] Contrary to Movants' claim that the Alleged Predecessors serve high-net-worth persons, they cater to "budget-minded travelers," their marketing reflects that, and a stray high-net-worth client is not "typical." SAF ¶5. What governs is the nature of the services, which are a "world away" and in a "different pond" than the Infringing Hotels. SOF ¶¶60-61, 63-67.

the assignments are a legal fiction to try to get a litigation advantage. Mot. 4. Neither Alleged
Predecessor transferred anything to GR indicative of goodwill in the marks—Movants do not own
or run the businesses nor did they receive customer lists, physical assets, or anything else. SOF
¶¶50, 70, 75; *Mister Donut of Am., Inc. v. Mr. Donut, Inc.*, 418 F.2d 838, 842 (9th Cir. 1969);
*Greenlon, Inc. v. Greenlawn, Inc.*, 542 F. Supp. 890, 895 (S.D. Ohio 1982). GR has not used the
marks, but instead ███████████████████████████.[12] SOF ¶51; *InterState NetBank
v. Netb@nk, Inc.*, 348 F. Supp. 2d 340, 351 (D.N.J. 2004). ███████████████████
████████████████. SOF ¶¶69, 71-77. GR has played ***no meaningful*** role in ensuring the
quality of the services. *Id.* ¶¶69-78. Thus, the █████████ are invalid on the separate ground
of naked licensing. *Blue Mtn. Holdings Ltd. v. Bliss Nutraceticals, LLC*, 2023 WL 5164472, at *1
(11th Cir. 2023); *Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589 (9th Cir.
2002). Ultimately, the agreements are invalid as their only effect "was to allow [GR] to police the
trademark." *R&R Partners, Inc. v. Tovar*, 447 F. Supp. 2d 1141, 1149 (D. Nev. 2006).

## III.    THE LIKELIHOOD OF CONFUSION FACTORS FAVOR ELEVEN.

Likelihood of confusion "is generally a question of fact." *Coach Servs., Inc. v. 777 Lucky
Accessories, Inc.*, 2010 WL 2266023, at *2 (S.D. Fla. June 4, 2010) (Moreno, J.); *see also
Jellibeans, Inc. v. Skating Clubs of Ga., Inc.*, 716 F.2d 833, 840 n. 16 (11th Cir. 1983). Due to its
"factual nature," deciding likelihood of confusion on summary judgment "is generally disfavored,"
and such motions are regularly denied. *Slip-N-Slide Recs., Inc. v. TVT Recs., LLC*, 2007 WL
473273, at *8 (S.D. Fla. Feb. 8, 2007).[13] Courts in the Eleventh Circuit weigh seven factors, which

---

[12] Unlike in Movants' cited cases, GR has never used the Allegedly Acquired Marks. SOF ¶62.
*WheelImage Corp. v. Axial Mfg.*, 2024 WL 1012847, at *2 (C.D. Cal. Mar. 5, 2024); *Medscript
Pharmacy, LLC v. D&D Pharma LTC, LLC*, 444 F. Supp. 3d 909, 915 (N.D. Ill. 2020).
[13] *See also, e.g.*, *Wreal LLC v. Amazon.com, Inc.*, 38 F.4th 114, 128 (11th Cir. 2022); *Soc'y of Fin.
Exam'rs v. Nat'l Ass'n of Certified Fraud Exam'rs Inc.*, 41 F.3d 223, 229 (5th Cir. 1995); *Slip-N-
Slide Recs., Inc.*, 2007 WL 473273, at *8; *Franklin Square Holdings, L.P. v. Growmark, Inc.*, 2022
WL 1768846, at *3 (E.D. Pa. Apr. 15, 2022); *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*,
2017 WL 9521905, at *10 (S.D. Fla. June 2, 2017); *Coach, Inc. v. Chung Mei Wholesale, Inc.*,
2016 WL 7470001, at *5 (S.D. Fla. June 17, 2016); *ITT Corp. v. Xylem Grp., LLC*, 963 F. Supp.
2d 1309, 1323-24 (N.D. Ga. 2013); *Zurco Inc. v. Sloan Valve Co.*, 785 F. Supp. 2d 476, 500 (W.D.
Pa. 2011); *Atlanta Allergy & Asthma Clinic, P.A. v. Allergy & Asthma of Atlanta, LLC*, 685 F.
Supp. 2d 1360, 1378 (N.D. Ga. 2010); *Coach Servs.*, 2010 WL 2266023 at *3; *Provide Commerce,
Inc. v. Preferred Commerce, Inc.*, 2008 WL 926777, at *3 (S.D. Fla. April 4, 2008); *Flowers
Bakeries Brands, Inc. v. Interstate Bakeries Corp.*, 2010 WL 2662720 at *10 (N.D. Ga. June 30,
2010).

need not all favor confusion for there to be infringement. *Savannah College of Art & Design, Inc. v. Sportswear, Inc.*, 983 F.3d 1273, 1286-1288 (11th Cir. 2020); *Flowers Bakeries*, 2010 WL 2662720 at *10. The factors clearly favor Eleven, and at a minimum, there are disputed issues of fact.

### A.   The ELEVEN Marks Are Conceptually and Commercially Strong.

The first factor examines the conceptual and commercial strength of the ELEVEN Marks. *FCOA*, 57 F.4th at 948. Both factors favor Eleven, such that it has strong trademark rights. *SCAD,* 983 F.3d at 1287.

As to conceptual strength, courts classify marks as fanciful, arbitrary, suggestive, or descriptive. *FCOA*, 57 F.4th at 948. Arbitrary and fanciful marks "bear[] no relationship to the product." *TracFone Wireless, Inc. v. SND Cellular, Inc.*, 715 F. Supp. 2d. 1246, 1256 (S.D. Fla. 2010). Suggestive marks require imagination for the consumer to connect them to the services. *Playtex Prods., Inc. v. Georgia-Pac. Corp*., 390 F.3d 158, 164 (2d Cir. 2004). Descriptive marks "identif[y] a characteristic or quality of the service or product," *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1358 (11th Cir. 2007), "such that [they] "call[] that product immediately to mind[.]" 1 McCarthy §11:19. An incontestable mark's conceptual strength is "presumed." *Dieter v. B & H Indus. of Southwest Fla., Inc*., 880 F.2d 322, 329 (11th Cir. 1989); *see also Frehling Enters. Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1336 (11th Cir. 1999).

The ELEVEN Marks are presumed strong given Eleven's incontestable registrations. SOF ¶2; *Dieter*, 880 F.2d at 329. They also are arbitrary, having no specific meaning when applied to Eleven's services. Dictionary definitions show "eleven" is not associated with hotels; Movants' own marketing expert admitted he had never seen "eleven" "used to identify a type of hotel," and that the term "could refer to anything." SOF ¶¶119-124. Thus, the ELEVEN Marks are arbitrary and conceptually strong. *JFJ Toys, Inc. v. Sears Holdings Corp.*, 237 F. Supp. 3d 311, 333 (D. Md. 2017); *Carnival Brand*, 187 F.3d at 1312; *Costa Farms, LLC v. Costa Tropicals and Flowers*, *Inc*., 2013 WL 12092473 at *4 (S.D. Fla. Aug. 19, 2013); *Ford Motor Co. v. O.E. Wheel Distrib*., *LLC*, 868 F. Supp. 2d 1350, 1362 (M.D. Fla. 2012); *Am. Historic Racing Motorcycle Ass'n, Ltd. v. Team Obsolete Promotions*, 33 F. Supp. 2d 1000, 1005 (M.D. Fla. Dec. 8, 1998).

Movants claim the marks are "laudatory" and so "descriptive," Mot. 10-11, but that is factually and legally wrong. "Eleven" does not "immediately convey[]" anything about Eleven's

services, and there is no evidence consumers perceive the marks as descriptive.[14] 1 McCarthy §11:19; *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1320 (11th Cir. 2012). Regardless, courts have found even laudatory terms to "generally [be] deemed suggestive." *Estee Lauder Inc. v. The Gap, Inc.*, 108 F. 3d 1503, 1509 (2d Cir. 1997); *see also Plus Prods. v. Plus Disc. Foods, Inc.*, 722 F.2d 999, 1005 (2d Cir. 1983); *In re Ralston Purina Co.*, 191 U.S.P.Q. 237, 238 (T.T.A.B. May 27, 1976).[15] Movants are wrong that the fact that "eleven" is an English word makes it descriptive. Mot. 11. In fact, "[s]ome of the strongest marks are 'common words'" like "SHELL, CAMEL, and APPLE," which are arbitrary for "gasoline, cigarettes and computers, respectively." *Visa Int'l Servs. Ass'n v. JSL Corp.*, 533 F. Supp. 2d 1089, 1096 (D. Nev. Dec. 27, 2007). This logic applies here, making the marks strong.

As to commercial strength, courts consider "the real-world consumer recognition of a mark, most often created by the efforts . . . of the mark holder." *FCOA*, 57 F.4th at 950. Relevant facts include advertising and promotion, sales, and media coverage. *Id*. Such factors favor Eleven.

- **Advertising and Promotion:** Eleven has extensively used and promoted the ELEVEN Marks since 2011. SOF ¶¶9-14. It has invested heavily in promoting its brand, hiring marketing and public relations firms, and spending almost ▮▮▮▮▮ on advertising. *Id.* ¶18; SAF ¶¶10, 18. It has advertised nationally for over a decade, including in luxury lifestyle magazines (*e.g.*, *Architectural Digest, Haute Living, Conde Nast Traveler*),[16] social media,[17] public sponsorships of events and athletes, and branded merchandise (*e.g.*, hats, shirts, cups). SAF ¶¶10-12, 52. This has resulted in ▮▮▮▮▮ of annual visits to its website. *Id.*¶13.

- **Sales and Consumers:** Eleven has hundreds of employees and ▮▮▮▮▮. SOF ¶¶15, 18-19. ▮▮▮▮▮ and ▮▮▮▮▮ unique bookings (with more guests than that). SAF ¶14; RSOF ¶¶113-14. ▮▮▮▮▮ consumers receive Eleven's regular marketing emails. SAF ¶84. Eleven has had dozens of luxury hotels, including in Amsterdam, Colorado, France, Iceland, Chile, New York, and more. SOF ¶21; SAF ¶17.[18]

---

[14] Eleven's internal inspiration for its mark, or ▮▮▮▮▮ Mot. 10-11, does not matter; the term's actual meaning and consumer perception governs. *Miller's*, 702 F.3d at 1320.

[15] Movants' cases do not support their position as they involved descriptive terms. *FCOA*, 57 F.4th at 951 ("foremost" for insurance products); *J & J Snack Foods Corp. v. Earthgrains Co.*, 220 F. Supp. 2d 358, 371 (D.N.J. 2002) ("Break & Bake" for frozen cookie dough).

[16] Movants' contention that Eleven does not advertise "in the alleged infringer's area," Mot. 12, is wrong. Eleven advertises nationally and has used third-party brokers, including in Florida. SAF ¶¶11-12, 42. *Tana* is inapposite; it involved a common law mark that was not advertised nationally or in the relevant local area. 611 F.3d at 776-77.

[17] Eleven has tens of thousands of followers on all major social media platforms. SAF ¶12.

[18] Movants point to Eleven's profits as evidence that Eleven's Marks are weak. Mot. 12. But courts

- **Unsolicited Media Coverage:** Eleven has had substantial press coverage. It has been featured in hundreds of articles since 2011, including in national publications like *Robb Report*, *The Wall Street Journal*, *The Huffington Post*, *USA Today*, and more. SAF ¶15. Eleven has over 50 awards, including from *Conde Nast Traveler*, *Robb Report*, and the *Daily Telegraph*. SAF ¶16.

Such facts support a finding that the ELEVEN Marks are commercially strong. *MC3 Invs. LLC v. Loc. Brand, Inc.*, 661 F. Supp. 3d 1145, 1162 (N.D. Fla. 2023); *Hi-Tech Pharms., Inc. v. Nutrition Res. Servs., Inc.*, 2024 WL 649235, at \*3 (N.D. Ga. Feb. 15, 2024); *George Basch Co., Inc. v. Blue Coral, Inc.*, 968 F.2d 1532, 1536 (2d Cir.1992).

Movants' arguments to the contrary fail. Neither "comparative strength" (measured against Eleven's competitors) nor survey evidence, Mot. 12, is required. *PlayNation Play Sys., Inc. v. Velex Corp.*, 924 F.3d 1159, 1166 n.3 (11th Cir. 2019).[19] Movants' reliance on third-party uses of "eleven" or "11" also are misplaced. There is no "crowded field." Mot. 11. Courts do not broadly consider whether a word is used in any context at all. Rather, the focus is on use "in the same market"—luxury accommodations. *FCOA*, 57 F.4th at 950. Third-party users that "engage in a business different from that of [plaintiff] may not diminish the strength of [plaintiff's] mark." *Safeway Stores, Inc. v. Safeway Disc. Drugs, Inc.*, 675 F.2d 1160, 1165 (11th Cir. 1982); *PlayNation,* 924 F.3d at 1166; *Gold Kist, Inc. v. ConAgra, Inc.*, 708 F. Supp. 1291, 1298 (N.D. Ga. 1989); *Bd. of Regents of the Univ. Sys. of Ga. v. Buzas Baseball, Inc*., 176 F. Supp. 2d 1338, 1351 (N.D. Ga. 2001). Courts consider (1) the frequency of the uses, (2) the full names of third parties, and (3) the business in which the users are engaged. *FCOA*, 57 F.4th at 950.[20]

Here, these factors show there is no crowded field, and EIP's marks are strong. In fact, EIP is one of very few, if not the only entity that owns a registration for an ELEVEN-formative mark

---

look to sales—of which Eleven has plenty. SAF ¶14. *FCOA*, 57 F.4th at 950; *JFJ Toys*, 237 F. Supp. at 335. Otherwise, companies would be disincentivized from reinvesting in and advertising their brand, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. SAF ¶¶10, 18.

[19] Movants' reliance on *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc*., 830 F.3d 1242 (11th Cir. 2016) is misplaced. Since then, the Eleventh Circuit has repeatedly held that raw advertising figures, along with additional evidence, is sufficient to show commercial strength. *PlayNation*, 924 F.3d at 1166 n.3; *FCOA*, 57 F.4th at 951-52 n.17. Eleven has ample evidence.

[20] Movants are wrong that the marks' strength is diminished by third-party use in unrelated industries. In fact, the case Movants rely upon, *FCOA*, reflects that the mere frequency of third-party use is insufficient. 57 F.4th at 950. Movants' other cases involve third parties in the same filed as plaintiff. *E.g.*, *Carnival Corp. v. SeaEscape Casino Cruises, Inc.*, 74 F. Supp. 2d 1261, 1266 (S.D. Fla. 1999) (Moreno, J.) (entertainment industry).

for luxury hotels.[21] SAF ¶19. The vast majority of third-party uses are irrelevant as they are for far-afield products (*e.g.*, bus station, hair studio).[22] The few that are for accommodations are for properties that cannot be considered luxury (*e.g.*, the low-budget "11th Avenue Apartments" building with income restrictions), use "11" as the literal street address (*e.g.*, 11 Madison Avenue located on 11 Madison Avenue), are exclusively outside the U.S. (*e.g.*, 11@CENTURY HOTEL), and/or use additional terms. RSOF ¶32; SAF ¶19; *see also, e.g.*, D.E. 232-27 at 123, 404. Further, courts do not evaluate third-party uses in the vacuum of a search report; what matters is the extent of use in the actual marketplace, which must be proven with evidence. 2 McCarthy § 11:89; *Turner v. HMH Pub. Co.*, 380 F.2d 224, 228 (5th Cir. 1967); *Lexington Mgmt Corp. v. Lexington Capital Ptrs.*, 10 F. Supp. 2d 271, 281-82 (S.D.N.Y. 1998). Movants have not done that. Nor do the uses on which they attempt to rely detract from the strength of the ELEVEN Marks. *FCOA*, 57 F.4th at 951; *Safeway*, 675 F.2d at 1165.

### B.      The ELEVEN Marks and the Infringing Marks Are Similar.

"The greater the similarity, the greater the likelihood of confusion." *FCOA*, 57 F.4th at 952 (citations omitted). "[T]he marks don't need to be identical to support a finding of similarity[.]" *Id.* The relevant inquiry is whether the parties' marks create the same overall impression when viewed separately. *Sovereign*, 809 F.3d at 1186. Courts "consider[] the overall impressions that the marks create, including the sound, appearance, and manner in which they are used." *Frehling*, 192 F.3d at 1337; *SCAD*, 983 F.3d at 1283. The factor is "highly fact sensitive." *Zurco*, 785 F. Supp. 2d at 494. Courts have refused to dismiss infringement claims on summary judgment involving far more dissimilar marks than those at issue here. *Franklin Square*, 2022 WL 1768846, at *3; *Natura N.Y. LLC v. Importaciones Defalla, LLC*, 2016 U.S. Dist. LEXIS 147620, at *15-16 (S.D. Fla. Oct. 24, 2016); *Ewe Group, Inc. v. Bread Store, LLC*, 54 F. Supp. 3d 1343 (N.D. Ga. 2014); *Interstate Brands Corp.*, 53 U.S.P.Q.2d 1910, 2000 WL 187204, at *4 (T.T.A.B. 2000).

The ELEVEN Marks and Infringing Marks are visually and aurally similar (focusing on ELEVEN and 11), and convey the same commercial impression, shown below. SAF ¶¶21-23.

---

[21] There were no federal registrations or common law uses for luxury hotels at the time of Eleven's clearance reports. SAF ¶19. And the few applications that included hotel services were either abandoned at the time of the report or have since been abandoned. *Id.*

[22] Movants' arguments show the need to grant Eleven's Motion *in Limine* to Exclude Documents, Evidence, Argument, and Testimony Related to Irrelevant Third-Party Uses. D.E. 208.

 

As to the **E11EVEN Marks**, their most distinctive and prominent element is E11EVEN, which is nearly identical to ELEVEN. SAF ¶21. While E11EVEN includes "11" in place of "L," that is immaterial. Visually, "11" looks like two lower case "l's" and thus gives the same impression. *Id.* ¶¶21-23. The similarities are reinforced by the fact that Eleven's registered logo is "11."[23] SOF ¶2. Movants use (and GR applied to register) 11 HOTEL. SOF ¶¶34, 43. Movants admit E11EVEN is pronounced as ELEVEN (making them aurally identical), and consumers frequently write the former as "Eleven."[24] SAF ¶20. As seen above, the logos and fonts are highly similar. Both use sanserif font, all capital letters, black and white coloring,[25] and a modern, sleek aesthetic. SAF ¶23. The marks are similar. *Natura*, 2016 U.S. Dist. LEXIS 147620, at *15-16.

Movants' attempts to distinguish the E11EVEN marks fail. The "atypical spelling" does not make the marks dissimilar, but only highlights the focus on ELEVEN/11. Courts find marks similar despite spelling differences.[26] *Wreal*, 38 F.4th at 130-31, 140; *Alfa Corp. v. Alpha Warranty Services, Inc.*, 696 F. Supp. 3d 1086, 1100 (M.D. Ala. 2023). Including "Hotel & Residences," "Residences Beyond," or "Experience" does not distinguish the marks. *Silverton Mortgage Specialists, Inc. v. FDIC for Silverton Bank, N.A.*, 2012 WL 13001592 at *14 (N.D. Ga. Sep. 28, 2012); *see also Frehling*, 192 F.3d at 1337; *PlayNation*, 924 F.3d at 1168. E11EVEN (or ELEVEN) is the most prominent aspect of the marks. *FCOA*, 57 4th at 953; *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1514 (11th Cir. 1984). If anything, those words only increase the

---

[23] Contrary to GR's contention (at 9), GR's marks include a stylized logo that GR describes as "the word 'ELEVEN' in all capital letters with the 'L' substituted with the number '11', in the font shown." D.E. 252-13. Regardless, the word marks are highly relevant and telling. SAF ¶¶20-23.

[24] In fact, Movants used this as an excuse for not conducting an appropriate search for evidence of actual confusion—they searched only "eleven experience." RSOF ¶¶202-203.

[25] Movants contend they use a black and gold color scheme. Mot. 9. But there is ample evidence, even on Movants' website, that shows the mark in black and white. SAF ¶¶23, 53.

[26] Movants' cases do not support their position. In *MC3*, the Court found the marks substantially similar where the dominant portion of the logos used the same word (spelled differently). 661 F. Supp. 3d at 1162 (LOCAL with the initial or terminal "L" replaced with an upside-down image of Florida). And in *Armstrong Cork v. World Carpets, Inc.*, unlike here, the common word ("world") was only used in fine print. 597 F.2d 496, 504 (5th Cir. 1979).

likelihood of confusion as they show the services are related.[27]

Movants are wrong that the marks convey "vastly different commercial impressions." Mot. 10. They claim the E11EVEN marks convey an association with the nightclub, whereas the ELEVEN Marks convey a statement of quality. The connection to the club does not transform the marks' meaning. By including the terms "Hotel" and "Residences," the E11EVEN Marks communicate that they are *for hotels*, thus giving the same commercial impression as the ELEVEN Marks. *Silverton*, 2012 WL 13001592 at *14. Although Movants are wrong about the commercial impression of the ELEVEN Marks (which, as discussed above, are arbitrary), their argument still fails as E11EVEN was selected to convey being "on a scale of 1 to 10 an 11."[28] SAF ¶24.

The **<u>WEST ELEVENTH Marks</u>** also are highly similar and focus prominently on 11 and ELEVENTH. SAF ¶¶22-23. West Eleventh is promoted as being in "District 11"—a term coined by Marc Roberts to refer to the area of the E11EVEN club and Infringing Hotels. SOF ¶¶ 33, 37, 41. West Eleventh often is referred to as the "███████" in branding and media coverage. SAF ¶25. Its close ties and geographic proximity with the first two towers make it likely that consumers will view "West Eleventh Residences" as an extension of the E11EVEN brand. SAF ¶26. And the addition of "WEST" and "RESIDENCES" do not distinguish the marks or "reduce the chance of consumer confusion." *Silverton*, 2012 WL 13001592 at *14; *Frehling*, 192 F.3d at 1337; *PlayNation*, 924 F.3d at 1168. Moreover, both use stylistically similar logos and fonts: sanserif; all capital letters; black and white; prominent use of "11." SAF ¶¶22-23. Movants are wrong that using entirely separate marks (PMG and Airbnb) warrants a finding of dissimilarity. Those marks are not at issue so are irrelevant. *Sands, Taylor & Wood Co. v. Quaker Oats, Inc.*, 978 F.2d 947, 954 (7th Cir.1992); *Am. Home Prod. Corp. v. Johnson Chem. Co.*, 589 F.2d 103, 107 (2d Cir. 1978). Nor do they minimize the likelihood of confusion; instead, they exacerbate it as Eleven also sells through Airbnb. SAF ¶41. *Bd. of Supvrs. for Louisiana State Univ. Agr. & Mech. College v. Smack Apparel Co.*, 550 F.3d 465, 482-83 (5th Cir. 2008).

---

[27] Movants' cited case, *Hard Rock Cafe Int'l v. RockStar Hotels, Inc.*, though procedurally distinct as it considered a preliminary injunction, supports this point. 2018 WL 7825183, at *12 (S.D. Fla. June 13, 2018) ("Rock Star Suites" and "RockStar Hotels" similar as "Suites" and "Hotels" were "suggestive of the hospitality industry").

[28] In fact, contrary to Movants' contention (at 14), the parties' advertising is similar. Both parties draw upon associations with luxury and exclusivity. D.E. 277-31 ¶123; SAF ¶¶43, 52.

## C.      The Parties Offer Identical and Highly Related Goods/Services.

This factor considers whether the parties' services are "the kind that the public attributes to a single source." *Martin*, 756 F.2d 1525, 1530 (11th Cir. 1985). The focus is not on whether the services are identical or competing, *Babbit Elecs.*, 38 F.3d at 1179; but rather on "the reasonable belief of the average consumer as to . . . the likely source of the goods." *Frehling*, 192 F.3d at 1338. Even dissimilar services can be sufficiently related if consumers may believe they come from one source. *E.g., Martin, 756 F.2d at 1530; Blumenfeld Dev. Corp. v. Carnival Cruise Lines, Inc.*, 669 F. Supp. 1297, 1313 (E.D. Pa. Sept. 25, 1987); *Drew Est. Holding Co., LLC v. Fantasia Distrib., Inc.*, 875 F. Supp. 2d 1360, 1369 (S.D. Fla. 2012); *Visa Int'l Serv. Ass'n v. Visa Hotel Grp., Inc.*, 561 F. Supp. 984, 991 (D. Nev. Apr. 8, 1983). This is an "intensely" factual issue. *Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 287-88 (3d Cir. 2001). The more similar the products, the more likely confusion. *Martin*, 756 F.2d at 1525.

Here, the parties offer identical, overlapping, and highly related services. Both parties offer luxury accommodations with high-end amenities. Eleven offers luxury hotels and vacation homes, which include the comforts and amenities of five-star hotels, such as fine-dining, wellness spas, personalized experiences, yoga and other activities, interior designs with exceptional views, saltwater pools, hot tubs, saunas, steam rooms, Isopod flotation tanks, and helipads.[29] SAF ¶¶27-29. Such luxury offerings are promoted in Eleven's marketing materials, as well as third-party reviews and articles.[30] *Id*. ¶30. Eleven's rates reflect its high-end offerings, ███████████ ███████████████████████████████████████████████████████ *Id*. ¶31.

Movants also offer luxury accommodations. The Infringing Hotels are marketed and function as "hotels," offering short-term rentals for as little as a single-night. SAF ¶¶32, 35. E11even Hotel will have a centralized "hotel pool" management system offering nightly rooms; E11even Beyond will be an extended-stay hotel with 30-day or longer rentals; West Eleventh will be exclusively available on Airbnb (one of the largest hotel platforms). *Id.* ¶¶36-37. This is a key selling point for the condos, which are fully-furnished and come with linens, glassware, etc., like

---

[29] Movants claim Eleven is an "experiential travel" company. Mot. 3. Luxury hotel companies like Eleven operate in the travel industry and offer consumers experiences, such as skiing and spas. SAF ¶¶28-29, 81-82. Guests come to Eleven's hotels for many reasons, including to relax, for bachelor parties, etc. *Id.* ¶82. Eleven's core, essential offering is luxury accommodations. *Id.* ¶81.
[30] Movants claim that Eleven "avoid[s] images of luxury" is unsupported. SAF ¶¶27, 30, 81. In fact, Eleven uses the term "luxury" in its marketing materials. RSOF ¶94.

a hotel, and are purchased as second, third, or fourth homes/investment properties to rent as hotel rooms. SAF ¶¶36-37; D.E. 161 ¶¶29, 31. Movants even ███████████████████████████ precisely because they are building a hotel business. SOF ¶29. The Infringing Hotels are clearly luxury hotels, competing in the same space as Eleven. They are marketed and described as "luxury" and/or "5-star" properties that will offer "unparalleled experiences in luxury living" with "5-star concierge services." SAF ¶32. Movants' luxury amenities include fine-dining with "chef driven" meals; a spa and wellness center; personalized experiences described as "exclusive, personal and self-curated"; design-focused interiors with exceptional views; pools, steam rooms, and more. *Id.* ¶33. Movants also will offer activities such as yoga. *Id.* The condo units are sold at premium prices. *Id.* ¶34.[31] ███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████. *Id.*

██████████████████████████████████████ *Id.* ¶4.

Movants' attempt to distinguish condos from hotels is unavailing. Courts recognize that condos and hotels are highly related and often come from a single source (which is the relevant inquiry). *See supra* § II(A). Given this natural connection, many luxury hotels, including the parties' joint competitors, also offer residences. SAF ¶¶4, 38-39. Eleven's hotel industry expert found "[t]here is no distinction" between such brands, "as so many brands offer both" hotels and residences. *Id.* ¶4. The two naturally go hand in hand, making confusion likely.[32] *Id.* ¶¶4, 37-40.

### D.    The Parties Offer Services in Like Channels, to Like Consumers.

Courts consider "where, how, and to whom the parties' products are sold." *PlayNation*, 924 F.3d at 1168. This factor is "intensely factual." *Checkpoint*, 269 F.3d at 289.

**The Channels Are the Same**. Eleven offers luxury hotels/homes through its website, direct bookings, online/traditional travel agents, real estate brokers, and platforms like Airbnb and

---

[31] Movants' cited cases are inapposite. *RockStar Hotels* considered the "extraordinary remedy" of a preliminary injunction and involved inapplicable facts. 2018 WL 7825183, at *13. *Tana* involved the scope of common law rights and different facts. 611 F.3d at 777.

[32] Movants try to distinguish the location of the parties' properties, but hotels offer locations in both urban and rural places. SAF ¶17. Eleven itself has offered both. *Id.* Eleven also has customers and has had properties in Florida. *Id.* ¶¶17, 42. Courts do not require the parties' hotels to be in the same location for there to be infringement, and Eleven's registrations mean it has nationwide rights. *FCOA*, 57 F.4th at 954; *Coach House Rest., Inc. v. Coach & Six Rest., Inc.*, 934 F.2d 1551,1562 (11th Cir. 1991); *B&B Hardware*, 575 U.S. at 159.

American Express. SAF ¶¶41-42. Movants also offer their condos for sale through third-party brokers. Mot. 15. While condo sales may not be completed online, consumers learn about the Infringing Hotels through websites, sales centers, third-party co-brokerages, and word of mouth. SAF ¶¶43-45. Once open, the Infringing Hotels will be bookable online, including through travel platforms like Airbnb and American Express. *Id*. ¶46.[33] Thus, confusion is likely. *Nakava, LLC v. S. Pac. Elixir Co.*, 2020 WL 4601641, at *8 (S.D. Fla. Aug. 10, 2020); *PlayNation*, 924 F.3d at 1168; *Alfa Corp.*, 696 F. Supp. 3d at 1101; *Churchill Downs Inc. v. Commemorative Derby Promotions*, 2013 WL 5350830 at *9 (N.D. Ga. Sept. 23, 2013).[34]

**The Consumers Are the Same**. The parties sell their services to the same luxury travelers, including (but not only) ███████████████████████. SAF ¶¶47-51. Eleven targets ██ █████████████████████████████████. *Id.* ¶48. Movants target the ██ ██████.[35] *Id.* ¶¶47, 50-51. Both parties have been featured in media targeting such consumers. *Id.* ¶¶47-51. Eleven's hotel expert discussed overlap of customers and trade channels, which makes confusion likely.[36] *Id.* ¶51. *Blumenfeld*, 669 F. Supp. at 1313; *SCAD*, 983 F.3d at 1284.

### E.   The Parties Advertise Their Services in the Same Places.

This factor considers where parties advertise, with overlap favoring confusion. *Ewe Grp.*, 54 F. Supp. 3d at 1350. The parties advertise their luxury accommodations in the same places. Eleven advertises on its website; social media; luxury publications; third-party travel sites; and other national media targeting a luxury lifestyle audience. SAF ¶52. Movants use their websites; social media; luxury publications; other national media; third-party travel sites; and third-party

---

[33] Movants claim (at 21) they are not selling hotel services. Yet, Movants filed this suit and seek a declaratory judgment of non-infringement, precisely so they can proceed with their Infringing Hotels. D.E. 140. Movants cannot hide behind the fact that they are still building the properties, and use that to get a court order allowing them to infringe. *Tuna Family Mgmt. Inc. v. All Trust Mgmt. Inc.*, 2022 WL 2257008, at *13 (S.D. Fla. June 22, 2022); *Victoria's Cyber Secret Ltd. P'Ship v. V Secret Catalogue, Inc.*, 161 F. Supp. 2d 1339, 1356-57 (S.D. Fla. Sept. 10, 2001).

[34] Movants' authority is inapposite. Unlike *Guantanamera Cigars Co. v. SMCI Holding, Inc.*, there is significant evidence of overlapping channels of trade. 2023 WL 3781628 at *21 (S.D. Fla. June 2, 2023).

[35] Movants' contention that their customers are interested in the ultraclub or Miami, Mot. 7, 20, does not make the parties' consumers dissimilar, particularly given Movants' claim that E11EVEN is "world-famous," thus appealing to a large clientele. D.E. 468, Countercl. ¶¶9, 30, 32, 71, 78.

[36] Unlike *Rockstar Hotels*, the Court need not speculate regarding customer overlap. Eleven's hotel expert discussed how Movants and Eleven align on customer demographics, psychographics, travel purpose, and guest preferences. SAF ¶51.

broker sites.[37] *Id.* ¶53. The parties advertise in the same websites and magazines. *Id.* ¶54. Both use online keywords that include "eleven" and "11" as a core marketing strategy. *Id.* ¶¶55-57. Websites offering the parties' products come up together in close proximity in online searches. *Id.* ¶¶58. This is crucial, and leads to confusion, as Eleven's marketing expert explained. SAF ¶¶55-56. This factor favors Eleven. *Perfumebay.com Inc. v. eBay, Inc.*, 506 F.3d 1165, 1174-75 (9th Cir. 2007); *Ewe*, 54 F. Supp. 3d at 1350; *PlayNation*, 924 F.3d at 1169; *Pro Video Instruments, LLC v. Thor Fiber, Inc.*, 2020 WL 11421203, at *10 (M.D. Fla. Apr. 22, 2020).[38]

### F.     Movants Acted in Bad Faith.

Courts consider whether a defendant "had a conscious intent to capitalize on [plaintiff's] business reputation, was ***intentionally blind***, or otherwise manifested improper intent" in adopting the mark. *FIU*, 830 F.3d at 1263. "Continued use of an allegedly infringing mark with knowledge that the mark is substantially similar to a senior mark and after objections to the mark's use . . . may evidence intent or at least intentional blindness." *MC3*, 661 F. Supp. 3d at 1165. This factor involves credibility issues that are "within the sole province of the jury." *Provide Commerce*, 2008 WL 926777, at *3; *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1476 (11th Cir. 1991).[39] This is particularly true where there is evidence of intentional blindness. *Alfa Corp. v. Alpha Warranty Svcs., Inc.*, 696 F. Supp. 3d 1086, 1102-03, 1105 (M.D. Ala. 2023).

Movants were willful or at least intentionally blind. They had actual knowledge of Eleven and its marks by June 2020—7 months before announcing the first Infringing Hotel—when the PTO refused GR's applications based on Eleven's Marks. SAF ¶59. Eleven also notified GR of its rights in March 2022, before any Infringing Hotels were built and long before the third was announced. SOF ¶46. Movants could have used a different name, but chose not to.[40] Instead, they profited off their infringement. SAF ¶¶34, 43-44, 68. Such disregard of prior rights shows bad faith or at least intentional blindness. *Frehling*, 192 F.3d at 1340; *MC3*, 2023 WL 2947437, at *9.

---

[37] The parties' website domains and social media accounts all prominently feature "eleven" and "11." SAF ¶¶52-53, 56. Movants bought "eleven" domains to avoid others diverting customers online, and now Movants are diverting Eleven's customers. *Id.* ¶¶56-58, 64-67.

[38] Unlike *RockStar Hotels*, there is extensive overlap, including in specific publications, the same third-party websites, and extensive Google searches. *PlayNation*, 924 F.3d at 1169; *Pro Video Instruments*, 2020 WL 11421203, at *10.

[39] Intent to copy is not required. *Smith v. Wal-Mart Stores, Inc.*, 537 F. Supp. 2d 1302, 1338 (N.D. Ga. 2008).

[40] B17 claims it chose the West Eleventh name "to describe the property's location," Mot. 14, but that is not the actual address (18 NW 11th St.). RSOF ¶¶219-20.

Movants' reliance (at 14) on their alleged trademark searches is unavailing. Contrary to best practices, ███████████████████████████████████████████████. SAF ¶60. ████



███████████████ *Id.* ¶61. ████████████████████████████████[41] *Id.* ¶62. As Eleven's PTO expert explained, ██████████████████████████████████████████████ ███████████████████ *Id.* ¶¶61-62. Movants also allegedly ██████████████████ ███████████████████████████████████████████████████████████████ ████████████████ *Id.* ¶63. Such evidence supports a finding of intent. *Alfa Corp.*, 696 F. Supp. 3d at 1102-03. At a minimum, there are credibility issues that preclude summary judgment. *Provide Commerce*, 2008 WL 926777, at *3; *Setai Hotel*, 2017 WL 3503371, at *13.

### G. There Is Extensive Evidence of Actual Confusion.

Movants ignore that actual confusion "is not necessary." *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 423 n.5 (2023); *see also* 4 McCarthy §23:12; *SCAD*, 983 F.3d at 1286. Thus, courts have found confusion likely with no survey or anecdotal evidence. *SCAD*, 983 F.3d at 1286-87; *Alfa Corp.*, 696 F. Supp. 3d at 1103-05. Regardless, both forms of evidence exist here, thus favoring Eleven. *Mutual of Omaha Ins. Co. v. Novak*, 836 F.2d 397, 400 (8th Cir. 1987), *cert. denied* 488 U.S. 933 (1988); *Sara Lee Corp v. Kayser Roth Corp.*, 81 F.3d 455, 466-67 (4th Cir. 1996); *Mobil Oil Corp v. Pegasus Petroleum Corp.*, 818 F.2d 254, 259 (2d Cir. 1987).

**Survey Evidence.** Eleven's expert conducted four surveys testing different representative examples of Movants' use of the Infringing Marks. SAF ¶¶64-67. The surveys show net confusion ranging from 13.1% to 37.25%, with a collective average of 23.88%. *Id.* Movant's own surveys also show confusion.[42] *Id.* ¶65. These surveys are strong evidence of confusion. *Exxon Corp. v. Texas Motor Exch. of Houston, Inc.*, 628 F.2d 500, 507 (5th Cir. 1980); *Mutual of Omaha*, 836 F.2d at 400; *Rice v. Brand Imports, L.L.C.*, 2010 WL 11549769, at *4 (N.D. Ga. Sept. 16, 2010).

**Anecdotal Evidence.** "Reliable evidence of actual instances of confusion is practically impossible to secure," so "not essential." *Harold F. Ritchie, Inc. v. Cheseborough-Pond's Inc.*, 281 F.2d 755, 761 (2d Cir. 1960); *Brookfield Commc'ns, Inc. v. West Coast Case Entm't Corp*,

---

[41] Indeed, ██████████████████████████████████████████████████ ██████████████████████████ SOF ¶¶136-37.

[42] Movant's expert reported 53.7% and 52.1% gross confusion in the test cells, and 7.1% and 7.2% net confusion, despite significant methodological issues favoring Movants. SAF ¶¶65-66. When the data was properly analyzed, the net rates of confusion were 18.7% and 13.9%. *Id.*

174 F.3d 1036, 1050 (9th Cir. 1999); *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1077 (9th Cir. 2006). Even a small "quantum of evidence" supports a finding of actual confusion as "[a]ctual confusion by a few" can show "likelihood of confusion by many." *Silverton*, 2012 WL 13001592, at *18 (citations omitted); *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1544 (11th Cir. 1986); *Safeway Stores*, 675 F.2d at 1167 (two instances). *Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229, 1240 (11th Cir. 2008) (two anecdotes); *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 1003-1004 (2d Cir. 1997). Confusion can come as questions or inquiries from customers, friends, family, or acquaintances. *Ewe*, 54 F. Supp. 3d at 1350-51; *see also Cumulus Media, Inc. v. Clear Channel Comm., Inc.*, 2001 WL 34104923 at *2 (N.D. Fla., 2001), *aff'd*, 304 F.3d 1167, 1172, n.5 (11th Cir. 2002).[43] Here, there are anecdotes from many sources. RSOF ¶¶205-06, 226. Eleven was approached by real estate and travel agents and potential customers who believed or asked whether Eleven was affiliated with the Infringing Hotels. *Id.* Confusion is likely to increase once the Infringing Hotels open.[44] *AmBrit*, 812 F.2d at 1544; *Dominion Bankshares Corp. v. Devon Holding Co.*, 690 F. Supp. 338, 347 (E.D. Pa. 1988). This factor favors Eleven. *PlayNation*, 924 F.3d at 1167; Silverton, 2012 WL 13001592 at *20.[45]

### H.    Consumer Sophistication.

Sophistication need not be considered in most cases, and cannot overcome confusion from highly similar marks. *FCOA*, 57 F.4th at 957; *Grotrian, Helfferich v. Steinway & Sons*, 523 F.2d 1331, 1339-42 (2d Cir. 1975). The issue is whether consumers are "sophisticated" such that they are unlikely to be confused as to products' source or affiliation. *Fla. Int'l*, 830 F.3d at 1256. This is not a "woodenly applied" rule. *Morningside Grp. Ltd. v. Morningside Cap. Grp., L.L.C.*, 182 F.3d 133, 143 (2d Cir. 1999). The price point and complexity of a transaction, alone, does not make consumers sophisticated. *Martin*, 756 F.2d at 1530; *Morningside*, 182 F.3d at 143. "The ordinary consumer of real estate brokerage services . . . is not an expert in real estate brokerage transactions," and is instead "likely to be a 'typical buyer exercising ordinary caution.'" *RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*, 655 F. Supp. 2d 679, 707 (S.D. Tex. 2009). Even consumers spending large sums with detailed research can be confused. *Martin*, 756 F.2d at 1530;

---

[43] Unlike *Carnival*, 74 F. Supp. 2d at 1268 and *Hard Candy*, 921 F.3d at 1363, there is both survey and anecdotal evidence of actual confusion.

[44] Movants' incorrectly state that Eleven admitted the absence of confusion. Mot. 13. To the contrary, Eleven's discovery responses detail and reflect the actual confusion. RSOF ¶112.

[45] The Purchase Agreements for the condos that Movants rely on (at 13) do not disclaim confusion.

*Morningside*, 182 F.3d at 143.[46] Movants do not account for initial interest and post-sale confusion.[47] *Earth, Wind & Fire IP, LLC v. Substantial Music Grp. LLC*, 2024 WL 1025265, at *7 (S.D. Fla. Mar. 4, 2024); *RE/MAX*, 655 F. Supp. 2d at 708. This factor does not help Movants. *Morningside*, 182 F.3d at 143; *Dewberry Eng. Inc. v. Dewberry Grp., Inc.*, 2021 WL 5217016, at *10 (E.D. Va. Aug. 11, 2021), *aff'd*, 77 F.4th 265 (4th Cir. 2023); *FCOA*, 57 F.4th at 957.

## IV.    REVERSE CONFUSION IS LIKELY.

Forward and reverse confusion are alternative theories that can be asserted together. *Uber Promotions, Inc. v. Uber Techs., Inc.*, 162 F. Supp. 3d 1253, 1265 n.6 (N.D. Fla. 2016). The latter applies if a "junior user with much greater economic power [] saturates the market with advertising," overwhelming the senior user's marketplace power and value. *Wreal*, 38 F.4th at 127. The "junior user does not seek to profit" from the senior user's goodwill, but the senior user will be injured as "[t]he public comes to assume the senior user's products are really the junior user's or that the former has become somehow connected to the latter." *Id.* at 127-28. "The junior user's ability to saturate the market—even if it has yet to happen—is relevant." *Theia Techs. LLC v. Theia Grp., Inc.*, 2021 WL 291313, at *24 (E.D. Pa. Jan. 28, 2021).

This is a classic case of reverse confusion. Movants claim to be "well-known" and "world-famous." D.E. 161, Countercl. ¶¶7, 9, 29-30, 32; SAF ¶¶69-70. They also claim Eleven is relatively small and " ███████████████ ." Mot. 1, 12-13. Movants already are saturating the market with ads for the Infringing Hotels. SAF ¶¶53, 68. ██████████████████████████ . SOF ¶42; D.E. 472 ¶12. Thus, reverse confusion applies. *Wreal*, 38 F.4th at 127; *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1131 (9th Cir. 1998); *MedAvante, Inc. v. Proxymed, Inc.*, 2006 WL 2927623, at *7 (D.N.J. Oct. 12, 2006).[48] Eleven already is seeing the impact of Movants' ads, as in the Google searches diverting traffic from its site. SAF ¶58. This will only get worse once Movants' hotels are open and bookable on the same platforms as Eleven. *Id.* ¶46. Survey evidence also shows reverse confusion (and Movants offer no contrary survey). *Id.* ¶64. *Wreal*, 38 F.4th at 127; *Sterling Drug, Inc. v. Bayer AG*, 14 F.3d 733, 741 (2d Cir. 1994). Eleven will be

---

[46] Eleven markets to all luxury travelers, not just the ████████████ SAF ¶¶31, 47-48.

[47] *United Country* does not apply; there, the relevant consumer base was limited to only real estate agents. Here, end-consumers who actually purchase the condos or rent hotel rooms are relevant.

[48] Movants' attempt (at 22) to distinguish their notoriety as to "real property" is of no moment, particularly given the Infringing Hotels' early stage. *Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 445 (3d Cir. 2000); *Dominion Bankshares*, 690 F. Supp. at 347.

drowned out by Movants' continued efforts. *Theia Techs.*, 2021 WL 291313, at \*24.[49]

## V.   CONTRIBUTORY INFRINGEMENT APPLIES.

As Movants concede, liability under the Lanham Act applies not only to direct infringers, but also to those who induce or facilitate the infringement of others. *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 853-55 (1982); *Luxottica Grp., S.p.A. v. Airport Mini Mall, LLC*, 932 F.3d 1303, 1312 (11th Cir. 2019). A defendant is contributorily liable for the direct infringement of another where it "intentionally induces" the infringement or supplies a product/service that facilities the infringement with actual or constructive knowledge of the infringement. *Luxottica*, 932 F.3d at 1312. Tellingly, Movants challenge only the "predicate act," arguing Eleven cannot prove direct infringement by Movants or third parties. Mot. 23.[50] But, as explained above, the likelihood of confusion factors favor Eleven. *See supra* § III. Thus, because Movants' other arguments fail, they cannot obtain summary judgment on Eleven's claim that Movants induced each other to infringe. There also is ample evidence that the third parties induced by Movants are directly infringing. For example, real estate brokers are using the Infringing Marks to advertise and sell the Infringing Hotels. SAF ¶¶85-87; *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1252 (10th Cir. 2013) (holding that reasonable jury could find contributory infringement where Lens.com did not take corrective action to stop an infringing ad used by its affiliate). This establishes contributory infringement. *See Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 984 (9th Cir. 1999) (contributory liability applies to those with "[d]irect control and monitoring of the instrumentality used by a third party to infringe").[51]

## VI.   DESCRIPTIVE FAIR USE DOES NOT APPLY TO THE WEST ELEVENTH MARKS.

B17 cannot establish the elements of descriptive fair use. *3Lions Publ'g, Inc. v. Interactive*

---

[49] The field is not "crowded," Mot. 22, as Movants claim, and courts have found reverse confusion even where the term was a common English word. *Visa Int'l Servs.*, 533 F. Supp. 2d at 1096.

[50] Contrary to Movants' assertion (at 23), Eleven's theory of contributory liability is not limited to the direct infringement of third parties. The SACC clearly alleges that certain Movants separately induced their co-Movants to use the Infringing Marks, as well as third parties. *E.g.*, D.E. 451 ¶¶205, 212, 226, 230, 241, 247, 256, 263, 273, 279, 288, 292, 302, 304, 317, 321, 331, 341.

[51] Movants' authority is inapposite, and merely recites the elements for contributory infringement. In contrast to *Optimum Technologies, Inc. v. Henkel Consumer Adhesives, Inc.,* 496 F.3d 1231, 1246 (11th Cir. 2007), Eleven pled a claim for contributory infringement (which Movants do not dispute). And unlike *Suntree Technologies. Inc. v. Ecosense Int'l, Inc.,* 693 F.3d 1338, at 1346-47 (11th Cir. 2012), there is evidence of Movants' intent to mislead and of actual confusion, as discussed above.

*Media Corp.*, 389 F. Supp. 3d 1031, 1042 (M.D. Fla. 2019).

*First*, the WEST ELEVENTH Marks are used as marks. Movants misrepresent the legal standard; it is not whether the marks have acquired secondary meaning. Mot. 24. *Brother Records, Inc. v. Jardine*, 318 F.3d 900, 905 (9th Cir. 2003); *Commodores Ent. Corp. v. Thomas McClary*, 2015 WL 12843872, at *4 (M.D. Fla. Mar. 10, 2015). The issue is whether the WEST ELEVENTH Marks are used as attention-getting symbols and so as marks. *Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934, 938 (10th Cir. 1983); *Sands*, 978 F.2d at 954. That is exactly how they are used—they are not "just a real estate project," Mot. 24. The WEST ELEVENTH Marks are the towers' names, are used at the sales center and on all marketing materials, including as a logo, and will appear on the building's exterior. SOF ¶¶131-35. This is quintessential trademark use. *DCS Real Est. Invs., LLC v. Yapor Corp.*, 2015 WL 12780447, at * 8 (M.D. Fla. Feb. 26, 2015); *Rolex Watch U.S.A., Inc. v. Agarwal*, 2012 WL 12886444, at *8 (C.D. Cal. Dec. 17, 2012); *VOX Amplification Ltd. v. Meussdorffer*, 50 F. Supp. 3d 355, 375 (E.D.N.Y. 2014).[52] Movants' reliance on the PMG and AIRBNB marks is misplaced. Use of house marks does not mean other terms are not used as marks. *Sands*, 978 F.2d at 954; *Beer Nuts*, 711 F.2d at 938. That is even more true here, where the WEST ELEVENTH Marks are the most prominent on marketing materials. SOF ¶¶131-35. *Tree Tavern Products, Inc. v. Conagra, Inc.*, 640 F. Supp. 1263, 1269 (D. Del. 1986).

*Second*, B17 does not use the WEST ELEVENTH Marks in their "primary, descriptive sense." *Commodores*, 2015 WL 12843872, at *4. Unlike other PMG properties, "West Eleven" is not the property's address, and even B17's own marketing expert found the term suggestive. D.E. 161 ¶36; SOF ¶140-142. Fair use does not apply. 1 McCarthy §11:45; *Resort Int'l, Inc v. Great Bay Hotel & Casino, Inc*., 1991 WL 352487, at *7 (D.N.J. Jan. 18, 1991).

*Third*, the Court need not reach good faith, as B17 cannot prove it. Choosing not to use other available descriptors shows bad faith. *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1423 (9th Cir. 1984). B17 could use other terms, like the actual address, but did not. SOF ¶¶136, 143. Movants wanted to use a name that tied in with District 11 and E11EVEN. SAF ¶26. With this "███████" in District 11, Movants continue to disregard Eleven's rights. *Frehling*, 192 F.3d at 1340. There is also evidence of actual confusion, which further shows a lack

---

[52] B17 treated WEST ELEVENTH as a mark ██████████████████████. SOF ¶¶136-37. *Cf. Buccellati Holding Italia SPA v. Buccellati, LLC*, 5 F. Supp. 3d 1368, 1377 (S.D. Fla. 2014); *DCS Real Est. Invs.*, 2015 WL 12780447, at *8.

of good faith. SOF ¶144; *Heron Dev. Corp. v. Vacation Tours, Inc.*, 2017 WL 2895921, at \*13 (S.D. Fla. Apr. 13, 2017), *report & rec. adopted* 2017 WL 2901203 (S.D. Fla. May 26, 2017).

## VII.   *RES JUDICATA* DOES NOT BAR ELEVEN'S UNCLEAN HANDS DEFENSE.

This Court should not dismiss Eleven's affirmative unclean hands defense. Contrary to Movants' argument, the defense is not precluded by *res judicata* based on the PTO's reexamination decision. Whether Movants are relying on claim or issue preclusion, neither applies here.[53] *Vernon v. Ziel*, 2020 WL 4501802, at \*4 (S.D. Fla. June 15, 2020). The reexamination was *ex parte* and not adjudicatory, so *res judicata* (on either theory) does not apply. *In re Vox Populi Registry Ltd.*, 25 F.4th 1348, 1352 n.2 (Fed. Cir. 2022); *Regions Hosp. v. Shalala*, 522 U.S. 448, 463-64 (1998). The reexamination did not allow the opportunity for cross-examination, discovery, and the like. *Realvirt, LLC v. Lee*, 179 F. Supp. 3d 604, 607 (E.D. Va. 2016), *aff'd sub nom.*, *Realvirt, LLC v. Iancu*, 734 F. App'x 755 (Fed. Cir. 2018). The issue of GR's bona fide use in commerce remains pending before the TTAB in the parties' (stayed) cancellation proceeding, which is an adversarial proceeding. SAF ¶¶79-80. The Motion should be denied. *B&B Hardware*, 575 U.S. at 153.[54]

## VIII.   SUBSTANTIAL EVIDENCE SHOWS 11USA'S DIRECT INFRINGEMENT.

11USA is wrong that there is insufficient evidence of its direct infringement. Mot. 25. 11USA ████████████████████████, and has used them. SAF ¶¶71-76. It h████████████████ ████████████████████████████████████████████████████████████████ ████████████████. *Id.* ¶¶72, 77-78. 11USA already has used the Infringing Marks in marketing materials, *e.g.*, on its website. *Id.* ¶73. ████████████████████████████████ ████████████████████████████████████████████████. *Id.* ¶75. All of this is more than sufficient for an infringement claim.[55] *See Tuna Family Mgmt.*, 2022 WL 2257008, at \*13; *Victoria's Cyber Secre*t, 161 F. Supp. 2d at 1356-57.

**CONCLUSION**

For the foregoing reasons, Eleven respectfully requests that the Motion be denied.

---

[53] Movants' only case relates to issue preclusion, but did not involve an *ex parte* proceeding. *Assa Realty, LLC v. Solution Grp. Corp.*, 2018 U.S. Dist. LEXIS 39503, at \*4 (S.D. Fla. Mar. 9, 2018).
[54] Claim preclusion does not apply for the same reasons. *Israel Discount Bank Ltd. v. Entin*, 951 F.2d 311, 314 (11th Cir. 1992); *B&B Hardware,* 575 U.S. at 148; *In re Vox*, 25 F.4th at 1352 n.2.
[55] Without citation, Movants claim Eleven's expert did not opine about, and has never heard of, 11USA. Mot. 25. Eleven's industry expert did, however, render opinions on Movants, including 11USA. RSOF ¶211. Regardless, an expert need to know the precise role of each LLC.

Dated: October 17, 2024

Respectfully submitted,

*/s/ Gavin C. Gaukroger*

Gavin C. Gaukroger
Florida Bar No. 76489
ggaukroger@bergersingerman.com
BERGER SINGERMAN LLP
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone: (305) 755-9500

Dale M. Cendali (admitted *pro hac vice*)
dale.cendali@kirkland.com
Claudia Ray (admitted *pro hac vice*)
claudia.ray@kirkland.com
Shanti Sadtler Conway (admitted *pro hac vice*)
shanti.conway@kirkland.com
Mary Mazzello (admitted *pro hac vice*)
mary.mazzello@kirkland.com
Eric Loverro (admitted *pro hac vice*)
eric.loverro@kirkland.com
Justin Taylor (admitted *pro hac vice*)
justin.taylor@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
Telephone: (212) 446-4800

Miranda D. Means (admitted *pro hac vice*)
miranda.means@kirkland.com
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 385-7500

*Attorneys for Eleven IP Holdings LLC, Grassy Creek LLC, CS Irwin LLC, Irwin Backcountry Guides, LLC, Chad Pike, and Alan Pike*