# EXHIBIT 591



**RUBENSTEIN**
PUBLIC RELATIONS, INC.

March 22, 2023

Marc Roberts
4167 Main St
Jupiter, FL 33458

## LETTER OF AGREEMENT

Dear Mr. Roberts,

This letter of agreement (this "Agreement") will confirm our understanding whereby Marc Roberts (the "Client") retains Rubenstein Public Relations, Inc. ("RPR") as his public relations consultant as further set forth herein. RPR and Client are each referred to as a "Party" and collectively as the "Parties".

### I.   TERM

A.      *Term; Renewal*.  The term of this Agreement shall commence and be effective as of April 1, 2023 (the "Effective Date") and shall continue in full force on a month-to-month basis.

B.      *Termination Upon Notice*. Either Party may terminate this Agreement for any reason or no reason by giving the other Party not less than thirty (30) days' prior written notice thereof (the "Notice Period").

### II.   RPR SERVICES

RPR will perform the following services for Marc Roberts on a best-efforts basis (the "Services"):

A.      *Publicity*.  RPR will seek to publicize the Client through top-tier major media including newspapers, magazines, TV, radio, online outlets, and appropriate trade publications.

B.      *Projection*.  RPR will seek projection of the Client and his activities in a positive and constructive manner.

C.      *Reputation Reinforcement*.  RPR will seek to reinforce the image of the Client among all appropriate audiences.

D.      *Raise Awareness*. RPR will seek to raise awareness of E11even Hotel and Residences' CEO Marc Roberts, by promoting him as an industry innovator, raising his profile as an influential thought leader and business luminary, generating interest and publicity for him among target audiences by implementing the following strategic tactics.

  i.   *Develop Overall Brand Messaging*. RPR will develop a personal brand narrative for Marc Roberts to create a comprehensive and cohesive messaging platform.

  ii.   *Press Kit*. RPR will integrate the core messaging into all communications materials and press kits. The press kit that RPR will develop for Marc Roberts will be provided to

media and other key audiences and will consist of materials including company backgrounder, executive summaries, factsheets, mission statements, press releases, pitches, biographies, select press coverage, etc.

    iii.    *Business Profiles & Feature Coverage.* RPR will proactively identify, pitch, and secure media interview opportunities for feature coverage in top-tier finance, trade and business media on behalf of Marc Roberts. We will prepare a messaging strategy document with talking points to assist him with staying on message to effectively convey his business story in advance of all media interviews. Publications we would target include New York Times, Financial Times, Wall Street Journal, Crain's New York Business, Forbes, Fortune, Business Insider, Bloomberg, among others.

    iv.    *Market Trends & Expert Commentary.* We would issue press releases and pitch letters that capitalize on current trends and news, further promoting Marc Roberts as an industry innovator. In addition, RPR will constantly monitor all breaking news and alert the Client to relevant market updates. We will leverage this news and insert Marc Roberts into the discussion by pitching him as an industry expert who can provide a unique, compelling perspective on all topics business, finance and real estate related. This can result in extensive broadcast, print and online coverage for him in relation to important industry discussions.

    E.    *Sustaining Coverage.* RPR will seek to maintain exposure of Marc Roberts through ongoing media relations, special events and other activities, as appropriate.

    F.    *Guidance.* RPR will provide Marc Roberts with counsel and guidance to enhance his image.

    G.    *Monitor and Report.* RPR will provide monthly status reports detailing the prior month's media placements and agency activities.

    H.    *Special Services.* If Marc Roberts requests that RPR perform services not within the scope of Services (the "Special Services"), the Parties agree to negotiate in good faith to reach mutually agreeable terms (including additional compensation) relating to such services, which additional terms will be set forth in a written agreement executed by the Parties. RPR will not be obligated to perform any Special Services for Client unless agreed prior to in a writing signed by the Parties.

    A.    *Development of Marketing Plans Public Dissemination.* Client acknowledges that the development of a marketing/publicity plan takes time and will require the good faith cooperation of Company. In addition, Client acknowledges that after RPR has issued material to the press or to another third party, its use is no longer under RPR's control. Client acknowledges that RPR cannot assure the use of materials by any media, or that any information published will accurately convey the information provided by RPR.

### III. CONFIDENTIALITY

    A.    *Confidential Information.* It is expressly understood and agreed that all confidential or proprietary information or trade secrets disclosed by the Client or his agents or representatives to RPR or gained by RPR in the course of the relationship with the Client (the "Confidential Information"), shall be considered confidential and shall be retained in confidence by RPR and shall not be used by RPR for any other purposes. In addition, it is agreed by both Parties that all the terms of this Agreement will be considered confidential and shall be retained in confidence by both Parties. This confidentiality provision shall survive the term of this Agreement or any other agreement or understanding between the Parties.

    B.    *Permitted Disclosure of Confidential Information.* Notwithstanding any other provision of this Agreement, RPR may disclose such Confidential Information in the following

2

GR OPCO-00352273

circumstances: (i) as may be required by a court order, subpoena or similar process issued by a court of competent jurisdiction or by a government body; (ii) in order to comply with any law, order regulation or ruling applicable to RPR; or (iii) as may be needed to obtain legal, tax or accounting advice. In addition, the following are not to be considered "Confidential Information" covered by this Agreement: (i) information previously known to RPR or materials to which RPR had access prior to such information or materials provided by the Client or his agents or representatives; (ii) information or materials that are now or later become publicly known; (iii) information disclosed by RPR with the Client's prior consent; or (iv) information or materials provided to RPR by a third party not bound by a duty of confidentiality to the Client.

## IV. FEES AND EXPENSES

A.      *Fees*.   The Client will pay RPR a fee of $7,000 per month for RPR's Services hereunder.  Attached to this Agreement is RPR's initial fee invoice in the amount $7,000 for the period of April 1, 2023 – April 30, 2023.  Payment of the initial invoice is due upon execution of the Agreement.  RPR will bill the Client on a monthly basis for all additional fees and reimbursable expenses, and the Client will pay each invoice within 15 days of receipt of such invoice.

B.      *Expenses*.   The Client will pay all of RPR's out-of-pocket expenses.  These expenses may include postage, copier charges, telephone, messengers, photography, filing costs and other similar expenses.  RPR will not charge a mark-up, surcharge, handling or administrative fee on such expenses.

C.      *Objection*.   All invoices for out of pocket expenses and services rendered shall be binding upon the Client and shall not be subject to objection for any reason unless a good faith objection is made in writing, states the basis for such objection in detail and is delivered to RPR within thirty (30) days of Client's receipt of invoice.

D.      *Prior Approval*.   RPR will obtain prior approval from the Client for any individual out-of-pocket expense that is greater than $150.00.  If RPR's total out-of-pocket expenses are greater than $350.00 in any month, upon the request of the Client, RPR will provide the Client with copies of invoices and other receipts to support the amount of out-of-pocket expenses.

E.      *Final Invoice*.   Except as otherwise set forth in this <u>Section IV</u> , upon termination of this Agreement, RPR shall deliver an invoice for any outstanding amounts due, including fees and expenses. The amount of such invoice shall be due and payable within thirty (30) days of such invoice. The Client understands that, depending on the nature of the expenses that RPR incurs on the Client's behalf, RPR may not receive the bills from vendors who provide certain services and/or products until after this Agreement has terminated. In such case, the Client will reimburse RPR for such expenses within fifteen (15) days after RPR notifies the Client of the amount due.

F.      *Late Fees; Costs of Collection; Termination*.   Any amount not paid by the Client to RPR when due as provided hereunder shall bear interest at the rate of one and one half percent (1.5%) per month until paid. In addition to the fees and expenses payable by the Client to RPR pursuant to the terms of this Agreement, the Client hereby agrees to pay to RPR all costs and expenses, including all reasonable attorneys' fees and disbursements, incurred by RPR in collection of any of its outstanding fees and expenses payable pursuant to the terms of this Agreement.

## V.  TERMINATION OF REPRESENTATION

A.      *Termination By Client*.   As set forth in <u>Section I(B)</u> above, should the Client terminate this Agreement, the Client shall be obligated to pay the monthly fee (including any late fees) during the Notice Period, any and all expenses incurred by RPR, in accordance with <u>Section IV</u> above, and the rights, duties and responsibilities of the Client and RPR shall continue during the Notice Period in full force and effect as provided in this Agreement.

3

GR OPCO-00352274

B.      *Termination by RPR.* Notwithstanding anything to the contrary contained in this Agreement, RPR may terminate this Agreement immediately if any of the following occurs: (i) the Client fails to pay any invoice within thirty (30) days of the due date thereof, (ii) the Client fails to cooperate fully with RPR; or (iii) RPR has concerns that the Client is requesting services that misrepresent the Client in the marketplace. If RPR terminates the Agreement under this provision or any others, the Client shall be responsible for all amounts due RPR, including any late fees, through the date of last Services rendered, and all expenses incurred by RPR in accordance with Section IV above.

C.      *Non Disparagement.* Neither Party will take any action or make any statement that could discredit the reputation of the other Party either during the Term of this Agreement or after it is terminated.

## VI. REPRESENTATIONS AND WARRANTIES, INDEMNIFICATION

A.      *The Client's Representations.* The Client understands that RPR cannot undertake to verify the accuracy of information that the Client (or someone on behalf of the Client) provides to RPR, or information included in material that has been prepared by RPR and approved by the Client. The Client agrees that all information that it or its employees, officers, directors or affiliates (or any person on the Client's behalf) provides to RPR for dissemination will comply with any and all federal, state, and international laws and regulations. All such information will be accurate, will fairly represent the Client's situation and will not omit any information that would make the information that was provided materially misleading.

B.      *The Client's Indemnification of RPR and its Affiliates.* The Client agrees to indemnify, defend and hold harmless RPR, and all individuals acting on its behalf, including but not limited to, RPR's officers, directors, employees, shareholders, representatives and agents (the "RPR Affiliates"), from and against any and all losses, liabilities, claims, damages, deficiencies, costs and expenses (including reasonable attorneys' fees, disbursements and other charges) based upon or arising out of (i) any Services or Special Services performed by RPR; (ii) any materials prepared by RPR for the Client that were approved by the Client; (iii) the Client's performance of any of its obligations under this Agreement; (iv) any materials, releases, reports or information that the Client (or someone on the Client's behalf) supplies to RPR; (iv) any claim against the Client outside the scope of RPR's Services or Special Services; (v) risks or restrictions that RPR brings to the Client's attention in circumstances in which the Client elects to proceed; or (vi) any and all expenses (including reasonable attorneys' fees) incurred by RPR in connection with any subpoena, discovery demand or other directive having the force of law or inquiry that relates to any litigation, proceedings and/or investigations by and between the Client and a third party involving the Client, his products/services, his business or his industry. The Client's agreement to indemnify RPR and the RPR Affiliates will survive the expiration or termination of this Agreement.

C.      *Limitation of Liability.* Neither Party shall be liable for a special, consequential, indirect, punitive, exemplary or incidental damages or other indirect costs, fees, or charges of any kind arising from any claims hereunder, including without limitation, lost profits or business or loss of data, even if such Party has been advised of the possibility of such loss or damages. The Client agrees that RPR's liability under this Agreement shall not exceed the amounts actually paid to RPR as its fee for the prior six (6) months for the Services with respect to which the claim is made.

## VII.     NON-SOLICITATION

The Client agrees that during the Term of this Agreement and for eighteen (18) months after this Agreement terminates, neither the Client nor any of its affiliates will directly or indirectly:

A.      offer to employ any employee of RPR or any of its affiliates,

4

DocuSign Envelope ID: 465B1900-2E9B-448F-A3EC-52A39D24376B

B.      introduce any employee of RPR or any of its affiliates to any other potential employer that wishes to employ any employee of RPR or any of its affiliates, or

C.      otherwise interfere with the employment relationship between RPR and any of its employees or between any RPR affiliate and any RPR affiliate's employees.

## VIII.   NOTICES

All notices shall be sent by certified mail to RPR, Attention: Richard Rubenstein, Rubenstein Public Relations, Inc., 1325 Avenue of the Americas, Suite 2807, New York, New York 10019.

## IX. INDEPENDENT CONTRACTORS

RPR and the Client understand and agree that RPR is an independent contractor and is not authorized to obligate or commit the Client in any manner.

## X.  OWNERSHIP

RPR acknowledges and agrees that, upon full payment of all sums due to RPR under this Agreement, all promotional and publicity materials (collectively referred to as "Materials") generated by RPR in the performance of this Agreement shall become the Client's exclusive property, subject to any third party rights, restrictions or obligations.  Notwithstanding the foregoing, Materials shall not include: (i) creative work that is prepared for the Client (i.e. pitched to the Client) and which the Client elects not to authorize or order from RPR during the Terms of this Agreement; or (ii) variations in the ordinary course (such as drafts) of any ideas, concepts or practices generally in use in the public relations industry and/or used by RPR with its other clients prior to its presentation to the Client.

## XI. GENERAL

A.      This Agreement will be governed by and construed in accordance with the laws of the State of New York without regard to any principles of conflicts of laws.  All actions or proceedings in any way, manner or respect arising out of or from or related to this Agreement shall be litigated only in courts located within New York County as to state court actions, and the Southern District of New York as to federal court actions, which courts shall have the exclusive jurisdiction over all actions or proceedings.

B.      The Parties represent and warrant that they have each consulted with independent counsel of their choosing prior to signing this Agreement.  The Parties further represent and warrant that this Agreement was jointly drafted and/or negotiated such that neither Party is deemed to be the drafter and therefore any ambiguity in this Agreement is not to be construed against either Party.

C.      The Client may not assign its rights, nor its obligations, under this Agreement.

D.      This Agreement constitutes the entire agreement between RPR and the Client with respect to public relations services. This Agreement supersedes all prior agreements or understandings between RPR and the Client.

E.      RPR and the Client may amend, supersede or modify this Agreement only in writing signed by each of RPR and the Client.

F.      RPR and the Client may execute this Agreement in two counterparts, each of which will be considered an original but all of which together will constitute one and the same instrument.

Please indicate your acceptance of the foregoing terms by signing in the space indicated below. Please return the signed Agreement to us together with the initial monthly fee of $7,000. We look forward to a long and mutually productive relationship.

5

Not Confidential

GR OPCO-00352276

Sincerely yours,

**RUBENSTEIN PUBLIC RELATIONS, INC.**

By: _____
Richard Rubenstein

Name:   Richard M. Rubenstein
Title:    President

Agreed and Accepted as of
the date first written above:
**MARC ROBERTS**

By: _____
Marc Roberts

Name: Marc Roberts

6

Not Confidential

GR OPCO-00352277

DocuSign Envelope ID: 465B1900-2E9B-448F-A3FC-52A39D24376B

March 22, 2023

Marc Roberts
4167 Main St
Jupiter, FL 33458

_____

For public relations services to be rendered during the period of April 1, 2023 – April 30, 2023.

$7,000 initial monthly payment

Not Confidential
GR OPCO-00352278