# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

GR OPCO, LLC

    *Plaintiff,*

vs.

ELEVEN IP HOLDINGS LLC, GRASSY CREEK
LLC, CS IRWIN LLC, IRWIN BACKCOUNTRY
GUIDES, LLC, ALAN PIKE, and CHAD PIKE

    *Defendants.*

    and

ELEVEN IP HOLDINGS LLC

    *Counterclaim Plaintiff,*

vs.

GR OPCO, LLC, 11USA GROUP, LLC, MARC
ROBERTS, DENNIS DEGORI, MICHAEL
SIMKINS, MARC ROBERTS COMPANIES
LLC, PROPERTY MARKETS GROUP, INC.,
PMG-11TH STREET VENTURES, LLC, PMG-
11TH STREET VENTURES II, LLC, BLOCK 17
TRUSTEE, LLC, BLOCK 17 RESIDENTIAL
OWNER, LLC, and LION DEVELOPMENT
OPPORTUNITY FUND LLC

    *Counterclaim Defendants,*

BLOCK 17 TRUSTEE, LLC and BLOCK 17
RESIDENTIAL OWNER, LLC,

    *Counterclaim-Plaintiffs,*

vs.

ELEVEN IP HOLDINGS LLC

    *Counterclaim Defendant*

Case No. 1:22-cv-24119-FAM-TORRES

**DEFENDANTS AND
COUNTERCLAIM PLAINTIFF'S
AMENDED MOTION FOR PARTIAL
SUMMARY JUDGMENT AND
INCORPORATED MEMORANDUM
OF LAW**

Defendant/Counterclaim-Plaintiff Eleven IP Holdings LLC ("EIP") and Defendants Grassy Creek LLC ("Grassy Creek"), CS Irwin LLC ("CS Irwin"), Irwin Backcountry Guides, LLC ("IBG"), Alan Pike, and Chad Pike (together, "Eleven") submit this Amended Motion For Partial Summary Judgment and Incorporated Memorandum of Law against:[1]

- Plaintiff/Counterclaim-Defendant GR Opco, LLC's ("GR") (a) claims based on its allegedly acquired trademarks (D.E. 140, Counts I-II); (b) claim for "cancellation"/"rectification" of Eleven's registrations and unclean hands defense (*Id.*, Count III; D.E. 472 at 66); (c) "fraud on the PTO" defenses (D.E. 472 at 66-67); (d) "failure to give notice of registered trademark" defense (*Id.* at 63); (e) "unlawful use in commerce" defense (*Id.* at 65-66); (f) "naked licensing" defense (*Id.* at 66); and (g) laches, waiver, estoppel, and acquiescence defenses (*Id.* at 64-66);

- Counterclaim-Defendants Dennis DeGori and 11USA Group, LLC's (together, "11USA") (a) genericness and descriptiveness defenses (D.E. 469 at 118–119); (b) non-use and abandonment defenses (*Id.* at 119-120); (c) waiver, laches, acquiescence, and estoppel defense (*Id.* at 119–120); and (d) unclean hands defense (*Id.* at 120);

- Counterclaim-Defendants/Counterclaim-Plaintiffs Marc Roberts, Michael Simkins, Marc Roberts Companies LLC, Lion Development Opportunity Fund LLC, Property Markets Group, Inc., PMG-11th Street Ventures, LLC, and PMG-11th Street Ventures II, LLC's (together, "PMG") (a) waiver, laches, and estoppel defenses (D.E. 475 at 55–56); and (b) counterclaim and defense for fair use (*Id.*, Counterclaim II & at 57); and

- Counterclaim-Defendants/Counterclaim-Plaintiffs Block 17 Trustee, LLC and Block 17 Residential Owner, LLC's (together, "B17," and with GR, 11USA, and PMG, "Defendants") (a) waiver, laches, acquiescence, and estoppel defenses (D.E. 468 at 66); and (b) counterclaims and defenses for genericness, descriptiveness, and fair use (*Id.*, Counterclaims I-III & at 64-65).

## **TABLE OF CONTENTS**

INTRODUCTION....................................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ............................................................... 4

    A.    Eleven's Trademarks and Hotel and Accommodations Business........................... 4

    B.    Defendants' Expansion into Luxury Hotels/Condominiums................................. 4

    C.    GR's Allegedly Acquired Trademarks .................................................................. 5

---

[1] Given the overlap, Defendants' claims, defenses and counterclaims are addressed together unless otherwise stated. This amended motion is submitted pursuant to this Court's October 14, 2024 Order. D.E. 490.

**LEGAL STANDARD** ............................................................................................... **5**

**ARGUMENT** .............................................................................................................. **5**

**I.**     **GR'S CLAIMS BASED ON THE ALLEGEDLY ACQUIRED MARKS FAIL** ........ **5**

     A.     GR Never Acquired the Allegedly Acquired Marks ................................................. 6

     B.     Any Acquisition by GR of the Allegedly Acquired Marks Is Invalid ................... 6

     C.     GR Abandoned Any Rights in the Allegedly Acquired Marks ............................. 8

     D.     GR Did Not Acquire Relevant Prior Trademark Rights ........................................ 9

     E.     GR's Infringement Claim Is Barred by Laches ................................................... 11

**II.**    **GR'S CANCELLATION CLAIMS AND RELATED DEFENSES CANNOT**
       **SUCCEED AS A MATTER OF LAW** ............................................................. **12**

     A.     GR Cannot Support Its Claim and Defenses of Fraud on the PTO. ................... 12

     B.     GR's Claim for Cancellation or Restriction Due to Nonuse Fails ...................... 15

**III.**   **GR'S FAILURE TO PROVIDE NOTICE OF REGISTERED TRADEMARKS**
       **DEFENSE FAILS AS A MATTER OF LAW** .................................................. **17**

**IV.**    **GR'S UNLAWFUL USE CLAIM FAILS AS A MATTER OF LAW** ..................... **18**

**V.**     **GR'S NAKED LICENSING DEFENSE FAILS AS A MATTER OF LAW** ........... **19**

**VI.**    **DEFENDANTS' LACHES, WAIVER, ACQUIESCENCE AND ESTOPPEL**
       **DEFENSES FAIL** ........................................................................................... **20**

**VII.**   **11USA, PMG, AND B17'S COUNTERCLAIMS AND OTHER DEFENSES FAIL**
       **AS A MATTER OF LAW** ................................................................................ **20**

     A.     The ELEVEN Marks Are Not Generic ............................................................... 21

     B.     The ELEVEN Marks Are Not Merely Descriptive .............................................. 22

     C.     Descriptive Fair Use Does Not Apply. ............................................................... 24

**CONCLUSION** ...................................................................................................... **25**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3Lions Publ'g, Inc. v. Interactive Media Corp.*,
389 F. Supp. 3d 1031 (M.D. Fla. 2019)................................................................24

*A & L Labs., Inc. v. Bou-Matic LLC*,
429 F.3d 775 (8th Cir. 2005) ........................................................................9

*Acciard v. Nat'l Credit Union Admin. Bd.*,
2012 WL 13098059 (M.D. Fla. Feb. 28, 2012) ..........................................15, 18

*Accurate Merch., Inc. v. Am. Pac.*,
1975 WL 21158 (S.D.N.Y. May 22, 1975) ..........................................19

*Adidas Am., Inc. v. Skechers USA, Inc.*,
2017 WL 3319190 (D. Ore. Aug. 3, 2017)................................................25

*Admiral Corp. v. Sewing Mach. Sales Corp.*,
156 F. Supp. 796 (S.D.N.Y. 1957)................................................................18

*Allard Enterps., Inc. v. Advanced Programming Resources, Inc.*,
249 F.3d 564 (6th Cir. 2001) ................................................................11

*Angel Flight of Ga., Inc. v. Angel Flight Se., Inc.*,
424 F. Supp. 2d 1366 (N.D. Ga. 2006)................................................11

*Angel Flight of Georgia, Inc. v. Angel Flight Am., Inc.*,
522 F.3d 1200 (11th Cir. 2008)................................................................12, 14

*Angel Flight of Georgia, Inc. v. Angel Flight Se., Inc.*,
2006 WL 8444582 (N.D. Ga. Nov. 20, 2006) ................................................16

*Armco, Inc. v. Armco Burglar Alarm Co.*,
693 F.2d 1155 (5th Cir. 1982) ................................................................11

*Atlas Beverage Co. v. Minneapolis Brewing Co.*,
113 F.2d 672 (8th Cir. 1940) ................................................................7

*B&B Hardware, Inc. v. Hargis Indus., Inc.*,
575 U.S. 138 (2015)................................................................10

*Badia Spices, Inc. v. Gel Spice Co., Inc.*,
2017 WL 2082794 (S.D. Fla. May 15, 2017) ................................................21

*Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*,
   289 F.3d 589 (9th Cir. 2002) ............................................................8, 9

*BBC Grp. NV LLC v. Island Life Rest. Grp. LLC*,
   413 F. Supp. 3d 1032 (W.D. Wash. 2019)....................................6, 7

*BD Real Hoteles v. Vacation Tours, Inc.*,
   2009 WL 10668495 (S.D. Fla. Nov. 12, 2009)...................................17

*Beaulieu Grp. LLC v. Mohawk Carpet Distrib., Inc.*,
   2017 WL 11634736 (N.D. Ga. Jan. 23, 2017)...................................23

*Beer Nuts Inc. v. Clover Club Foods Co.*,
   711 F.2d 934 (10th Cir. 1983) ...........................................................24

*Beling v. Ennis, Inc.*,
   613 F. App'x 924 (Fed. Cir. 2015) ....................................................13

*Bertini v. Apple Inc.*,
   63 F.4th 1373 (Fed. Cir. 2023) .......................................................9, 10

*Blue Mountain Holdings Ltd. v. Bliss Nutraceticals, LLC*,
   2022 WL 2316386 (N.D. Ga. 2022) ....................................................6

*Blue Mountain Holdings Ltd. v. Bliss Nutraceticals, LLC*,
   2023 WL 5164472 (11th Cir. Aug. 11, 2023)..............................8, 9, 19

*Boathouse Grp., Inc. v. Tigerlogic Corp.*,
   777 F. Supp. 2d 243 (D. Mass. 2011) ..................................................7

*In re Bose Corp.*,
   580 F.3d 1240 (Fed. Cir. 2009)........................................12, 13, 14, 15

*Bronstein v. Bronstein*,
   2007 WL 646965 (S.D. Fla. Feb. 27, 2007) ......................................17

*Buccellati, Holding Italia SPA v. Laura Buccellati, LLC*,
   5 F. Supp. 3d 1368 (S.D. Fla. 2014) .............................................20, 25

*Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*,
   605 F.3d 931 (11th Cir. 2010) ...........................................................23

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)..............................................................................5

*Citibank, N.A. v. Citibanc Grp., Inc.*,
   724 F.2d 1540 (11th Cir. 1984) .........................................................21

*Clark & Freeman Corp. v. Heartland Co.*,
   811 F. Supp. 137 (S.D.N.Y. 1993)........................................................................7

*CNA Fin. Corp. v. Brown*,
   922 F. Supp. 567 (M.D. Fla. 1996).......................................................................8

*Commodores Ent. Corp. v. McClary*,
   822 F. App'x 904 (11th Cir. 2020) .....................................................................18

*Commodores Ent. Corp. v. Thomas McClary*,
   No. 6:14 Civ 1335, 2015 WL 12843872 (M.D. Fla. Mar. 10, 2015)....................25

*Conopco, Inc. v. Campbell Soup Co.*,
   95 F.3d 187 (2d Cir. 1996)................................................................................12

*Creative Gifts, Inc. v. UFO*,
   235 F.3d 540 (10th Cir. 2000) ...........................................................................21

*Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*,
   304 F.3d 1167 (11th Cir. 2002) .........................................................................16

*DCS Real Est. Invs., LLC v. Yapor Corp.*,
   2015 WL 12780447 (M.D. Fla. Feb. 26, 2015) ...............................................24, 25

*Dieter v. B & H Indus. of Sw. Fla., Inc.*,
   880 F.2d 322 (11th Cir. 1989) ...........................................................................22

*Earth, Wind & Fire IP, LLC v. Substantial Music Grp. LLC*,
   2024 WL 1025265 (S.D. Fla. Mar. 4, 2024)........................................................20

*Elliot v. Google Inc.*,
   45 F. Supp. 3d 1156 (D. Ariz. 2014) ..................................................................21

*Estee Lauder Inc. v. The Gap, Inc.*,
   108 F. 3d 1503 (2d Cir. 1997)............................................................................23

*FCOA LLC v. Foremost Title & Escrow Servs. LLC*,
   57 F.4th 939 (11th Cir. 2023) ............................................................................10

*Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.*,
   809 F.3d 737 (2d Cir. 2016)...............................................................................11

*Fitnessglo, Inc. v. Heartglo Inc.*,
   2016 WL 6833488 (T.T.A.B. Aug. 25, 2016) .......................................................14

*Flamingo S. Beach I Condo. Ass'n v. Selective Ins. Co. of Southeast*,
   492 F. App'x 16 (11th Cir. 2013) .........................................................................5

v

*FN Herstal SA v. Clyde Armory Inc.*,
  838 F.3d 1071 (11th Cir. 2016) .............................................................18, 19, 22

*Ford Motor Co. v. O.E. Wheel Distribs., LLC*,
  868 F. Supp. 2d 1350 (M.D. Fla. 2012).............................................................24

*In re G. J. Sherrard Co.*,
  150 U.S.P.Q. 311 (T.T.A.B. June 29, 1966) .......................................................17

*General Mills Inc. v. Health Valley Foods*,
  24 U.S.P.Q.2d 1270 (T.T.A.B. May 1, 1992).....................................................19

*Geovision, Inc. v. Geovision Corp.*,
  928 F.2d 387 (11th Cir. 1991) ...........................................................................16

*Greenlon, Inc. v. Greenlawn, Inc.*,
  542 F. Supp. 890 (S.D. Ohio 1982) .....................................................................8

*Groucho's Franchise Sys., LLC v. Grouchy's Deli, Inc.*,
  683 F. App'x 826 (11th Cir. 2017) .............................................................11, 12, 20

*Hana Fin., Inc. v. Hana Bank*,
  574 U.S. 418 (2015)..............................................................................................9

*Heroes, Inc. v. The Boomer Esiason Hero's Found.*,
  1997 WL 335807 (D.D.C. June 16, 1997).........................................................22

*Heron Dev. Corp. v. Vacation Tours, Inc.*,
  2017 WL 2895921 (S.D. Fla. Apr. 13, 2017) .........................................21, 24, 25

*Hotel Corp. of Am. v. Inn Am., Inc.*,
  153 U.S.P.Q. 574 (T.T.A.B. Mar. 16, 1967)......................................................17

*ICEE Distributors, Inc. v. J&J Snack Foods Corp.*,
  325 F.3d 586 (5th Cir. 2003) ................................................................................6

*Ideal Image Dev. Corp. v. Idealaser Hair Removal Corp.*,
  2019 WL 3890345 (S.D. Fla. June 25, 2019) ....................................................11

*Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc.*,
  303 F.3d 1242 (11th Cir. 2002) ............................................................................6

*interState Net Bank v. NetB@nk, Inc.*,
  348 F. Supp. 2d 340 (D.N.J. 2004) ......................................................................7

*IP-6 Int'l, Inc. v. Nutrigold, Inc.*,
  2023 WL 9958386 (M.D. Fla. Mar. 31, 2023) ...................................................11

*JFJ Toys, Inc. v. Sears Holding Corp.*,
   237 F. Supp. 3d 311 (D. Md. 2017) ................................................................21, 22

*Kason Indus., Inc., v. Component Hardware Grp., Inc.*,
   120 F.3d 1199 (11th Cir. 1997) ....................................................................11, 20

*La Potencia, LLC v. Chandler*,
   2024 WL 1908628 (S.D. Fla. Apr. 30, 2024) ......................................................24

*Las Originales Pizza Inc. v. Batabano Grp., Inc.*,
   2022 WL 4369993 (S.D. Fla. Jul 18, 2022) ........................................................24

*Lobo Enters., Inc. v. The Tunnel, Inc.*,
   822 F.2d 331 (2d Cir. 1987) ...............................................................................17

*Magic Wand, Inc. v. RDB, Inc.*,
   940 F.2d 638 (Fed. Cir. 1991) ............................................................................21

*Marketquest Grp., Inc. v. BIC Corp.*,
   316 F. Supp. 3d 1234 (S.D. Cal. 2018) ..............................................................20

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ...........................................................................................5

*Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*,
   702 F.3d 1312 (11th Cir. 2012) ..........................................................................21

*Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*,
   745 F. Supp. 2d 1359 (S.D. Fla. 2010) ...............................................................5

*Mister Donut of Am., Inc. v. Mr. Donut, Inc.*,
   418 F.2d 838 (9th Cir. 1969) ...............................................................................8

*MPC Franchise, LLC v. Tarntino*,
   826 F.3d 653 (2d Cir. 2016) ...............................................................................12

*N. Am. Med. Corp. v. Axiom Worldwide, Inc.*,
   522 F.3d 1211 (11th Cir. 2008) ..........................................................................16

*In re Nalco Chem. Co.*,
   228 U.S.P.Q. 972 (T.T.A.B. Jan. 31, 1986) ........................................................24

*New Century Mortg. Corp. v. 123 Home Loans, Inc.*,
   2007 WL 9702272 (S.D. Fla. Aug. 9, 2007) .......................................................18

*New West Corp. v. NYM Co. of Calif.*,
   595 F.2d 1194 (9th Cir. 1979) ............................................................................25

*Nguyen v. Biondo*,
  2012 WL 12862799 (S.D. Fla. June 15, 2012) ....................................................................19

*Outlawlessness Prods., Inc. v. Paul*,
  2011 WL 13177705 (M.D. Fla. Apr. 6, 2011) ......................................................................6

*Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*,
  2011 WL 2174012 (S.D. Fla. June 2, 2011) ...................................................12, 13, 14, 15

*Park 'N Fly, Inc., v. Dollar Park & Fly, Inc.*,
  469 U.S. 189 (1985) ....................................................................................................1, 22

*PayCargo, LLC v. CargoSprint, LLC*,
  2021 WL 2592417 (S.D. Fla. June 4, 2021) ........................................................................21

*Penta Hotels Ltd. V. Penta Tours*,
  1988 WL 384940 (D. Conn. Sept. 30, 1988) ......................................................................17

*Phoenix Ent. Partners, LLC v. Milligan, Inc.*,
  2017 WL 3730572 (M.D. Fla. Mar. 21, 2017) ....................................................................16

*Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp., LLC*,
  7 F.4th 989 (11th Cir. 2021) ..............................................................................11, 12, 22

*PlayNation Play Sys., Inc. v. Velex Corp.*,
  924 F.3d 1159 (11th Cir. 2019) ..........................................................................................23

*Playtex Prods., Inc. v. Georgia-Pac. Corp.*,
  390 F.3d 158 (2d Cir. 2004) ...............................................................................................24

*Plus Prods. v. Plus Disc. Foods, Inc.*,
  722 F.2d 999 (2d Cir. 1983) ...............................................................................................23

*Pneutek, Inc. v. Scherr*,
  211 U.S.P.Q. 824 (T.T.A.B. Jul. 30, 1981) .........................................................................19

*PODS Enters., LLC v. U-Haul Int'l, Inc.*,
  126 F. Supp. 3d 1263 (M.D. Fla. 2015) ..............................................................................21

*Popular Bank of Florida v. Banco Popular de Puerto Rico*,
  9 F. Supp. 2d 1347 (S.D. Fla. 1998) ...................................................................................22

*Portland Mavericks Baseball Club, Inc. v. The Nat'l Assoc. of Prof. Baseball Leagues, Inc.*,
  2021 WL 3883232 (T.T.A.B. Aug. 27, 2021) ......................................................................10

*Prairie Island Indian Cmty., A Federally Recognized Indian Tribe v. Treasure Island Corp.*,
2008 WL 2385969 (T.T.A.B. May 15, 2008) ........................................................................10

*R&R Partners, Inc. v. Tovar*,
447 F. Supp. 2d 1141 (D. Nev. 2006) ..............................................................................7, 8

*In re Ralston Purina Co.*,
191 U.S.P.Q. 237 (T.T.A.B. May 27, 1976) .........................................................................23

*RCI Hosp. Holdings, Inc. v. BA Holdings LLC*,
2022 WL 2784797 (N.D. Ga. Jan. 13, 2022) ......................................................................11

*Resort Int'l, Inc. v. Greate Bay Hotel & Casino, Inc.*,
1991 WL 352487 (D.N.J. Jan. 18, 1991) ............................................................................25

*Ritchie v. Williams*,
395 F.3d 283 (6th Cir. 2005) .............................................................................................8

*Rolex Watch U.S.A., Inc. v. Agarwal*,
2012 WL 12886444 (C.D. Cal. Dec. 17, 2012) ..................................................................24

*Safeway Stores, Inc. v. Safeway Props., Inc.*,
307 F.2d 495 (2d Cir. 1962) ............................................................................................24

*Sands, Taylor & Wood Co. v. Quaker Oats Co.*,
978 F.2d 947 (7th Cir. 1992) ...........................................................................................24

*Schmidt v. Versacomp, Inc.*,
2011 WL 13172509 (S.D. Fla Feb. 17, 2011) ....................................................................6, 7

*Sierra On-Line, Inc. v. Phoenix Software, Inc.*,
739 F.2d 1415 (9th Cir. 1984) ..........................................................................................25

*Sovereign Mil. Hospitaller v. Fla. Priory of Knights Hospitallers*,
702 F.3d 1279 (11th Cir. 2012) ........................................................................12, 13, 14, 15

*Sovereign Mil. Hospitaller v. Florida Priory of the Knights Hospitallers*,
809 F.3d 1171 (11th Cir. 2015) .........................................................................................23

*Specht v. Google Inc.*,
747 F.3d 929 (7th Cir. 2014) ............................................................................................16

*Sream, Inc. v. Habsa Enter., Inc.*,
2018 WL 1463655 (S.D. Fla. Jan. 31, 2018) ......................................................................18

*Sream, Inc. v. Tausif Lavina, Inc.*,
2019 WL 1466706 (S.D. Fla. Feb. 12, 2019) ......................................................................18

*Standard Knitting, Ltd. v. Toyota Jidosha Kabushiki Kaisha,*
    77 U.S.P.Q. 2d (T.T.A.B. Jan. 10, 2006) ......................................................................14

*SunAmerica Corp. v. SunLife Assur. Co. of Canada,*
    77 F.3d 1325 (11th Cir. 1996) ........................................................................................20

*Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.,*
    889 F.2d 1018 (11th Cir. 1989) ......................................................................................10

*Tana v. Dantanna's,*
    611 F.3d 767 (11th Cir. 2010) .................................................................................10, 11

*TracFone Wireless, Inc. v. SND Cellular, Inc.,*
    715 F. Supp. 2d. 1246 (S.D. Fla. 2010) ........................................................................23

*Transamerica Corp. v. Moniker Online Servs., LLC,*
    672 F. Supp. 2d 1353 (S.D. Fla. 2009) ..........................................................................16

*U.S. Pat. & Trademark Off. v. Booking.com,*
    140 S. Ct. 2298 (2020) ...................................................................................................22

*United Drug Co. v. Theodore Rectanus Co.,*
    248 U.S. 90 (1918) ...........................................................................................................6

*Van Dyne-Crotty, Inc. v. Wear-Guard Corp.,*
    926 F.2d 1156 (Fed. Cir. 1991) ......................................................................................10

*Velocity Sports Performance Franchise Sys., LLC v. Extreme Fitness, Ltd.,*
    2006 WL 8432579 (N.D. Ga. Jan. 10, 2006) .................................................................21

*Visa Int'l Servs. Ass'n v. JSL Corp.,*
    533 F. Supp. 2d 1089 (D. Nev. Dec. 27, 2007) .............................................................23

*Vital Pharms., Inc. v. Monster Energy Co.,*
    472 F. Supp. 3d 1237 (S.D. Fla. 2020) ...................................................................6, 7, 8

*VOX Amplification Ltd. v. Meussdorffer,*
    50 F. Supp. 3d 355 (E.D.N.Y. 2014) .............................................................................25

*VPR Brands LP v. Shenzhen Weiboli Tech. Co. Ltd.,*
    2023 WL 2317165 (S.D. Fla. Feb. 23, 2023) ...............................................................18

*Welding Servs., Inc. v. Forman,*
    509 F.3d 1351 (11th Cir. 2007) ......................................................................................23

*Westchester Media v. PRL USA Holdings, Inc.,*
    214 F.3d 658 (5th Cir. 2000) ..........................................................................................20

*Zimmerman v. Holiday Inns of Am.*,
 438 Pa. 528 (1970) .................................................................................................10

**Statutes**

15 U.S.C. § 1055 ....................................................................................................16

15 U.S.C. §1060(a)(1) ..............................................................................................6

15 U.S.C. §1064(3) .................................................................................................21

15 U.S.C. § 1072 ....................................................................................................11

15 U.S.C. §1111 .....................................................................................................18

15 U.S.C. §1127 .......................................................................................................8

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................................5

**Other Authorities**

McCarthy on Trademarks and Unfair Competition (5th ed.) ..................................... *passim*

Trademark Manual of Examining Procedure ..............................................13, 14, 16, 17

## INTRODUCTION

In an effort to distract from their blatant infringement of EIP's prior and incontestable trademarks, Defendants brought a series of baseless claims and affirmative defenses that entirely lack merit. Months of discovery has confirmed that there is no evidence to support these claims and defenses. Now is the time to dismiss them and streamline the issues remaining for trial.

Eleven is a long-renowned and established hotel, accommodations, and travel services group known for its award-winning luxury hotels and vacation homes in the U.S. and around the world. Eleven has offered luxury hotel services since 2011 under registered and common law marks for ELEVEN, its "11" logo, and other ELEVEN-formative marks (together, "ELEVEN Marks").[2] In recognition of Eleven's rights, the U.S. Patent and Trademark Office ("PTO") registered the ELEVEN Marks as inherently distinctive as early as July 2012. Such registrations are "incontestable," such that EIP's ownership and exclusive right to use them cannot be challenged. *Park 'N Fly, Inc., v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 192 (1985). Defendants are infringing Eleven's marks by selling and promoting three ELEVEN-branded luxury hotels and condos, first announced in 2021: "E11EVEN Hotel & Residences," "E11EVEN Residences Beyond," and "West Eleventh Residences" (together, "Infringing Hotels," offered under "Infringing Marks"[3]). The Infringing Hotels are marketed and sold to the same luxury consumers, offer the same goods/services, use virtually identical marks, and are sold and advertised through overlapping trade channels. This is textbook trademark infringement. Yet Defendants aim to distract from the core issues with a series of baseless defenses, each of which should be dismissed.

***First***, GR's claims based on its **alleged prior trademark rights** (Count I in part and Count II in full) fail as a matter of law. In September 2022—after the PTO refused GR's applications for the Infringing Marks based on a likelihood of confusion with the ELEVEN Marks, and after Eleven sent a cease and desist letter—GR tried to manufacture prior rights ("Allegedly Acquired Marks") by buying the marks (and, improperly, nothing else) from (1) "The Eleven Inn," a single-location, low-budget motel in Balmorhea, Texas, and (2) "11th Avenue Hostel," a single-location, low-budget hostel in Denver, Colorado ("Alleged Predecessors"). GR cannot rely on such marks for at

---

[2] The "ELEVEN Marks" include U.S. Registration Nos. 4265159, 4180401, 4269487, 4610119, 4384681, 4269438, 4610113, and 4621491 (together, "ELEVEN Registrations"). SOF ¶2.

[3] The Infringing Marks include E11EVEN, E11EVEN HOTEL & RESIDENCES, E11EVEN RESIDENCES BEYOND, 11 HOTEL, and WEST ELEVENTH RESIDENCES, and other such ELEVEN-formative marks and related logos. SOF ¶34 n.5.

least four reasons: (A) The marks were ***never transferred*** to GR. Rather, ███████████

████████████████████████████████████████████████████████████████████

██████████. (B) Even if the marks were transferred, it was in invalid ***assignment in gross***. The anti-assignment in gross rule prevents a party from buying a mark and applying the goodwill to different marks and/or services. That is exactly what happened here. Only the marks were transferred, without their goodwill, and GR is using different marks for highly different services. (C) Even if the transfer were valid, any rights have been abandoned due to ***naked licensing*** because GR has not exercised the minimum required quality control over the Allegedly Acquired Marks. It has not even communicated with the licensees or visited the properties. Thus, any rights have been abandoned. (D) Even if GR owns valid rights, they are ***irrelevant*** here. The common law marks are limited to Balmorhea, Texas, and Denver, Colorado, which are hundreds of miles from the Infringing Hotels as well as Eleven's properties. Thus, they cannot defeat Eleven's nationwide registered rights, or protect Defendants' infringing use. (E) GR's infringement claim is barred by ***laches***. The Alleged Predecessors sat on their hands for ***11 years*** while Eleven used and registered and invested ████ in its ELEVEN Marks. The Alleged Predecessors admit there has been no confusion, and that GR's newly invented claims lack merit. Thus, Counts I and II fail.

   ***Second***, GR's claim to **cancel and/or rectify** the ELEVEN Registrations (Count III) for fraud on the PTO or non-use, and its related fraud on the PTO and unclean hands affirmative defenses, should be dismissed. (A) As to **fraud**, GR cannot satisfy its heavy burden of proof. There is no evidence that the manager and attorney who signed the declarations at issue knowingly made false representations with the ***subjective intent*** to deceive the PTO. The record shows that neither of Eleven's declarants, nor anyone else at Eleven, was aware of the Alleged Predecessors, much less subjectively believed that Eleven would infringe. Nor did Eleven's declarants misrepresent Eleven's first use date of November 11, 2011. Regardless, that date is not material; the law is clear that an error in a first use date cannot sustain a fraud claim where the mark was in use ***as of the Statement of Use***—and here there is ***no dispute*** that Eleven was using the marks by at least then, *i.e.*, May 14, 2012. Similarly, there is no evidence that Alan Pike failed to personally sign Eleven's filings, let alone that he did so with no knowledge of Eleven's use; (B) Discovery also confirmed that GR's claim of **non-use** is baseless. Eleven uses its marks to advertise its hotels and related services, and provides those services. GR's Count III should be dismissed.

   ***Third***, GR's failure to give notice of registered trademark defense fails factually and

legally. GR admittedly had actual knowledge of Eleven's registrations at least by June 2020, months before it announced its Infringing Hotels. The defense should be dismissed.

*Fourth*, GR's unlawful use affirmative defense fails as a matter of law. The Eleventh Circuit and courts in this district have ***rejected*** such a defense. Regardless, GR cannot meet its heavy burden as no court or agency has found that Eleven violated the law, as is required.

*Fifth*, GR cannot meet its burden as to its naked licensing affirmative defense. EIP owns and licenses the ELEVEN Marks to its affiliated entities, including IBG and CS Irwin, which use the marks. EIP and Grassy Creek (its related entity which provides certain management services) exercise extensive oversight and quality control. GR's defense should be dismissed.

*Sixth*, Defendants' overlapping affirmative defenses of laches, waiver, acquiescence, and/or estoppel fail as a matter of law. Eleven asserted its rights within weeks of learning of Defendants' infringement. Eleven has never affirmatively or otherwise consented or acquiesced to such infringement. To the extent GR argues that it previously offered hotel accommodations, that is incorrect. At most, for a limited period before this dispute arose, GR booked rooms for talent and employees, or offered nightclub packages with rooms at third-party hotels. Such alleged use does not support GR's defenses, nor do Defendants have any basis for their mirror-image defenses.

*Seventh*, Defendants' overlapping counterclaims and affirmative defenses of genericness, descriptiveness, and fair use should be dismissed as they cannot meet their burden. (A) The ELEVEN Marks are not **generic**. Defendants cannot overcome Eleven's incontestable registrations and the marks do not identify a class or type of hotel, hospitality, or travel service. (B) Nor are the ELEVEN Marks **merely descriptive and lacking secondary meaning**. Eleven's registrations are *prima facie* evidence that the marks are distinctive, and they are, in fact, distinctive because they are ***arbitrary***, meaning they have no connection to Eleven's services—just as "Apple" is arbitrary for computers and "Shell" is arbitrary for gas. (C) Defendants cannot meet their burden to show that their use of the WEST ELEVENTH Marks is a **descriptive fair use**. Defendants use the WEST ELEVENTH Marks[4] (including its logos) as attention-getting symbols and the branded name of its property, and thus they are used as trademarks. Defendants' use is not merely descriptive. Contrary to their position, "West Eleventh Residences" does not identify the building's address. Defendants could have simply used the address if they so chose, but instead

---

[4] The WEST ELEVENTH Marks include WEST ELEVENTH RESIDENCES, W11, WEST ELEVENTH, and the related logos. SOF ¶118. All emphasis is added unless otherwise noted.

they wanted to use a term and logos that would serve as a brand. Fair use does not apply.

## FACTUAL AND PROCEDURAL BACKGROUND

Eleven respectfully incorporates its statement of facts ("SOF"), which is filed herewith.

### A.    Eleven's Trademarks and Hotel and Accommodations Business

Eleven is a renowned hotel, accommodations, and travel services group that provides luxury hotel and vacation homes under its federally registered and common law ELEVEN Marks in the U.S. and abroad. SOF ¶¶1-3, 5, 8, 21. Eleven has been using the ELEVEN Marks since 2011. *Id.* ¶¶9-14. It owns eight incontestable registrations, with priority dates as early as April 2011. SOF ¶2. Its offerings have been promoted and sold online, in publications, and through word of mouth and travel and real estate agents. *Id.* ¶¶4, 15, 20. Eleven employs hundreds of employees and has over ████████ in sales and spent almost ████████ on advertising. *Id.* ¶¶15, 18-19.

### B.    Defendants' Expansion into Luxury Hotels/Condominiums

Defendants adopted the Infringing Marks for three luxury hotels/condominiums, ████████ ████. *Id.* ¶¶26, 42. Defendants have worked together to advertise, promote, market, and sell the Infringing Hotels. *Id.* ¶¶26, 32, 37, 40-41. In January 2021, GR announced plans to expand with the first Infringing Hotel: E11EVEN Hotel & Residences ("E11EVEN Hotel"). SOF ¶26. Before then, Defendants had not owned, operated, or licensed the Infringing Marks for any branded hotels. *Id.* ¶¶117. In late 2021, Defendants announced E11EVEN Residences Beyond ("E11EVEN Residences"). *Id.* ¶32. In February 2023, Defendants announced West Eleventh Residences ("West Eleventh"), which is adjacent to the other two and which B17 and its affiliates are developing, advertising, and selling. *Id.* ¶¶36, 115, 118. The marketing materials for the three hotels/condominiums prominently feature the Infringing Marks and promote them as having luxury "resort-style" and/or "hotel" amenities. *Id.* ¶¶27-30, 34, 39. GR owns various Infringing Marks ████████. *Id.* ¶¶40, 43. The Infringing Hotels are across the street from GR's E11EVEN nightclub, in what Defendants coined "District 11." *Id.* ¶¶33, 37, 41.

GR applied to register various Infringing Marks for the Infringing Hotels starting in April 2020. *Id.* ¶43. The PTO ***refused*** those applications, finding they were likely to cause confusion with Eleven's marks. *Id.* ¶44. GR deleted certain services to overcome such refusals. *Id.* ¶45. Eleven objected to GR's use and registration, and filed actions before the PTO's Trademark Trial and Appeal Board ("TTAB"). *Id.* ¶¶46-47.

### C.     GR's Allegedly Acquired Trademarks

In September and November 2022, GR 

*Id.* ¶51. No GR employee has visited the Alleged Predecessors, or took any steps to ensure the quality of the products offered under the marks beyond looking at a few online reviews. *Id.* ¶54. The Alleged Predecessors have never complained about Eleven's marks, and admit there has been no confusion. *Id.* ¶¶87-88.

### LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986). The movant "bears the initial responsibility of . . . identifying the portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once that is shown, the burden of production shifts, and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Conclusory allegations or unsupported speculations are insufficient. *Id.* If the non-moving party fails to establish an element on which it has the burden, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23. A dispute "is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" *Flamingo S. Beach I Condo. Ass'n v. Selective Ins. Co. of Southeast*, 492 F. App'x 16, 26 (11th Cir. 2013). The non-moving party may not merely offer a "scintilla of evidence"; the evidence must be sufficient for a reasonable jury to find for it. *Id.* at 26-27.

### ARGUMENT

## I.     GR'S CLAIMS BASED ON THE ALLEGEDLY ACQUIRED MARKS FAIL

GR's theory that based on the Allegedly Acquired Marks, it has not infringed and, instead, Eleven has (Counts I-II) fails as a matter of law. GR must prove it owns valid and enforceable rights. *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 745 F. Supp. 2d 1359, 1368 (S.D. Fla. 2010), *aff'd*, 702 F.3d 1312 (11th Cir. 2012). It cannot meet this burden for four reasons.

### A.      GR Never Acquired the Allegedly Acquired Marks

The party claiming rights must actually own the trademarks. *ICEE Distributors, Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 593 (5th Cir. 2003). Here, there is no evidence of a transfer ***to GR***. ██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████ *Id.* ¶56. GR's 30(b)(6) witness could not identify any other agreements, and GR has produced none—thus, █████████████████████████████████████████

██████████████████████████ *Id.* ¶¶52, 57. *Outlawlessness Prods., Inc. v. Paul*, 2011 WL 13177705, at *5-6 (M.D. Fla. Apr. 6, 2011) (summary judgment granted where no evidence marks transferred); *Blue Mountain Holdings Ltd. v. Bliss Nutraceticals, LLC,* 2022 WL 2316386, *4 (N.D. Ga. 2022).

### B.      Any Acquisition by GR of the Allegedly Acquired Marks Is Invalid

"[I]t is well-settled law that the transfer of a trademark or trade name without the attendant good-will of the business which it represents is, in general, an invalid, 'in gross' transfer of rights." *Vital Pharms., Inc. v. Monster Energy Co.*, 472 F. Supp. 3d 1237, 1262 (S.D. Fla. 2020) (citing *Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1242, 1246 (11th Cir. 2002)); 15 U.S.C. §1060(a)(1). "This 'anti-assignment-in-gross' rule is deeply rooted in trademark law." *Vital Pharms.*, 472 F. Supp. 3d at 1262 (quoting *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97 (1918)). Such rule "prevent[s] the consumer deception that is otherwise likely to occur when a trademark for one good is sold and then used for a different good." *Id.* at 1263. "[C]ourts have universally recognized that a trademark assignment does not transfer goodwill merely because it formally recites that the goodwill is transferred." *Id.* at 1267 n.14 (collecting cases). Rather, "courts focus on the *substance* of the transaction" and the assignee's subsequent trademark use to determine whether the goodwill was actually transferred. *Id.*

**Substantial Similarity.** To determine whether a mark has been transferred without its goodwill, "courts look (primarily) to whether the assignee is using the mark for a 'substantially similar' product." *Vital Pharms.*, 472 F. Supp. 3d at 1263. "Where a transferred mark is to be used on a new and different product, any goodwill which the mark itself might represent cannot legally be assigned." *Schmidt v. Versacomp, Inc.*, 2011 WL 13172509, at *5 (S.D. Fla Feb. 17, 2011) (quotations omitted). "***Even minor differences*** can be enough to threaten customer deception." *Vital Pharms.*, 472 F. Supp. 3d 1263-64. "'Substantially similar' products must have more in common besides belonging to the same general category of products[.]" *BBC Grp. NV LLC v. Island Life Rest. Grp. LLC*, 413 F. Supp. 3d 1032, 1041-42 (W.D. Wash. 2019). Thus, courts have

found transfers invalid where products were in the same category, but different, such as payment and banking software, *interState Net Bank v. NetB@nk, Inc.*, 348 F. Supp. 2d 340, 349-50 (D.N.J. 2004); and specially prepared chicken products sold in different restaurants, *BBC Grp. NV LLC*, 413 F. Supp. 3d at 1039-40.[5] The same analysis applies where the marks are licensed-back to the original owner—court's still look at the marks and services used by the assignee. *Boathouse Grp., Inc. v. Tigerlogic Corp.*, 777 F. Supp. 2d 243, 250-51 (D. Mass. 2011); *R&R Partners, Inc. v. Tovar*, 447 F. Supp. 2d 1141, 1149 (D. Nev. 2006) (assignment with license-back invalid).

GR's luxury hotel/condominiums are a far cry from the single-location, low-budget motel and hostel offered under the Allegedly Acquired Marks. SOF ¶¶30, 34, 39, 48, 58-61, 63-67. The Alleged Predecessors' motel/hostel rooms typically range from $50-$148 per night and are advertised and sold to budget travelers. *Id.* ¶¶48, 58. They do not offer luxury amenities and often feature shared dormitories and bathrooms. *Id.* ¶59. Both GR and the Alleged Predecessors have confirmed that these lodging options are a world away from GR's planned ultra-luxury hotel/condos that target the wealthy and offer extensive amenities. For example, (1) GR's manager and co-founder testified that the Alleged Predecessors do not compete with GR and that ███████ ██████████████████ (2) GR's 30(b)(6) witness and co-founder testified that GR learned of the Alleged Predecessors through counsel and that the accommodations offered were different; (3) 11th Avenue Hostel's owner and 30(b)(6) witness testified that the Infringing Hotels are "luxury accommodations," and that his business "is not a luxury accommodation, it's a hostel," which does not offer similar amenities; and (4) Eleven Inn's owner and 30(b)(6) testified that GR's hotels and his motel are "fishing in a different pond," are not similar and do not offer the same amenities. *Id.* ¶¶60-61, 63-67. GR also does not use the Allegedly Acquired Marks, which are different from the Infringing Marks. *Id.* ¶62. This also establishes an invalid assignment in gross. *See, e.g.*, *InterState*, 348 F. Supp. 2d at 351 (invalid assignment where "NetBank" purchased but Net.B@nk used). On this undisputed record, summary judgment is warranted. *Boathouse*, 777 F. Supp. 2d at 250-51.

**Acquisition of Assets.** Courts "also consider whether the assignee purchased any assets associated with the trademark." *Vital Pharms.*, 472 F. Supp. 3d at 1267. While the transfer of tangible assets is not necessary, the receipt of no tangible assets "tends to show that good will was

---

[5] *See also Clark & Freeman Corp. v. Heartland Co.*, 811 F. Supp. 137 (S.D.N.Y. 1993) (women's v. men's shoes); *Atlas Beverage Co. v. Minneapolis Brewing Co.*, 113 F.2d 672, 677 (8th Cir. 1940) (whiskey v. beer); *Schmidt*, 2011 WL 13172509, at *5 (different kinds of vehicle lifts).

not transferred." *Id.* "After all, when the assignee purchases *nothing* but the trademark, the absence of any tangible acquisition may well undermine the public's legitimate expectation that the mark will 'go in real continuity with the past.'" *Id.*; *see also Mister Donut of Am., Inc. v. Mr. Donut, Inc.*, 418 F.2d 838, 842 (9th Cir. 1969) (assignment in gross where no purchase of customer lists, merchandise, equipment, or other goods); *Greenlon, Inc. v. Greenlawn, Inc.*, 542 F. Supp. 890, 895 (S.D. Ohio 1982) (assignment with license-back invalid as assignor did not transfer business).

This is a classic case of assignment in gross where **only** the marks, and nothing else, were transferred. ███████████████████████████████████████████████████████████████ ███ SOF ¶50. *Vital Pharms.*, 472 F. Supp. 3d at 1267 n.14 ("formally recit[ing]" transfer of goodwill insufficient). GR does not own or run the businesses, nor did it buy any tangible assets. SOF ¶¶50, 70, 75. GR even admitted that the acquisitions were **solely** for this litigation. D.E. 108 at 10. GR also did not communicate with, or receive any information about, the Alleged Predecessors, so it did not even know what it was buying. SOF ¶78. This shows GR's bad faith and supports finding an assignment in gross. *R&R Partners, Inc. v. Tovar*, 447 F. Supp. 2d at 1149 (assignment/license-back invalid where "only practical effect of the purported assignment was to allow [the assignee] to police the trademark"); *Greenlon*, 542 F. Supp. at 894-95. To the extent GR bought anything, it was in name alone and the assignment is legally ineffective.

### C.   GR Abandoned Any Rights in the Allegedly Acquired Marks

Even if GR can show a valid transfer of rights (it cannot), it abandoned them via naked licensing. Naked licensing occurs when a licensor fails to exercise adequate quality control over a licensee. *Blue Mountain Holdings Ltd. v. Bliss Nutraceticals, LLC*, 2023 WL 5164472, at *1 (11th Cir. Aug. 11, 2023); 2 McCarthy §18:48; *see also* 15 U.S.C. §1127. A "quality control" provision in a license is insufficient; what matters is whether such control has "actually" "in fact" occurred. 2 McCarthy §18:48; *Ritchie v. Williams*, 395 F.3d 283, 290 (6th Cir. 2005). The failure to assert "meaningful supervision or inspection" constitutes abandonment. *Blue Mountain Holdings*, 2023 WL 5164472, at *2; *see also CNA Fin. Corp. v. Brown*, 922 F. Supp. 567, 574 (M.D. Fla. 1996), *aff'd in relevant part*, 162 F. 3d 1334 (11th Cir. 1998); *Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589 (9th Cir. 2002).

Here, the licenses contain only boilerplate quality control provisions. SOF ¶68. GR has played **no role at all** in ensuring the quality of the Alleged Predecessors' services. *Id.* ¶¶69-78. ██ ████████████████████████████████████████████████████████████████████████████



███   *Id.* ¶¶49, 54, 72-73, 76-78. In fact, GR did not even know the scope of rights it purported to buy. *Id.* ¶78. ████████████████████████████████████████████

████████████████████████████████████████ *Id.* ¶¶69, 71-77. The Eleven Inn was not even aware that GR *existed* until it received a subpoena in this case. *Id.* ¶73.

GR claims that it conducted quality control because ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ *Id.* ¶79. These limited interactions do not constitute "meaningful supervision or inspection" of the services, and the Allegedly Acquired Marks are thus invalid. *See Blue Mountain Holdings*, 2023 WL 5164472, at *2; *Barcamerica*, 289 F.3d at 598 (granting summary judgment where licensor "played no meaningful role in holding the [product/service] to a standard of quality—good, bad, or otherwise").

### D.    GR Did Not Acquire Relevant Prior Trademark Rights

**<u>Priority</u>.** Under the "tacking doctrine," a "party may claim priority in a mark based on the first use date of a similar but technically distinct mark where the previously used mark is the ***legal equivalent*** of the mark in question or indistinguishable therefrom such that consumers consider both as the same mark." *Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418, 421 (2015). The standard is strict: a "party seeking to tack bears the burden to show the old mark and the new mark 'create the ***same, continuing commercial impression*** so that consumers consider both as the same mark.'" *Bertini v. Apple Inc.*, 63 F.4th 1373, 1377 (Fed. Cir. 2023); *see also id.* at 1378 ("Other circuits uniformly apply the tacking doctrine narrowly.") (collecting cases). Where the marks and/or the products are insufficiently similar, tacking is impermissible and the earlier priority date cannot be used for the later mark. *Id.* (no tacking as services were not "substantially identical").

Here, GR seeks to shield itself from infringement by "tacking" the Allegedly Acquired Marks onto the Infringing Marks in hopes of establishing an early priority date. This effort fails as the marks are not legal equivalents. Instead, the marks themselves are different—*e.g.*, "Eleven Inn" and "11th Avenue Hostel" versus "E11even Hotel & Residences" and "E11even Residences Beyond"[6]—as are the services. SOF ¶¶48, 58-67, 81. On such record, GR simply has no basis to

---

[6] The agreements purport to transfer "Eleven" as a mark, but did not actually do so, as the Alleged Predecessors admitted they never used or owned such mark. SOF ¶80. *A & L Labs., Inc. v. Bou-Matic LLC*, 429 F.3d 775, 779 (8th Cir. 2005) ("assignor may transfer only what it owns").

tack the Allegedly Acquired Marks onto the Infringing Marks, and thereby claim priority over Eleven. *E.g.*, *Bertini*, 63 F.4th at 1378; *Van Dyne-Crotty, Inc. v. Wear-Guard Corp.*, 926 F.2d 1156, 1158-60 (Fed. Cir. 1991) (rejecting tacking for different marks for same goods, but different market); *Portland Mavericks Baseball Club, Inc. v. The Nat'l Assoc. of Prof. Baseball Leagues, Inc.*, 2021 WL 3883232, at *10 (T.T.A.B. Aug. 27, 2021) (rejecting tacking where goods insufficiently related); *Prairie Island Indian Cmty., A Federally Recognized Indian Tribe v. Treasure Island Corp.*, 2008 WL 2385969, at *6 (T.T.A.B. May 15, 2008) (same).

**Geographic Limits.** The rights of common law marks are "limited to those geographic areas in which a mark is actually used in commerce and a zone of reasonable future expansion." *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1027-28 (11th Cir. 1989); *see also Tana v. Dantanna's*, 611 F.3d 767, 780 (11th Cir. 2010). The scope of protection therefor is "coextensive only with the territory throughout which it is known and from which it has drawn its trade." *Tana*, 611 F.3d at 780; *see also* 4 McCarthy §26:27. The owner has the burden to show "the right to use its mark by actual use in a given territory." *Tana*, 611 F.3d at 780. A plaintiff with geographically limited rights cannot prevent the use of another in a different area.[7] *Id.* at 776.

GR cannot meet its burden of showing ███████████████████████████████ ████████████████████████████████████████████ ████████████████████ SOF ¶48. The Alleged Predecessors admitted that they did not operate or advertise beyond those local markets. *Id.* ¶¶82-86. Eleven Inn does not advertise at all, and its promotional activities are "located in West Texas." *Id.* ¶¶83-84. 11th Avenue Hostel only competes with hostels in and around Denver. *Id.* ¶85. Both Alleged Predecessors testified that their alleged common law rights were limited to West Texas and Denver, respectively. *Id.* ¶86. Thus, any rights GR acquired would be limited to those regions, meaning GR can neither use such rights to bless its use of the Infringing Marks in Miami, or enforce against Eleven's use of its marks in any regions other than West Texas and Denver (where Eleven does not operate any properties). *Id.* ¶¶21, 85. *Tana*, 611 F.3d at 780; *Zimmerman v. Holiday Inns of Am.*, 438 Pa. 528, 535-38 (1970), cert. denied, 400 U.S. 992 (1971) (motel's rights limited to 22-mile area); 4 McCarthy

---

[7] This is in contrast to federal registrations, like Eleven's, which grant nationwide rights to the registrant. *FCOA LLC v. Foremost Title & Escrow Servs. LLC*, 57 F.4th 939, 954 (11th Cir. 2023); *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 159, (2015).

§26:2.[8]

### E.    GR's Infringement Claim Is Barred by Laches

GR's infringement claim also fails based on laches. Laches has three elements: (1) delay in asserting a claim, which (2) was not excusable, and (3) caused undue prejudice. *Groucho's Franchise Sys., LLC v. Grouchy's Deli, Inc.*, 683 F. App'x 826, 829 (11th Cir. 2017). If the delay is over 4 years, ***laches is presumed***, and the burden shifts to the trademark owner to disprove laches. *Ideal Image Dev. Corp. v. Idealaser Hair Removal Corp.*, 2019 WL 3890345, at *3 (S.D. Fla. June 25, 2019); *Angel Flight of Ga., Inc. v. Angel Flight Se., Inc.*, 424 F. Supp. 2d 1366, 1370 n.5 (N.D. Ga. 2006); *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.*, 809 F.3d 737, 746 (2d Cir. 2016); *Ideal Image*, 2019 WL 3890345, at *4. GR cannot meet that burden.

***First***, Eleven and the Alleged Predecessors coexisted for over a decade before GR filed this lawsuit. SOF ¶¶87-90. Delay is assessed "from the time [the Alleged Predecessors] knew ***or should have known*** that [they] had a provable claim for infringement.'" *Ideal Image.*, 2019 WL 3890345, at *3 (quoting *Kason Indus., Inc., v. Component Hardware Grp., Inc.,* 120 F.3d 1199, 1206 (11th Cir. 1997)). This is an objective standard, which is met where a party uses a mark "openly and overtly." *IP-6 Int'l, Inc. v. Nutrigold, Inc.*, 2023 WL 9958386, at *4 (M.D. Fla. Mar. 31, 2023); *Armco, Inc. v. Armco Burglar Alarm Co.*, 693 F.2d 1155, 1161 (5th Cir. 1982). The length of the delay can alone be dispositive. *Groucho's*, 683 F. App'x at 830 (laches applied for 10-year delay). Here, Eleven applied to register its ELEVEN Marks in April 2011, has used them since November 2011, and they were registered by July 2012. SOF ¶¶2, 9-14. 15 U.S.C. § 1072 (registration gives constructive notice of ownership). Eleven also extensively advertised its marks nationally. SOF ¶¶4, 18, 20, 23-24. Yet neither Alleged Predecessor ever complained, and they admitted there has been no confusion. *Id.* ¶¶87-89. GR's claims come ***over 11 years*** after Eleven began using its marks, and ***over 10 years*** after they registered. *Id.* ¶¶2, 90. Thus, a strong presumption of laches applies. *Groucho's*, 683 F. App'x at 830; *Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp., LLC*, 7 F.4th 989, 1006-07 & n.13 (11th Cir. 2021); *RCI*

---

[8] Assuming *arguendo* GR acquired any common law rights (it did not), they provide no rights in Florida. A junior user's prior registration gives the junior user nationwide rights to use its mark, subject only to the senior user's common law rights in a particular geography and type of use at the time of registration. *Tana*, 611 F.3d at 780-81; *see also Allard Enterps., Inc. v. Advanced Programming Resources, Inc.*, 249 F.3d 564, 572 (6th Cir. 2001).

*Hosp. Holdings, Inc. v. BA Holdings LLC*, 2022 WL 2784797, at *2 (N.D. Ga. Jan. 13, 2022).

**Second**, the delay is inexcusable. The Alleged Predecessors could have complained, but did not. The second element is easily met. *Pinnacle Advert.*, 7 F.4th at 1009; 4 McCarthy §31:14.

**Third**, GR's delay prejudiced Eleven. Over the last decade, Eleven invested ███████ ███ promoting its brand. SOF ¶18. This investment has paid off. Eleven has generated substantial sales, opened over a dozen locations, hired hundreds of employees, and earned awards and substantial media coverage. *Id.* ¶¶4, 15, 18-21, 23-24. This effort would all be for naught if GR could bring a claim now. This is exactly what laches protects against. *Groucho's*, 2016 WL 7887996, at *4, *aff'd*, 683 F. App'x 826 (11th Cir. 2017); *Pinnacle Advert.*, 7 F.4th at 1011; *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 192-93 (2d Cir. 1996); 4 McCarthy §31:12.

## II.    GR'S CANCELLATION CLAIMS AND RELATED DEFENSES CANNOT SUCCEED AS A MATTER OF LAW

GR's cancellation and restriction claims based on fraud and nonuse, as well as its related fraud on the PTO and unclean hands defenses, each fail as a matter of law.

### A.    GR Cannot Support Its Claim and Defenses of Fraud on the PTO.

GR's fraud on the PTO claim and defenses fail as a matter of law. D.E. 140 (Count III(A) & (B)); D.E. 472 at 66–67.[9] An applicant commits fraud when it (1) knowingly makes false, material representations of fact in a trademark application with (2) intent to deceive the PTO. *Sovereign Mil. Hospitaller v. Fla. Priory of Knights Hospitallers*, 702 F.3d 1279, 1289 (11th Cir. 2012); *Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, 2011 WL 2174012, at *13 (S.D. Fla. June 2, 2011). The party claiming fraud has a heavy burden: it must "be **proven 'to the hilt'** with **clear and convincing evidence**. There is **no room for speculation**, inference or surmise and, obviously, any doubt must be resolved against the charging party." *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009); *see also Sovereign*, 702 F.3d at 1289. It is not enough that the trademark holder "should have known" there was a false statement. *MPC Franchise, LLC v. Tarntino,* 826 F.3d 653, 659-60 (2d Cir. 2016); *see also Bose*, 580 F.3d at 1245. Instead, GR must establish the **specific declarant** had a "**[s]ubjective intent to deceive**." *In re Bose*, 580 F.3d at 1245; *see also Sovereign*, 702 F.3d at 1290; 4 McCarthy §31:61; *Angel Flight of Georgia, Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1211 (11th Cir. 2008). GR's allegations lack merit.

**Third Party Use Declarations.** In April 2011, Eleven began applying to register the

---

[9] This likewise applies to 11USA's related defense of unclean hands. D.E. 469 at 120.

ELEVEN Marks. SOF ¶2. The applications included a declaration from Alan Pike that to the best of his knowledge and belief, "no other person, firm, corporation, or association has the right to use the mark in commerce[.]" *Id.* ¶¶91-94. GR claims these declarations ("Third-Party Use Declarations") were fraudulent because: "If the [PTO] had known that any third-party(ies), such as [the Alleged Predecessors], were already using an 'Eleven' or '11' mark in commerce to provide any of the Subject Services, or services closely related thereto, it would have rejected the applications[.]" D.E. 140 ¶193. GR's claim does not hold water.

There is no evidence that Mr. Pike knowingly intended to deceive the PTO. ***First***, the Alleged Predecessors are not material and need not have been disclosed. ███████████████ ████████████████████████████████████████████████████████████████████████████████

SOF ¶103; T.M.E.P. §1207.03. The marks also are different (*e.g.*, ELEVEN vs. The Eleven Inn and 11th Avenue Hostel), as are the admittedly low-budget motel/hostel offerings of the Alleged Predecessors and Eleven's luxury hotels. SOF ¶¶8, 21, 48, 58-69, 63-64, 66-67. The Alleged Predecessors also ***admit*** there is no confusion. *Id.* ¶¶88-89. As these marks are neither identical nor likely to cause confusion, the Third Party Use Declarations are not materially false.

***Second***, there is no evidence that Mr. Pike knew of the Alleged Predecessor, which is required. *Bose*, 580 F.3d at 1244; *Pandora*, 2011 WL 2174012, at *13. The mere existence of third parties, or that registrant "should have known" of them is insufficient. *Beling v. Ennis, Inc.*, 613 F. App'x 924, 925-26 (Fed. Cir. 2015). Mr. Pike testified that ██████████████████████ ████████████████████ SOF ¶¶95-96. GR's claim thus cannot survive summary judgment. *Sovereign*, 702 F.3d at 1293 (court "clearly erred" by not analyzing declarant's subjective intent).

***Third***, there is no evidence that Alan Pike intended to deceive the PTO. In fact, GR's own PTO expert admitted that ██████████████████████████████████████████████████████ SOF ¶99. Thus, GR's claim for fraud based on the Third-Party Use Declarations should be dismissed. *Sovereign*, 702 F.3d at 1292 (failure to "put forth any evidence to establish that [declarant] . . . knew or believed that [defendant] had a superior right" is "fatal"); *Pandora*, 2011



---

[10] GR alleges that ██████████████████████████████████████████████████████████ ██████████████████████████████████████ D.E. 140 ¶¶146-48; SOF ¶100. This is a red herring. There is no evidence that ███████████████████████ *Id.* ¶¶95-96. ████ ██████████████████████████████████████████████████████████████ SOF ¶¶91-92, 101-02.

WL 2174012, at *14 (granting summary judgment; knowledge of senior user was insufficient).

**Statements of First Use**. GR also claims EIP committed fraud on the PTO, because its declarants, Mr. Pike and its outside counsel Christine Bell,[11] knew that Eleven was not using the marks as of November 11, 2011, the claimed first use date ("First Use Declarations"). D.E. 140 ¶¶190-98. GR cannot prove that EIP's declarants made knowingly false, material representations to the PTO in the First Use Declarations, with the intent to deceive.

*First*, the statements to the PTO were not false. Eleven first used the ELEVEN Marks on November 11, 2011 when it publicly opened its flagship hotel and launched its public website. SOF ¶¶11-13. Even before this date, ███████████████████████████████████ ████████████████████████ *Id.* ¶¶9, 14. There is extensive and undisputed testimony, documentary and photographic evidence that Eleven launched on November 11, 2011. *Id.* ¶¶11-13.

*Second*, the statements in the First Use Declarations are not "material representations." *Standard Knitting, Ltd. v. Toyota Jidosha Kabushiki Kaisha*, 77 U.S.P.Q. 2d at *10 (T.T.A.B. Jan. 10, 2006). As GR's own PTO expert admits, ████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ SOF ¶104. Thus, a false first use date is not a material representation if the mark was in use by the time the statement of use was filed. *Fitnessglo, Inc. v. Heartglo Inc.*, 2016 WL 6833488, at *5 (T.T.A.B. Aug. 25, 2016). It is *undisputed* that Eleven was using the ELEVEN Marks for all services when it filed its first Statement of Use on May 14, 2012—that is all that matters and is dispositive. SOF ¶¶3, 9-14, 108-10; *cf. Angel Flight of Georgia*, 522 F.3d at 1210.[12]

*Third*, GR has failed to provide any evidence—deposition, document, or otherwise—that the declarants intended to deceive the PTO. SOF ¶¶98–99. Thus, GR cannot meet its heavy burden. *See Bose*, 580 F.3d at 1245; *Sovereign*, 702 F.3d at 1292; *Pandora*, 2011 WL 2174012, at *14.

**Alan Pike's Signature.** Recognizing it never pled a fraud on the PTO claim based on Alan Pike's purported failure to personally sign certain of Eleven's trademark filings, GR belatedly added this theory under the guise of a new affirmative defense. D.E. 472 at 66-67. Such defense

---

[11] Mr. Pike signed the Statements of Use for Registration Nos. 4265159, 4384681, 4621491, 4269487, 4610119, and 4269438. SOF ¶97. Ms. Bell signed for Reg. No. 4,180,401. *Id.* ¶98.
[12] In any case, amendment, not cancellation, is the remedy for an incorrect first use date, ████████████ SOF ¶105. T.M.E.P. §§903.04, 903.06(a); *Angel Flight*, 522 F.3d at 1210.

should be dismissed as untimely. *Acciard v. Nat'l Credit Union Admin. Bd.*, 2012 WL 13098059, at *1 (M.D. Fla. Feb. 28, 2012) ("To the extent that any of the Borrowers' affirmative defenses raise new defenses to previously asserted claims, they are untimely and are dismissed.").

Regardless, the defense also fails as a matter of law. GR has not identified a shred of evidence to support an inference of deceptive intent, let alone clear and convincing evidence. *In re Bose Corp.*, 580 F.3d at 1243 ("Unless the challenger can point to evidence to support an inference of deceptive intent, it has failed to satisfy the clear and convincing evidence standard required to establish a fraud claim."). As noted above, GR's PTO expert admitted that ███████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ███ SOF ¶¶99, 148. Such rank speculation is insufficient for fraud. *In re Bose Corp.*, 580 F.3d at 1243 ("There is **no room for speculation**, inference or surmise and, obviously, any doubt must be resolved against the charging party."). The evidence shows that ███████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████████ SOF ¶¶145-147; D.E. 327 ¶ 18-19. Thus, this defense should be dismissed. *See id.*; *Sovereign*, 702 F.3d at 1292; *Pandora*, 2011 WL 2174012, at *14.

**Alan Pike's Knowledge**. GR's recent Answer also attempts to add another new theory of fraud as an affirmative defense, claiming that Mr. Pike lacked knowledge of the contents of Eleven's trademark filings. D.E. 472 at 67. Not so. Mr. Pike routinely communicated with others at Eleven about its business, including its trademark filings. SOF ¶¶145-147. Indeed, Kyra Phelps testified ██████████████████████████████████████████████████████████████ ██████████████████████████. SOF ¶146. Moreover, GR can point to no evidence, let alone clear and convincing evidence, that Mr. Pike acted with deceptive intent—an indispensable element. *In re Bose Corp.*, 580 F.3d at 1246; *Sovereign*, 702 F.3d at 1289. Accordingly, this defense should be dismissed. *In re Bose Corp.*, 580 F.3d at 1246; *Sovereign*, 702 F.3d at 1289.

## B.   GR's Claim for Cancellation or Restriction Due to Nonuse Fails

GR's claim for cancellation or restriction of Trademark Registrations Nos. 4265159, 4621491, and 4384681 ("Count III Registrations") due to alleged non-use of the ELEVEN Marks in connection with "hotels, hotel services, resort lodging services, providing temporary lodging services in the nature of a tourist home, and rental of homes" ("Count III Services"), D.E. 140

(Count III(C)), fails because Eleven uses the marks in commerce.[13] To establish cancellation based on non-use, a type of abandonment, GR faces a "strict" burden of proving that Eleven has not used the marks in the Count III Registrations for the claimed services. *Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, 304 F.3d 1167, 1175 (11th Cir. 2002).

Showing use for services is not demanding. It requires only that the mark be "used or displayed" in the sale or advertising of services and the services be "rendered in commerce." 2 McCarthy §19:83; *see also Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, 304 F.3d 1167, 1173 (11th Cir. 2002) (finding use based on promotional materials); T.M.E.P. §1301.04; *Angel Flight of Georgia, Inc. v. Angel Flight Se., Inc.*, 2006 WL 8444582, at *18 (N.D. Ga. Nov. 20, 2006).[14] On the second prong, the term "service," has been "expansively defined" as "the performance of labor for the benefit of another." 2 McCarthy §19:84; *see also Phoenix Ent. Partners, LLC v. Milligan, Inc.*, 2017 WL 3730572, at *4 (M.D. Fla. Mar. 21, 2017).

**Use of the ELEVEN Marks.** As to the first element—use to advertise the services—there is no genuine dispute that Eleven[15] uses the ELEVEN Marks to advertise the Count III Services (*e.g.*, hotels and rental homes) in ***many*** ways. ***First***, "[a] website that bears a trademark may constitute a bona fide use in commerce." *Specht v. Google Inc.*, 747 F.3d 929, 934 (7th Cir. 2014) (citing *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211 (11th Cir. 2008)); *see also Transamerica Corp. v. Moniker Online Servs., LLC*, 672 F. Supp. 2d 1353, 1361 (S.D. Fla. 2009). The ELEVEN Marks appear throughout the Eleven Website, including in the top lefthand corner. SOF ¶106. The Eleven Website advertises Eleven's hotels and homes, including descriptions of the amenities at each property and how to book them. *Id.* ¶107. The website has been publicly available since November 11, 2011, and archived screenshots as early as June 2012 show that the website included the ELEVEN Marks. *Id.* ¶11. Tellingly, the PTO accepted screenshots of the Eleven Website as specimens of use, and registered the marks on that basis. *Id.* ¶108. While this alone is highly persuasive, *id.* ¶109, it makes sense as a website is sufficient to show use in

---

[13] This also applies to 11USA's related nonuse and abandonment defenses. D.E. 469 at 119-120.

[14] This is different from *goods*, where the mark must be affixed or displayed at point-of-sale. T,M.E.P. §904.03; *Geovision, Inc. v. Geovision Corp.*, 928 F.2d 387 (11th Cir. 1991). Eleven also meets this test as its marks are on its booking website. SOF ¶¶15, 106.

[15] EIP licenses the ELEVEN Marks to its affiliates, which are under common ownership and control, and thus benefits from their uses as well. SOF ¶¶5-7. 2 McCarthy §18:52; *see also* 15 U.S.C. § 1055. These entities include IBG, the operator, CS Irwin, the payment processor, and Grassy Creek, the manager which, along with EIP, oversees quality control. SOF ¶¶6-7.

commerce for services, including hotels. *Bronstein v. Bronstein*, 2007 WL 646965, at *8 (S.D. Fla. Feb. 27, 2007) (use of mark on website sufficient to show use in commerce); *BD Real Hoteles*, 2009 WL 10668495, at *4 (advertisement of resorts online showed use in commerce). GR does not argue that the PTO's decision in accepting the specimen was incorrect, ██████████████████ ████████████████████████████████████████████SOF ¶110.

**Second**, use can also be shown through other marketing materials, *e.g.*, brochures, invoices, and advertisements. 2 McCarthy §19:83; T.M.E.P. §§1301.03(a), 1301.04. The ELEVEN Marks appear in a variety of such materials, including at the launch of Eleven Scarp Ridge Lodge. SOF ¶¶11-12, 23. This is more than sufficient for use in commerce. *BD Real Hoteles*, 2009 WL 10668495, at *4 (use for "hotel services" includes advertising, is not limited to physical signage); *Penta Hotels Ltd. V. Penta Tours*, 1988 WL 384940, at *20 (D. Conn. Sept. 30, 1988); *Lobo Enters., Inc. v. The Tunnel, Inc.*, 822 F.2d 331, 332-33 (2d Cir. 1987); *Hotel Corp. of Am. v. Inn Am., Inc.,* 153 U.S.P.Q. 574, 576 (T.T.A.B. Mar. 16, 1967).

**Third**, while not required, the ELEVEN Marks appear throughout Eleven's properties, such as on external signage, toiletries, instruction sheets, uniforms, and towels. SOF ¶22.

**Rendering of Services.** As to the second element, there is no dispute that the services are actually rendered in commerce. This requirement has been broadly interpreted to include the rendering of services in even a single state to interstate travelers. *Penta*, 1988 WL 384940, at *21; *BD Real Hoteles*, 2009 WL 10668495, at *4 (use in commerce met where plaintiff advertised resorts in U.S. and had hotel guests). Eleven offers hotels and homes in three U.S. states, as well as in 6 other countries, to U.S. interstate travelers. SOF ¶¶16-17, 21. Eleven has been taking reservations since as early as September 2011 ████████████████████████ *Id.* ¶¶9-10. Eleven has booked rooms through email, direct calls, and the Eleven Website, and has over a decade of sales, including interstate. *Id.* ¶¶15-17. This is more than sufficient to show the services are rendered. *Penta*, 1988 WL 384940, at *21 (making hotel reservations sufficient) (*citing In re G. J. Sherrard Co.*, 150 U.S.P.Q. 311, at *1 (T.T.A.B. June 29, 1966)) (finding taking and confirming reservations is "integral part" of rendering hotel services).

## III.   GR'S FAILURE TO PROVIDE NOTICE OF REGISTERED TRADEMARKS DEFENSE FAILS AS A MATTER OF LAW

GR raised for the first time in its recent Answer to EIP's Second Amended Counterclaim that EIP cannot recover monetary relief because Eleven "failed to give notice of its registered

trademark rights" under 15 U.S.C. §1111. D.E. 472 at 63. Again, GR failed to timely raise this defense and it should be dismissed on that basis alone. *Acciard,* 2012 WL 13098059, at *1 (dismissing new affirmative defense that could have been raised earlier). Regardless, GR's defense fails as a matter of law.

As an initial matter, "Section 1111 **is not an affirmative defense** to infringement, but rather, a limitation on available remedies," and thus GR's pleading it as an affirmative defense is improper. *New Century Mortg. Corp. v. 123 Home Loans, Inc*., 2007 WL 9702272, at *6 (S.D. Fla. Aug. 9, 2007), *report & recommendation adopted,* 2007 WL 9702268 (S.D. Fla. Aug. 27, 2007). Section 1111 also does not limit GR's monetary liability here. "Section 1111 requires the defendant to have actual notice of the registered trademark in order for the plaintiff to recover profits and damages as a result of trademark infringement." *Id*. GR **admitted** that ███████ ████████████████████████████████████████████████████████████████████████ █████████████████████████████████ D.E. 380, Ex. 524 at Rog 22; SOF ¶149.[16] Thus, this defense should be dismissed. *See, e.g., Commodores Ent. Corp. v. McClary,* 822 F. App'x 904, 910 (11th Cir. 2020) (affirming award of damages where there was "ample evidence" defendant had actual notice of plaintiff's registration prior to infringement); *Admiral Corp. v. Sewing Mach. Sales Corp.*, 156 F. Supp. 796, 798 (S.D.N.Y. 1957) (noting Section 1111 is immaterial if defendant has actual knowledge of plaintiff's registration).

## IV.    GR'S UNLAWFUL USE CLAIM FAILS AS A MATTER OF LAW

GR's affirmative defense of unlawful use in commerce, D.E. 472 at 65-66, fails as a matter of law. ***First,*** the Eleventh Circuit has **rejected** the doctrine given that it appears "almost exclusively in an administrative setting," and thus it is inapplicable. *FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071, 1086 (11th Cir. 2016); *VPR Brands LP v. Shenzhen Weiboli Tech. Co. Ltd.*, 2023 WL 2317165, at *4 (S.D. Fla. Feb. 23, 2023). Courts regularly decline to apply the doctrine to bar trademark claims. *Sream, Inc. v. Tausif Lavina, Inc.*, 2019 WL 1466706, at *3 (S.D. Fla. Feb. 12, 2019); *Sream, Inc. v. Habsa Enter., Inc.*, 2018 WL 1463655, at *2-3 (S.D. Fla. Jan. 31, 2018). ***Second***, the defense fails on the merits. **GR bears the burden** of showing by ***clear and***

---

[16] Stan Sneeringer, GR's 30(b)(6) witness and trademark prosecution counsel for GR's applications also testified that he informed GR's principals of the refusals and had discussions with them about how to respond, which GR did *the day before* it publicly announced the first Infringing Hotel. D.E. 380, Ex. 248 at 228:13-18, 228:24-229:6, 232:7-234:2); SOF ¶150.

*convincing evidence* that there was a "finding of non-compliance by a court or government agency having competent jurisdiction under the statute involved, or where there has been a per se violation of a statute regulating the sale of a party's goods [or services]." *FN Herstal SA*, 838 F.3d at 1087. GR claims that Eleven's operations were unlawful because it did not have Certificate of Occupancy ("COO") for its hotel prior to opening on November 11, 2011, D.E. 472 at 65–66, but it cites no statute or regulation that it alleges Eleven violated, or any court or agency decision.[17] Eleven had the certificates it needed. SOF ¶112. There also was a December 2011 Temporary COO, before guests began actually staying overnight. *Id.* ¶111. GR's defense should be dismissed.

## V.     GR'S NAKED LICENSING DEFENSE FAILS AS A MATTER OF LAW

GR's naked licensing affirmative defense also fails as matter of law. D.E. 472 at 66. The abandonment of a mark by "naked licensing" occurs when the owner "fails to supervise its licensee and allows the licensee to depart from the licensor's quality standards." *Blue Mountain Holdings*, 2023 WL 5164472, at *1. EIP has written license agreements with its affiliated entities, which provide for detailed quality control. SOF ¶¶5-7. ████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████ . *Id.* ¶114. Such undisputed facts are more than sufficient for this Court to dismiss GR's defense.[18] *See Nguyen v. Biondo*, 2012 WL 12862799, at *5 (S.D. Fla. June 15, 2012), *aff'd*, 508 F. App'x 932 (11th Cir. 2013) (granting summary judgment for plaintiff where defendant failed to include any evidence establishing naked licensing); 2 McCarthy §18:60; *Accurate Merch., Inc. v. Am. Pac.*, 1975 WL 21158, at *5 (S.D.N.Y. May 22, 1975); *Pneutek, Inc. v. Scherr*, 211 U.S.P.Q. 824 (T.T.A.B. Jul. 30, 1981).

---

[17]  The statutory violation also needs to be of such "gravity and significance" as to justify stripping a trademark holder of its rights. *FN Herstal SA*, 838 F.3d at 1087; *General Mills Inc. v. Health Valley Foods*, 24 U.S.P.Q.2d 1270, at *4 (T.T.A.B. May 1, 1992). There is no evidence of that.

[18]  This is in stark contrast to GR's virtually non-existent efforts as to its Alleged Predecessors. *Compare Nguyen*, 2012 WL 12862799, at *5 *with Blue Mountain*, 2023 WL 5164472, at *2.

## VI.   DEFENDANTS' LACHES, WAIVER, ACQUIESCENCE AND ESTOPPEL DEFENSES FAIL

Defendants' boilerplate affirmative defenses of laches, waiver, acquiescence, and estoppel fail. D.E. 472 at 64–66; D.E. 468 at 67; D.E. 469 at 119-120; D.E. 475 at 55–56. **Laches** requires an inexcusable delay in asserting a claim and undue prejudice. *Groucho's*, 683 F. App'x at 829. Defendants can show no delay, let alone an unreasonable one which caused undue prejudice. The first Infringing Hotel was announced in January 2021. SOF ¶26. EIP became aware of the infringement in early 2022 and sent a cease-and-desist letter in March 2022. *Id.* ¶46. After GR refused to comply, EIP initiated the TTAB actions in March through May 2022. *Id.* ¶47. Moreover, West Eleventh was announced in February 2023, after this case began; EIP learned of it in October 2023, and filed its Counterclaim explicitly referencing that property in January 2024. SOF ¶¶36, 115; D.E. 121. For all Infringing Hotels, EIP took action **within weeks** of learning of the infringement. SOF ¶¶46, 115. That alone is dispositive. *Earth, Wind & Fire IP, LLC v. Substantial Music Grp. LLC*, 2024 WL 1025265, at *6, 13 (S.D. Fla. Mar. 4, 2024); *Buccellati, Holding Italia SPA v. Laura Buccellati, LLC*, 5 F. Supp. 3d 1368, 1375 (S.D. Fla. 2014). To the extent GR asserts laches based on its claim that before launching the Infringing Hotels, it provided hotel bookings, such defense is legally and factually inapplicable. SOF ¶¶116-17. Eleven's claims are about ELEVEN-branded hotels, not about GR booking rooms at unaffiliated **third-party** hotels (*e.g.*, the Godfrey) for employees, talent, or events at its nightclub. *Id.*; D.E. 128 ¶3. Thus, laches does not extend to such use. *Kason*, 120 F.3d at 1206 ("no obligation to sue until 'the likelihood of confusion looms large'"); *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 668 (5th Cir. 2000) ("no delay" where infringement was "an entirely new product"). **Waiver** is not a defense to trademark claims, and thus does not apply. *SunAmerica Corp. v. SunLife Assur. Co. of Canada*, 77 F.3d 1325, 1344 n.7 (11th Cir. 1996). **Acquiescence** requires "*active* or *explicit* consent"; there is no such evidence. *Marketquest Grp., Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1294 (S.D. Cal. 2018). **Estoppel** fails for the same reason. *Buccellati*, 5. Supp. 3d at 1376.

## VII.   11USA, PMG, AND B17'S COUNTERCLAIMS AND OTHER DEFENSES FAIL AS A MATTER OF LAW

In an attempt to sidestep liability, 11USA, PMG, and B17 asserted counterclaims and mirror-image affirmative defenses challenging the validity of the ELEVEN Marks and defending their own use of the WEST ELEVENTH Marks. Each of these claims, on which Defendants bear the burden, fails as a matter of law.

### A.      The ELEVEN Marks Are Not Generic

Defendants B17 and 11USA claim the ELEVEN Marks are generic and thus invalid. D.E. 468 ¶¶87-91; D.E. 469 at 118–119. This fails as a matter of law. Generic terms "describe[] *a class to which the individual service belongs*." *Citibank, N.A. v. Citibanc Grp., Inc.*, 724 F.2d 1540, 1545 (11th Cir. 1984) ("Citibank" "not a type of service" so not generic); *see also Badia Spices, Inc. v. Gel Spice Co., Inc.*, 2017 WL 2082794, at *2 (S.D. Fla. May 15, 2017). Courts focus not on the term in the abstract but how it is used; for example, "Palace" is generic for "where a king or queen resides" but *not* for an all-inclusive resort. *Heron Dev. Corp. v. Vacation Tours, Inc.*, 2017 WL 2895921, at *13 (S.D. Fla. Apr. 13, 2017), *report & rec. adopted* 2017 WL 2901203 (S.D. Fla. May 26, 2017) (Moreno, J.) (granting summary judgment). Genericness requires "*persuasive and clear evidence* that the contested term has become generic among a majority of the buyer group." 2 McCarthy §12:12; *Elliot v. Google Inc.*, 45 F. Supp. 3d 1156, 1170 (D. Ariz. 2014), *aff'd sub nom.*, 860 F.3d 1151 (9th Cir. 2017). Defendants have the burden of proof. *PODS Enters., LLC v. U-Haul Int'l, Inc.*, 126 F. Supp. 3d 1263, n.7 (M.D. Fla. 2015). Defendants have not, and cannot, meet this burden.

**First**, the ELEVEN Registrations create "a **strong presumption**" of non-genericness. *Velocity Sports Performance Franchise Sys., LLC v. Extreme Fitness, Ltd.*, 2006 WL 8432579, at *5 (N.D. Ga. Jan. 10, 2006). There is no dispute that the ELEVEN Marks are registered. SOF ¶2. This "is *prima facie* evidence" that the term is **not** generic. *JFJ Toys, Inc. v. Sears Holding Corp.*, 237 F. Supp. 3d 311, 328-30 (D. Md. 2017) ("significant weight" for registration); *PayCargo, LLC v. CargoSprint, LLC*, 2021 WL 2592417, at * (S.D. Fla. June 4, 2021) (PAYCARGO not generic).

**Second**, Defendants cannot overcome this strong presumption that the marks are not generic. Courts identify the relevant class of products based on the registration and consumers of such products, and determine if the "primary significance of the mark" among such group is the common name of the class of goods. *Magic Wand, Inc. v. RDB, Inc.*, 940 F.2d 638, 640 (Fed. Cir. 1991); *Badia Spices, Inc.*, 2017 WL 2082794, at *2. Based on the ELEVEN Registrations and Defendants' allegations, the relevant services are hotel, hospitality, and travel services, and the relevant public are those interested in buying such services. SOF ¶2; D.E. 468 ¶87. Thus, Defendants must show that the "*primary significance*" of the ELEVEN Marks is hotels, hospitality, and/or travel services. *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1320 (11th Cir. 2012); *see also* 15 U.S.C. §1064(3); *Creative Gifts, Inc. v. UFO*,

235 F.3d 540, 544 (10th Cir. 2000). Evidence of genericness includes dictionaries, consumer testimony and surveys. *U.S. Pat. & Trademark Off. v. Booking.com*, 140 S. Ct. 2298, 2302 (2020). Each category confirms that Defendants cannot show genericness.

Dictionaries do not define "eleven" as any category of hotel, hospitality, or travel service. SOF ¶¶119-21.[19] Linguist Dr. Phillip Carter found that dictionaries define "eleven" as "a number that is one more than ten," and that "eleven" has not been associated with hotels. *Id.* ¶120. Dr. Ashlee Humphreys, Eleven's marketing expert, found no evidence that the term is synonymous with hospitality or travel services. *Id.* ¶121. Even B17's marketing expert, Dr. Erich Joachimsthaler, said that he had never seen "eleven" "used to identify a type of hotel" and that it "could refer to anything." *Id.* ¶¶122-24. The definition of "eleven," as applied to hotel, hospitality and travel services, warrants against genericness. *JFJ Toys,* 237 F. Supp. 3d at 333. Defendants also have not presented any consumer testimony or survey. SOF ¶127. Because Defendants bear the burden of proof, this failure supports a finding that the ELEVEN Marks are not generic. *Heroes, Inc. v. The Boomer Esiason Hero's Found.*, 1997 WL 335807, at *2 (D.D.C. June 16, 1997) (granting summary judgment on genericness where defendant had no survey).

### B.   The ELEVEN Marks Are Not Merely Descriptive.

B17's and 11USA's claim that the Eleven Marks are invalid because they are descriptive also fails as a matter of law. As a threshold matter, the ELEVEN Registrations are "incontestable," and thus their validity ***cannot be challenged*** on descriptiveness grounds. SOF ¶2. *Park 'N Fly, Inc.,* 469 U.S. at 189; *Dieter*, 880 F.2d at 328. Moreover, a registered mark, incontestable or not, enjoys a presumption of validity and inherent distinctiveness,[20] and the burden to overcome that presumption is on the challenging party. *Pinnacle Advert.,* 7 F. 4th at 1004-05.

Even without this strong presumption, the ELEVEN Marks are arbitrary, and thus inherently distinctive.[21] An arbitrary mark "bears no relationship to the product and is [one of] the

---

[19] Asked to identify uses of "eleven" as a genus of hotel services, B17 named three articles about Eleven's ***own*** branded hotels that do not use "eleven" to refer to a category of hotels. SOF ¶125.

[20] The PTO issued the ELEVEN Registrations without requiring secondary meaning. SOF ¶128.

[21] The ELEVEN Marks also acquired distinctiveness given their use for over 10 years, ███████ ███████ in sales, ███████████ in advertising, and widespread promotion. SOF ¶¶3-4, 15, 18, 20-24. Courts have found secondary meaning based on less. *Popular Bank of Florida v. Banco Popular de Puerto Rico*, 9 F. Supp. 2d 1347, 1357-58 (S.D. Fla. 1998) (secondary meaning based on $2.9M in advertising over 10 years); *FN Herstal*, 838 F.3d at 1084 (secondary meaning based on less than two years).

strongest types of mark." *TracFone Wireless, Inc. v. SND Cellular, Inc.*, 715 F. Supp. 2d. 1246, 1256 (S.D. Fla. 2010) (SUN BANK arbitrary). "Some of the strongest marks are 'common words'" like "SHELL, CAMEL, and APPLE," which are arbitrary for "gasoline, cigarettes and computers, respectively." *Visa Int'l Servs. Ass'n v. JSL Corp.*, 533 F. Supp. 2d 1089, 1096 (D. Nev. Dec. 27, 2007). B17's marketing expert summed it up this way: ███████████████████████████ ████████████████████████ SOF ¶124. Because the ELEVEN Marks have no specific meaning when applied to Eleven's hotel, hospitality, and travel services, they are arbitrary.

Defendants argue that the ELEVEN Marks are descriptive. "A descriptive mark identifies a characteristic or quality of the service or product" and "is narrowly tailored to its associated product, such that it ***calls that product immediately to mind***[.]" *Welding Servs., Inc. v. Forman*, 509 F.3d 1351 (11th Cir. 2007); 1 McCarthy §11:19. Each of B17's arguments on descriptiveness is meritless. ***First***, Defendants asserts the ELEVEN Marks are descriptive because third parties use the number "11." D.E. 468 at 93-95; *see also* D.E. 469 at 118–119. But many of the third-party uses on which Defendants rely are in different fields, *e.g.*, beauty parlors and convenience stores. SOF ¶130. Such uses are legally irrelevant. *PlayNation Play Sys., Inc. v. Velex Corp.*, 924 F.3d 1159, 1166 (11th Cir. 2019) (unrelated uses did not diminish strength); *Beaulieu Grp. LLC v. Mohawk Carpet Distrib., Inc.*, 2017 WL 11634736, at *15-16 (N.D. Ga. Jan. 23, 2017). Moreover, unlike Eleven's use, many of third-party uses use "11" to refer to a literal street address. SOF ¶130. That "11" can be descriptive in other contexts does not make it descriptive here. *Sovereign Mil. Hospitaller v. Florida Priory of the Knights Hospitallers*, 809 F.3d 1171, 1186 (11th Cir. 2015).

***Second***, Defendants' argument that the ELEVEN Marks are descriptive because Eleven offers high-quality services and opened on November 11, 2011 also fails. Even assuming that consumers would perceive ELEVEN as referring to quality (and there is no such evidence), "[a] term that is merely self-laudatory . . . seeking to convey the impression that a product is excellent or of especially high quality, is generally deemed ***suggestive***." *Estee Lauder Inc. v. The Gap, Inc.*, 108 F. 3d 1503, 1510 (2d Cir. 1997) ("100%" suggestive); *see also Plus Prods. v. Plus Disc. Foods, Inc.*, 722 F.2d 999, 1005 (2d Cir. 1983) ("PLUS" suggestive); *In re Ralston Purina Co.*, 191 U.S.P.Q. 237, 238 (T.T.A.B. May 27, 1976) ("SUPER" suggestive). Suggestive marks are ***distinctive***. *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 938 (11th Cir. 2010). "Eleven" is not a term readily understood as indicating a level of quality, and is thus even ***further*** from referring to Eleven's services than suggestive marks like PLUS or

SUPER. SOF ¶124. The fact that Eleven's first hotel, Eleven Scarp Ridge Lodge, opened on November 11, 2011, also does not make Eleven's marks descriptive. Connecting the opening date to the services requires not just imagination, but explicit explanation. Terms with a far more obvious meaning have been deemed suggestive. *Playtex Prods., Inc. v. Georgia-Pac. Corp.*, 390 F.3d 158, 164 (2d Cir. 2004) ("Wet Ones" suggestive); *In re Nalco Chem. Co.,* 228 U.S.P.Q. 972, at *2 (T.T.A.B. Jan. 31, 1986) ("VERI-CLEAN" suggestive). B17's descriptiveness claim and defense, and 11USA's defense, should be dismissed.

### C.   Descriptive Fair Use Does Not Apply.

For descriptive fair use, Defendants must show "that [their] use is '(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith.'" *3Lions Publ'g, Inc. v. Interactive Media Corp.*, 389 F. Supp. 3d 1031, 1042 (M.D. Fla. 2019); *Heron*, 2017 WL 2895921, at *13. Courts routinely dismiss such claims on summary judgment where defendant offers insufficient support, or based on the undisputed facts. *Heron*, 2017 WL 2895921, at *13; *Las Originales Pizza Inc. v. Batabano Grp., Inc.*, 2022 WL 4369993, at * (S.D. Fla. Jul 18, 2022), *report & rec. adopted* 2022 WL 4366952 (S.D. Fla. Sept. 21, 2022) (Moreno, J.). Dismissal is warranted here.

*First*, the WEST ELEVENTH Marks are used as trademarks. Courts consider the context of how the term is presented. Terms that are used as a "symbol to attract public attention" are used as marks. *Safeway Stores, Inc. v. Safeway Props., Inc.*, 307 F.2d 495, 499 (2d Cir. 1962); *see also Sands, Taylor & Wood Co. v. Quaker Oats Co.,* 978 F.2d 947, 954 (7th Cir. 1992) (no fair use of phrase used as "attention-getting symbol"); *La Potencia, LLC v. Chandler*, 2024 WL 1908628, at *15 (S.D. Fla. Apr. 30, 2024) (no fair use where term used as part of logo). Factors include "the lettering, type style, size and visual placement and prominence of the challenged words." 1 McCarthy §11:46; *see also Beer Nuts Inc. v. Clover Club Foods Co.*, 711 F.2d 934, 937 (10th Cir. 1983); *Ford Motor Co. v. O.E. Wheel Distribs., LLC*, 868 F. Supp. 2d 1350 (M.D. Fla. 2012).

The WEST ELEVENTH Marks are clearly used as trademarks. Defendants use them to advertise and attract attention to their luxury hotel/condominium in all marketing materials, including at the top of its website, in a stylized logo, and on its social media accounts. SOF ¶¶131-35. The mark will be prominently affixed on the building. *Id.* ¶132. It is also used throughout the sales gallery where the property is promoted and sold. *Id.* ¶134. This is ample evidence of trademark use. *DCS Real Est. Invs., LLC v. Yapor Corp.*, 2015 WL 12780447, at * 8 (M.D. Fla. Feb. 26, 2015) (term used as mark on website); *Rolex Watch U.S.A., Inc. v. Agarwal*, 2012 WL

12886444, at *8 (C.D. Cal. Dec. 17, 2012); *VOX Amplification Ltd. v. Meussdorffer,* 50 F. Supp. 3d 355, 375 (E.D.N.Y. 2014) (capitalized term used as mark).[22] ████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████  *Cf. Buccellati*, 5 F. Supp. 3d at 1377; *DCS Real Est. Invs.*, 2015 WL 12780447, at *8. This use as a trademark is dispositive. *Adidas Am., Inc. v. Skechers USA, Inc.*, 2017 WL 3319190, at *24 (D. Ore. Aug. 3, 2017).

**Second**, the WEST ELEVENTH Marks are not used in a descriptive sense. Defendants must use the term in its "primary, descriptive sense." *Commodores Ent. Corp. v. Thomas McClary*, No. 6:14 Civ 1335, 2015 WL 12843872, at *4 (M.D. Fla. Mar. 10, 2015); *New West Corp. v. NYM Co. of Calif.*, 595 F.2d 1194, 1202 (9th Cir. 1979) ("New West" not descriptive of West Coast magazine). Defendants cannot meet that standard. "West Eleventh" is not the property's address, which is 18 Northwest 11th Street. SOF ¶140. B17's marketing expert agreed that "West Eleventh Residences" does not directly convey the address. *Id.* ¶141. In fact, he concluded that "West Eleventh Residences" is "suggestive." *Id.* ¶142. Using a mark in a suggestive sense is not a descriptive fair use. 1 McCarthy §11:45 (collecting cases). Thus, Defendants cannot meet the second element of fair use either.[23] *Resort Int'l, Inc. v. Greate Bay Hotel & Casino, Inc.*, 1991 WL 352487, at *7 (D.N.J. Jan. 18, 1991) ("Paradise Island" not geographically descriptive of hotel).

**Third**, because Defendants cannot prove the first two elements, the Court need not reach the third. Regardless, the availability of other descriptive terms and a decision not to use them indicates bad faith. *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1423 (9th Cir. 1984). Defendants could use many other terms, including the actual address. SOF ¶143. Instead, they chose to adopt the WEST ELEVENTH Marks, despite knowing of Eleven's trademark rights in the luxury accommodation space. *Id.* ¶136. ██████████████████████████

████████████████████  *Id.* ¶144; *Heron*, 2017 WL 2895921, at *13.

## CONCLUSION

For the foregoing reasons, Eleven's motion for summary judgment should be granted.

---

[22] B17 argues that the use of AIRBNB and PMG makes the WEST ELEVENTH Marks descriptive, but that is not true—B17's marks are used far more prominently and boldly. *Adidas Am.*, 2017 WL3319190, at *23-24. SOF ¶¶131-35. SOF ¶¶131-35.

[23] B17's other property names like "500 West End Avenue," D.E. 486 ¶36, merely show that Defendants could have used the actual address of the property for West Eleventh, but did not.

Dated: October 18, 2024

Respectfully submitted,

*/s/ Gavin C. Gaukroger*

Gavin C. Gaukroger
Florida Bar No. 76489
ggaukroger@bergersingerman.com
BERGER SINGERMAN LLP
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone: (305) 755-9500

Dale M. Cendali (admitted *pro hac vice*)
dale.cendali@kirkland.com
Claudia Ray (admitted *pro hac vice*)
claudia.ray@kirkland.com
Shanti Sadtler Conway (admitted *pro hac vice*)
shanti.conway@kirkland.com
Mary Mazzello (admitted *pro hac vice*)
mary.mazzello@kirkland.com
Eric Loverro (admitted *pro hac vice*)
eric.loverro@kirkland.com
Justin Taylor (admitted *pro hac vice*)
justin.taylor@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
Telephone: (212) 446-4800

Miranda D. Means (admitted *pro hac vice*)
miranda.means@kirkland.com
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 385-7500

*Attorneys for Eleven IP Holdings LLC, Grassy Creek LLC, CS Irwin LLC, Irwin Backcountry Guides, LLC, Chad Pike, and Alan Pike*

26