# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

GR OPCO, LLC

    *Plaintiff*,

vs.

ELEVEN IP HOLDINGS LLC, GRASSY CREEK LLC, CS IRWIN LLC, IRWIN BACKCOUNTRY GUIDES, LLC, ALAN PIKE, and CHAD PIKE

    *Defendants*.

and

ELEVEN IP HOLDINGS LLC

    *Counterclaim Plaintiff*,

vs.

GR OPCO, LLC, 11USA GROUP, LLC, MARC ROBERTS, DENNIS DEGORI, MICHAEL SIMKINS, MARC ROBERTS COMPANIES LLC, PROPERTY MARKETS GROUP, INC., PMG-11TH STREET VENTURES, LLC, PMG-11TH STREET VENTURES II, LLC, BLOCK 17 TRUSTEE, LLC, BLOCK 17 RESIDENTIAL OWNER, LLC, and LION DEVELOPMENT OPPORTUNITY FUND LLC

    *Counterclaim Defendants,*

BLOCK 17 TRUSTEE, LLC and BLOCK 17 RESIDENTIAL OWNER, LLC,

    *Counterclaim Plaintiffs*,

vs.

ELEVEN IP HOLDINGS LLC

    *Counterclaim Defendant*

Case No. 1:22-cv-24119-FAM-TORRES

**DEFENDANTS AND COUNTERCLAIM PLAINTIFF'S AMENDED STATEMENT OF MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant/Counterclaim Plaintiff Eleven IP Holdings LLC ("EIP") and Defendants Grassy Creek LLC ("Grassy Creek"), CS Irwin, LLC ("CS Irwin"), Irwin Backcountry Guides, LLC ("IBG") (collectively, "Eleven"), Alan Pike, and Chad Pike pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, file this Amended Statement of Material Facts ("SOF") in Support of Defendants' and Counterclaim Plaintiff's Motion for Partial Summary Judgment (the "Motion").

I. **ELEVEN'S TRADEMARKS AND HOTEL BUSINESS**

1. Eleven is a hotel, accommodations, and travel services group. Ex. 1-8.[1]

2. EIP owns incontestable federal trademark registrations for the ELEVEN word mark and its "11" logo ( ) (the "ELEVEN Logo"), which were filed as early as April 2011 and registered as early as July 2012 (the "ELEVEN Registrations"). D.E. 451-2.

3. Eleven has used in commerce the trademarks ELEVEN, the ELEVEN Logo, and other ELEVEN-formative marks, such as ELEVEN EXPERIENCE, ELEVEN LIFE, ELEVEN SKIING, and ELEVEN ANGLING (collectively, the "ELEVEN Marks"). Ex. 1; Ex. 9-16.

4. Eleven's offerings have been advertised and promoted through events, sponsorships, word of mouth, travel and real estate agents, online and through social media, and in numerous publications. Ex. 17 at Nos. 4-6; Ex. 202 at 90:9-13.

5. EIP licenses the ELEVEN Marks to its affiliates, which are under common ownership and control, and through those affiliates and licensees, manages and operates the Eleven hotels and homes. Exs. 18 at 68:25-69:14; Ex. 19-21.

6. EIP's affiliated entities include IBG, which operates the hotels and has a trademark license, and Grassy Creek, which provides management and consulting services and, along with EIP, oversees quality control. Ex. 20; Exs. 22-24.

7. EIP also licenses the ELEVEN Marks to its related entity CS Irwin, which provides payment processing services. Exs. 19-20; Exs. 22-24.

8. Eleven provides luxury accommodations, meals, and amenities at its ELEVEN hotels and homes. *E.g.*, Exs. 25-29.

9. Eleven began taking reservations under the ELEVEN Marks at least as early as September 2011, ███████████████████████████████████████. Ex. 30 at 263:7-16,

---

[1] Unless otherwise specified, all exhibits referenced herein are exhibits to the Declaration of Justin Taylor, filed on July 26, 2024, and were filed at D.E. 248–253.

1

268:16-20; Ex. 31-32.

10. Guests stayed overnight at Eleven Scarp Ridge lodge as early as December 2011, and guests without an ownership interest in the hotel began staying overnight at the hotel at least as early as January 2012. Ex. 30 at 263:7-16, 268:16-20; Exs. 31-32 .

11. Eleven first used the ELEVEN Marks in U.S. commerce at least as early as November 11, 2011, when it publicly opened its first and flagship hotel, Eleven Scarp Ridge Lodge, and launched its website to the public, www.elevenexperience.com ("Eleven Website"). Ex. 18 at 71:22-25; Ex. 30; Ex. 33-37.

12. The ELEVEN Marks were used extensively at the November 11, 2011, grand opening of Eleven Scarp Ridge Lodge, including on marketing materials, napkins, staff uniforms, and the front of the building. Ex. 34-35; Ex. 38-39.

13. Kyra Phelps, EIP's 30(b)(6) witness, who has worked at Eleven since 2010 and attended and planned the launch, testified that "[a]s of 11-11-11 it was a hotel, open for operations and ready to book and ready to accommodate guests whenever they wanted." Ex. 30 at 6:24-7:6, 182:16-18.

14. Jenny Jeffery, Eleven's former Sales & Marketing Director and Director of Global Branding & Marketing, who planned the launch, testified that she was taking bookings in 2011 and marketed the hotel as "Eleven." Ex. 40 at 27:6-9, 62:19-63:11; 130:24-131:8.

15. Eleven has booked rooms in its hotels and homes through email, direct calls, and the Eleven Website, and has over a decade worth of substantial sales (███████████). Ex. 40 at 168:15-168:24, 169:16-25; Ex. 41-44; Ex. 199.

16. Eleven's hotels and homes are marketed to and booked by interstate travelers. Ex. 1; Ex. 41.

17. Eleven offers both domestic and international hotel destinations to U.S. consumers. Ex. 41; Ex. 45-48.

18. Since 2011, Eleven has invested ███████████ developing, launching, and promoting its brand, and spent ███████████ on marketing. Ex. 21; Ex. 42-44.

19. Eleven has hired hundreds of employees. Ex. 49 at 173:4-7; Exs. 42-44.

20. Eleven's hotels and homes have received awards and media coverage, such as being featured in *Condé Nast Traveler*, *Travel + Leisure*, and *Forbes*. Ex. 2-8; Ex. 50-54.

21. Eleven currently has 13 luxury hotels, and 6 vacation homes in the U.S. and

2

abroad, including Colorado, New York, Alaska, Bahamas, England, France, Iceland, Chile, and New Zealand, and previously also Amsterdam and Florida. Ex. 30 at 85:8-25, 91:21-92:2; Ex. 42-46; Ex. 55 at 2-18; Ex. 198.

22. Each of Eleven's properties are marketed under and use the ELEVEN Marks; for instance, Eleven uses the ELEVEN Marks on hotel toiletries, signage, menus, invoices, uniforms, towels, and more. Ex. 56-60; Ex. 61 at 386:24-387:24; Ex. 62 at -026; Ex. 63 at Appx. F; Ex. 18 at 51:3-12; Ex. 49 at 90:8-100:16.

23. The ELEVEN Marks also appear in a variety of different types of marketing and promotional material for Eleven's hotels and homes, including digital advertising, print advertising, pamphlets, brochures, email newsletters, fact sheets, and nationwide media coverage. Ex. 64-67; Ex. 68 at 298, 301-04; Ex. 69 at 951; Ex. 70 at 118, 121; Ex. 71 at 620.

24. Eleven also promotes its properties on social media, including on its Instagram page and YouTube channel, on which the ELEVEN Marks are featured. Exs. 72-76.

## II. DEFENDANTS'[2] EXPANSION INTO LUXURY HOTELS AND CONDOS

25. In 2014, GR opened the E11EVEN Miami nightclub. Ex. 92 at 9:6-14.

26. On January 21, 2021, the E11even Defendants (excluding PMG II) announced the first of the Infringing Hotels[3]: E11EVEN Hotel. Ex. 77 at 026.

27. Marketing, advertising, and sales materials for E11EVEN Hotel prominently feature "E11EVEN" and promote the tower as a "hotel" and short-term rental building. Ex. 78 at '324; 79 at 2; Ex. 80 at '313.

28. ██████████████████████████████████████████ Ex. 86 at 19:1-11; Ex. 45:17-18; Ex. 79; Ex. 82; Ex. 83 at 203:9-11.

29. ██████████████████████████████████████████

---

[2] "Defendants" shall collectively mean Plaintiff/Counterclaim Defendant GR Opco, LLC ("GR"); Counterclaim Defendants 11USA Group, LLC, Marc Roberts Companies, LLC, Lion Development Opportunity Fund, LLC, Dennis DeGori, Marc Roberts, Michael Simkins, Property Markets Group, Inc. ("PMG"), PMG-11th Street Ventures, LLC ("PMG I"), and PMG-11th Street Ventures II, LLC ("PMG II") (collectively, with GR, "E11even Defendants"); and Counterclaim Defendants/Counterclaim Plaintiff Block 17 Trustee, LLC and Block 17 Residential Owner, LLC (together, "B17").
[3] "Infringing Hotels" refers to E11EVEN Hotel & Residences ("E11EVEN Hotel"), E11EVEN Residences Beyond ("E11EVEN Residences"), and West Eleventh Residences ("West Eleventh").

3

███████████████████████████████████████████████████

███████████████████████████████████████. Ex. 84-85; Ex. 86 at 115:11-24.

30. E11EVEN Hotel also is advertised as featuring hotel amenities, such as an "inhouse chef, wellness spa, health and fitness services, and other luxury resort-style amenities" including a beach club and day pool, among other things. Ex. 87 at 423.

31. By at least February 3, 2022, all units in E11EVEN Hotel reportedly were sold out. Ex. 87-88.

32. In November 2021, GR and PMG held a groundbreaking event for E11EVEN Hotel, during which E11EVEN Residences was announced. Ex. 81 at 192:13-23; Ex. 89.

33. E11EVEN Residences is next to E11EVEN Hotel, and both are across the street from the E11EVEN nightclub. Ex. 90; Ex. 91 at -5680; Ex. 92 at 114:12-15; Ex. 93 at 200:3-10

34. As with the first hotel, E11EVEN Residences prominently features the Infringing Marks[4] and is advertised as offering "luxury resort-style amenities" and allowing owners to rent their units as short-term accommodations, thus functioning as extended-stay hotels. Ex. 81 at 47:9-15; Ex. 87; Ex. 94-95.

35. As of June 2023, all of the initial units in E11EVEN Residences were reportedly sold out, which led to an expansion of units in July 2023. Ex. 87; Ex. 96.

36. On February 15, 2023, West Eleventh was announced. Ex. 96.

37. West Eleventh has been referred to as "Tower 3," is located on the same physical street as the other two towers, and is part of "District 11" along with E11EVEN Hotel and E11EVEN Residences. Ex. 90; Ex. 97 at '2951-52; Ex. 98-99; Ex. 100 at 113.

38. West Eleventh is advertised as "[t]he first centrally managed luxury condo residences to grant owners the option to host 365 days on Airbnb," and thus is marketed and sold as a hotel property. Ex. 101 at -267.

39. West Eleventh also offers luxury "resort-style" amenities. Ex. 101 at '268; Ex. 102 at '715; Ex. 103 at '760.

40. ███████████████████████████████████████████████████

---

[4] The Infringing Marks include E11EVEN, E11EVEN HOTEL & RESIDENCES, E11EVEN RESIDENCES BEYOND, 11 HOTEL, and WEST ELEVENTH RESIDENCES, and other such ELEVEN-formative marks and related logos. Ex. 77-78; Ex. 87; Ex. 94; Ex. 98-103; Ex. 176-178; Ex. 180-18; Ex. 181.

4

███████████████████████████████████████████████████████████████████████████. Ex. 104-105.

41. E11EVEN Hotel, E11EVEN Residences, and West Eleventh, are across the street from the E11EVEN club and are marketed as being in "District 11," a term coined by Defendant Marc Roberts for the "entertainment district" in which the E11EVEN club is located. Ex. 91 at '664; Ex. 92 at 126:25-127:4; Ex. 97 at 251-52; Ex. 98-99; Ex. 106 at -593; Ex. 107 at '326.

42. ████████████████████████████████████████████████████████████████████████████. Ex. 108 at 98:25-99:19; Ex. 106 at 237:19-25; Ex. 109 at 58:9-23.

43. Between April and August of 2020, GR filed numerous trademark applications for the Infringing Marks in connection with hotel, lodging, real estate, and related services (the "E11EVEN Applications"). Ex. 110-113.

44. On June 28, 2020, the U.S. Patent and Trademark Office ("PTO") refused the E11EVEN Applications based on a likelihood of confusion with three of the ELEVEN Registrations: Reg. Nos. 4384681, 4621491, and 4265159. Ex. 114-119.

45. GR deleted certain services to overcome such refusals. Ex. 222.

46. In early 2022, EIP became aware of GR's plans to use the "E11EVEN" marks for hotels/condominiums, and sent GR a cease-and-desist letter in March 2022, notifying GR that its use of the "E11EVEN" marks in connection with "hotel, lodging, real estate, and related services," would infringe on EIP's prior rights in the ELEVEN Marks. Ex. 18; Ex. 120.

47. After GR refused to comply with EIP's request, EIP instituted proceedings with the PTO's Trademark Trial and Appeal Board ("TTAB") to seek cancellation of GR's U.S. Registration No. 5921909 and refusal of the E11EVEN Applications. Ex. 121-122.

### III. GR'S ALLEGEDLY ACQUIRED TRADEMARKS

48. In September and November 2022, after EIP instituted proceedings in the TTAB, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Ex. 63; Ex. 108 at 291:14-292:22; Ex. 124; Ex. 125 at 27:6-9; Ex. 126-128; Ex. 129 at 25:19-22, 74:17-20; Ex. 136-139; Ex. 205.

49. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

5

████████████. Ex. 130-131; Ex. 132; Ex. 133; Ex. 108 at 291:14-292:22; Ex. 125 at 99:9-12, 110:6-8; Ex. 129 at 185:8-11, 195:16-19.

50. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Ex. 124; Ex. 126; Ex. 125 at 119:14-22; Ex. 129 at 243:3-7.

51. ████████████████████████████████████████████████████████████████████████. Ex. 124; Ex. 126.

52. GR has provided no agreement reflecting that the Allegedly Acquired Marks were transferred from Marksmen to GR. Ex. 108 at 309:25-310:10.

53. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Ex. 206-207.

54. No employee of GR has ever visited the properties of the Alleged Predecessors, or took any steps to ensure the quality of the products or services offered under the marks beyond a handful of instances where GR looked at online reviews. Exs. 125 at 125:5-23, 128:24-129:2; Ex. 129 at 211:14-18; Ex. 213:16-214:9; Ex. 83 at 283:12-285:4; Ex. 114 at 5.

55. Marksmen was the entity who "facilitated" the assignment of the Allegedly Acquired Marks. Ex. 134 at Response No. 1.

56. ████████████████████████████████████████████████████████████████████████████████████████████████████████████. Ex. 124; Ex. 126.

57. GR's 30(b)(6) witness on the Alleged Predecessors and the Allegedly Acquired Marks, Michael Simkins, could not identify any other assignment agreements related to the Allegedly Acquired Marks. Ex. 108 at 8:19-24, 11:13-18, 309:25-310:17; Ex. 135 at 6-7.

58. Both the Eleven Inn and 11th Avenue Hostel are advertised and sold to budget travelers. Ex. 125 at 88:21-23; Ex. 127; Ex. 129 at 74:17-20; Ex. 136; Ex. 205.

59. The Alleged Predecessors do not offer luxury amenities and often feature shared dormitories and bathrooms. Ex. 125 at 44:4-24, 51:13-52:24, 67:19-21; Ex. 129 at 72:6-8, 56:9-12, 96:17-97:10, 152:24-153:24; Ex. 136-139; Ex. 141-143; Ex. 205.

60. Dennis DeGori, GR's manager and co-founder, testified that the Eleven Inn is not a competitor with E11EVEN because it is "█████████████████████████████████████ ████████████████████████████████████████████████████████████████████████

6

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███ Ex. 109 at 279:8-281:3, 281:9-15.

61. GR's 30(b)(6) witness and co-founder, Michael Simkins, testified that GR only became aware of the Alleged Predecessors through its outside litigation counsel and that the type of accommodations offered were different. Ex. 108 at 292:5-293:6; Ex. 83 at 296:10-297:6.

62. Mr. Simkins also confirmed that GR does not use any of the Allegedly Acquired Marks. Ex. 108 at 296:4-10.

63. In comparison, James Ilg, the manager and owner 11th Avenue Hostel and its 30(b)(6) witness, testified that he "would consider [the Infringing Hotels] luxury accommodations . . . The 11th Avenue Hostel is not a luxury accommodation, it's a hostel." Ex. 129 at 117:24-118:7.

64. In response to a question regarding whether the 11th Avenue Hostel offers the same type of amenities as luxury hotels, Mr. Ilg responded "A. No. We're not a luxury hotel." *Id.* at 108:17; *see also id.* at 108:13-110:1.

65. David Smith, the owner of the Eleven Inn and its 30(b)(6) witness, testified that he does not consider the Infringing Hotels similar to the Eleven Inn. Ex. 125 at 67:15-18.

66. Mr. Smith testified that GR's use of the Infringing Marks in connection with luxury hotels could not cause an issue because their hotels and his motel are "fishing in a different pond." Ex. 125 at 131:21-132:2.

67. Mr. Smith also explained that the Eleven Inn does not offer any amenities such as a spa, wellness center, private chef, in-house restaurants, rooftop hot tub, saltwater pool, steam room, sauna, media rooms, entertainment centers, fitness facilities, private gym, yoga room, or helipad, nor does it have a bar or live music. Ex. 125 at 54:17-55:24, 66:18-67:9.

68. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Ex. 124; Ex. 126.

69. David Smith, the owner and 30(b)(6) witness of the Eleven Inn, testified that he understood after signing the assignment agreement, "[he] would just continue doing business as [he] had." Ex. 125 at 27:3-5, 125:14-23.

7

70. According to Mr. Smith, GR "didn't acquire anything else" other than the trademarks, including any "property, asserts, inventories, anything like that," and he testified that he "still own[s] the business itself." Ex. 125 at 119:17-22.

71. The Eleven Inn understood that GR did not have the right to tell it how to use the "ELEVEN" and "ELEVEN INN" common law marks.  Ex. 125 at 126:15-22.

72. The Eleven Inn was also unaware of any visits by GR to conduct any quality control over the Eleven Inn, and believed that it could continue to use the "ELEVEN" and "ELEVEN INN" common law marks as it saw fit.  Ex. 125 at 124:22-125:6.

73. The Eleven Inn was not aware that GR even existed until it received a subpoena in connection with this litigation.  Ex. 125 at 12:24-13:2.

74. James Ilg, the owner of and 30(b)(6) witness for 11th Avenue Hostel, testified that after signing the agreement, whoever was buying the rights in the common law marks would not have the right to tell the 11th Avenue Hostel how to use the mark.  Ex. 129 at 28:22-25, 209:2-8.

75. Mr. Ilg testified that GR did not acquire any tangible assets from 11th Avenue Hostel nor does GR own or run the business, confirming that "the only thing you sold to GR Opco was [11th Avenue Hostel's] rights to the trademark" and that it "didn't sell any business assets." Ex. 129 at 243:3-7.

76. 11th Avenue Hostel was not aware of anyone from GR visiting the 11th Avenue Hostel to inspect the property, or anyone from GR contacting them regarding any quality control. Ex. 129 at 206:15-207:1, 211:14-25.

77. 11th Avenue Hostel also was not aware of anyone from GR contacting them regarding any quality control over the 11th Avenue Hostel.  *Id*. at 211:14-25.

78. GR's co-founder and 30(b)(6) witness regarding the Allegedly Acquired Marks, Michael Simkins, testified that GR did not directly communicate with the Alleged Predecessors or receive any information about them prior to the acquisition. Ex. 108 at 291:14-292:22.

79. GR asserts four instances of quality control: (1) its counsel in this case visited 11th Avenue Hostel in August 2023; (2) Marksmen visited the Eleven Inn in September 2022 (before the acquisition) and thereafter spoke with its owner; (3) GR's counsel in this case spoke once with the Eleven Inn; and (4) GR visited the Alleged Predecessors' websites and reviewed "online reviews" and "the digital image and reputation of the hotel." Ex. 144 at Response No. 13.

80. Both of the owners of the Eleven Inn and 11th Avenue Hostel admitted during

8

their depositions that they do not actually own or use all of the common law marks referenced in the assignments with Marksmen, including that they do not own rights to "Eleven" alone. Ex. 129 at 92:4-6, 193:10-195:5, 195:24-197:5; Ex. 125 102:2-103:12, 117:14-118:13, 120:3-18.

81. The Allegedly Acquired Marks are also visually distinct from Eleven's Marks. Ex. 124 at '091; Ex. 126 at '005.

82. The Alleged Predecessors admitted that they do not operate or advertise beyond their local markets, namely Balmorhea, Texas and Denver, Colorado, respectively. Ex. 125 at 27:6-9; Ex. 146; Ex. 129 at 25:19-25, 189:3-8, 196:20-23.

83. The Eleven Inn does not advertise at all. Ex. 125 at 20:6-11, 71:9-25, 72:13-73:22.

84. David Smith testified for the Eleven Inn that any advertising (to the extent there is any) is limited to West Texas, that "even to call those cups [which were created for a local football game] advertising is stretching the point," and that they "don't advertise in any other states." Ex. 125 at 92:9-93:17.

85. James Ilg testified for the 11th Avenue Hostel that that single-location hostel only competes with other hostels in the Denver area (which does not include Crested Butte, where some of Eleven's properties are located). Ex. 125 at 189:6, 243:22-244:6-8;40 at 91:7-91:10.

86. The respective owners and 30(b)(6) witnesses for the Alleged Predecessors admitted that their common law rights, if any, were limited to West Texas, and Denver, respectively. Ex. 125 at 123:23-124:7; Ex. 129 at 196:14-23.

87. Neither of the Alleged Predecessors ever contacted Eleven to protect their common law rights or assert claims against Eleven. Ex. 129 at 15:23-16:1; Ex. 125 at 13:7-11.

88. Both Alleged Predecessors admitted in their depositions that they are not aware of any customer confusion between the Eleven Inn and 11th Avenue Hostel, respectively, and Eleven; ███████████████. Ex. 125 at 19:24-20:15; Ex. 129 at 181:5-18; Ex. 144 at Interrog. 18.

89. Mr. Smith (Eleven Inn) said the idea of confusion between the Eleven Inn and Eleven was "more of a cocktail hour joke … than a legitimate concern." Ex. 125 at 19:24-20:15.

90. GR did not assert any claim until it filed its Complaint on December 20, 2022—**over 11 years** after Eleven began using its ELEVEN Marks. Ex. 83 at 246:15-25.

9

## IV. GR'S CANCELLATION CLAIM CANNOT SUCCEED AS A MATTER OF LAW

91. In connection with EIP's application for the word mark ELEVEN on April 7, 2011, Eleven submitted a Declaration by Alan Pike, a manager of EIP. Ex. 147 at '841-82.

92. Alan Pike also signed the Declarations for the applications that became U.S. Registration Nos. 4265159, 4384681, 4621491, 4269487, 4610119, and 4269438. Ex. 223.

93. Alan Pike was provided the trademark applications by EIP's attorneys to review prior to signing. Ex. 148-159.

94. In his Declarations, Alan Pike stated that to the best of his knowledge and belief "no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive" ("Third-Party Declarations"). Ex. 147 at – '841.

95. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. Ex. 160 at 161:10-17, 161:22-162:2.

96. Alan Pike testified ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. Ex. 160 at 161:10-162:2.

97. Alan Pike signed Statements of Use for what became Registration Nos. 4265159, 4384681, 4621491, 4269487, 4610119, and 4269438 ("First Use Declarations"). Ex. 212-217; D.E. 327 ("Pike Decl.").

98. Christine Bell, EIP's outside counsel (who was not deposed in this litigation), signed the Statement of Use for what became Registration No. 4,180,401. Ex. 162 at '703-05; D.E. 331 ("Bell Decl.").

99. GR's purported PTO expert ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. Ex. 161 at 130:15-20, 133:16-134:21.

100. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. Ex. 163 at -106, -388.

101. Chad Pike—the founder and owner of Eleven—testified that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. Ex. 61 at 150:13-153:9

102. Kyra Phelps, Eleven's 30(b)(6) witness on the issue of ▉▉▉▉▉▉

10

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████. Ex. 18 at 199:7-13, 199:20-200:15.

103.  GR's purported PTO expert, Meryl Hershkowitz, acknowledged ███████

████████████████████████████████████████████████████████████████

██████████████████. Ex. 161 at 52:2-16.

104.  Ms. Hershkowitz agreed that the ████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████ Ex. 161 at 134:14-21; Ex. 211.

105.  Ms. Hershkowitz admitted ██████████████████████████████████

████████████████████████████████████████████████████. Ex. 161 at. 114:3-11.

106.  Eleven's ELEVEN Marks appear throughout the Eleven Website, including in the top lefthand corner. Ex. 164-169.

107.  The Eleven Website advertises Eleven's hotels and homes, including descriptions of the amenities at each property and how to book them.  Ex. 165; Ex. 170-71.

108.  The PTO accepted screenshots of the Eleven Website as sufficient specimens of use, and registered the marks on that basis.  Ex. 172; at -1890; Ex. 173 at -1581; Ex. 162 at -1706.

109.  This alone is persuasive to show use. Ex. 211 ¶ 165.

110.  GR's PTO expert, Ms. Hershkowitz, ████████████████████████

████████████████████████████. Ex. 161 at 78:13-19.

## V.  GR'S UNLAWFUL USE CLAIM FAILS AS A MATTER OF LAW

111.  Eleven had a Temporary Certificate of Occupancy for Eleven Scarp Ridge Lodge as of December 15, 2011. Ex. 174.

112.  Chad Pike, Eleven's founder, confirmed that Eleven had the health and safety certificates it needed on November 11, 2011. Ex. 61 at 116:8-17.

## VI.  GR'S NAKED LICENSING DEFENSE FAILS AS A MATTER OF LAW

113.  ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████. Ex.

18 at 76:17-79:14.

114. ███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████. *Id*.

## VII. DEFENDANTS' LACHES, WAIVER, ACQUIESCENCE AND ESTOPPEL DEFENSES FAIL

115. West Eleventh was announced in February 2023, after this litigation began, and Eleven learned of it in October 2023. Ex. 96; Ex. 202 at 27:18-21.

116. GR has claimed that, before launching the Infringing Hotels at issue in this case, it booked rooms at unaffiliated third-party hotels (*e.g.*, the Godfrey) for employees, talent, and events related to the E11EVEN nightclub. Ex. 93 at 161:16-162:19.

117. Before announcing the Infringing Hotels, GR had never offered any hotels or condominiums under the Infringing Marks. Ex. 203 at 26:25-27:10, 32:8-33:1, 218:24-219:5; Ex. 93 at 108:13-19.

## VIII. DEFENDANTS' COUNTERCLAIMS AND OTHER DEFENSES FAIL AS A MATTER OF LAW

118. B17 uses the WEST ELEVENTH Marks, which include WEST ELEVENTH RESIDENCES, WEST ELEVENTH, W11, and the related logos. Ex. 175-180.

119. Dictionaries do not define "eleven" as any category of hotel, hospitality, or travel service. Ex. 184 at Interrog. 12; Ex. 182 at ¶¶ 33; Ex. 208-210.

120. Linguistics expert Dr. Phillip Carter found that dictionaries simply defined "eleven" "in relation to other numbers," i.e., a number that is "one more than ten," and that such term has not been associated with hotels. Ex. 182 ¶ 33-37.

121. Dr. Ashlee Humphreys, Eleven's marketing expert, reviewed dictionary definitions of "Eleven" and found no evidence to suggest that the term is synonymous with hospitality or travel services. Ex. 63 ¶ 35.

122. B17's marketing expert, Dr. Erich Joachimsthaler, testified that "eleven" "doesn't suggest to me a hotel." Ex. 183 at 57:19-58:1.

123. When asked if he has "ever seen the word 'Eleven' used to identify a type of hotel," Dr. Joachimsthaler said: "No." Ex. 183 at 58:3-6.

124. Dr. Joachimsthaler testified that "eleven" "could be anything . . . it doesn't lean into anything that's establishing in consumer's head. . . . it could be the number 11. . . [i]t could

refer to anything." Ex. 183 at 60:3-7, 201:4-202:6.

125. When asked to identify dictionary definitions, trade publications, or manuals identifying "eleven" as a genus or category of hotel services, B17 only identified a *New York Post* article, a *Forbes* article, and an article from the Crested Butte Rotary Club. Exs. 184 at Interrog. 12.

126. All three of those articles are about Eleven's ***own*** hotels, and do not use "eleven" as a category of hotels (*e.g.* referring to "the Eleven operation" that runs "Scarp River Lodge"). Ex. 184.

127. When asked to provide the complete factual basis for its contention that the ELEVEN Marks are generic, B17 did not reference any evidence of purchaser testimony, analysis of consumer usage, or survey evidence. Ex. 184 at Interrog. 13.

128. The PTO granted the ELEVEN Registrations without requiring a showing of secondary meaning. Ex. 185 at 69:15-19; Ex. 161 at 17:8-13.

129. B17 has argued that the ELEVEN Marks are merely descriptive for two reasons: (1) third parties "use '11' and 'Eleven'-formative terms, trade names, and marks to describe the characteristics, nature, origin, and/or qualities of goods and services" in different ways (including to identify actual street addresses), and (2) the ELEVEN Marks describe the nature of Eleven's services that "launched on November 11, 2011, and that are one number more than 10 on a scale from 1-10." Ex. 184 at Interrog. 13-14.

130. The majority of the third parties on which B17 relies are not in the hotel industry at all, and many of those that relate to accommodations use the number "11" to refer to the literal street address of the location. Ex. 186 ¶ 74.

### A. Defendants' Use of the WEST ELEVENTH Marks Is Not a Descriptive Fair Use

131. The WEST ELEVENTH Marks appear at the top of B17's website, www.westeleventhresidences.com ("West Eleventh Website"), in a stylized font, in a logo format. Ex. 175.

132. Plans for West Eleventh Residences show that the mark will be affixed to the exterior of the building. Exs. 187.

133. The "West Eleventh" term appears prominently on B17's Instagram page for West Eleventh Residences, including at the top of the page and in the account name

13

(@westeleventhmiami). Ex. 175.

134. The WEST ELEVENTH Marks are used throughout the sales gallery where the property is promoted and sold (along with the other infringing E11EVEN Hotels), including above the door. Ex. 189.

135. The WEST ELEVENTH Marks are used prominently in all other marketing materials. Ex. 171-181.

136. ███████████████████████████████████████████████████████████████. Ex. 190 at -4707.

137. GR's purported expert on third-party uses, who is a trademark attorney, Kenneth Germain, ███████████████████████████████████████████████████████████████. Ex. 185 at 31:2-19, 33:22-36:13.

138. A disclaimer located on the bottom of the West Eleventh Website stated: "THIS PROJECT IS BEING DEVELOPED BY 400 BISCAYNE CONDO OWNER, LP . . . WHICH HAS A LIMITED RIGHT TO USE *THE NAME AND LOGO OF BLOCK 17 RESIDENTIAL OWNER, LLC*." Ex. 175 (emphasis added).

139. In response to an Interrogatory concerning this disclaimer, B17 claimed that this was a "scrivener's error." Ex. 184 at Interrog. 19.

140. The address of West Eleventh is 18 Northwest 11th Street. Ex. 183 at 202:7-20; Ex. 191 at 68:17-20; Ex. 192 at 117:7-21; Ex. 92 at 113:6-13.

141. B17's marketing expert, Dr. Joachimsthaler, agreed that "West Eleventh Residences" does not literally convey the address of the property. Ex. 183 at 202:7-20.

142. Dr. Joachimsthaler concluded that the term "West Eleventh Residences" was "suggestive." Ex. 183 at 198:5-21; Ex. 193. at Table 2.

143. B17 considered other options for naming the property. Ex. 194-196; Ex. 184 at Interrog. 2

144. ███████████████████████████████████████████████████████████████. Ex. 186 at 105; Ex. 197 at 7-8; Ex. 17 at Interrog. 14; Ex. 61 at 241:17-25, 246:12-247:13; Ex. 55 at 313:4-316:6; Ex. 18 at 49:6-57:10.

IX. **ADDITIONAL FACTS RELATING TO DEFENDANTS' NEW DEFENSES**

145. The relevant trademark filings Alan Pike was involved in were submitted more than a decade ago. GR's counsel did not give Alan Pike the complete filings during his

14

deposition nor asked him if he signed the declarations at issue. Yet, counsel showed him 14 other documents—including agreements—and asked whether he recognized his signature on those documents. D.E. 380-01 at 150:11-22, 151:1-4, 289:17-301:23; Pike Decl. ¶¶8-20.

146. As a manager of EIP, Alan Pike routinely signed documents, including on trademark issues, for EIP. It was his practice to review these materials before signing. Kyra Phelps testified she had ███████████████████████████████████████ ███████████████████████████. D.E. 380-15 at 30:1-11, 19:21-24, 29:14-30:11, 30:31-31:5, 33:16-19, 45:13-46:7; Pike Decl. ¶¶1-4; Bell Decl. ¶¶3-8.

147. A. Pike was provided with the trademark applications by EIP's attorneys to review prior to signing, and he signed the declarations. Pike Decl. ¶¶5-7, 14-20; Bell Decl. ¶¶5-10.

148. GR's purported PTO expert, Meryl Hershkowitz, ███████████████████████ ███████████████████████████████████████████████████████████████████████. Declaration of Eric Loverro ("Loverro Decl."), Ex. 620 at 130:4-13, filed concurrently herewith.

149. GR admitted that ████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████. D.E. 380-524 at Rog 22; Loverro Decl., Ex. 621 at 32-38.

150. Stan Sneeringer, GR's 30(b)(6) corporate representative and trademark prosecution counsel for the abovementioned applications, testified that ███████████ ███████████████████████████████████████████████████████████████████████ ████████████████████████████████████. D.E. 380; Ex. 248 at 228:13-18, 228:24-229:6, 232:7-234:2; Loverro Decl., Exs. 622–626.

Dated: October 18, 2024

Respectfully submitted,

/s/ Gavin C. Gaukroger
Gavin C. Gaukroger
Florida Bar No. 76489
ggaukroger@bergersingerman.com
BERGER SINGERMAN LLP
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone: (305) 755-9500

>Dale M. Cendali (admitted *pro hac vice*)
>dale.cendali@kirkland.com
>Claudia Ray (admitted *pro hac vice*)
>claudia.ray@kirkland.com
>Shanti Sadtler Conway (admitted *pro hac vice*)
>shanti.conway@kirkland.com
>Mary Mazzello (admitted *pro hac vice*)
>mary.mazzello@kirkland.com
>Eric Loverro (admitted *pro hac vice*)
>eric.loverro@kirkland.com
>Justin Taylor (admitted *pro hac vice*)
>justin.taylor@kirkland.com
>KIRKLAND & ELLIS LLP
>601 Lexington Avenue
>New York, NY 10022
>Telephone: (212) 446-4800
>
>Miranda D. Means (admitted *pro hac vice*)
>miranda.means@kirkland.com
>KIRKLAND & ELLIS LLP
>200 Clarendon Street
>Boston, MA 02116
>Telephone: (617) 385-7500
>
>*Attorneys for Eleven IP Holdings LLC, Grassy Creek LLC, CS Irwin LLC, Irwin Backcountry Guides, LLC, Chad Pike, and Alan Pike*