**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
MIAMI DIVISION
Case No.: 1:22-cv-24119-FAM/TORRES

GR OPCO, LLC,

              Plaintiff,

     v.

ELEVEN IP HOLDINGS, LLC,
GRASSY CREEK LLC, CS IRWIN LLC,
IRWIN BACK COUNTRY GUIDES, LLC,
ALAN PIKE, AND CHAD PIKE,

              Defendants,

and

ELEVEN IP HOLDINGS LLC,

              Counter-Plaintiff,

v.

GR OPCO, LLC, 11USA GROUP, LLC,
MARC ROBERTS, DENNIS DEGORI,
MICHAEL SIMKINS, MARC ROBERTS
COMPANIES LLC, PROPERTY
MARKETS GROUP, INC., PMG-11TH
STREET VENTURES, LLC, PMG-11TH
STREET VENTURES II, LLC, BLOCK 17
TRUSTEE, LLC, BLOCK 17 RESIDENTIAL
OWNER, LLC, AND LION DEVELOPMENT
OPPORTUNITY FUND LLC,

              Counter-Defendants

and

BLOCK 17 TRUSTEE, LLC, BLOCK 17
RESIDENTIAL OWNER, LLC

              Counterclaim-Plaintiff,

v.

ELEVEN IP HOLDINGS LLC,

              Counterclaim-Defendant,

_____/

**PLAINTIFF AND COUNTERCLAIM-DEFENDANTS' REPLY**
**IN SUPPORT OF THEIR AMENDED MOTION FOR SUMMARY JUDGMENT**

     Plaintiff GR Opco, LLC, d/b/a E11EVEN ("GR"), and Counterclaim-Defendants 11USA

GROUP, LLC ("11 USA"), MARC ROBERTS, DENNIS DEGORI, MICHAEL SIMKINS,

i

MARC ROBERTS COMPANIES LLC, PROPERTY MARKETS GROUP, INC., PMG-11TH STREET VENTURES, LLC, PMG-11TH STREET VENTURES II, LLC, LION DEVELOPMENT OPPORTUNITY FUND LLC, BLOCK 17 TRUSTEE, LLC and BLOCK 17 RESIDENTIAL OWNER, LLC (together with Block 17 Trustee LLC, "Block 17"), (collectively, the "Movants"), pursuant to Federal Rule of Civil Procedure 56 and S.D. Fla. Local Rule 56.1 and the previously submitted Amended Statement of Undisputed Material Facts [DE 481; DE 483] ("SOF") and Statement of Disputed Facts ("DEF") as to Defendants' Additional Material Facts submitted herewith, jointly reply in support of their Amended Motion for Summary Judgment [DE 480; DE 482; ("Mot.")] to address the opposition filed by ELEVEN IP HOLDINGS, LLC ("EIP") and its co-defendants CS IRWIN LLC, GRASSY CREEK LLC, IRWIN BACKCOUNTRY GUIDES LLC (collectively, "EIP") [DE 492, "Opp."], including EIP's amended dispute of the SOF ("EIP's DMF") and additional facts ("EIP's AMF") [DE 493].

## **TABLE OF CONTENTS**

I.    INTRODUCTION...................................................................................................... 1

II.   MOVANTS HAVE PRIORITY OF RIGHTS .................................................... 1

    A.   Movants Have Priority as to Real Property Assets ................................................. 1

    B.   GR Opco Has Priority as to Hotel Services.................................................... 4

III.  EIP'S MARKS ARE INVALID AND, THUS, UNPROTECTABLE ............................. 4

IV.   NO LIKELIHOOD OF CONFUSION REGARDING REAL PROPERTY................... 8

    A.   Dissimilarity between Real Property and Vacation Services............................... 8

    B.   No Actual Confusion Exists Regarding Real Property Sales............................... 9

       i.   EIP's Anecdotal Evidence is Inadmissible Double-Hearsay and Must Be Rejected...... 9

      ii.   EIP's Surveys are the Subject of a Daubert Motion to Exclude ................................... 10

    C.   Remaining Factors Indicate No Confusion as to Real Property .......................... 10

V.    NO LIKELIHOOD OF CONFUSION REGARDING HOTEL SERVICES ............... 10

    A.   Dissimilarity between the Existing and Planned Hotel Services ....................... 10

B.    Consumer Sophistication ............................................................................ 11

C.    Dissimilarity of the Parties' Respective Marks ....................................... 11

D.    Lack of Real-World Commercial Strength of Allegedly Infringed Mark ...... 12

**VI.   EIP'S REVERSE CONFUSION CLAIM ALSO FAILS** ............................................... **13**

**VII.  FAIR USE OF WEST ELEVENTH RESIDENCES MIAMI AND W11** ...................... **14**

**VIII. CONCLUSION** ............................................................................................. **15**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bailey v. Metro Ambulance Servs.*,
    992 F.3d 1265 (11th Cir. 2021) ..................................................................................7

*Breakers of Palm Beach, Inc. v. Int'l Beach Hotel Dev.*,
    824 F. Supp. 1576 (S.D. Fla. 1993) ............................................................................3

*Brother Records, Inc. v. Jardine*,
    318 F.3d 900 (9th Cir. 2003) ....................................................................................14

*Buccellati Holding Italia Spa v. Laura Buccelatti, LLC*,
    5 F. Supp. 3d 1368 (S.D. Fla. 2014) .........................................................................15

*Carnival Brand Seafood Co. v. Carnival Brands, Inc.*,
    187 F.3d 1307 (11th Cir. 1999) ..............................................................................2, 3

*Casey Key Resort, LLC v. CK Resorts JV*,
    LLC, 2021 WL 4893682 (M.D. Fla., Oct. 20, 2021)................................................15

*Commodores Ent. Corp. v. Thomas McClary*,
    2015 WL 12843872 (M.D. Fla. Mar. 10, 2015) .......................................................14

*Curity AB v. Chenmed*,
    2022 WL 18956198 (S.D. Fla. Dec. 7, 2022) ...........................................................13

*DCS Real Est. Invs., LLC v. Yapor Corp.*,
    2015 WL 12780447 (M.D. Fla. Feb. 26, 2015) ........................................................14

*FCOA LLC v. Foremost Title*,
    57 F.4th 939 (11th Cir. 2023) .............................................................................12, 13

*FIU Bd. of Trs. v. Fla. Nat'l Univ., Inc.*,
    830 F.3d 1242 (11th Cir. 2016) .............................................................................9, 12

*Hard Candy LLC v. Anastasia Beverly Hills, Inc.*,
    921 F.3d 1343 (11th Cir. 2019) ................................................................................14

*Holiday Inns, Inc. v. Holiday Out in Am.*,
    481 F.2d 445 (5th Cir. 1973) ......................................................................................9

*Horn's, Inc. v. Sanofi Beaute, Inc.*,
    963 F.Supp. 318 (S.D.N.Y. 1997) ............................................................................12

iv

*Hotel Corp. of Am. v. Inn Am., Inc.*, 1967,
    TTAB LEXIS 52 (TTAB, Mar. 16, 1967) ..........................................................12

*Int'l Stamp Art, Inc.*,
    456 F.3d at 1276 ............................................................................................15

*Invisasox, LLC v. Everythng Legwear, LLC*,
    No. 8:18-cv-2639-T-17GW, 2020 U.S. Dist. LEXIS 103603 (M.D. Fla. June
    12, 2020) ......................................................................................................10

*K-Permanent Makeup, Inc. v. Lasting Impression I, Inc.*,
    543 U.S. 111 (2004).........................................................................................15

*Latimer v. Roaring Toyz, Inc.*,
    601 F.3d 1224 (11th Cir. 2010) ........................................................................5

*Lho Wash. Hotel Two v. Posh Ventures Ltd. Liab. Co.*,
    No. 08-451-AA, 2008 U.S. Dist. LEXIS 138574 (D. Or. June 10, 2008) ...............11

*Marc E. Bosem MD PA Correctvision Holdings LLC v. Sentinel Ins. Co., Ltd.*,
    No. 20-62205-CIV-DIMITROULEAS, 2022 U.S. Dist. LEXIS 33068 (S.D.
    Fla. Jan. 21, 2022)..........................................................................................7

*Marks v. Cayo Hueso, Ltd.*,
    437 So. 2d 775 (Fla. 3d DCA 1983) ..................................................................3

*Most Worshipful Nat'l Grand Lodge v. United Grand Lodge GA AF & AYM, Inc.*,
    813 F. App'x 455 (11th Cir. 2020) ...................................................................9

*Planetary Motion, Inc. v. Techsplosion, Inc.*,
    261 F.3d 1188 (11th Cir. 2001) ....................................................................2, 3

*Pritchard v. S. Co. Servs.*,
    92 F.3d 1130 (11th Cir. 1996) ........................................................................9

*Resort Int'l, Inc. v. Great Bay Hotel & Casino, Inc.*,
    1991 WL 352487 (D.N.J. Jan. 18, 1991) ..........................................................14

*River Hotel Co. v. La Mansion On The Bay, Inc.*,
    1985 WL 5995 (N.D. Fla. Oct. 31, 1985) ..........................................................3

*Sands, Taylor & Wood Co. v. Quaker Oats Co.*,
    978 F.2d 947 (7th Cir. 1992) ..........................................................................14

*Setai Hotel Acq., LLC v. Miami Beach Luxury Rentals, Inc.*,
    Case No. 16-21296-Civ-Scola, 2017 U.S. Dist. LEXIS 129642 (S.D. Fla. Aug.
    15, 2017) ......................................................................................................3

*Sun Banks of Fla., Inc. v. Sun Fed. Sav. & Loan Ass'n*,
    651 F.2d 311 (5th Cir. 1981) ................................................................12

*Superior Consulting Servs. v. Shaklee Corp.*,
    No. 19-10771, 2021 U.S. App. LEXIS 29284 (11th Cir. Sep. 28, 2021) ..................9

*Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*,
    889 F.2d 1018 (11th Cir. 1989) ..............................................................3

*Tortoise Island Homeowners Ass'n v. Tortoise Island Realty*,
    790 So. 2d 525 (Fla. 5th DCA 2001) ........................................................3

*Tree Tavern Prods., Inc. v. Conagra, Inc.*,
    640 F. Supp. 1263 (D. Del. 1986) ..........................................................14

*United Country Real Estate, LLC v. United Realty Grp., Inc.*,
    2017 U.S. Dist. LEXIS 160748 (S.D. Fla. Sep. 29, 2017) ................................12

*Vive Health LLC v. Hirschfeld*,
    No. 2:19-513-FtM-JLB-NPM, 2021 U.S. Dist. LEXIS 71297 (M.D. Fla. Mar.
    23, 2021) ..................................................................................11

*White v. Toscano, Inc.*,
    No. 8:04-cv-2438-T-26MSS, 2005 U.S. Dist. LEXIS 59120 (M.D. Fla. Oct.
    11, 2005) ..................................................................................3

*Wreal, LLC v. Amazon.com, Inc.*,
    38 F.4th 114 (11th Cir. 2022) ....................................................9, 10, 13

**Statutes**

15 U.S.C. § 1057(b) ..............................................................................2

15 U.S.C. § 1064(3) ..............................................................................4

15 U.S.C. § 1065 ................................................................................4

**Rules & Regulations**

Rule 30(b)(6) ..................................................................................10

**Other Authorities**

McCarthy, § 14:3 ..............................................................................14

McCarthy, §14:9 ..............................................................................14

McCarthy, § 23:10 ............................................................................13

## I.   INTRODUCTION

EIP employs several flawed tactics in opposition to this Motion. First, EIP elevates quantity over quality and clogs the court file with duplicative, irrelevant exhibits. Next, where exhibits are relevant, EIP shows a lack of confidence in its position by mischaracterizing or exaggerating them. When faced with sworn testimony, EIP rewrites it with unsworn, sham declarations. Where it does not have sworn testimony, EIP tries to create an issue through inadmissible double-hearsay.

To serve its goal of obtaining a disgorgement of profits from the sale of real property assets, EIP's next tactic is to conflate the Movants' asset sales with their planned, future hotel services in an effort to confuse the factfinder into treating them with one broad brush. EIP also attempts to create a similarity between the parties' offerings where none exists by sanitizing from its discussion its focus on experiential travel, all-inclusive offerings, and full-property buyouts—*none* of which Movants offer. Unlike its actual "*better than 10*" marketing, for purposes of this lawsuit, EIP wants to be seen as just a stereotypical luxury hotel. It even tries to argue, without support, that its ultra-high net worth clients are unsophisticated.

Continuing with an illusionist's flair, EIP conjures up alleged similarity between the marks by making impermissible side-by-side comparisons devoid of any marketplace context. EIP makes a similar out-of-context approach to commercial strength by hiding reality beneath cumulative 12- to 13-year figures that fail to mention how few sales at their exorbitant prices are needed to achieve those figures, and seeking to minimize the effect of the indisputable crowded field on its asserted marks' strength: they are weak. Looking under the surface of the illusionist's hearsay, shams and mischaracterizations, however, it becomes clear that EIP has no meaningful, admissible evidence and cannot defeat the Movants' Motion. Thus, as further explained below (and in the Mot.), the Court should grant summary judgment to Movants.

## II.  MOVANTS HAVE PRIORITY OF RIGHTS
### A.  <u>Movants Have Priority as to Real Property Assets</u>

The distinction between selling real property (*i.e.*, a long-term asset to investors or home-buyers) versus selling services in the nature of temporary accommodation at lodges, hotels, or vacation homes (*i.e.*, travel services to vacationers) is not a red-herring but, instead, a critical distinction that EIP keeps trying to erase. EIP's conflation effort is aimed at avoiding the requirement to actually prove relatedness in the minds of consumers between its fleeting vacation services and the Movants' real property assets. EIP attempts to confuse the fact-finder into

believing that there is only *one* set of infringement claims in this action, so that it can lump all of the allegedly infringing activities into a single-category—hotel services—and, thus, into the general market segment that *some* of its common law and registered trademarks cover. Such conflation, however, ignores reality and would be unduly prejudicial to the Movants.

In attempting to enforce both common law and registered rights (DE 451 ¶ 1), EIP has made it clear that—*in addition to an injunction of the planned, future hotel services*—it is also seeking **disgorgement** of the Movants' alleged **profits from the sales of real property**. *Id*. at. 60-62. EIP is seeking that windfall as to the real property because it knows that no alleged hotel services exist yet (*and may never exist for West Eleventh Residences Miami*) and, thus, there can be no profits as to that second target: the planned, future services. *Id*. at 7. Thus, there is a disconnect between the claims EIP has made and the relief it is seeking.

EIP is asserting common law rights in the ELEVEN EXPERIENCE, ELEVEN, and black-diamond with ski-tracks [logo] logo. DE 451, ¶¶ 1, 167, 190. EIP has **no** registered rights in the ELEVEN EXPERIENCE mark.[1] *Id.* ¶ 63. Those common law rights are not entitled to *prima facie* priority under 15 U.S.C. § 1057(b) as EIP argues. Opp. at 7. Moreover, under 15 U.S.C. § 1057(b), a certificate of registration is *prima facie* evidence of the owner's right to use the registered mark on the goods or services "**specified** in the certificate, subject to any conditions or limitations in the certificate." 15 U.S.C. § 1057(b). (emphasis added). It is not *prima facie* evidence of the owner's right to use the mark on *any or all* goods or services. *See id*. Here, EIP is asserting registered rights in the word ELEVEN,[2] some of the certificates for which (Reg. Nos. 4,265,159 and 4,269,487) cover hotel and travel agency services (*with the limitation that restaurant services are excluded*),[3] and another that covers outdoor activities (Reg. No. 4,180,401). DE 451 ¶ 63. By citing *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1201 (11th Cir. 2001) for support and approving of GR's citation of *Carnival Brand Seafood Co. v. Carnival Brands, Inc.*, 187 F.3d 1307, 1312

---

[1] EIP's Exs. 285, 298, among others, show reliance upon the ELEVEN EXPERIENCE mark. DE 380-53, 380-63.

[2] EIP also asserts registered rights in the [logo] logo, for hotel and travel agency services (4,610,119, 4,621,491 and 4,384,681) and outdoor activities (4,269,238 and 4,610,113). DE 451 ¶ 63. However, the E11 Towers do not use a logo; thus, EIP's assertion of the [logo] logo is frivolous with respect to such towers. And WERM uses the dissimilar logos of its developers and AIRBNB.

[3] Thus, where EIP has attempted to compare the parties' offerings based on inclusion of dining services, such a comparison is barred by the limitation in EIP's registration certificates.

(11th Cir. 1999) and *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1024 (11th Cir. 1989), EIP shows that the parties share some common ground: that EIP neither has priority of rights in its asserted common law marks, nor in its asserted registered rights **unless** it can demonstrate that **consumers** would reasonably believe (*not what the parties or other non-consumers speculate they might believe*) that real property assets would be sold by the same source that is selling vacation services (*i.e.*, temporary hotel stays and travel booking). *See* Opp. at 6-7, n.8. *Carnival Brand Seafood*, 187 F.3d at 1312; *Tally-Ho*, 889 F.2d at 1024; *Planetary Motion*, 261 F.3d at 1201-02. EIP lacks record evidence of such consumer confusion.

EIP prefers the latter, as is clear from its reliance on the obscure, unpublished decision of *River Hotel Co. v. La Mansion On The Bay, Inc.*, 1985 WL 5995, *2 (N.D. Fla. Oct. 31, 1985), which admittedly relied on "scant" evidence and its own opinion, for the unsupported contention that, forty years ago, "courts" (plural) "rejected" the hotel/condo divide.  But that case did not hold that there is no difference between the markets for owning real property and paying for temporary travel services. Nor do the *Setai Hotel*, *Marks*, and *Breakers of Palm Beach* opinions that EIP cites back up that contention. In *Setai Hotel*, the dispute was between two properties sharing the same land and which previously had an agreement to share hotel support services. *Setai Hotel Acq., LLC v. Miami Beach Luxury Rentals, Inc.*, Case No. 16-21296-Civ-Scola, 2017 U.S. Dist. LEXIS 129642 (S.D. Fla. Aug. 15, 2017). In *Breakers of Palm Beach*, both properties were hotels at the time of the dispute. *Breakers of Palm Beach, Inc. v. Int'l Beach Hotel Dev.*, 824 F. Supp. 1576 (S.D. Fla. 1993). In *Marks*, the defendant's townhomes were adjacent to the plaintiff's hotel. *Marks v. Cayo Hueso, Ltd.*, 437 So. 2d 775 (Fla. 3d DCA 1983). Finally, *Tortoise Island* did not involve hotels at all but, instead a condominium association and a realtor. *Tortoise Island Homeowners Ass'n v. Tortoise Island Realty*, 790 So. 2d 525 (Fla. 5th DCA 2001). EIP cannot manufacture relatedness by means of mischaracterizing what courts have done in unrelated cases.

In trademark infringement actions, determinations are made based on probability, not possibility. *See White v. Toscano, Inc.*, No. 8:04-cv-2438-T-26MSS, 2005 U.S. Dist. LEXIS 59120, at *20 (M.D. Fla. Oct. 11, 2005) ("Plaintiffs must show at least probable injury"). In its Opposition, however, EIP offers nothing but a misunderstanding of what the word "many" means.[4]

---

[4] Contrary to EIP's use of the word, "many" is defined as "consisting of or amounting to a large but indefinite number" or "the great majority of people." DEF ¶4.

3

Opp. at 7. In a vast marketplace, EIP describes three examples of a hotel/residence overlap—*one of which operates entirely outside the U.S.*[5]—as "many." That *de minimis* set of two U.S. examples is not even an excerpt of a full market study, because there is no such study of record. EIP did not conduct one. DEF ¶4. Likewise, EIP did not conduct a survey of consumer views on the relatedness issue. *Id*. Consequently, given the absence of record evidence demonstrating that consumers would reasonably believe that real property assets are sold by the same source that offers vacation services such as temporary hotel accommodations and travel agency services, EIP cannot stretch its purported trademark rights—*whether common law or registered*—into the unrelated market of real property asset sales. Accordingly, GR is entitled to summary judgment on Count I (for declaratory judgment) of its Second Amended Counterclaim.

### B. GR Opco Has Priority as to Hotel Services

On the issue of GR's priority of rights for hotel services, EIP merely repeats the same anti-assignment arguments it made in its own motion for summary judgment. *See* DE 247 at 7 (as amended at DE 500 at 6-8). Those arguments fail here for the same reasons GR explained in opposition to that motion, which GR incorporates by reference here.[6] DE 301 at 2-8.

### III.  EIP'S MARKS ARE INVALID AND, THUS, UNPROTECTABLE

EIP's attempt to avoid summary judgment by reference to the "incontestable" status of *some* of its asserted registrations fails because "incontestability" is a misnomer. Under 15 U.S.C. § 1064(3) and § 1065, an incontestable registration is subject to cancellation if, among other things, it was obtained fraudulently. Record evidence shows that EIP obtained many of its registrations fraudulently—particularly those that relied upon the signature of Alan Pike.

Similarly, EIP's attempt to characterize GR's discussion of the forgery of Alan Pike's signature as a new theory of fraud must be rejected. GR's cancellation claim is based on fraud upon the United States Patent and Trademark Office, which was committed through, among other things, the submission of fraudulent declarations bearing Alan Pike's signature. DE 140, Count III. Several allegations in Count III refer to Alan Pike's signatures and their materiality (*e.g.*, ¶¶ 196-199, 203), which placed EIP on notice that Alan Pike's signatures are at issue.[7] Thus, not

---

[5] Sixth Sense is in Thailand and does not have any properties in the U.S. DE 430-01.

[6] In Nov. 2016, GR applied to federally register its E11EVEN mark for providing temporary accommodation in a hotel. The Examiner did not cite EIP's ELEVEN mark as confusingly similar but, instead, approved GR's application, which was then registered, without opposition, in 2019.

[7] EIP's fraud was also placed at issue in GR's Second Affirmative Defense. DE 107 at 19.

surprisingly, EIP placed Alan Pike on its witness list for knowledge of EIP's trademark application for ELEVEN, Serial No. 85289682 (also known as Reg. No. 4,265,159). DEF ¶1. Accordingly, Alan Pike's signatures and involvement in the trademark application process have been the subject of vigorous discovery efforts, which EIP has resisted and delayed. *See* DE 209, Mot. for Sanctions.

Recognizing the folly of its "new theory" argument, EIP decided to provide a substantive response to the issue, which brazenly included submitting a sham, unsworn declaration by Alan Pike and a matching,[8] unsworn declaration from Christine Bell, a witness never disclosed on its Witness List. DEF ¶1. These prejudicial declarations must be disregarded. First, Alan Pike's declaration must be disregarded as a sham attempt to overcome clear, sworn testimony. A court may deem an affidavit a sham when it contradicts previous deposition testimony and the party submitting it failed to give a valid reason for the contradiction. *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1236-37 (11th Cir. 2010).

Alan Pike was employed in the field of marketing communications for over thirty years and, thus, is familiar with the importance of trademarks. DEF ¶2. The subject is not foreign to him. Indeed, **EIP disclosed him as a witness as to the particular trademark application for ELEVEN, Serial No. 85289682**, which pertains to hotel services. DEF ¶ 1. ███████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████ DEF ¶¶ 1, 3. However, ████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████ DEF ¶¶ 1, 3. Moreover, ████████████████████████████ ████████████████████████████████████ *See* SOF ¶ 11.

Nevertheless, when asked: ████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████ SOF ¶ 12. Alan Pike had ample opportunity to submit an errata sheet to correct that clear statement and any others. He did not do so. DEF ¶¶ 1, 3. After █████

---

[8] The first **thirty-six** exhibits of the Pike and Bell declarations are **identical**. *Compare* DE 327-1 to 327-37 *with* DE 331-1 to 331-37. EIP also burdened the Court—*elevating quantity over quality*—with **twenty** irrelevant exhibits regarding a mark **not** asserted in this case, a logo of mountains and waves in a diamond shape,◈. DE 327, Exs. 13-16, 23-24, and 32-35; DE 331, Exs. 13-16, 23-24, and 32-35 (Serial Nos. 85458472, 85458474, 85458475, and 85458477).



*See id.* Similarly, ██████████████████ [9] Alan Pike clearly testified that ████████████ ████████████████ SOF ¶ 11. In his sham declaration, however, he contradicts that testimony by claiming ████████████████████ ████████████████████ DE 327 ¶¶ 6-7. Even if GR had wanted to ask Alan Pike about █████████, it could not have because they were not produced until 136 days **after** his deposition and 137 days **after** EIP's Notice of Completion of Production. *See* DE 214 at 4.[10]

When asked ████████████████████████ ██████████████ Alan Pike's first answer was clear: ████████████████ SOF ¶ 13. In his sham declaration, however, he contradicts that clear first response by vaguely asserting that █████████████████████ ████████ DE 327 ¶ 3. He states that ████████████████████ ████████████████████████████ ████████████ *Id.* ¶ 4.[11] Notably, a chronological sort of the exhibits attached to his declaration shows that there are **no emails** from Christine Bell or anyone else **whereby he was asked to sign** the ELEVEN trademark **application Serial No. 85289682** (in Class 43 for hotels) **filed on April 7, 2011** or provided a link by which to do so. *See* DE 327, Exs. 1-40. There are no documents that could have refreshed Alan Pike's recollection as to being asked to sign, following a link and signing that application. Thus, Alan Pike's unsworn declaration is, at the very least, a sham with respect to the ELEVEN trademark application Serial No. 85289682 (in Class 43 for hotels) filed on April 7, 2011.

As for Alan Pike's purported explanation for ████████████████████ ████████████████████████████████████████

---

[9] DE 214 at 2-3. Mr. Pike testified that he had ████████████████████████ ████████████████████████ DEF ¶¶ 1, 3.

[10] EIP's counsel even refused to agree to hold the deposition open, stating: "A full and thorough search was conducted. There's been extensive correspondence about that. It's our position that you have all of his documents. . .We will not bring this witness back." DEF ¶ 3.

[11] Alan Pike did not identify any person or instance of discussing any trademark application with anyone. *See id.*

████████████████████████████████ DE 327 ¶ 9. Nowhere in his declaration, however, does
he ████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████

*See* DEF ¶¶ 1-3. Thus, the excuse for his contradictory declaration is invalid and cannot save Alan
Pike's declaration from being deemed a sham and disregarded. *See Bailey v. Metro Ambulance
Servs.*, 992 F.3d 1265, 1279 (11th Cir. 2021).

The declaration of EIP's undisclosed witness, Christine Bell, should also be disregarded or
stricken. First, EIP did not previously disclose Ms. Bell as a witness whose knowledge they would
rely on. DEF ¶ 1. Plaintiff, in turn, relied upon that lack of disclosure in EIP's initial disclosures
and Witness Lists and, thus, did not depose or otherwise take discovery of Ms. Bell. Consequently,
any use of Ms. Bell's declaration is prejudicial to GR given that discovery is closed and it is now
unable to obtain discovery from Ms. Bell. *See Marc E. Bosem MD PA Correctvision Holdings
LLC v. Sentinel Ins. Co., Ltd.*, No. 20-62205-CIV-DIMITROULEAS, 2022 U.S. Dist. LEXIS
33068, at *11 (S.D. Fla. Jan. 21, 2022).

Ms. Bell's declaration is also objectionable because she has no personal knowledge of the
facts needed to support the statements she makes in Paragraph 6 and the first sentence of Paragraph
9 of her declaration.[12] There is no evidence that she was in the room with, or otherwise witnessed
the person, whether Alan Pike or any of the other persons she copied on the emails, click the link
and enter the signature into the electronic form. Moreover, as stated above regarding the identical
exhibits attached to Alan Pike's declaration, a chronological sort of the exhibits shows that
Christine Bell did **not** send any emails to Alan Pike asking him to sign the April 7, 2011 application
to register the ELEVEN trademark (**Serial No. 85289682**) in Class 43 for hotels and providing a
link by which to do so. *See* DE 331, Exs. 1-37. Thus, Ms. Bell's unsworn declaration does not
show that Alan Pike typed the signature shown on any of the subject trademark applications and
statements of use, and most definitely not the ELEVEN trademark application Serial No. 85289682
(in Class 43 for hotels) filed on April 7, 2011. Accordingly, it cannot be used in sham fashion—
and to GR's prejudice—to contradict the sworn testimony of Alan Pike that he had never heard of
Ms. Bell and was not involved in the process of applying for the trademarks.

---

[12] There are also no documents supporting the statement in the second sentence of Paragraph 9.

Finally, to the extent that EIP attempts to mischaracterize the testimony of GR's expert witness, Meryl Hershkowitz, about whether Alan Pike was lying or not, it is important to note that EIP's counsel was questioning the witness as to the date when bookings began and whether the date of first use specified on the statement of use was fraud. DEF ¶ 2. Ms. Hershkowitz stated ███

████████████████████████████████████████████████████████████

██████████████████████████████████████████ *Id.*; *see also* EIP's DMF ¶ 99. Furthermore, when Ms. Hershkowitz was deposed, EIP had not yet produced ███ ██████████████████████████████████████████ and, thus, was not questioned about the absence of any email from Ms. Bell to Alan Pike asking for a signature on the ELEVEN trademark application Serial No. 85289682 (in Class 43 for hotels).

In sum, in light of Alan Pike's clear deposition testimony that ███████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████ and the absence of any email to Alan Pike requesting a signature on the ELEVEN trademark application Serial No. 85289682 (in Class 43 for hotels), there is clear and convincing evidence that EIP committed fraud upon the Trademark Office in applying for the ELEVEN trademark for use in connection with hotels and hotel services specified in application Serial No. 85289682, which matured into Registration No. 4,265,159. Therefore, the Court should grant GR's request for summary judgment on its Count III cancellation claim with respect to Registration No. 4,265,159.

### IV. NO LIKELIHOOD OF CONFUSION REGARDING REAL PROPERTY
#### A. <u>Dissimilarity between Real Property and Vacation Services</u>

Avoiding any discussion of the sale of real property as an asset—*which a buyer receives title to, and must pay property taxes and ongoing maintenance fees on*—EIP again fails to address this distinction in its Opposition. Instead, in its comparison of the parties' respective offerings, EIP restricts its discussion to short-term rental of condominiums in Movants' real-estate projects, an endeavor that does not yet exist in the under-construction Miami properties. Nevertheless, EIP is seeking disgorgement of profits—not from the sale of services that do not yet exist (short-term rental of condominiums) but, instead, from the sale of a long-term asset: real property. Because EIP failed to address this factor regarding real property sales, it further clarified that this factor weighs *against* a likelihood of confusion.

### B. **No Actual Confusion Exists**

EIP argues that it has "extensive" evidence of actual confusion through survey evidence and anecdotes. Opp. at 21. However, "[a]ctual confusion requires that a deceived **customer** buy the infringer's product in the belief that it in some way is affiliated with the owner of the trademark or trade dress." *Most Worshipful Nat'l Grand Lodge v. United Grand Lodge GA AF & AYM, Inc.*, 813 F. App'x 455, 459 (11th Cir. 2020) (emphasis supplied). Thus, the strength of the evidence depends on the number of instances of confusion, the type of person confused, and the degree of confusion they experienced. *Wreal, LLC v. Amazon.com, Inc.*, 38 F.4th 114, 137 (11th Cir. 2022). In that calculus, it is the type of person confused that is most important. *Id*. Consumers of the relevant product—*and especially the mark holder's consumers*— "turn the key." *Id*.; *Superior Consulting Servs. v. Shaklee Corp.*, No. 19-10771, 2021 U.S. App. LEXIS 29284, at *27-28 (11th Cir. Sep. 28, 2021) (fifty vague calls did not indicate confusion).

   *i.     EIP's Anecdotal Evidence is Inadmissible Double-Hearsay and Must Be Rejected*

Ms. Phelps testified that she ██████████████████████████████████████ ████████████████████████████████████████████████████ DE 428, Ex. B. The few anecdotes of purported confusion that EIP claims to have were conveyed *not* by customers but by the vague and uncertain testimony of Chad Pike and Kyra Phelps, neither of whom had first-hand knowledge of the purported third-party statements, the person making the statement, or even which employee the statements were made to. EIP's DMF ¶205. None of the alleged direct sources of these anecdotes has been identified, much less placed on EIP's witness list, and none have provided an affidavit to support EIP's position on summary judgment. *See id*. In sum, these are several, vague layers of hearsay and would not be admissible at trial and, therefore, cannot be accepted as evidence regarding summary judgment. *Pritchard v. S. Co. Servs.*, 92 F.3d 1130, 1135 (11th Cir. 1996); *see FIU Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1264-65 (11th Cir. 2016) (district court rightly disregarded Rule 30(b)(6) testimony of "ambiguous statements by unidentified employees sometime in the past"); *Holiday Inns, Inc. v. Holiday Out in Am.*, 481 F.2d 445, 448-49 (5th Cir. 1973); *White*, 2005 U.S. Dist. LEXIS 59120, at *20-21.[13]

---

[13] Even if capable of admissible form—*which they are not*—they would be irrelevant. Most of Mr. Pike's anecdotes were from 2014 and about the nightclub, which is not at issue. Opp. at 3.

9

    *ii.    EIP's Surveys are the Subject of a Daubert Motion to Exclude*

In [the Eleventh] circuit, "survey evidence in trademark actions has always been viewed with a skeptical eye." *Wreal*, 38 F.4th at 140. The Eleventh Circuit has noted that: "Most surveys do not measure actual confusion. Surveys only give us information about a controlled and artificial world from which we are asked to draw inferences about the real world." *Id.* at 138 n.16 (quotations omitted). That is precisely the case here. The surveys that EIP is attempting to rely upon are fatally flawed beyond any usefulness in gauging a likelihood of confusion as to the Counter-Defendants' real property sales or their future, planned hotel services. Therefore, those surveys are the subject of a *Daubert* motion to exclude them as evidence. DE 205, 213. As explained in that motion, EIP's surveys do not come close to replicating the real-world settings or consumer bases in either the real property market or the hotel services market and, thus, cannot be used as evidence. In sum, EIP has not produced admissible evidence of actual confusion and, while such failure is not *per se* fatal, "it does weigh against a likelihood of confusion." *Invisasox, LLC v. Everythng Legwear, LLC*, No. 8:18-cv-2639-T-17GW, 2020 U.S. Dist. LEXIS 103603, at *11-13 (M.D. Fla. June 12, 2020).

    **C.  Remaining Factors Indicate No Confusion as to Real Property**

Because EIP also failed to distinguish between the sale of real property as an asset and the sale of short-term stays in condominiums in an alleged hotel-like manner with respect to all of the remaining likelihood of confusion factors, EIP has failed to create any genuine issue of material fact as to a likelihood of confusion between the sale of real property as an asset and the sale of temporary hotel accommodations and travel services. Thus, GR is entitled to summary judgment in its favor on Count I of its Second Amended Complaint.

    **V.  NO LIKELIHOOD OF CONFUSION REGARDING HOTEL SERVICES**
    **A.  Dissimilarity between the Existing and Planned Hotel Services**

EIP's discussion of its services downplays the fact that, unlike Movants, EIP has an all-inclusive model of experiential travel that gives its customers a custom-tailored, "once-in-a-lifetime experience" through "expert guides." DEF ¶¶ 28, 243;[14] Opp. at n.29. EIP similarly ignores the fact that it, unlike Movants, has a full-property buyout model for its hotel/lodging business. *Id.* ¶ 242. EIP also omits that it markets its lodges as rustic wedding and special event

---

[14] EIP tries to make a connection by focusing on a "fine-dining" feature but its registration expressly excludes such services. DE 128-2 at 4.

venues, in close proximity to Denver,[15] yet another feature the parties do **not** share. EIP's AMF ¶ 83. EIP further attempts to paint the parties' disparate services with the same brush by downplaying its exorbitant nightly rates of over $ 14,000 in favor of the rare room rate of $263 to vaguely "over" $5,000 per night. Opp. at 16. *But see* SOF ¶142-146. EIP cannot create a genuine issue of material fact by omitting facts going to the true character of its services. Thus, this factor continues to weigh against any likelihood of confusion.[16]

### B.  Consumer Sophistication

EIP cites no evidence to support the proposition that the real-estate agents and brokers, and their clients, who purchased units at Movants' properties—without a single instance of actual confusion—lack sophistication. Opp. at 20-21. That is because the weight of authority in the Eleventh Circuit confirms they *are* sophisticated. Mot. at 15-16; *see also Lho Wash. Hotel Two v. Posh Ventures Ltd. Liab. Co.*, No. 08-451-AA, 2008 U.S. Dist. LEXIS 138574, at *13-16 (D. Or. June 10, 2008). Consequently, this factor still weighs against a likelihood of confusion.

### C.  Dissimilarity of the Parties' Respective Marks

EIP attempts the impermissible: an out-of-context, side-by-side comparison. *Vive Health LLC v. Hirschfeld*, No. 2:19-513-FtM-JLB-NPM, 2021 U.S. Dist. LEXIS 71297, at *10-11 (M.D. Fla. Mar. 23, 2021) ("The proper test is not a side-by-side comparison of the marks")*.* However, EIP's own exhibits undermine its argument. Consistent with GR's previous discussion (Mot. at 8-10), EIP's Exhibits 285 and 286 show that EIP's marks are used together and in the context of rugged and remote outdoor adventures (often with blinding-white snowy mountains) and rustic lodges. DEF ¶ 28. Moreover, the connection between EIP's diamond with ski tracks logo and the experiential component of skiing features prominently in its advertising. *See id*. (cover-page of Exs. 285-86). In contrast, the context for GR's and the Counter-Defendants' use of the E11EVEN HOTEL & RESIDENCES and E11EVEN RESIDENCES *BEYOND* marks is heavily laden with luxe black and gold amid urban core and nightlife scenery—in essence, the lavish, party-centric Miami environment. DEF ¶ 23. Thus, the context in which the respective marks are used shows the vastly different commercial impressions, which weighs against a likelihood of confusion. The same is true with respect to "West Eleven Residences Miami" and the

---

[15] *See* EIP's map on p. 7 of its Ex. 530.
[16] EIP falsely states that the Counter-Defendants hired a hotel manager. EIP's DMF ¶ 29.

interlocking "W11," which are not marks; instead, as discussed in the Motion, WERM uses its developers' names and AirBNB as marks, all of which look and sound nothing like EIP's marks.

### D. Lack of Real-World Commercial Strength of Allegedly Infringed Mark

The parties agree that, for commercial strength, EIP must show "real-world" consumer recognition, which requires more than circumstantial evidence. *See* Opp. at 11; Mot. at 12; *FCOA LLC v. Foremost Title*, 57 F.4th 939, 951-52 (11th Cir. 2023). "Absent comparative evidence," there is "not sufficient evidence of commercial strength." *FIU*, 830 F.3d at 1259. Indeed, "in isolation, evidence of promotion efforts is not sufficient to establish a mark's commercial strength because it tells us precious little about the efficacy of those efforts." *United Country Real Estate, LLC v. United Realty Grp., Inc.*, 2017 U.S. Dist. LEXIS 160748, at *29-31 (S.D. Fla. Sep. 29, 2017). Here, EIP claims to have spent ██████████████████████████████████ ████████████████████████████████████████████████████████████████████ Opp. at 11. This is hardly an impressive spend—in an absolute or relative sense—given that in the 1960's hotel companies were spending at far greater levels. *See Hotel Corp. of Am. v. Inn Am., Inc.*, 1967 TTAB LEXIS 52, *4 (TTAB, Mar. 16, 1967) (eleven million dollars in advertising between 1960 and 1964); *Sun Banks of Fla., Inc. v. Sun Fed. Sav. & Loan Ass'n*, 651 F.2d 311, 318 (5th Cir. 1981) ($6.5 million between 1974 and 1976 was insufficient). Moreover, EIP's exhibits show mere ███████████████████████████████; they do not show those expenditures were actually made—let alone consistently. DEF ¶ 18. Furthermore, EIP's exhibits show ████████████████████████████████████████████████████████████ ███████████████████████████████████. *See* DE 235.

As for effectiveness, EIP states it took over a decade to reach ███████████ in sales, despite prices in the range of ████████ or more per night. Opp. at 11; DEF ¶¶ 31, 48. It also admits that **a third** of those sales (███████████ *over* ████ bookings)[17] did not occur until 2023, **after** this dispute commenced and, thus, after the relevant time of measurement. Opp. at 11; *see Horn's, Inc. v. Sanofi Beaute, Inc.*, 963 F.Supp. 318, 322 (S.D.N.Y. 1997) (relevant time of measurement is as of the time the litigation arose). Nevertheless, because each night costs so much, EIP's revenues do not show a wide reach among U.S. consumers. Whereas EIP's average sale is ████,[18] it

---

[17] Math ($███████████ ÷ ████ bookings) (Opp. at 12) shows the average booking was ██████; revenues increase fast—*with less units sold and, thus, less customers reached*—at those prices.
[18] *See* n. 17, and Opp. at 12.

takes far fewer consumers to reach large revenue figures.[19] Thus, EIP has not shown that its less than impressive annual marketing spend has had an effect on actual U.S. customers. EIP's argument regarding "unsolicited media coverage" also fails, as it is undermined by the fact that EIP's ███████████████████████████████████████████████████████████ ██████████████████████████████████████████████ DEF ¶15.

Finally, as discussed in the Motion (at 11-12), extensive third-party use of "11" and "Eleven" marks—in the same field, related fields, and otherwise[20]—renders EIP's marks commercially weak. *See also* DE 233 at 4, 8, 175. This factor continues to weigh against any likely confusion.

### VI. EIP'S REVERSE CONFUSION CLAIM ALSO FAILS

No record evidence exists that Movants: (i) have "greater economic power" than EIP; (ii) saturated the market with advertising; or (iii) overwhelmed the marketplace power of EIP. By definition, all three are required for reverse confusion. *See Wreal*, 38 F.4th at 127; *Curity AB v. Chenmed*, 2022 WL 18956198 (S.D. Fla. Dec. 7, 2022); MCCARTHY, § 23:10. To the contrary, EIP claims that it: (i) is a well-known international business of remote lodges with personalized experiences and (ii) has spent ██████████ in advertising and promotion. Opp. at 3. That the Movants may have had some commercial success, and the condo projects appear in Google searches, says nothing about whether EIP has been "overwhelmed" by the names of the subject buildings. For reverse confusion, the senior user's mark must be conceptually strong and the junior user's mark must be commercially strong. *Wreal*, 38 F.4th at 128-29. Neither prerequisite exists here. As previously discussed, EIP's "Eleven" is a laudatory term that is conceptually weak. No evidence suggests that the names of condominiums under construction in Miami are commercially strong. *See* Mot. at 11-13. In sum, there is no genuine issue of material fact about forward or reverse confusion, which entitles the Movants to summary judgment on both EIP's direct and

---

[19] With similar per booking revenue, the remaining ██████████ in revenues over the eleven years *before* 2023 ██████████ ÷11 years ÷ ████ /booking) equals ██████ bookings (customers) per year, which is not an effective reach (especially since EIP did not show how many are U.S. customers).
[20] EIP's cases confirm *all* third-party uses are relevant: "uses in the same market diminish a mark's strength more than uses in other markets." *See FCOA LLC*, 57 F.4th at 951; DE 305. Thus, EIP's argument about an alleged irrelevancy of third-party use outside of its "luxury accommodations" is demonstrably false. Opp. at 12-13.

contributory-infringement claims. Mot. at 23-4.[21]

## VII.   FAIR USE OF WEST ELEVENTH RESIDENCES MIAMI AND W11

EIP claims that fair use does not apply because "West Eleventh" is not WERM's address. Opp. at 24.  But statutory fair use requires only that the challenged "term refer to a characteristic of the [product],'" not the entirety of it. *Hard Candy LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1363 (11th Cir. 2019) (quoting *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 952 (7th Cir. 1992)). "West Eleventh Residences Miami" and "W11" indisputably describe "a characteristic of" WERM, *i.e.*, its what and where: *residential* condominiums at 18 North*west 11*th St. in *Miami*'s Park *West* neighborhood. *See also* McCarthy, § 14:3 ("A geographically descriptive term can indicate any geographic location on earth, such as: [….] streets and addresses"); Opp. at 24 (citing *Brother Records, Inc. v. Jardine*, 318 F.3d 900, 905 (9th Cir. 2003) ("[C]lassic fair use analysis [applies] to infringement cases involving descriptive marks used in their primary, descriptive sense")); *but see id.* (citing *Resort Int'l, Inc. v. Great Bay Hotel & Casino, Inc.*, 1991 WL 352487, at *7 (D.N.J. Jan. 18, 1991) (challenged term did not describe the "where"); *Commodores Ent. Corp. v. Thomas McClary*, 2015 WL 12843872, at *4 (M.D. Fla. Mar. 10, 2015) (challenged term did not describe the "what"); and *Tree Tavern Prods., Inc. v. Conagra, Inc.*, 640 F. Supp. 1263, 1268-69 (D. Del. 1986) (defendant's use of *other* terms to describe the "what" of its product indicated trademark use of the challenged term)).

EIP also claims that fair use does not apply because Movants use "West Eleventh Residences Miami" and "W11" as marks for WERM. Opp. at 24. EIP is wrong. Geographically descriptive terms—like "West Eleventh Residences Miami" and "W11"—"must acquire a new 'secondary meaning'" to be marks. McCarthy, §14:9.[22] EIP cites no evidence of secondary meaning. *See* Opp. at 24. Neither Movants nor EIP claim to own trademark rights therein or have applied to register them as marks, which also shows use other than as marks. *Compare with* Opp. at 24 (citing, *inter alia*, *DCS Real Est. Invs., LLC v. Yapor Corp.*, 2015 WL 12780447, at *8 (M.D. Fla. Feb. 26, 2015)).[23]

---

[21] Contrary to EIP's argument (Opp., at n.50), the Motion notes EIP's theory *and* failure to prove direct infringement by other Movants **and** third parties. Mot. at 23 ("EIP alleges that Movants contributed to direct infringement by other Movants and third parties").

[22] EIP's claim that Movants "misrepresent the legal standard" (Opp. at 24) for statutory fair use by highlighting this lack of secondary meaning is wrong.  *See* Opp. at 24.

[23] EIP also cites this decision for the proposition that Movants' trademark search is *ipso facto* proof

EIP further claims that fair use does not apply because Movants could have used other descriptors for WERM and caused actual confusion. Opp. at 24-5. WERM's entire street address is not a "true alternative" name for WERM; instead, it is a longer version of the *same* descriptive phrase and abbreviation that Movants use. *Int'l Stamp Art, Inc.*, 456 F.3d at 1276. EIP also ignores that there can be more than one way to describe a location. *See, e.g.*, *Casey Key Resort, LLC v. CK Resorts JV,* LLC, 2021 WL 4893682, at *3-4 (M.D. Fla., Oct. 20, 2021). Finally, EIP's argument about actual confusion also fails; fair use trumps any alleged actual or likely confusion. *See K-Permanent Makeup, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 122 (2004).

## VIII.   CONCLUSION

For the reasons set forth above, and in the Motion [DE 480; DE 481], the Court should grant summary judgment to Movants.

Dated: October 24, 2024

Respectfully submitted,
**By**:  /s    *Robert H. Thornburg*
**Allen, Dyer, Doppelt & Gilchrist, P.A**.
Robert H. Thornburg / Fla. Bar No. 630829
email: rthornburg@allendyer.com
Susan J. Latham / Fla. Bar No. 687391
email: slatham@allendyer.com
James R. Leahy / Fla. Bar No. 1044500
email: jleahy@allendyer.com
121 Alhambra Plaza, Suite 1250
Coral Gables, Florida 33134
Telephone:  305-374-8303
Facsimile:  305-374-8306
Ryan T. Santurri / Fla. Bar No. 15698
email: rsanturri@allendyer.com
255 S. Orange Avenue, Suite 1401
Orlando, FL 32801
Tel.: 407-841-2330; Facsimile: 407-841-2343
and
**Martinez-Cid Law**
Jordi C. Martinez-Cid / Fla. Bar No. 100566
email:  jmartinez-cid@martinez-cidlaw.com
service@martinez-cidlaw.com.
Andy Hernandez / Fla. Bar. No. 1018581
email: ahernandez@martinez-cidlaw.com

---

of trademark use. Opp. at n.52. This decision does not mention a trademark search. Nor does *Buccellati Holding Italia Spa v. Laura Buccelatti, LLC*, 5 F. Supp. 3d 1368, 1377 (S.D. Fla. 2014) (no fair use; unlike here, defendant filed a trademark application).

1 S.E. 3rd Avenue, Suite 2300
Miami, Florida 33131
Telephone: 305-704-9162

*Attorneys for GR Opco, LLC d/b/a E11EVEN*

and

**By**: _/s___*Bryan A. Almeida*_____
**Marcus Neiman Rashbaum & Pineiro LLP**
Jeffrey E. Marcus, Esq.
Florida Bar No. 310890
jmarcus@mnrlawfirm.com
Jeffrey A. Neiman, Esq.
Florida Bar No. 544469
jneiman@mnrlawfirm.com
Bryan A. Almeida, Esq.
Florida Bar No. 1005558
balmeida@mnrlawfirm.com
One Biscayne Tower
2 S. Biscayne Blvd., Ste. 2530
Miami, Florida 33131
Telephone: (305) 400-4260

*Attorneys for Property Markets Group, Inc.; PMG-11th Street Ventures, LLC; PMG-11th Street Ventures II, LLC; Michael Simkins, Marc Roberts, Marc Roberts Companies LLC, and Lion Development Opportunity Fund LLC*

and

**By**: _/s___*Lawrence W. Byrne*_____
**PEDERSEN & HOUPT**, a Prof. Corp.
Lawrence W. Byrne, Esq., Ill. Bar No. 6208752
pro hac vice
email:  lbyrne@pedersenhoupt.com
161 N. Clark Street, Ste. 2700
Chicago, Illinois 60601
Telephone:  312-261-2155
and
**Weisberg IP Law P.A**.
Elissa A. Tisdahl, Fla. Bar No. 85521
1232 N. University Drive
Plantation, FL 33322
Telephone: 954-828-1488

*Attorneys for 11USA Group, LLC and Dennis DeGori*

and

**By**:_/s___*Jonathan W. Thomas*_____
16

**Kilpatrick Townsend & Stockton LLP**
Evan S. Nadel (Florida Bar. No. 165409)
Jonathan W. Thomas (admitted *pro hac vice*)
enadel@ktslaw.com
jwthomas@ktslaw.com
3 Times Square
New York, New York 10036
Tel.: 212.775.8856
R. Charles Henn, Jr. (admitted *pro hac vice*)
Shreya P. Desai (admitted *pro hac vice*)
Davis-Brook Caswell (admitted *pro hac vice*)
rhenn@ktslaw.com
spdesai@ktslaw.com
dbcaswell@ktslaw.com
1100 Peachtree Street. Suite 2800
Atlanta, Georgia 30309
Tel.: 404.815.6032

*Attorneys for Block 17 Trustee, LLC; and Block 17 Residential Owner, LLC*

17

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 24, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:  s/  *Bryan A. Almeida*
　　　BRYAN A. ALMEIDA


## SERVICE LIST

*Case No.* 1:22-cv-24119-FAM

| **BERGER SINGERMAN LLP** | **KIRKLAND & ELLIS LLP** |
|---|---|
| Gavin C. Gaukroger | Dale M. Cendali (admitted *pro hac vice*) |
| Florida Bar No. 76489 | dale.cendali@kirkland.com |
| ggaukroger@bergersingerman.com | Shanti Sadtler Conway (admitted *pro hac vice*) |
| Ana Carolina Varela | shanti.conway@kirkland.com |
| Florida Bar No. 123069 | Eric Loverro (admitted *pro hac vice*) |
| cvarela@bergersingerman.com | eric.loverro@kirkland.com |
| 1450 Brickell Avenue, Suite 1900 | 601 Lexington Avenue |
| Miami, FL 33131 | New York, NY 10022 |
| Telephone: (305) 755-9500 | Telephone: (212) 446-4800 *and* |
| *Attorneys for Eleven IP Holdings LLC,* | Miranda D. Means (admitted *pro hac vice*) |
| *Grassy Creek LLC, and CS Irwin LLC* | Miranda.means@kirkland.com |
| | 200 Clarendon Street |
| | Boston, MA 02116 |
| | Telephone: (617) 385-7500 |
| | *Attorneys for Eleven IP Holdings LLC,* |
| | *Grassy Creek LLC, and CS Irwin LLC* |

18

| **KILPATRICK TOWNSEND & STOCKTON LLP**<br>Evan S. Nadel (Florida Bar No. 165409)<br>Jonathan W. Thomas (admitted *pro hac vice*)<br>enadel@ktslaw.com<br>jwthomas@ktslaw.com<br>3 Times Square<br>New York, New York 10036<br>Tel.: 212.775.8856<br>and<br>Shreya Desai (admitted *pro hac vice*)<br>spdesai@ktslaw.com<br>1100 Peachtree Street. Suite 2800<br>Atlanta, Georgia 30309<br>Tel.: 404.815.6032<br>*Attorneys for Counterclaim-Defendants Block 17 Trustee, LLC; and Block 17 Residential Owner, LLC* | **MARCUS NEIMAN RASHBAUM & PINEIRO LLP**<br>Jeffrey A. Neiman, Esq.<br>Florida Bar No. 544469<br>jneiman@mnrlawfirm.com<br>Jeffrey E. Marcus, Esq.<br>Florida Bar No. 310890<br>jmarcus@mnrlawfirm.com<br>Bryan A. Almeida, Esq.<br>Florida Bar No. 1005558<br>balmeida@mnrlawfirm.com<br>One Biscayne Tower<br>2 S. Biscayne Blvd., Ste. 2530<br>Miami, Florida 33131<br>Telephone: (305) 400-4260<br>*Counsel for Counterclaim Defendants Property Markets Group, Inc.; PMG-11th Street Ventures, LLC; PMG-11th Street Ventures II, LLC; Michael Simkins, Marc Roberts, Marc Roberts Companies LLC, and Lion Development Opportunity Fund LLC* |
| | **PEDERSEN & HOUPT**, a Prof. Corp.<br>Lawrence W. Byrne, Esq., Ill. Bar No. 6208752<br>*pro hac vice*<br>email:  lbyrne@pedersenhoupt.com<br>161 N. Clark Street, Ste. 2700<br>Chicago, Illinois 60601<br>Telephone:  312-261-2155<br>and<br>**Weisberg IP Law P.A.**<br>Elissa A. Tisdahl, Fla. Bar No. 85521<br>1232 N. University Drive<br>Plantation, FL 33322<br>Telephone: 954-828-1488<br>*Attorneys for 11USA Group, LLC and Dennis DeGori* |