**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Miami Division

Case No.: 1-22-cv-24119-FAM/TORRES

GR OPCO, LLC,

        Plaintiff,

v.

ELEVEN IP HOLDINGS, LLC,
GRASSY CREEK LLC, CS IRWIN LLC,
IRWIN BACKCOUNTRY GUIDES, LLC,
ALAN PIKE, and CHAD PIKE,

        Defendants,

    and

ELEVEN IP HOLDINGS, LLC,

        Counter-Plaintiff,

    v.

GR OPCO, LLC, 11USA GROUP, LLC,
MARC ROBERTS, DENNIS DEGORI,
MICHAEL SIMKINS, MARC ROBERTS
COMPANIES LLC, PROPERTY
MARKETS GROUP, INC., PMG-11TH
STREET VENTURES, LLC, PMG-11TH
STREET VENTURES II, LLC, BLOCK 17
TRUSTEE, LLC, BLOCK 17 RESIDENTIAL
OWNER, LLC, and LION DEVELOPMENT
OPPORTUNITY FUND LLC,

        Counter-Defendants.

_____/

**Plaintiff and Counter-Defendant GR Opco LLC d/b/a E11EVEN and Counter-Defendants 11USA Group LLC, Marc Roberts, Dennis DeGori, Michael Simkins, Marc Roberts Companies LLC, Property Market Group Inc., PMG-11th Street Ventures LLC, PMG-11th Street Ventures II LLC, Block 17 Trustee, LLC, Block 17 Residential Owner, LLC and Lion Development Opportunity Fund LLC's**

**LOCAL RULE 56.1(A)(2) OPPONENTS' RESPONSE**
**TO DEFENDANTS AND COUNTERCLAIM PLAINTIFF'S OCTOBER 18, 2024 STATEMENT OF**
**MATERIAL FACTS IN SUPPORT OF THEIR AMENDED MOTION FOR PARTIAL SUMMARY**
**JUDGMENT**

| | RESPONSE TO STATEMENT | CITATION |
|---|---|---|
| 1. | **Disputed.** Eleven's marketing decks & collateral describe it as "not a hotel company" but rather a "global outfitting business that provides lodging and guide services" in the "experiential travel industry" with a "small collection of remote properties" which are "opulent and staffed private homes." | DE 227 at ¶¶ 61-72. |
| 2. | **Disputed.** EIP maintains Trademark Reg. No. 4,180,401, No. 4,265,159 & No. 4,269,487 for the weak mark **ELEVEN**; and Trademark Reg. No. 4,621,491, 4,384,681, 4,269,438 & 4,610,119 for ⬥ described by Alan Pike as a black & white diamond shape giving the appearance of ski tracks. | DE 227 at ¶¶ 1-7, 32-26 & 59. |
| 3. | **Disputed**. See ¶¶ 9, 146-157. | n/a |
| 4. | **Disputed**. Chad Pike testified: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | C.Pike Dep. 276:18-20 and 290:6-7. |
| 5. | **Disputed.** According to Kyra Phelps (formerly Kyra Martin), for the first ▮▮▮▮▮▮▮▮ ⬥ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ EIP purports to now maintain two *undated* trademark agreements with Irwin Backcountry Guides LLC ("IBCG") (**Ex. 20**) and CS Irwin LLC (**Ex. 19**) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ As for foreign trademark rights (outside the United States), those license agreements (also effective March 13, 2017) were signed by Alan Pike. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ⬥ ▮▮▮▮▮▮▮▮ | Phelps Depo, 9:5-23; 347:17-349:3; 352:3-19; **Ex.s 219**. APike Depo, 332:19-323:24; Phelps 30(b)(6), 72:16-76:4; 110:16-112:19; **Ex. 233** Taylor Declaration, **DE 277 Ex. 19 & 20**; and *See also* Alan Pike Dep., **Exs. 78 & 79** |
| 6. | **Disputed.** As provided in response to No. 5 above, EIP's agreement with IBCG confirms they are not affiliates, nor is there any agency, partnership, or joint venture relationships (*i.e.,* IBCG cannot act for EIP). **Ex. 20, ¶ 13.** | Phelps 30(b)(6), 117:9-120:23; |



| | | |
|---|---|---|
| | | CPike Depo, 108:23-109:8;<br><br>Phelps Depo, 269:7-279:6; 281:8-284:16; and<br><br>Taylor Declaration, **DE 277 Ex. 20.** |
| 7. | **Disputed**. As shown in No. 5 above, Ms. Phelps admitted that | Phelps Depo, 347:23-349:3; 352:3-19;<br><br>Phelps 30(b)(6); 107:14-23; 111:8-112:19; and<br><br>Taylor Declaration, **DE 277 Ex. 19.** |
| 8. | **Disputed**. "**ELEVEN** is an experiential travel company" offering luxury "hideouts", namely "*only* off the grid properties" that are "intimate in size" with "full-service travel experiences set within one of a kind locations with world-class accommodations"; it is "not a hotel company" but more aptly described as "concierges meets guide meets staying at an opulent and staffed private home[.]" | DE 227 at ¶¶ 67-68 & 72. |
| 9. | **Disputed**. | Phelps Depo., 56:22-57:4; 97:8-98:3; 263:7-16; Hampton Depo, 401:7-23; Hershkowitz Depo, 194:12-195:11 |
| 10. | **Disputed**. | Phelps Depo, 55:2-56:14. |
| 11. | **Disputed**. Eleven's first use in commerce for hotels, hotel services, luxury hotel accommodations, or rental of homes under the **ELEVEN** and marks was late January 2012. | Phelps Depo., 56:22-57:4; 263:7-16; Stoll 30(b)(6), 11:12-17; 19:7-22 |
| 12. | **Disputed**. The November 2011 launch party was by invitation only and, thus, was not open to the public at large, and it had only about 100 attendees, with "Eleven branded  marketing pieces" limited to (a) gift bags with the logo with water bottles, (b) "flip-through pamphlets" with the mark, (c) a logo | Stoll Depo, 60:3-62:5; 64:2-65:10; Phelps Depo, 63:3-65:14 |

| | | |
|---|---|---|
| | shown on the sidewalk obstructed by the large snow-cat truck parked in front of Scarp Ridge Lodge, and (d) a display of the ElevenExperience.com website, although no attendee viewed or browsed it. | |
| 13. | **Disputed.** ████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████ | Phelps Depo, 68:12-17; 269:7-279:9; *see also* Phelps **Exs. 205, 207.** |
| 14. | **Disputed.**  Jenny Jeffery never testified she assisted in bookings in 2011, only that ████████████████████████████ ████████████████████████████ | Jeffery Depo, 62:19-68:9 |
| 15. | **Disputed.** ████████████████████ ████████████████████ | Wick 30(b)(6), 128:9-143:3; *see also* Wick **Exs. 173 & 174** |
| 16. | **Disputed.**  Eleven's marketing describe it as "not a hotel company." | DE 227 at ¶¶ 61-72. |
| 17. | Undisputed. | n/a |
| 18. | **Disputed.** Eleven's financial information for 2011-15 does not break down or offer an understanding of marketing spend, public relations, general sales support or ancillary activities – to report any true marketing expenditures. Eleven's U.S. sales and marketing from 2020-2022– during time that the 1,000 units of both **E11EVEN** Condos were being sold – was only ████ | Wick 30(b)(6) Depo, 34:24-36:13; **Exs. 169 & 174.** |
| 19. | **Disputed.** None of the three spreadsheets at **ELEVEN 0078392, 0078387** or **0078390** identify numbers of employees. Jeffery's off-the-cuff remarks about numbers of employees was not based upon any documents either. | Taylor Declaration, **DE 277 Exs. 42-44.** |
| 20. | **Disputed.** Eleven offers free familiarization trips to its Colorado Properties to media and travel writers to encourage them to "████████████████ ████████████████" about **ELEVEN**'s domestic lodges and private homes. Managing Director Ian Wick noted that from 2016-2022, Eleven paid ███████████████ ████████████████████████████ ████████████████████████████ | Stoll 30(b)(6) Depo, 40:2-41:10; Wick 30(b)(6); 94:16-95:4; **Ex. 173.** |
| 21. | **Disputed.**  See disputed fact No. 16 above. | DE 227 at ¶¶ 61-72. |
| 22. | **Disputed.**  There is no visible exterior signage on Scarp Ridge Lodge, Sopris House or Taylor River Lodge. | Phelps Depo, 336:18-337:24; Wick Depo, 303:21-304:7 |
| 23. | **Disputed.**  See disputed fact No. 16 above. | DE 227 at ¶¶ 61-72. |
| 24. | Undisputed. | n/a |
| 25. | Undisputed. | n/a |
| 26. | **Disputed.** Nov. 11, 2016 GR press release stated that, due to success of **E11EVEN** nightclub, it had "plans to enter the hotel industry." **Disputed** globally as to the definition of "Infringing Hotels" combining the E11 Towers with the separate WERM. **Undisputed** that B17 is not involved with the E11 Towers and is correctly omitted from the definition of "E11 Defendants." | DE 227 at ¶187; DE 233. |
| 27. | **Disputed. Ex. 79** is a third-party article from Axios Miami about **E11EVEN HOTEL & RESIDENCES** that was not authored by GR (or other Counter-Defendants). It describes the first tower as a 449-residence condo which will | Taylor Declaration, **DE 277 Ex. 79.** |

| | | |
|---|---|---|
| | also have "condo-units that owners can rent out for short-term stays." It also mentions that the second tower **E11EVEN RESIDENCES BEYOND** would have "558 condo units that can be rented out for a month or longer." It does not promote the **E11EVEN** Condos as a hotel or short-term rental. **ELEVEN 0088313** merely states that some towers might "permit short term rentals, so they will function much like hotels." | |
| 28. | **Disputed.** Marc Roberts testified how purchasers of **E11EVEN HOTEL & RESIDENCES** never asked about the hotel rental pool option – "[t]hey all just bought it for the condo value and because it's in Miami" people "couldn't care less" about the hotel option as they bought because they "are excited about the area, and it's in the heart of downtown Miami." **Ex. 83**, as quoted, doesn't provide Mr. Simkins complete testimony on March 7, as he echoed Mr. Roberts that: the hotel pool program has "not been well defined" but "in our instance, you could purchase your condominium at the **E11EVEN HOTEL & RESIDENCES** and you have the option not the obligation to put your hotel unit in a pool." Mr. Shear's 30(b)(6) testimony (**Ex. 86**) mirrored Mr. Simkins how: "**E11EVEN HOTEL & RESIDENCES** is designed for daily rentals. Again, it's a condominium with an option to put into a program, which isn't even established yet." **GR OPCO-00258689** does not controvert the foregoing testimony. | Roberts Depo, 134:6-135:6;<br><br>Simkins Depo, 202:16-205:1;and<br><br>Shear Mar. 12 30(b)(6) Depo, 44:25-45:22 |
| 29. | **Disputed. GR OPCO-00708948** is an ███████ | Simkins Depo, 91:17-92:2;<br>Shear Mar. 12 30(b)(6), 115:11-24;<br>Simkins 30(b)(6), 166:2-25; and Taylor Declaration, **DE 277 Ex. 84.** |
| 30. | **Disputed**. Nowhere in **ELEVEN 0086423** (available at https://www.11miami.com/news-press/new-luxury-properties-made-available-with-e11even-residences-beyond-expansion) is there any quote that **E11EVEN HOTEL & RESIDENCES** are advertised as featuring hotel amenities, such as an "inhouse chef, wellness spa, health and fitness services, and other luxury resort-style amenities[.]" Instead it addresses how amenities will create an "elegant experience" including "a resort-*style* pool with private lounge areas, and a state-of-the-art fitness center." | Taylor Declaration, **DE 277 Ex. 97.** |
| 31. | Undisputed. | n/a |
| 32. | Undisputed. | n/a |
| 33. | Undisputed. | n/a |
| 34. | **Disputed.** The second tower under the **E11EVEN** Mark is the **E11EVEN RESIDENCES BEYOND**. Mr. Shear testified ███████ ███████ **ELEVEN 0089551** | Shear Depo, 45:24-47:15; DE 227 at ¶ 89;<br>Taylor Declaration, **DE 277 Exs. 87, 94 & 95.** |

| | | |
|---|---|---|
| | ███████████████████████████ | |
| 35. | Undisputed. | n/a |
| 36. | Undisputed. | n/a |
| 37. | **Disputed.** Block 17 does not refer to West Eleventh Residences Miami ("WERM") as "Tower 3" of the E11EVEN Hotels. WERM is not across the street from E11EVEN Hotel & Residences and E11EVEN Residences Beyond; instead, WERM is located across Miami Avenue and separated from E11EVEN Hotel and Residences and E11EVEN Residences Beyond by another building. | DE 260-21 at 57:17-58:6; June 26 30(b)(6) Shear Depo. 305:16-306:9; 308:3-309:12; DE 223-05 at 46:19-23; Mar. 7 Simkins Depo. 277:18-25 |
| 38. | **Disputed** that WERM is marketed and sold as a hotel. WERM markets its units as "condo residences" and "fully furnished studios and 1-bedroom residences." **Undisputed** that WERM is advertised as "[t]he first centrally managed luxury condo residences to grant owners the option to host 365 days on Airbnb." | DE 252-1 at -267 through 270. |
| 39. | **Disputed** that WERM currently offers "resort-style" amenities as construction has not yet begun on the property. Undisputed that WERM intends to offer a resort-style pool. | DE 223-13 at 336:22-25. |
| 40. | **Disputed.** ████████████████████████████████████ | DE 227 at ¶¶ 79 & 80. |
| 41. | Undisputed as to E11EVEN, **Disputed as to WERM.** WERM is not across the street from E11EVEN Hotel & Residences and E11EVEN Residences Beyond; instead, WERM is located across Miami Avenue and separated from those projects by another building. | June 26 30(b)(6) Shear Depo. 308:3-309:12. |
| 42. | **Disputed.** GR, Messrs. Simkins, Roberts and DeGori do not have expansion plans for any new **E11EVEN** hotel. ████████████████████████████████████████████████████████████████ Neither the phrase "West Eleventh Residences Miami" nor "W11" is used as a trademark or brand for WERM; instead, as Mr. Shear testified, ███████████████████████████████████ | DeGori Depo, 58:9-59:8; Roberts Depo, 239:23-240:15; Simkins 30(b)(6), 115:16-116:4; 128:22-130:10; Mar. 12 30(b)(6) Shear Depo. 165:13-15; June 26 Shear Depo. at 391:19-392:4. |
| 43. | Undisputed as to GR, **Disputed as to Block 17.** Block 17 has not applied to register "West Eleventh," "West Eleventh Residences," "West Eleventh Residences Miami" or "W11" as a trademark. | DE 223-13 at 390:23 – 392:4. |
| 44. | Undisputed. | n/a |

| | | |
|---|---|---|
| 45. | **Disputed.** GR's August 23, 2017 response to office action for **E11EVEN** added services in International Classes 09 and 36 and amended (not deleted) descriptions of services in International Classes 35, 41 & 43:<br>• International Class 35: amend "advertising business consulting" to instead read "business consulting in the field of advertising; business consulting, business management and providing information in the music business field; personal management services for musical performers";<br>• International Class 41: amend "music and music label" to instead read "music production services"; and<br>• International Class 43: amend "services providing food and beverage" to instead read "services providing food and beverage, namely, restaurant, bar and nightclub services".<br>Nothing in GR's Oct. 15, 2019 request to divide or Dec. 14, 2022 response constituted a narrowing of the scope of services under the **E11EVEN** Mark. | Taylor Declaration, **DE 277 Ex. 222.** |
| 46. | **Disputed.** Since 2016, EIP ▮▮▮<br>▮▮▮ Ms. Phelps testified " ▮▮▮<br>▮▮▮<br>▮▮▮ thus, EIP knew _for more than four years_ of GR's rights to E11EVEN for "temporary accommodations at a hotel" before its service of **GR OPCO-00022521**. | Phelps Depo, 206:14-208:20; Huschle Depo, 149:7-15; Taylor Declaration, **DE 277 Ex. 120.** |
| 47. | Undisputed. | |
| 48. | **Disputed.** GR acquired common law rights to the mark '11' from 11th Avenue Corporation (**GR OPCO 00022889-00022892**) (**Ex. 332**) and for the **ELEVEN** mark from Sombras Group LLC (**SOMBRAS 0000091-0000093**) (**Ex. 245**).<br>As to **Ex. 18**, Kyra Phelps testified on February 16 that ▮▮▮<br>▮▮▮<br>**11ᵗʰ AVENUE** ranks as the No. 1 hotel in Denver (according to TripAdvisor.com), has summer rates of $250.00 per night with guests that include "high net worth individuals" and hosts business travelers and "very prominent people" like ▮▮▮<br>Eleven Inn is a "quaint" 11-room "rustic-looking" "western style" lodge opened in 1946 two miles off I-10 in Balmorhea, Texas offering adventure activities including diving, snorkeling, hiking & horseback riding, with outstanding reviews on Yelp, Google and TripAdvisor.com. Eleven Inn has a number of high net worth individuals as guests – often families, musicians, and even celebrities ▮▮▮ with a lot of repeat guests. | Taylor Declaration, **DE 277 Ex. 18;**<br><br>Phelps 30(b)(6), 199:7-201:19; and<br><br>DE 227 at ¶¶15-23 & 26-31. |
| 49. | Undisputed. | n/a |
| 50. | **Disputed.** GR and Marksmen Inc ▮▮▮<br>▮▮▮<br>GR's Trademark Assignment (**Ex. 206**) (the "**11 Assignment**") is clear that the assignment was not to Marksmen. It defines Marksmen as "Agent" who was "acting solely in its capacity as an agent for an anonymous purchaser." The "anonymous purchaser" is defined as the "Assignee" (GR). This is repeated on page 4 of the Assignment where it states: "Agent is not a party to this | _See_ **GR OPCO 00459716-00459717 Ex. A;**<br><br>Ilg Depo, 195:8-196:13; 201:23-203:14;<br><br>Smith Depo, 98:3-993; |

| | | |
|---|---|---|
| | Agreement" and that Marksmen is "Agent for Assignee." 11th Avenue Corp. irrevocably transferred its trademark rights, including to "11" to the Assignee (GR) including "the right to pursue legal action for past and present infringement [ ] together with the goodwill of the business symbolized by the Marks and all common law rights[.]" It also established a license-back whereby the Assignor became a licensee whose business assets are employed to use the trademarks to the benefit of the Assignee's (GR's) acquired rights.<br><br>James Ilg, an owner of 11th Avenue Corp., testified regarding **GR OPCO 00022889-00022892 (Ex. 206)** that 11th Avenue Corp. was the Assignor of common law trademark rights for "11" in "connection with providing temporary lodging services . . . hotel [ ] accommodation and services and providing information in the field of hotel accommodation services" where "Marksman acting on behalf of GR," the Assignee.<br><br>GR's Trademark Assignment (**SOMBRAS 0000091-0000093**) (**Ex. 124**) – the **ELEVEN** Assignment – is similarly clear that Sombras Group LLC was the Assignor and that Marksman was the Agent "acting solely in its capacity as an agent for an anonymous purchaser " and defined the "anonymous purchaser" as the "Assignee" (GR, not Marksman). This is repeated on page 3, where it states: "Agent is not a party to this Agreement" and that Marksmen is "Agent for Assignee." Sombras Group LLC represented it maintained common law trademark rights to the **ELEVEN** Mark "in connection with providing temporary lodging services [and] hotel and/or motel accommodation services[.]" The **ELEVEN** Assignment states Marksman was acting on behalf of the Assignee who was "desirous of acquiring all trademark rights I the mark" **ELEVEN**. Paragraph 1 of the **ELEVEN** Assignment notes that Sombras Group LLC transferred, conveyed and sold its trademark rights to Assignee, including "the right to pursue legal action for past and present infringement [ ] together with the goodwill of the business symbolized by the Marks and all common law rights[.]"<br><br>David Smith, a co-owner of Sombras Group LLC, testified how the assignment was to GR–"we thought GR uses Marksman as their agent to purchase our assignment" of rights to the **ELEVEN** Mark. | 112:6-13; 116:22-117:18; 120:3-121:17;<br><br>Taylor Declaration, **DE 277 Exs. 124, 126, & 206.** |
| 51. | Undisputed. | n/a |
| 52. | **Disputed.** See response to No. 50 above. | |
| 53. | **Disputed.** Defendants do not provide what **Ex. 207** is in their Statement of Material Fact (and no citation to ¶ 209 of the Taylor Declaration).<br>Para. 5 of **Ex. 124** (**SOMBRAS 0000091-0000093**) is a custom quality control provision that obligates Sombras Group LLC to ███████████<br>████████████████████████████████████<br>████████████████████████████████████<br>████████████████████████████████████<br>Para. 5 of **Ex. 205** (**GR OPCO 00022889-00022892**) provides similar custom quality control provisions for 11th AVENUE with those three obligations regarding the '11' Mark. *See also* response to No. 54 below. | Taylor Declaration, **DE 277 Exs. 124, 206 & 207.** |
| 54. | **Disputed.** Dennis DeGori, when GR acquired the rights to the '11' Mark from 11[th] Avenue Corporation, reviewed www.11thAvenueHotel.com and inspected it online, and reviewed 11th **AVENUE's** high ranking on both TripAdvisor.com and Yelp (and related favorable reviews). Mr. DeGori | DeGori Depo, 264:15-265:18; 276:1-277:5<br><br>Smith Depo, 189:19- |

| | | |
|---|---|---|
| | further testified how; (a) pursuant to ¶ 5 ("Quality Control") of **Ex. 124** that, on GR's behalf, outside counsel Jordi Martinez-Cid communicated directly with the co-owner of Sombras Group LLC (David Smith) regarding quality control regarding **Eleven Inn** and (b) under ¶ 5 of **Ex. 205,** GR's counsel Trevor Ward also performed quality control for **11th AVENUE.** David Smith confirmed Jordi Martinez-Cid's quality control review.<br>Marc Roberts noted how Michael Simkins primarily handled quality control under **Ex. 124 (SOMBRAS 0000091-0000093)** and **Ex. 206 (GR OPCO 00022889-00022892)** for **Eleven Inn** and **11th AVENUE.** Simkins relayed how **11th AVENUE** is the No. 1 rated hotel in Denver via TripAdvisor.com, and that he engaged Allen Dyer associate Trevor to visit the property and inspect it. Dim Cos, of E11EVEN IP LLC, also had a role of ensuring quality control at both properties. Mr. Simkins testified that he read third-party reviews of both **Eleven Inn** and **11th AVENUE** on multiple occasions.<br>Hospitality expert, Dr. Mody, stated: "GR's quality control is consistent with hotel industry practice and convention." | 191:6;<br><br>Roberts Depo, 226:19-227:23;<br><br>Simkins Depo, 280:22-283:11; 284:18-293:3; 298:10-300:3; 306:2-308:7; and<br><br>Taylor Declaration, **DE 277 Exs.124 & 206.**<br><br>Mody Rebuttal Rpt, at pp. 20-21 **Ex. OO** |
| 55. | Undisputed. | n/a |
| 56. | **Disputed.** See response to No. 50 above. | Taylor Decl., **Exs.124 & 206.** |
| 57. | **Disputed.** Mr. Simkins testified that, under **Ex. 206 (GR OPCO 00022889-00022892)**, "GR Opco acquired [common law] trademark rights from the **11th AVENUE** [ ] in November of 2022" for the **'11'** Mark. He also confirmed **Ex. 124 (SOMBRAS 0000091-0000093** is the assignment of trademark rights from Sombras Group LLC for the **ELEVEN** Mark.<br>Mr. Simkins also noted there is a separate agreement ██████████████<br>████████████████████████████████████<br>████████████████<br>James Ilg, an owner of 11th Avenue Corp., testified regarding **GR OPCO 00022889-00022892 (Ex. 206)** that 11the Avenue Corp. was the Assignor of common law trademark rights for "**11**" in "connection with providing temporary lodging services . . . hotel [ ] accommodation and services and providing information in the field of hotel accommodation services" where "Marksman act[ed] on behalf of GR," the Assignee.<br>David Smith, a co-owner of Sombras Group LLC, testified that the assignment was to GR – "we thought GR uses Marksman as their agent to purchase our assignment" of rights to the **ELEVEN** Mark. | Taylor Declaration, **DE 277 Exs. 124 & 206;**<br><br>Simkins 30(b)(6) Depo, 298:7-19; 305:21-306:12<br><br>*See* **GR OPCO 00459716-00459717 Ex. A**<br><br>Ilg Depo, 195:8-196:13; 201:23-203:14;<br><br>Smith Depo, 98:3-993; 112:6-13; 116:22-117:18; 120:3-121:17; |
| 58. | **Disputed. Ex. 136** to the Taylor Declaration does not include any citation in support. **Ex. 127** notes **11th AVENUE** is located in the historic heart of Denver catering to world travelers, including private ensuite rooms.<br>See No. 48 above, **11th AVENUE** is the No. 1 hotel in Denver (according to TripAdvisor.com), has summer rates of $250.00 per night, guests include "high net worth individuals" and business travelers and "very prominent people" like ██████████<br>As noted in **Ex. 125,** David Smith did not testify Eleven Inn's clients are "budget" travelers – rather, it offers and "affordable" accommodations – describing it as a "niche hotel" catering national clientele including from New York and California. **Ex. 205** is brochure from Eleven Inn how it appeals to | DE 227 at ¶¶15-23 & 26-31.<br><br>Taylor Declaration, **DE 277 Exs. 125, 127, 137, 138, 139 & 205**<br><br>Smith Depo, 86:12-89:5. |

| | | |
|---|---|---|
| | adventure travelers interested in diving and outdoor activities. **Ex. 138** is a marketing tri-fold noting Eleven Inn serves "travelers from all over the world," including "[a]rtists, adventure seekers, archeologists, birdwatchers, [ ] campers [and] hikers." **Ex. 139** is an email how the inn is close proximity to the state park and notes Eleven Inn often sells out.<br>Eleven Inn is a quaint, rustic "western style" lodge opened in 1946 two miles off Interstate-10 offering adventure activities including diving, snorkeling, hiking & horseback riding, has outstanding reviews on Yelp, Google and TripAdvisor.com. Guests have included high net worth individuals, families, musicians, and celebrities ████████████ with many repeat guests. | |
| 59. | **Disputed.** As stated in No. 48, **11ᵗʰ AVENUE** and Eleven Inn offer ensuite accommodations both having high TripAdvisor, Google and Yelp rating. **Ex. 127** notes how 11ᵗʰ AVENUE offers a variety of **private** ensuite rooms, *as well as* rooms with shared bathrooms. There is no testimony that 11ᵗʰ Avenue is dormitory and it is clearly not. As for Eleven Inn, **Exs. 138**, **139** and **205** show that its guest rooms are **all** ensuite and clearly not dormitories | Taylor Declaration, **DE 277 Exs. 138, 139 & 205** |
| 60. | **Disputed.** Mr. DeGori was asked if Eleven Inn was a competitor to **E11EVEN** Miami's *nightclub*, not **E11EVEN HOTEL & RESIDENCES**. He did testify nonetheless that Eleven Inn has a small number of guest rooms and in a remote area (rather than a large "populus" area like Miami). Michael Simkins testified how the **11ᵗʰ AVENUE** and Eleven Inn's accommodations, advertising channels, customer base and underlying '**11**' and **ELEVEN** marks are similar to Defendants' marks & accommodations. | DeGori 30(b)(6) Depo, 279:2-280:22<br><br>Simkins Depo, 305:8-19. |
| 61. | **Disputed.** See No. 60 above, regarding similarity with Defendants' ELEVEN properties compared to the **11ᵗʰ AVENUE** and Eleven Inn's accommodations. | n/a |
| 62. | **Disputed.** GR uses the Acquired Marks through licensees 11th Avenue Corp. and Sombras Group LLC. Admitted in part as to Simkins testimony. | Taylor Declaration, **DE 277 Exs 124** and **206.** |
| 63. | **Disputed.** 11ᵗʰ AVENUE had a $7 Million renovation from 2020 to 2021, including new air conditioning, plumbing, remodeled rooms and lobby. It is in Denver's arts district, near nightclubs and entertainment and draws "very high prominent people" including "ultra high net work individual[s]." | Ilg Depo, 268:5-271:5; 352:2-12 |
| 64. | **Disputed.** See response to No. 63 above. | |
| 65. | Undisputed. | |
| 66. | **Disputed.** Mr. Smith testified that Defendants' use of **ELEVEN** would risk confusion with GR's rights in the **ELEVEN** mark it acquired from SombrasGroup LLC and there "might be some overlap in our business." | Smith Depo, 19:18-20:15 |
| 67. | Undisputed. | |
| 68. | **Disputed.** See response to Nos. 53 and 54 above. | Taylor Decl., **DE 277 Exs. 124, 206-207** |
| 69. | **Disputed.** Mr. Smith testified he felt obligated to cooperate with GR's quality control and assist in review of Eleven Inn's business philosophy. | Smith Depo, 189:19-191:6 |
| 70. | **Disputed.** See No. 50 above, ¶ 1 of the **ELEVEN** Assignment (**SOMBRAS 0000091-0000093**) (**Ex. 124**) shows that Sombras Group LLC transferred, conveyed and sold its worldwide rights to Assignee, including "the right to pursue legal action for past and present infringement [ ] together with the goodwill of the business symbolized by the Marks and all common law rights" such that the Agreement conveyed both the marks and goodwill, common law rights, and rights to sue. It also created a license-back whereby | Taylor Declaration, **DE 277 Ex. 124**. |

| | | |
|---|---|---|
| | the Assignor became a licensee whose business uses the trademarks to the benefit of the Assignee's (GR's) acquired rights. | |
| 71. | **Disputed.** See response to No. 69 above. | |
| 72. | **Disputed.** See response to No. 69 above. | |
| 73. | Undisputed. | |
| 74. | **Disputed.** James Ilg testified that GR had the right to conduct a quality control inspection at 11th AVENUE under **GR OPCO 00022889-00022892**. | Ilg Depo, 212:19-213:2; and Taylor Decl., **DE 277 Ex. 206**. |
| 75. | Undisputed. | |
| 76. | **Disputed.** James Ilg's actual testimony ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ He also testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | Ilg Depo, 209:23-210:20 |
| 77. | **Disputed.** See response to Nos. 74 and 76 above, namely that under **GR OPCO 00022889-00022892** it was "reasonable" to assume that GR had conducted a quality control inspection at **11th AVENUE**. Both Dennis DeGori and Michael Simkins testified how GR's outside attorney Trevor Ward conducted a quality control inspection at **11th AVENUE** in Denver. | DeGori Depo, 277:2-278:6; and Simkins Depo, 282:6-11; 289:21; 290:14-291:11. |
| 78. | **Disputed.** Before acquiring the rights to the '11' Mark from 11th Avenue Corp., Mr. DeGori had ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Before acquiring such rights, Mr. DeGori reviewed www.11thAvenueHotel.com and inspected it online, and reviewed **11th AVENUE's** high ranking on both TripAdvisor.com and Yelp (and related favorable reviews). Michael Simkins' actual testimony (at 291:14-292:22) was that GR's outside counsel communicated directly with Marksman, that GR's outside counsel had advised GR regarding **11th AVENUE**, but he was unaware if GR's outside counsel spoke directly with **11th AVENUE**. | DeGori Depo, 264:1-24; 265:8-266:7. |
| 79. | Undisputed. | |
| 80. | **Disputed.** 11th AVENUEs exterior signage, marketing brochures, and associated logo is "11" and "HOTEL" in combination (with a "TH Ave" in smaller font and size). 11th AVENUE has spent hundreds of thousands of dollars advertising under signage and an associated logo in which "11" and "HOTEL" are the predominant elements. Thus, James Ilg did testify that 11th Avenue Corporation did maintain rights to both "11" and 11th AVENUE. Mr. Smith testified that guests often call his hotel just 'ELEVEN' or 'THE ELEVEN." When asked "Your understanding is [SombrasGroup doesn't] own rights to the name 'ELEVEN' by itself as a trademark?" Mr. Smith stated: "No, I can't say that. [ ] Marksmen convinced me that I owned" the rights to the name ELEVEN for hotel services, such that he does believe that Eleven Inn had the rights to ELEVEN, which SombrasGroup assigned to GR. | Ilg Depo, 255:3-258:8; 300:13-301:21; 331:4-25; 340:3-12; and Smith Depo, 102:19-103:12; 118:9-20. |
| 81. | **Disputed.** See response to No. 80. | |
| 82. | **Disputed.** Eleven Inn ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ with channels of trade | Smith Depo, 57:15-58:2; |

| | | |
|---|---|---|
| | including its website, word of mouth and direct bookings. It advertises via a variety of on-line platforms, including: (a) through www.ElevenInn.com, (b) via Yelp.com, (c) via TripAdvisor.com, and (d) Google. Eleven Inn has customers throughout the United States, with particular focus on guests from California, Florida, Texas and New Mexico.<br>Before Defendants' first guest in Jan. 2012, **11th AVENUE** had ███████████████████ guests - 50% from United States / "several hundred people every year" from Florida.  11th Avenue does a variety of national advertising, including via: (a) its website www.11thAvenueHotel.com, (b) travel websites (TripAdvisor, Expedia, Booking.com, Hotels.com) (c) LinkedIn Advertising, (d) Instagram (having tens of thousands of viewers), (e) Facebook, and (f) magazine features (including Outdoor Life, Backpackers), and (g) VisitDenver's website www.VisitDenver.com.<br>For the last six years, 11th Avenue's websites have been viewed about 30,000 times. 11th Avenue is an active member and sponsor of Visit Denver, which promotes conventions and tourism to out-of-towners. | 166:3-168:1;  171:24-172:24; 182:24-183:16.<br><br>Ilg Depo, 32:5-13; 132:6-134:6; 249:14-250:25; 287:23-288:12; 280:23-281:13; 288:23-289:8; 293:25-294:8; 298:16-22; |
| 83. | **Disputed.** See response to No. 82 above. | |
| 84. | **Disputed.** See response to No. 82 above – Eleven Inn advertises in a variety of on-line platforms, including: (a) through www.ElevenInn.com, (b) via Yelp.com, (c) via TripAdvisor.com, and (d) Google. | |
| 85. | **Disputed.** James Ilg testified that 11th Avenue competes with a variety of different hotels including Brown Palace, Ritz Carlton and Four Seasons for guests. Moreover, he didn't testify that they don't compete outside of Denver, but that they "mostly" compete with Greater Denver hotels. | Ilg Depo, 189:6-8; 232:29:24. |
| 86. | **Disputed.** See response to Nos. 66 and 82 above.<br>Mr. Ilg's testimony (at 196:14-23) wasn't that the common law rights were limited to the greater Denver area, but that **11th AVENUE** "had the right to use" the '**11**' and '**11THE AVENUE**' marks for hotel accommodations.<br>When asked (at 123:23-124:7) if Eleven Inn would object to a third-party hotel using the name ELEVEN – David Smith remarked that there might be instances that would be objectionable.  Moreover, David Smith further testified how Defendants' use of its **ELEVEN** mark would risk confusion with GR's acquired rights from Sombras Group LLC in its **ELEVEN** mark – and how there "might be some overlap in our business." | |
| 87. | **Disputed.** David Smith testified Eleven Inn had not heard of Defendants and/or their **ELEVEN** named properties prior to receipt of their subpoena. James Ilg testified similarly. As such, it was impossible for them to contact Defendants to assert rights over their respective '**11**' and **ELEVEN** rights. | Smith Depo, 13:24-14:1; Ilg Depo, 180:24-181:4. |
| 88. | Undisputed. | |
| 89. | **Disputed.**  See response to Nos. 66. | |
| 90. | Undisputed. | |
| 91. | **Disputed.**  Alan Pike is ███████ ████████████████████████████████████████ ████████████ Alan Pike was not | *See* DE 227 at ¶¶ 1-3, 11-13. |



| | Likewise, he testified ████████████ ████████████████ | |
|---|---|---|
| 92. | **Disputed.** See response to No 91 above. | |
| 93. | **Disputed.** See response to No 91 above. **Exs 149-159** are subject to GR's Motion in Limine and Motion for Sanctions (DE 209).<br><br>**Exs 148-159** do not (nor do any of Defendants' document production) show that Alan Pike (or AlanPike@Mac.com) received, reviewed or executed the April 7, 2011 applications for the **ELEVEN** Mark that became Trademark App. No. 85/289,102 in Classes 39 and 41 and Trademark App. No. 85/289,682 in Class 43. There is likewise no evidence of Christine Bell or anyone else emailing AlanPike@Mac.com to thank Alan Pike for returning either April 7, 2011 trademark application<br><br>**ELEVEN 0090531 – 0090532 (Ex. 149):** ██████████ ████████████████████ ██ what became Trademark App. Ser. No. 85/458,461 for "Rental of Homes."<br><br>**ELEVEN 0090533 – 0090534 (Ex. 150:** ████████████ ████████████████████ ██ what became Trademark App. Ser. No. 85458,463 for "Coordinating Travel Arrangements for Individuals and Groups."<br><br>**ELEVEN 0090535 – 0090536 (Ex. 151):** ██████████ ████████████████████ ██ what became Trademark App. Ser. No. 85/458,466 for "skiing, white water rafting . . ."<br><br>**ELEVEN 0090537 – 0090538 (Ex. 152):** ██████████ ████████████████████ ██ what became Trademark App. Ser. No. 85/458,469 for "hotels; hotel services"<br><br>There is **no evidence** of anyone emailing AlanPike@Mac.com to thank Alan Pike for returning the four ⁊ trademark applications that became **Trademark App. Ser. No. 85/458,461, No. 85/458,463, No. 85/458,466, or No. 85/458,469.**<br><br>**ELEVEN 0090539 – 0090546 (Ex. 153 – 156):** ██████████████████ for the unrelated ◈ in Classes 36, 39, 41, 43;<br><br>**ELEVEN 0090547 – 0090548 (Ex. 157):** ████████████ ██████████████████████ what became Trademark App. Ser. No. 85/466,721.<br><br>**ELEVEN 0090549 – 0090550 (Ex. 158):** ██████████ | Taylor Declaration, **Exs. 148-159**; and DE 227 at ¶¶ 1-3 and 11-13. |



█████ – ie, what became Trademark App. Ser. No. 85/466,719.

**ELEVEN 0090551-090557 (Ex. 159):** ████████████

████████████ which relate to Trademark App. Ser. No. 85/466,719 and 85/466,721.

**Exs.149-159** do not provide any evidence Alan Pike reviewed any of those emails or seven trademark applications. Likewise, Ex. 159 does not confirm Alan Pike signed the applications shown in **Ex. 157** or **Ex. 158**.

The sworn testimony of Alan Pike is that: ████████

| | | |
|---|---|---|
| 94. | **Disputed.** See response to No 93 above. Alan Pike was clear that he was '████ | A.Pike Depo, 148:24-149:6; 151:12-18 & 153:13-154:4 |
| 95. | **Disputed.** See response to No. 92 and No. 93 above. | A.Pike Depo, 151:20-25. |
| 96. | **Disputed.** Alan Pike testified that he ████ | A.Pike Depo, 151:20-25. |
| 97. | **Disputed.** Kyra Phelps testified ████ | A.Pike Depo, 149:11-24; and K.Phelps Depo, 26:2-29:24; 37. |
| | When Alan Pike was asked if he was involved in any "part of the prosecution or the going back and forth with the Trademark Office, his response was clear: ████ | |
| | Based on the foregoing, Kyra ████ | |
| 98. | Undisputed. | |
| 99. | **Disputed.** Meryl Hershkowitz testified ████ | Hershkowitz Depo, 189:14-193:16; 200:12- |

| | | 201:20. |
|---|---|---|
| 100. | Undisputed. | |
| 101. | **Disputed.** Chad Pike did not testify that no one else at Eleven saw the February 2011 Thompson Search report's reference to **11TH AVENUE**; rather, he testified that ▮▮▮ | C.Pike Depo, 148:3-155:3. |
| 102. | **Disputed.** Chad Pike testified how ▮▮▮ <br><br> Chad Pike testified how ▮▮▮ | C.Pike Depo, 33:19:23;149:7-152:11; and <br><br> K.Phelps Depo, 11:12-12:6; 15:14-24. |
| 103. | Undisputed. | |
| 104. | **Disputed.** Meryl Hershkowitz testified ▮▮▮ | Hershkowitz Depo., 113:17-132:13 |



| 105. | **Disputed.** See above response to No. 104. Ms. Hershkowitz testified ███████ ███████████████ ███████████████████████████████████ | Hershkowitz Depo., 135:3-9. |
|---|---|---|
| 106. | Undisputed. | |
| 107. | **Disputed.** ElevenExperience.com markets (a) eight "Experience Lodges" called Scarp Ridge Lodge, Deplar Farm, Taylor River Lodge, Bahama House, Chalet Pelerin, Chalet Hibou, Sopris House and Rio Palena Lodge, and (b) five "Adventure Lodges" called Winterlake Lodge, Martin Pescador Lodge, Revelstroke, Owen River Lodge and Cedar Lodge –none include the term"hotel" in their name. Also, there are seven private homes (unstaffed properties) listed for long and short term rental (with two week minimums). | K.Phelps 30(b)(6), 42:2-44:13; Wick Depo, 24:18-26:18; 28:15-29:12. |
| 108. | **Disputed.** Meryl Hershkowitz testified the Nov. 8, 2011, Nov. 14, 2012 and June 4, 2013 filed statements of use included specimens submitted to the USPTO merely "purport" to show use in commerce as of Nov. 2011, as the examiner would have no way of knowing whether they were truthful. Meryl Hershkowtiz Report (**Ex. 90** of her Deposition) further explained that "[h]ad the examining attorneys been aware of the discrepancies in the dates when the services were offered versus when they were actually rendered, the examining attorneys would have required amendments to the statements of use, or new statements of use . . . [b]ut because the examining attorneys had no indication that the services had not been rendered in connection with the marks on or before November 11, 2011, [EIP's]"registrations remain deficient and could result in a finding of *void ab initio*." | Hershkowitz Depo, 78:9-79:2; Hershkowitz Report, Ex. 90 to Deposition, **Ex. 1** |
| 109. | **Disputed.** See response to No. 108above.  *See also* Para 52 of the Meryl Hershkowtiz Report (**Ex. 90** of her Deposition) – namely that "[t]here is nothing in the record to indicate that any of the other identified services in Classes 36, 39, 31 or 43) were rendered in conjunction with the ⟨logo⟩ logo or **ELEVEN**-word marks before late January 2022." | See citation for No. 108. |
| 110. | **Disputed.** See response to No. 108 & 109 above. | See Nos. 108-109. |
| 111. | Undisputed. | |
| 112. | **Disputed.** Chad Pike admitted that ███████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████ Scarp Ridge Lodge obtained a Temporary Certificate of Occupancy on Dec. 15, 2021 (and a Certificate of Occupancy on Jan. 17, 2012). | C.Pike, 109:3-8; 116:5-23; Phelps Depo, 269:7-279:6; 281:8-284:16; |
| 113. | **Disputed.**  Kyra Phelps' testimony (**Ex. 18** at 76:24-77:6) was that she ███████████████████████████████████████████ | K.Phelps Depo, 78:8-80:7. |



| | | |
|---|---|---|
| | As mentioned in response to No. 6 above, ███████████████████ ███████████████████ Kyra Phelps testified how ████████ ██████ | |
| 114. | **Disputed.** See response to No. 113 above. | |
| 115. | Undisputed announcement date, except to note EIP did not commence this lawsuit. GR commenced it against EIP. **Disputed** as to when EIP learned of WERM given that Block 17 announced WERM in February 2023. | ELEVEN_0088279 **Ex. C** |
| 116. | Undisputed as to GR's involvement with the E11 Towers. **Disputed** as to GR having any involvement with WERM. | DE 233 |
| 117. | **Disputed.** Mr. LoPinto's testimony (**Ex. 203** at 218:24-219:5) was that before announcing **E11EVEN HOTEL & RESIDENCES**, GR had pop-up events that were temporary accommodations at hotels offered under the **E11EVEN** Mark. Mr. Franco also noted GR provided temporary accommodations at hotels since opening the club in early 2014 under the **E11EVEN** mark, which has continued monthly ever since in conjunction with various events in the Miami area such as the Super Bowl, Miami Music Week, and Art Basel, etc.  GR also had a four-day hotel take-over of the Resorts World Hilton in Las Vegas, where **E11EVEN** was used throughout the hotel's signage to offer accommodations. From 2014 to present, there have been more than 70 events where GR partnered with a hotel to offer temporary accommodations to patrons under the **E11EVEN** Mark. | Franco Depo, 321:18-322:16; 325:7-326:6; 337:3-7; 342:11-345:13; and 363:12-365:14; and Franco 30(b)(6), 355:19-356:7 |
| 118. | **Disputed.** Block 17 does not use the phrases "West Eleventh Residences," "West Eleventh," or the interlocking "W11" as trademarks in connection with West Eleventh Residences. Instead, they use the phrase "West Eleventh Residences Miami" and an interlocking "W11" for their plain and ordinary meaning to describe (1) the geographic origin of WERM and (2) the characteristics, nature and qualities of WERM. Block 17 also has never claimed to own trademark rights in "West Eleventh Residences Miami," "West Eleventh Residences," "West Eleventh," or the interlocking "W11," and has never applied to register any of those phrases as trademarks. | June 26 30(b)(6) Shear Depo. at 335:21-336:21; 390:23-392:4; DE 219-13 at Rog. Nos. 2, 15, 17. |
| 119. | Undisputed that dictionaries define "eleven" based on its mathematical and numerical significance, indicating the primary definition is the cardinality of the term. EIP chose "eleven" to indicate to consumers that its services are, on a scale of 1 to 10, an 11, based on to the movie "Spinal Tap." Chad Pike testified ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ **Disputed** to the extent that EIP asserts that the primary definition of the term, as the number | DE 251-32 at ¶¶ 33; DE 253-8 at 6; DE 259-9 at 9; DE 253-10 at 3; DE 260-17 at 57:4-15; PMG-BLOCK17-11THST-0018178 at '18185 **Ex. D**; PMG-BLOCK17-11THST-0018171 at '18172 **Ex. E**. |

| | | |
|---|---|---|
| | "11" is not laudatory and, thus, descriptive of EIP's services. | |
| 120. | **Disputed.** The laudatory and descriptive nature of the term "eleven" has been associated with hotels and other goods and services. Block 17 introduced many examples of third parties using the term "eleven" for hotel and other goods and services because the term "eleven" can describe the location of the good/service and/or describe the quality of the good/service, including but not limited to: the 11 Howard Hotel; RADICAL ELEVEN for a fitness program "that transforms your body and elevates your mind as you reach the next level of physical training"; ELEVEN for an investment agency with a "desire to help our customers, partners and team members take things past ten"); and various "11" or "eleven" hotels, restaurants, apartments, buildings, and companies named for the street address or geographic location. | DE 251-32 at ¶¶ 33-36; DE 232-8 at 5-7 (the 11 Howard Hotel); *Id.* at 65-70 (RADICAL ELEVEN); DE 232-9 at 69-70 (ELEVEN for an investment agency); DE 232-27 (various "11" or "eleven" hotels, restaurants, apartments, buildings, companies). |
| 121. | **Disputed.** Dr. Humphreys wrote that she ▓▓▓▓▓▓ | DE 249-63 at 21 n. 83. |
| 122. | Undisputed. | N/A |
| 123. | Undisputed. However, Dr. Joachimsthaler testified ▓▓▓ | Joachimsthaler Dep.. at 59:19-22; 58:10-13. |
| 124. | **Disputed.** With respect to EIP, and the brand "Eleven Experience," Dr. Joachimsthaler testified ▓▓▓▓ | Joachimsthaler Dep. at 61:2-10. |
| 125. | Undisputed that Block 17 identified the aforementioned articles in response to Interrogatory Request No. 12; however, **disputed** to the extent that EIP categorizes Block 17's response pointing to these articles as failing to show the descriptive/laudatory and/or generic nature of the term "eleven" because these articles confirm that EIP chose the term as its name to indicate to consumers that its hotel, hospitality and/or travel services are, on a scale of 1 to 10, an 11, based off a reference to the movie "Spinal Tap." | DE 253-8 at 6; DE 259-9 at 9; DE 253-10 at 3; DE 260-17 at 57:4-15. |
| 126. | Undisputed that these articles refer to EIP's own goods and services; **Disputed** to the extent that EIP categorizes Block 17's reference to these articles as failing to show the descriptive/laudatory and/or generic nature of "eleven." The articles confirm EIP chose the term as its name to indicate to consumers that its hotel, hospitality, real estate, and/or travel services are, on a scale of 1 to 10, an 11, based on a reference to the movie "Spinal Tap." | DE 253-8 at 6; DE 259-9 at 9; DE 253-10 at 3; DE 260-17 at 57:4-15. |
| 127. | Undisputed that Block 17 did not reference any purchaser testimony, analysis of consumer use, or survey evidence in response to EIP's Interrogatory No. 13 but **disputed** as to EIP's insinuation that B17 failed to provide such evidence because Block 17 has introduced many examples showing that many third-parties in the U.S. use "11" or "eleven" formative terms generically to refer to a category or class of businesses as being located on an 11th or Eleventh Street, Avenue, Boulevard or the like, which is one street away from 10th or 12th Street, Avenue or other-street suffix. Block 17 also produced evidence of EIP using "Eleven" for its dictionary definition in relation to EIP's offerings. | DE 232-27; PMG-BLOCK17-11THST-0005234 **Ex. F**; PMG-0005239 **Ex. G**; PMG-BLOCK17-11THST-0005288 **Ex. H** |
| 128. | **Disputed.** Ex. 161 does not contain any testimony regarding the grant of the ELEVEN Registrations. Mr. Germain states ▓▓▓▓▓ | DE 277-091 at 69:15-19. |

| 129. | Undisputed. | DE 251-34, at 19-21 |
|---|---|---|
| 130. | **Disputed.** B17 has produced many examples of third-party use of "eleven" and "11" formative marks, tradenames, business names and/or service names in the hotel industry and related industries (and others), including examples of US trademark applications and registrations for the goods and services covered by EIP's registrations, B17 also produced many examples of marks, trade names, business names and/or service names that include  "eleven" or "11" to refer to the street address or other geographic markers of the location. | DE 232-30 – DE 232-57. |
| 131. | **Disputed.** B17 does not use any trademarks. The phrase 'West Eleventh Residences Miami' and the shorthand interlocking "W11" appear on the website and are in sans serif font, which is a "standard" font. | Joachimsthaler Depo. 231:7-18. |
| 132. | **Disputed.** B17 created renderings for WERM via a third-party vendor but B17 includes disclaimers that consumers should not rely on the renderings for accuracy. | Shear June 26 30(b)(6) Depo. at 409:10-15. |
| 133. | **Disputed.** The cited exhibit does not depict the Instagram account for WERM. B17 does not dispute that its Instagram account is @westeleventhmiami but **disputes** that "West Eleventh" appears prominently on its Instagram page for WERM. | |
| 134. | **Disputed.** Because WERM is 99% sold, the sales gallery is in transition to promote a project in Wynwood. | Shear Mar. 12 30(b)(6) Depo. at 237:19-238:5; Shear Jun. 26 30(b)(6) |
| 135. | **Disputed.** Block 17 does not use "West Eleventh Residences Miami" or the interlocking "W" and "11" as trademarks. Block 17 disputes that "West Eleventh Residences Miami" and the interlocking "W11" appear prominently in all other marketing materials. EIP did not file Ex. 171, which displays EIP's webpage for Congdon's Point, not WERM. Ex. 172 displays a webpage from EIP's website. Ex. 173 was omitted. The remaining exhibits display the phrase "West Eleventh Residences" and "W11" in small print in the top corner or very bottom of the webpage, in the middle of other text, and not as the focus of the materials. | |
| 136. | Undisputed; Block 17 did a trademark search in line with PMG's practice for all of its development projects. | June 26 30(b)(6) Shear Depo. 303:20-304:17. |
| 137. | **Disputed.** Mr. Germain is not GR's expert but, rather, Block 17's expert on trademarks, particularly, as to how the crowded field of third-party uses of "11" and "Eleven"-formative terms in the U.S. renders EIP's asserted marks commercially weak. Mr. Germain did not testify that Block 17's clearance search for West 11, specifically, was done to enable the use and potential registration of a term as trademark. Moreover, Mr. Germain generally testified that █████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████ | Germain Depo. at 31:2-19; DE 260-19 at 390:23 – 392:4. |
| 138. | Undisputed. | N/A. |
| 139. | Undisputed. Block 17 does not own or claim to own any trademarks. The disclaimer should have read that it has permission to use the marks of the developers, PMG; Lion Development Opportunity Fund, LLC; and Marc | DE 260-19, at 390:15-391: DE 223-10, at 165:8-16; DE 223-26. |

| | Roberts Companies, with which it has license agreements. | |
|---|---|---|
| 140. | Undisputed. | N/A |
| 141. | **Disputed.** Dr. Joachmisthaler, responding to the question, ███████████████████████████ | Joachimsthaler Depo at 58:19-22; 198:5-24-199.1; DE 275-36 ¶ 45. |
| 142. | **Disputed** to the extent it refers to "West Eleventh Residences" as suggestive as to trademark strength. Dr. Joachimsthaler ████████ ████████████████████████████ | DE 219-26 ¶ 44; DE 275-36 ¶ 45. |
| 143. | Undisputed. | DE 219-10 at No. 2. |
| 144. | **Disputed.** Ex. 186 does not identify evidence of actual confusion. Ex. 55 and Ex. 18 do not contain any reference to actual confusion. Ex. 197 references Mr. Franklyn's report, which does not evidence *actual* confusion; rather his surveys measure purported "likelihood of confusion." Mr. Franklyn admittedly did not survey "West Eleventh Residences Miami" or "W11" in his opening report, and his "rebuttal" report is improper and should be stricken. EIP's Interrogatory response fails to identify with specificity any actual confusion between EIP and WERM and, instead, broadly purported that ██████████████████████████████████ WERM does not have any affiliation with the E11EVEN Brand. It is a separate project. For EIP, Kyra Phelps could not name one person that was confused or identify one document that showed confusion about WERM with EIP or vice versa. | DE 251-47 at 7-8; Franklyn Dep. 380:19-381:11; 383:13-16; 383:24-9; Phelps June 18 30(b)(6) Depo. 55:24-56:11; 76:3-9. |
| 145. | **Disputed:** Alan Pike was ████████████████████████████ | DE 507, ¶¶1-3 |
| 146. | **Disputed:** See responses and citations at Nos. 91, 93 and 97 above | See Nos. 91, 93 & 97. |
| 147. | **Disputed:** See responses and citations at Nos. 91 and 93 above. | See Nos. 91 & 93. |
| 148. | **Disputed:** See response and citation at No. 99 above. | See No. 99. |
| 149. | **Disputed:** The cited interrogatory response states ████████████████████ Thus, it does not show actual notice of an "Eleven" trademark registration. Mr. Simkins testified that ████████████ | DE 380, at Ex. 524 at Rog 22; DE 507, at ¶59. |
| 150. | **Disputed:** Mr. Sneeringer was ██████████████████████████ | DE 380, Ex. 248 at 228-233. |
| | **ADDITIONAL FACTS** | |
| 151. | In 2012 and 2013, no other U.S. properties were open for guests in the United States. The second property to open was in France, Chateau Pelerin, during the Winter of 2014. | C.Pike Dep. 318:24 – 319:16; Phelps Dep. 312:10-313:18 *compare* Ex. 201 *with* 213. |
| 152. | The only entity that the Town of Crested Butte issued a hotel operators license to was CS Irwin. | **Ex. I**, CS Irwin hotel License & 2016 Renewal App. |

| 153. | In the terms and conditions of the elevenexperience.com website, CS Irwin disavows being the operator of any hotel property, and Kyra Phelps testified that CS Irwin ████████████████ | Phelps 30(b)(6) Dep., 140:17 – 141:6, 143:17 – 145:8, & Ex. 237. |
|---|---|---|
| 154. | CS Irwin put itself out front in launching the brand. The launch party was invitation-only and, notably, the invitation: (a) was sent by CS Irwin; (b) displayed CS Irwin's "CS" logo; and (c) read: "**CS Irwin** cordially invites you to preview the Eleven Experience at the newly opened Scarp Ridge Lodge." The invite also stated: "RSVP…to eleven@*csirwin*.com." | Phelps Dep., 179:6-12; Ex. 191 and 181:2-8; Ex. 192. |
| 155. | CS Irwin being out front on the launch was intentionally aimed at attracting CS Irwin's existing clients who ████████████████ | Phelps Dep., 170:24 - 172:6 |
| 156. | ████████████████ | Phelps Dep., 173:11-19; 175:23–176:6; 178:8-10 |
| 157. | EIP was absent from the launch. ████████████████ Thus, they also were not in attendance to perform any control. | C.Pike Dep., 103:12-21; Huschle Dep., 8:19-24; Wick Dep., 8:7-13. |
| 158. | EIP is a Delaware LLC that has never registered to do business in Colorado. | **Ex. J**, Absence of public record re EIP |
| 159. | Grassy Creek did not register to do business in Colorado until January 3, 2012, which was months *after* the November 11, 2011 launch date. | **Ex. K**, Grassy Creek LLC 2013 Foreign Entity Authority |
| 160. | Chad Pike, founder of the brand, said he has a ████████████████ | C.Pike Dep., 32:25 – 33:9. |
| 161. | Crested Butte Club LLC owns Scarp Ridge Lodge but Irwin Backcountry Guides claims to ████████████████ | Phelps 30(b)(6) Dep., 57:22–58:7, 59:21–61:20; Phelps Dep., Ex. 207. |
| 162. | Defendants' expert, Robert Keon, testified that he would ████████████████ | Keon Dep., 131:25 – 132:9. |
| 163. | Chad Pike viewed the November 11, 2011 "launch" ████████████████ | C.Pike Dep., 104:3 – 106:4. |
| 164. | IBCG filed a fictitious name of "Eleven" for use in performing payroll services for an experiential travel brand, which is not a service mentioned in the March 2017 license agreement. Wilderness Machines, LLC uses "Eleven" for capital services. Frontier Cuisine LLC uses "Eleven" for culinary services. There are no controlled licenses for any of these services. | **Ex. L**, Wilderness Machines, d/b/a Eleven; **Ex. M**, Frontier Cuisine d/b/a Eleven, **Ex. N**, Irwin Backcountry Guides d/b/a Eleven |
| 165. | Chad Pike testified that he ████████████████ | C. Pike Dep., 233:2-20, 234:9-23, 235:9-18, 236:15–237:17, 238:6-20 |