# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

GR OPCO, LLC

    *Plaintiff,*

vs.

ELEVEN IP HOLDINGS LLC, GRASSY CREEK
LLC, CS IRWIN LLC, IRWIN BACKCOUNTRY
GUIDES, LLC, ALAN PIKE, and CHAD PIKE

    *Defendants.*

    and

ELEVEN IP HOLDINGS LLC

    *Counterclaim Plaintiff,*

vs.

GR OPCO, LLC, 11USA GROUP, LLC, MARC
ROBERTS, DENNIS DEGORI, MICHAEL
SIMKINS, MARC ROBERTS COMPANIES
LLC, PROPERTY MARKETS GROUP, INC.,
PMG-11TH STREET VENTURES, LLC, PMG-
11TH STREET VENTURES II, LLC, BLOCK 17
TRUSTEE, LLC, BLOCK 17 RESIDENTIAL
OWNER, LLC, and LION DEVELOPMENT
OPPORTUNITY FUND LLC

    *Counterclaim Defendants.*

BLOCK 17 TRUSTEE, LLC and BLOCK 17
RESIDENTIAL OWNER, LLC,

    *Counterclaim-Plaintiffs,*

vs.

ELEVEN IP HOLDINGS LLC

    *Counterclaim Defendant.*

Case No. 1:22-cv-24119-FAM-TORRES

**DEFENDANTS AND
COUNTERCLAIM PLAINTIFF'S
REPLY IN SUPPORT OF THEIR
AMENDED MOTION FOR PARTIAL
SUMMARY JUDGMENT (D.E. 500)**

## <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

ARGUMENT ........................................................................................................................ 2

I.      GR'S CLAIMS BASED ON ITS ALLEGEDLY ACQUIRED MARKS FAIL. ............... 2

II.     GR'S CANCELLATION CLAIMS FAIL. ............................................................... 6

III.    GR'S UNLAWFUL USE AFFIRMATIVE DEFENSE FAILS. ..................................... 8

IV.    GR'S FIFTH AFFIRMATIVE DEFENSE FAILS. ................................................... 9

V.     GR'S NAKED LICENSING DEFENSE FAILS. .................................................... 9

VI.    DEFENDANTS' LACHES AND RELATED DEFENSES FAIL. ................................ 11

VII.   11USA, PMG AND B17'S COUNTERCLAIMS AND DEFENSES FAIL. .................. 12

CONCLUSION .................................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*3Lions Publ'g, Inc. v. Interactive Media Corp.*,
 389 F. Supp. 3d 1031 (M.D. Fla. 2019)................................................................14

*A&L Labs., Inc. v. Bou-Matic LLC*,
 429 F.3d 775 (8th Cir. 2005) .........................................................................................2

*Adidas-Am., Inc. v. Payless Shoesource, Inc.*,
 546 F. Supp. 2d 1029 (D. Or. 2008) .........................................................................12

*Aflatouni v. Select Portfolio Servicing, Inc.*,
 2012 WL 5472172 (E.D. Tex. Nov. 9, 2012) ...........................................................12

*Am. Historic Racing Motorcycle Ass'n, Ltd. v. Team Obsolete Promotions*,
 33 F. Supp. 2d 1000 (M.D. Fla. Dec. 8, 1998) .........................................................13

*Angel Flight of Ga., Inc. v. Angel Flight Se., Inc.*,
 424 F. Supp. 2d 1366 (N.D. Ga. 2006)........................................................................5

*Angel Flight of Georgia, Inc. v. Angel Flight Am., Inc.*,
 522 F.3d 1200 (11th Cir. 2008) ................................................................................11

*B&B Hardware, Inc. v. Hargis Indus., Inc.*,
 575 U.S. 138 (2014)...................................................................................................4, 5

*Badia Spices, Inc. v. Gel Spice Co., Inc.*,
 2017 WL 2082794 (S.D. Fla. May 25, 2017) ...........................................................14

*Barcamerica Int'l USA Trust v. Tyfield Imps.*,
 289 F.3d 589 (9th Cir. 2002) .......................................................................................4

*In re Bayer Aktiengesellschaft*,
 488 F.3d 960 (Fed. Cir. 2007)....................................................................................13

*BeautyBank, Inc. v. Harvey Prince LLP*,
 811 F. Supp. 2d 949 (S.D.N.Y. 2011).......................................................................12

*Beer Nuts, Inc. v. Clover Foods Co.*,
 711 F.2d 934 (10th Cir. 1983) ...................................................................................15

*Bertini v. Apple Inc.*,
 63 F.4th 1373 (Fed. Cir. 2023) .....................................................................................5

*Blue Mountain Holdings Ltd. v. Bliss Nutraceticals*,
    2022 WL 2316386 (11th Cir. Aug. 11, 2023)..................................................3, 4, 9

*Boathouse Grp., Inc. v. TigerLogic Corp.*,
    777 F. Supp. 2d 243 (D. Mass. 2011) ..................................................................3, 4

*In re Bose Corp.*,
    580 F.3d 1240 (Fed. Cir. 2009)................................................................................6

*Bradshaw v. Integon Nat'l Ins. Co.*,
    2019 WL 6716364 (S.D. Fla. Dec. 10, 2019)........................................................10

*Brother Records, Inc. v. Jardine*,
    318 F.3d 900 (9th Cir. 2003) .................................................................................15

*Buccellati Holding Italia SPA v. Laura Buccellati, LLC*,
    5 F. Supp. 3d 1368 (S.D. Fla. 2014) .....................................................................12

*Bulbs 4 E. Side, Inc. v. Ricks*,
    199 F. Supp. 3d 1151 (S.D. Tex. 2016)..................................................................15

*Burger King Corp. v. Pilgrim's Pride Corp.*,
    705 F. Supp. 1522 (S.D. Fla. 1988) .......................................................................15

*Carnival Corp. v. SeaEscape Casino Cruises, Inc.*,
    74 F. Supp. 2d 1261 (S.D. Fla. 1999) ....................................................................13

*Chattanooga Mfg., Inc. v. Nike, Inc.*,
    301 F.3d 789 (7th Cir. 2002) ...................................................................................5

*Commodores Ent. Corp. v. McClary*,
    822 F. App'x 904 (11th Cir. 2020) ...........................................................................9

*Commodores Ent. Corp. v. Thomas McClary*,
    2015 WL 12843872 (M.D. Fla. Mar. 10, 2015) .....................................................15

*Conagra, Inc. v. Singleton*,
    743 F.2d 1508 (11th Cir. 1984) ..............................................................................11

*Contra Experience Hendrix, LLC v. Elec. Hendrix, LLC*,
    2008 WL 3243896 (W.D. Wash. Aug. 7, 2008)...................................................7, 10

*Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*,
    125 F.3d 28 (2d Cir. 1997)......................................................................................14

*Costa Farms, LLC v. Costa Tropicals & Flowers, Inc.*,
    2013 WL 12092473 (S.D. Fla. Aug. 19, 2013).................................................13, 14

*Davidoff Extension S.A. v. David Int'l, Inc.*,
  612 F. Supp. 4 (S.D. Fla. 1984) ........................................................................8

*DCS Real Est. Invs., LLC v. Yapor Corp.*,
  2015 WL 12780447 (M.D. Fla. Feb. 26, 2015) ...............................................15

*In re Dermahose Inc.*,
  2007 WL 499919 (T.T.A.B. Feb. 13, 2007) ......................................................6

*Earth, Wind & Fire IP, LLC v. Substantial Music Grp. LLC*,
  2024 WL 1025265 (S.D. Fla. Mar. 4, 2024).............................................11, 12

*Eat Right Foods, Ltd. v. Whole Foods Market, Inc.*,
  880 F.3d 1109 (9th Cir. 2018) ...........................................................................5

*Elliott v. Google, Inc.*,
  860 F.3d 1151 (9th Cir. 2017) .........................................................................14

*Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*,
  936 F.2d 889 (6th Cir. 1991) ...........................................................................12

*Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*,
  30 F.3d 466 (3d Cir. 1994)..................................................................................9

*Fitnessglo, Inc. v. Heartglo Inc.*,
  2016 WL 6833488 (T.T.A.B. Aug. 25, 2016) ....................................................6

*FN Herstal SA v. Clyde Armory Inc.*,
  838 F.3d 1071 (11th Cir. 2016) .......................................................................8, 9

*Ford Motor Co. v. O.E. Wheel Distrib., LLC*,
  868 F. Supp. 2d 1350 (M.D. Fla. 2012)............................................................13

*Frehling Enters., Inc. v. Int'l Select Grp., Inc.*,
  192 F.3d 1330 (11th Cir. 1999) .......................................................................14

*Gen. Mills Inc. v. Health Valley Foods*,
  24 U.S.P.Q.2d 1270 (T.T.A.B. 1992) ................................................................8

*Glow Indus., Inc. v. Lopez*,
  273 F. Supp. 2d 1095 (C.D. Cal. 2003) ..............................................................3

*Great Adirondacks Steak & Sea Food Café, Inc. v. Adirondack Pub & Brewery, Inc.*,
  2017 WL 3670296 (T.T.A.B. June 8, 2017)........................................................9

*Groucho's Franchise Sys., LLC v. Grouchy's Deli, Inc.*,
  683 F. App'x 826 (11th Cir. 2017) ...........................................................5, 6, 11

*Halo Mgmt., LLC v. Interland, Inc.*,
   2004 WL 1781013 (N.D. Cal. Aug. 10, 2004) ........................................................................4

*Hard Candy LLC v. Anastasia Beverly Hills, Inc.*,
   921 F.3d 1343 (11th Cir. 2019) .............................................................................................14

*Heroes, Inc. v. The Boomer Esiason Hero's Found.*,
   1997 WL 335807 (D.D.C. June 16, 1997)............................................................................14

*Ideal Image Dev. Corp. v. Idealaser Hair Removal Corp.*,
   2019 WL 3890345 (S.D. Fla. June 25, 2019) .........................................................................5

*Int'l Stamp Art, Inc. v. U.S. Postal Service*,
   456 F.3d 1270 (11th Cir. 2006) .............................................................................................15

*interState Net Bank v. NetB@nk, Inc.*,
   348 F. Supp. 2d 340 (D.N.J. 2004) .........................................................................................3

*It's a 10, Inc. v. Beauty Elite Grp., Inc.*,
   2013 WL 6834804 (S.D. Fla. Dec. 23, 2013) ......................................................................14

*Kason Indus. v. Component Hardware Grp., Inc.*,
   120 F.3d 1199 (11th Cir. 1997) .........................................................................................6, 11

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
   408 F.3d 596 (9th Cir. 2005) .................................................................................................13

*MarketquestGrp., Inc. v. BIC Corp.*,
   316 F. Supp. 3d 1234 (S.D. Cal. 2018)..................................................................................12

*Medscript Pharmacy, LLC v. D&D Pharma LTC, LLC*,
   444 F. Supp. 3d 909 (N.D. Ill. 2020) ..................................................................................3, 4

*Mini Melts,Inc. v. Reckitt Benckiser, Inc.*,
   2009 WL 10677599 (E.D. Tex. Feb. 26, 2009) ......................................................................6

*Money Store v. Harriscorp Fin., Inc.*,
   689 F.2d 666 (7th Cir. 1982) ...................................................................................................3

*In re Morgan Brown*,
   2016 WL 4140917 (T.T.A.B. July 14, 2016)...........................................................................9

*Nartron Corp. v. STMicroelectronics, Inc.*,
   305 F.3d 397 (6th Cir. 2002) ...................................................................................................6

*Navajo Nation v. Urban Outfitters, Inc.*,
   212 F. Supp. 3d 1098 (D. N.M. 2016) ..................................................................................14

*Nightlight Sys., Inc. v. Nitelites Franchise Sys., Inc.*,
    2007 WL 9698547 (N.D. Ga. Jan. 4, 2007) ...............................................................13

*Nordco A.S. v. Ledes*,
    1997 WL 570546 (S.D.N.Y., Sept. 15, 1997) ...............................................................2

*Norwood Promotional Prod., LLC v. KustomKoozies, LLC*,
    835 F. Supp. 2d 685 (S.D. Ind. 2011) .........................................................................9

*Outlawlessness Prods., Inc. v. Paul*,
    2011 WL 13177705 (M.D. Fla. Apr. 6, 2011) ............................................................2

*Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*,
    2011 WL 2174012 (S.D. Fla. June 2, 2011) ...............................................................6

*Penta Hotels Ltd. v. Penta Tours*,
    1988 WL 384940 (D. Conn. Sept. 30, 1988) ..............................................................8

*Perez v. Cigna Health & Life Ins. Co.*,
    No. 19 Civ. 951, 2020 WL 1308196 (M.D. Fla. Mar. 19, 2020) .................................9

*Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.*,
    887 F. Supp. 2d 519 (S.D.N.Y. 2012) ........................................................................14

*Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp., LLC*,
    7 F. 4th 989 (11th Cir. 2021) .....................................................................................6

*R&R Partners, Inc. v. Tovar*,
    447 F. Supp. 2d 1141 (D. Nev. 2006) .........................................................................2

*Rubenstein v. Primedica Healthcare, Inc.*,
    755 So. 2d 746 (Fla. 4th Dist. Ct. App. 2000) .........................................................10

*Sands, Taylor & Wood Co, v. Quaker Oats Co.*,
    978 F.2d 947 (7th Cir. 1992) .....................................................................................15

*Setai Hotel Acquisitions, LLC v. Luxury Rentals Miami Beach, Inc.*,
    2016 WL 7217730 (S.D. Fla. Dec. 9, 2016) .............................................................15

*SiLite, Inc. v. Creative Bath Prod., Inc.*,
    1994 WL 484577 (N.D. Ill. Sept. 2, 1994) ...............................................................13

*Sock It to Me, Inc. v. Aiping Fan*,
    2020 WL 3027605 (T.T.A.B. June 3, 2020) ...............................................................7

*SonicSolutions Algae Control, LLC v. Diversified Power Int'l, LLC*,
    2024 WL 1043001 (D. Mass. Mar. 8, 2024) ..............................................................8

*Sprint Commc'ns Co. L.P. v. Time Warner Cable, Inc.*,
   2017 WL 978107 (D. Kan. Mar. 14, 2017) ...........................................................12

*Sream, Inc. v. Tausif Lavina, Inc.*,
   2019 WL 1466706 (S.D. Fla. Feb. 12, 2019) ........................................................8

*SunAmerica Corp. v. Sun Life Assurance Co. of Canada*,
   77 F.3d 1325 (11th Cir. 1996) .............................................................................11

*Tana v. Dantanna's*,
   611 F.3d 767 (11th Cir. 2010) ...........................................................................4, 5

*TCPIP Holding Co. v. Haar Commc'ns, Inc.*,
   244 F.3d 88 (2d Cir. 2001).................................................................................15

*Tequila Cuervo La Rojena, S.A. De C.V. v. Mush, Inc. d/b/a Igloo's Frozen Drinks*,
   2017 WL 1345075 (T.T.A.B. March 14, 2017)....................................................9

*TMT N. Am., Inc. v. Magic Touch GmbH*,
   124 F.3d 876 (7th Cir. 1997) ..........................................................................7, 10

*Trilogy Healthcare of Louisville E., LLC v. Camelot Leasing, LLC*,
   2019 WL 3991073 (W.D. Ky. Mar. 22, 2019) ....................................................15

*Turner v. H M H Publ'g Co.*,
   380 F.2d 224 (5th Cir. 1967) ...............................................................................7

*Uber Promotions, Inc. v. Uber Techs., Inc.*,
   162 F. Supp. 3d 1253 (N.D. Fla. 2016)...............................................................13

*Visa Int'l Servs. Ass'n v. JSL Corp.*,
   533 F. Supp. 2d 1089 (D. Nev. Dec. 27, 2007) ...................................................14

*Visa, U.S.A., Inc. v. Birmingham Tr. Nat. Bank*,
   696 F.2d 1371 (Fed. Cir. 1982)............................................................................3

*Vital Pharms., Inc. v. Monster Energy Co.*,
   472 F. Supp. 3d 123 (S.D. Fla. 2020) ..................................................................2

*Westchester Media v. PRL USA Holdings, Inc.*,
   214 F.3d 658 (5th Cir. 2000) .............................................................................11

*WheelImage Corp. v. Axial Mfg.*,
   2024 WL 1012847 (C.D. Cal. Mar. 5, 2024) ........................................................3

**Statutes**

15 U.S.C. §1055.................................................................................................7, 10

15 U.S.C. § 1127.............................................................................................................10

**Other Authorities**

McCarthy on Trademarks and Unfair Competition (5th ed.) ............................................... *passim*

Defendants' Opposition to Eleven's Motion confirms that they cannot maintain their kitchen-sink claims and defenses, which are unsupported in fact or law.[1] Defendants fails to offer supportive law, and the purported facts on which they rely are divorced from the actual legal standard. Defendants have not met their burden under *Celotex*. Eleven's Motion should be granted.

*First*, GR cannot rely on the common law rights it purportedly bought to defend its use of its own, different marks for different services in Miami because they are irrelevant to EIP's claims. That is dispositive, but its claims also fail because GR did not actually acquire or maintain rights.

*Second*, GR does not even attempt to prove the fraud claim it pled and litigated in this case, and it has no support for its eleventh-hour theory of forgery. Fraud requires clear and convincing evidence. GR's speculation is legally insufficient.

*Third*, GR's unlawful use defense offers only speculation, with no evidence that Eleven did not have the requisite filings (it did) or that any alleged violation of a municipal code is significant enough to invalidate federal trademarks. GR offers no legal support for its defense.

*Fourth*, GR's only argument for its fifth affirmative defense blatantly mischaracterizes the record, which shows GR knew of EIP's registrations before it announced the Infringing Hotels. GR cannot overcome its own binding 30(b)(6) testimony and written admissions in discovery.

*Fifth*, GR's naked licensing defense fails. EIP has exercised close control over its licensees, which are all related corporate affiliates. The evidence easily meets the applicable legal standard. GR cannot maintain the defense by mischaracterizing and relying on irrelevant facts.

*Sixth*, Defendants cannot maintain their laches/waiver/acquiescence/estoppel defenses. EIP complained within weeks of learning of the infringement, and there is no evidence of consent. Defendants cannot escape these material undisputed facts by relying on non-infringing conduct (their nightclub or alleged bookings at third-party, non-infringing hotels).

*Seventh*, Defendants' descriptiveness, genericness, and fair use claims and defenses fail. EIP's registrations are incontestable, which means their validity cannot be challenged as descriptive. Defendants do not identify any "contestable" marks, and the salient aspect of all of EIP's asserted marks is ELEVEN, for which EIP owns incontestable registrations. Regardless, the marks are arbitrary as they have no immediate or obvious relationship to Eleven's hotel services. Nor do the marks come anywhere near the standard for genericness, which requires that the marks

---

[1] Capitalized terms are defined in Eleven's Motion. All emphasis is added. Eleven incorporates its Reply Statement of Facts to Defendants' Response Statement of Additional Facts ("RSOF").

identify a specific class or category of service (*e.g.*, "liquor store"). Further, the WEST ELEVENTH Marks are clearly used as attention-getting symbols, as opposed to merely being a descriptive phrase, and thus function as trademarks, which is the relevant issue. Defendants cannot claim otherwise given their prominent use of the marks, including stylized logos and domain names. Whether the marks have achieved secondary meaning is irrelevant; Defendants cite no case applying such an analysis to a descriptive fair use defense.

## ARGUMENT

## I.     GR'S CLAIMS BASED ON ITS ALLEGEDLY ACQUIRED MARKS FAIL.

In an attempt to defeat EIP's superior rights, GR tellingly tried to "acquire" common law rights in two small entities without rights in Miami. But those acquisitions cannot defeat EIP's claims because (i) GR did not actually acquire the marks, (ii) the acquisitions were invalid assignments in gross, (iii) any acquired rights were abandoned, and (iv) critically, even if GR acquired valid rights, GR did not get *relevant* priority to overcome EIP's nationwide, registered rights and excuse GR's use in Miami.[2]

***First***, GR points to no evidence that it **actually acquired the marks**. It has only contracts between the Alleged Predecessors and ***third-party Marksmen***. While the agreements say ███ ██████████████████████████████████████████████ GR did not complete any transfer documents to actually take possession of the marks. D.E. 501-01 ("SOF") ¶¶50-51. In other words, a further transfer was required but, █████████████, ***there was no such transfer***. That is dispositive. *Nordco A.S. v. Ledes*, 1997 WL 570546, at *3 (S.D.N.Y., Sept. 15, 1997); *Outlawlessness Prods., Inc. v. Paul*, 2011 WL 13177705, at *5-6 (M.D. Fla. Apr. 6, 2011).[3]

***Second***, any alleged acquisition by GR was an **invalid assignment in gross**. A mark cannot be transferred alone, without its goodwill. Yet here, at most, only the marks were transferred. GR admits that (i) it bought no tangible assets, (ii) it is not using the marks, and (iii) the acquisition was solely for the purpose of this litigation.[4] This confirms that the assignment was invalid. *R&R*

---

[2] The Opposition ***admits*** that GR had no business reason to buy the marks of a "non-luxury" and "budget-friendly" hotel/motel in Balmorhea, Texas and Denver, Colorado, respectively, whose common law rights are limited to those places. Opp. 9.

[3] ████████████████████████████████████████████; the owners ***admitted*** they never used such mark and, thus, had no such rights to transfer. SOF ¶80; D.E. 514 ("OSMF") ¶62. *A&L Labs., Inc. v. Bou-Matic LLC*, 429 F.3d 775, 779 (8th Cir. 2005) ("assignor may transfer only what it owns").

[4] While the transfer of tangible assets is not needed, the lack thereof supports that no goodwill was transferred. *Vital Pharms., Inc. v. Monster Energy Co.*, 472 F. Supp. 3d 123, 1267 (S.D. Fla. 2020).

*Partners, Inc. v. Tovar*, 447 F. Supp. 2d 1141, 1149 (D. Nev. 2006).[5] This is exactly the situation that the assignment in gross doctrine prevents. 2 McCarthy §18:2 (5th ed.).

The license-back to the Alleged Predecessors does not save GR's claim because goodwill still needs to be transferred for the *assignment* to GR to be valid.[6] *Visa, U.S.A., Inc. v. Birmingham Tr. Nat. Bank*, 696 F.2d 1371, 1375 (Fed. Cir. 1982) (transfer of goodwill "means the transfer of the portion of the business or service with which the mark is associated"); *Medscript Pharmacy, LLC v. D&D Pharma LTC, LLC*, 444 F. Supp. 3d 909, 914 (N.D. Ill. 2020). Further, a valid assignment requires that the services offered "be sufficiently similar to prevent consumers [] from being misled from established associations with the mark." *Boathouse Grp., Inc. v. TigerLogic Corp.*, 777 F. Supp. 2d 243, 250 (D. Mass. 2011). In *Visa*, the license-back was valid because the *assignee* applied the mark to the "same basic service" as the assignor. 696 F.2d at 1376. GR **admits** it has never used the marks (nor does it plan to). SOF ¶51. And, GR concedes that the Alleged Predecessors' "budget friendly" and "non-luxury" offerings **are not the "same basic service"** as its luxury hotels/condos. Opp. 9. *Glow Indus.*, 273 F. Supp. 2d at 1113.[7] GR cites no case finding no assignment in gross where the assignee did not use the mark; nor can it as cases involving such facts find assignment in gross. *See interState Net Bank v. NetB@nk, Inc.*, 348 F. Supp. 2d 340, 349-50 (D.N.J. 2004).

**Third**, any rights GR acquired were **abandoned** because GR has never exercised "**meaningful** supervision or inspection" over the licensees using the mark. *Blue Mountain Holdings*, 2023 WL 5164472, at *2. ██████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████. SOF ¶¶49, 54, 69-78. GR claims it looked at a few

---

[5] Defendants' cases are inapposite; GR has never used the Allegedly Acquired Marks. SOF ¶62. *Money Store v. Harriscorp Fin., Inc.*, 689 F.2d 666, 678 (7th Cir. 1982); *WheelImage Corp. v. Axial Mfg.*, 2024 WL 1012847, at *2 (C.D. Cal. Mar. 5, 2024); *Medscript*, 444 F. Supp. 3d at 915.
[6] GR is wrong that a quality control provision is enough. It is "actual control, not a mere right to control" that matters. *Blue Mountain Holdings Ltd. v. Bliss Nutraceticals*, 2022 WL 2316386, at *5 (11th Cir. Aug. 11, 2023); 2 McCarthy §18:48; *see also Glow Indus., Inc. v. Lopez*, 273 F. Supp. 2d 1095, 1110 (C.D. Cal. 2003) (GR's cited case).
[7] *Money Store* is distinct as the assignor and assignee both offered money lending. 689 F.2d at 678.

online reviews and had its outside litigation counsel investigate.[8] This is not "meaningful" control. GR's limited efforts are legally insufficient. *E.g.*, *Barcamerica Int'l USA Trust v. Tyfield Imps.*, 289 F.3d 589, 598 (9th Cir. 2002).[9]

GR's reliance on a "grace period" for quality control is unavailing. Opp. 5. GR has no evidence that it increased its efforts, or that it plans to do so. Even if it did, the two years GR has waited is too long. *Blue Mountain Holdings*, 2022 WL 2316386, at *1, 5 (less than two-year delay). A "tardy, dilatory, and facile" attempt at quality control cannot overcome a naked license. *Halo Mgmt., LLC v. Interland, Inc.*, 2004 WL 1781013, at *6 (N.D. Cal. Aug. 10, 2004).

***Fourth***, even if the marks were actually transferred and maintained, GR did not acquire any **relevant priority** to overcome EIP's rights and excuse its infringement. Eleven has been using its marks for luxury hotels since 2011—a decade before GR entered the industry.[10] SOF ¶¶9-14, 26. EIP has valid, incontestable registrations for "luxury hotel accommodations" and related services. SOF ¶2; D.E. 493-01 ("SAF") ¶82; *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 142-43 (2014). In contrast, the Allegedly Acquired Marks are common law marks that were ***never*** used for luxury lodging and thus, cannot confer any relevant rights: "[A]n assignment is ***ineffective*** to transfer the assignor's priority if the assignee uses the mark on substantially different goods." *Boathouse*, 777 F. Supp. 2d at 250-51.[11] The Alleged Predecessors offer a "budget-friendly" and "non-luxury" motel/hostel which "***do not compete***" with the parties' "luxury" offerings. SOF ¶¶58-67, 30, 34, 39, 60-61; SAF ¶¶27-30, 82. Moreover, the Allegedly Acquired Marks are ***common law*** rights that are ***geographically limited*** to where they are used and provide no rights in Florida. *Tana v. Dantanna's*, 611 F.3d 767, 776 (11th Cir. 2010); 4 McCarthy §26:27.[12]

---

[8] GR does not support the claim that Dim Cos "assisted with quality control." Opp. 6. GR's 30(b)(6) witness ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. D.E. 329-36 at 283:7-17.

[9] GR's reliance on its purported expert (Mody), who has little to no hotel industry experience, D.E 242-06 at 27:18-28:14; D.E. 341-13, Ex. 525, does not change the undisputed facts or law. Mody's opinions are refuted by Eleven's expert, Keon, who *has* worked in the industry and extensively opined on standard quality control measures (*e.g.*, meetings, on-site inspections, brand guidelines), *none* of which GR has done here. D.E. 341-01, Ex. 512 ¶¶155-163.

[10] The number of Eleven's hotels in 2011 is irrelevant. EIP's registrations give it nationwide priority as of their priority filing date: April 2011. SOF ¶2; 4 McCarthy §26:31.

[11] GR's own cited case, *Medscript*, also reflects that an assignment only grants priority for the services on which the marks are actually used. 444 F. Supp. 3d 909, 914 (N.D. Ill. 2020).

[12] GR's cursory argument (at 7-8) that the Alleged Predecessors have "reputation[s]" that reached Florida is incorrect and contrary to the testimony of the Alleged Predecessors. SOF ¶¶83-85.

Thus, GR's claim that it exercised "sound business judgment" in buying the marks is misguided and irrelevant. Opp. 4. GR's claim that EIP could not have acquired rights in 2011 because the Alleged Predecessors were already in operation is also incorrect as a matter of law. *Tana*, 611 F.3d at 780-81 ("federal registration has the practical effect of freezing a prior user's enforceable trademark rights thereby terminating any right to future expansion beyond the [senior] user's *existing* territory"). In other words, GR cannot use the Allegedly Acquired Marks to bless its use of the Infringing Marks in Miami.[13] SOF ¶¶21, 85. *Tana*, 611 F.3d at 780.[14]

**Fifth**, GR's alternative claim that Eleven is infringing the Allegedly Acquired Marks is barred by **laches** given the material facts: (1) the Alleged Predecessors **never** complained about Eleven's use; (2) they admitted there has been no confusion; (3) Eleven has been using its marks for over 11 years; and (4) Eleven ███████████████████ developing and promoting its marks. SOF ¶¶18, 87-90; OSMF ¶¶18, 87-90. *Groucho's Franchise Sys., LLC v. Grouchy's Deli, Inc.*, 683 F. App'x 826, 829 (11th Cir. 2017).

GR argues that the Alleged Predecessors did not have actual knowledge of Eleven. But delay is measured from the "time the plaintiff knew or **should have known** that it had a provable claim for infringement." *Ideal Image Dev. Corp. v. Idealaser Hair Removal Corp.*, 2019 WL 3890345, at *3 (S.D. Fla. June 25, 2019). EIP filed its public trademark applications as early as April 2011, which published for opposition beginning in June 2012, and were registered by July 2012. SOF ¶¶2, 9-14. That put the world on notice of EIP's right to use the marks. *B&B Hardware*, 575 U.S. at 142; 2 McCarthy §19:9. Contrary to GR's argument, constructive notice *can* be sufficient to start the laches clock. *Eat Right Foods, Ltd. v. Whole Foods Market, Inc.*, 880 F.3d 1109 (9th Cir. 2018); *Chattanooga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789, 793 (7th Cir. 2002); 4 McCarthy §26:57. And Eleven has openly and prominently used its marks since 2011.[15] SOF ¶¶3, 9-14, 108-10. Had the Alleged Predecessors conducted any reasonable inquiry, they would have easily known about Eleven's use. Their over 10-year delay means that laches is presumed. *Angel*

---

[13] GR admits that it is not attempting to tack the Allegedly Acquired Marks onto the Infringing Marks for hotel services in Miami. Opp. 6. Thus, GR cannot claim priority over EIP for purposes of the Infringing Marks. *Bertini v. Apple Inc.*, 63 F.4th 1373, 1377 (Fed. Cir. 2023).

[14] GR is wrong that EIP "was not entitled to register" its Marks. Opp. 4. A junior user's **registration** gives **nationwide rights** to use its mark, subject only to the senior user's common law rights in a particular geography and type of use at the time of registration. *Tana*, 611 F.3d at 780-81.

[15] Contrary to GR's argument, Chad Pike testified that ████████████████████████████ ████. D.E. 336-01 at 62:9-13; D.E. 329-30 at 276:14-24; *see also* D.E. 336-01 at 61:9-19.

*Flight of Ga., Inc. v. Angel Flight Se., Inc.*, 424 F. Supp. 2d 1366, 1370 n.5 (N.D. Ga. 2006).

GR's attempt to rely on the doctrine of progressive encroachment to excuse its delay fails. "Progressive encroachment requires something about the defendant's use of the mark to have changed significantly." *Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 410 (6th Cir. 2002); *see also Kason Indus. v. Component Hardware Grp., Inc.*, 120 F.3d 1199, 1205-06 (11th Cir. 1997). Eleven's use has not changed; it has always offered luxury lodging. SAF ¶82.[16]

Finally, GR has not refuted Eleven's evidence of prejudice given that it has invested ███████████ and many years developing and using its marks. SOF ¶¶4, 15, 18-21, 23-24. Courts have found prejudice based on less. *Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp., LLC*, 7 F. 4th 989, 1010-11 (11th Cir. 2021); *Groucho's*, 683 F. App'x at 829.

## II.   GR'S CANCELLATION CLAIMS FAIL.

GR has not put forth *any evidence* to prove its claims to cancel the ELEVEN Registrations. *First,* realizing it has no support for the fraud claims it *actually* pled (related to Alan Pike's statements in the trademark filings, D.E. 140), GR pivots to the new theory: that Mr. Pike did not actually sign the forms. But the evidence shows that Mr. Pike *did* sign. SAF ¶¶1-3; SOF ¶¶93, 97. GR concedes it has no evidence of forgery, let alone that Mr. Pike knowingly made a false, material representation with an intent to deceive. Instead, GR speculates that "an unknown person—*likely EIP's outside counsel*—typed Alan Pike's signature." Opp. 10 (emphasis original). Yet, Mr. Pike and EIP's outside counsel declared he signed. SAF ¶¶1-3. Moreover, GR's PTO expert admitted she lacked "*any evidence* that [Mr. Pike] [lied]" to the PTO. SOF ¶99. GR's speculation is insufficient to satisfy its "heavy burden" that offers "no room for speculations, inference or surmise." *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009); *see also Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, 2011 WL 2174012, at *14 (S.D. Fla. June 2, 2011).[17]

*Second,* GR *admits* the ELEVEN Marks have been used in commerce *since January 2012 at the latest*. OSMF ¶11; Opp. 13. That is dispositive because under the law, there need only be use by May 14, 2012, when the statement of use was filed. *Fitnessglo, Inc. v. Heartglo Inc.*, 2016 WL 6833488, at *5 (T.T.A.B. Aug. 25, 2016). Knowing this, GR argues that EIP (the registrant)

---

[16] Eleven's Public House Lofts property is no different; it offers luxury loft suites meticulously designed and operated by Eleven. D.E. 239-06 at 7; SOF ¶¶30, 34, 39, 48, 58-61, 63-67.

[17] Unlike *In re Dermahose Inc.*, 2007 WL 499919, at *3 (T.T.A.B. Feb. 13, 2007), Mr. Pike's signature appears; and unlike *Mini Melts, Inc. v. Reckitt Benckiser, Inc.*, 2009 WL 10677599, at *2 (E.D. Tex. Feb. 26, 2009), there is no evidence that someone else signed. SAF ¶¶1-3.

never used the marks. But that is not required. *Turner v. H M H Publ'g Co.*, 380 F.2d 224, 329 (5th Cir. 1967). Use by EIP's related companies and licensees constitutes use. 15 U.S.C. §1055.

GR argues the related company doctrine does not apply, but the undisputed facts show (1) the marks ███████████████████████████████████, (2) such use is controlled, and (3) the related companies have not used the marks so as to deceive the public. *Id.* There is no dispute that ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████. SOF ¶¶5-7. ██████████████████████

████████████████████████████████████████████████████████████

██████████████.[18] SOF ¶¶5-7. Thus, the marks are used legitimately.[19]

██████████████. SOF ¶¶6-7. ████████████████████████████████████

████████████████████████████████████████████████████████.[20] *Id.* ¶¶113-14;

RSOF ¶147. ████████████████████████████████████████████████████

████████████████████████████████████████████████. SOF ¶114; RSOF ¶¶147-48.

████████████████████████████████████████████████████████████

██████████████ SOF ¶114. Tellingly, GR cites no case law that supports its position.

Finally, there is no legal basis for GR's claim that the marks were used to deceive the public. Consumers need not have a detailed understanding of which entity owns, licenses, or operates a property. *TMT N. Am., Inc. v. Magic Touch GmbH*, 124 F.3d 876, 886 (7th Cir. 1997).

---

[18] The existence of multiple licensees is irrelevant. *Contra Experience Hendrix, LLC v. Elec. Hendrix, LLC*, 2008 WL 3243896, *6-7 (W.D. Wash. Aug. 7, 2008). What matters is whether adequate quality control is exercised. *Sock It to Me, Inc. v. Aiping Fan*, 2020 WL 3027605, at *5 (T.T.A.B. June 3, 2020); 2 McCarthy §18:51.

[19] Eleven had the permits needed to use the marks in connection with Scarp Ridge Lodge. *Infra* § III. There is no requirement that ████████████████████████████. Opp. 12-13. ████████████████████████████████████████████. SOF ¶¶5-7. That ██████ ████████. SOF ¶¶5-7; *Turner*, 380 F.2d at 329. And EIP representatives played a key role in the launch. SOF ¶¶12-14; ROSMF ¶151. GR has no support for its claim that businesses must be registered in every state where licensees operate. Opp. 12-13. Regardless, ██████████████████████ ████████████████████████████████████. ROSMF ¶153.

[20] GR misconstrues Chad Pike's deposition. ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████. SOF ¶¶5, 40.

What matters is that the mark is used for services of a generally consistent quality. *SonicSolutions Algae Control, LLC v. Diversified Power Int'l, LLC*, 2024 WL 1043001, at *17 (D. Mass. Mar. 8, 2024). Eleven's services meet this test; GR does not even argue otherwise.

## III.   GR'S UNLAWFUL USE AFFIRMATIVE DEFENSE FAILS.

The Eleventh Circuit has expressly stated that "[t]his Court has not adopted the unlawful use doctrine and need not do so today." *FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071, 1087 (11th Cir. 2016); *see also Sream, Inc. v. Tausif Lavina, Inc.*, 2019 WL 1466706, at *3 (S.D. Fla. Feb. 12, 2019) (declining to adopt doctrine). Notably, the Opposition cites to no law, in this Circuit or otherwise, applying the unlawful use doctrine.

GR must show by *clear and convincing evidence* a violation of a statute regulating the sale of Eleven's services. *FN Herstal SA*, 838 F.3d at 1087. GR must *also* show that the violation is of "*such gravity and significance* that the usage must be considered unlawful—so tainted that, as a matter of law, it could create no trademark rights." *Id*. This makes sense as invalidating a party's trademarks for unlawful use would be a drastic consequence. *Gen. Mills Inc. v. Health Valley Foods*, 24 U.S.P.Q.2d 1270 (T.T.A.B. 1992) (noting "a blanket policy of finding every possible technical violation to result in cancellation of a registration, no matter how minor or harmless the violation may be… serves the interests of neither justice nor common sense"). GR claims Eleven did not have a certificate of occupancy ("COO") on November 11, 2011 (when it opened the first hotel), but it cannot prove the elements of unlawful use.

*First*, Eleven had the health and safety certificates it needed, and presented *unrefuted testimony stating under oath that the requisite certificates were in place.* SOF ¶112. That Eleven also had COOs a few weeks later (before overnight guests stayed) does not negate that fact, and GR has presented no evidence that the launch was unlawful. *Davidoff Extension S.A. v. David Int'l, Inc.*, 612 F. Supp. 4, 7-8 (S.D. Fla. 1984) (rejecting unlawful use defense absent "direct evidence").

*Second*, Eleven rendered hotel services on November 11, 2011. "[T]he **taking and confirming of reservations** in other cities outside the state where the hotel is located . . . constitutes services rendered in interstate commerce." *Penta Hotels Ltd. v. Penta Tours*, 1988 WL 384940, at *21 (D. Conn. Sept. 30, 1988). Whether Eleven had a COO on November 11, 2011, is irrelevant because Eleven began offering its hotel services months earlier by accepting paid hotel bookings. SOF ¶¶9–10.

*Third*, GR does not establish that a municipal code violation is of "such gravity and

significance" that "no trademark rights" could be granted. *FN Herstal*, 838 F.3d at 1087. Gr's contention that building codes are a "truism" (Opp. 14) does not rise to the level of unlawful use. *E.g.*, *Great Adirondacks Steak & Sea Food Café, Inc. v. Adirondack Pub & Brewery, Inc.*, 2017 WL 3670296, at *4 (T.T.A.B. June 8, 2017) (rejecting unlawful use based on lack of certificate and not "where []goods themselves [were] illegal, as is, for example, marijuana under federal law"); *In re Morgan Brown*, 2016 WL 4140917, at *3 (T.T.A.B. July 14, 2016) (unlawful use doctrine applied to "federal law"). GR has not supported its defense. *See also* D.E. 217, 433.

## IV.   GR'S FIFTH AFFIRMATIVE DEFENSE FAILS.

GR cannot maintain its defense by misrepresenting the factual record. GR's 30(b)(6) witness and trademark attorney testified that he informed GR's three principles—Dennis DeGori, Michael Simkins, and Marc Roberts—about EIP's registrations, including for the ELEVEN word mark, when the PTO refused GR's applications on that basis in June 2020 (and before the Infringing Hotels were announced). 2d Loverro Decl., Ex. 627 at 237:12–19, 236:2–17; SOF ¶26. GR also admitted Request for Admission and Interrogatory responses that it learned of EIP's registrations for the ELEVEN word mark and the 11 logo when they were cited against GR's applications in June 2020. D.E. 505-02 at 33-34; D.E. 380, Ex. 524 at Rog 22; SOF ¶¶149-150. GR has no basis to claim it did not have actual knowledge of EIP's registrations. *Commodores Ent. Corp. v. McClary,* 822 F. App'x 904, 910 (11th Cir. 2020) (15 U.S.C. § 1111 satisfied with evidence of actual notice).

## V.   GR'S NAKED LICENSING DEFENSE FAILS.

GR's claim that EIP's marks are invalid because it engaged in naked licensing fails. As discussed above in Section II, EIP has exercised extensive quality control of its affiliated licensees, and thus there is no naked licensing. *Blue Mountain Holdings*, 2023 WL 5164472, at *1; SOF ¶¶5-7, 113-14. GR relies solely on a series of irrelevant, novel arguments.

***First***, GR argues EIP did not have written licenses before 2017.[21] Opp. 15. But "a written license agreement . . . is not required"; all that matters is that "the quality of goods bearing the mark remains satisfactory." *Tequila Cuervo La Rojena, S.A. De C.V. v. Mush, Inc. d/b/a Igloo's*

---

[21] GR argues that EIP's licenses were defective for lack of consideration. D.E. 507. But a license need not include a payment to be valid. *E.g., Norwood Promotional Prod., LLC v. KustomKoozies, LLC*, 835 F. Supp. 2d 685, 687-88 (S.D. Ind. 2011); *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 471 (3d Cir. 1994). Such claim also was not pled, and thus should be disregarded. *Perez v. Cigna Health & Life Ins. Co.*, 2020 WL 1308196, at *5 (M.D. Fla. Mar. 19, 2020).

*Frozen Drinks*, 2017 WL 1345075, *8 (T.T.A.B. March 14, 2017). GR does not dispute the quality of Eleven's services.[22] ████████████████████████████████████████████
███████████████████████████. RSOF ¶¶146, 148; SOF ¶6.

**Second**, GR claims that EIP cannot rely on Grassy Creek for quality control in 2011 because it did not have a Colorado business registration until 2012. Opp. 16. But Grassy Creek need not have a business license in the state of the hotel to perform quality control and, tellingly, GR cites no case saying otherwise.[23] GR's argument about Grassy Creek "double dipping" also fails. There is no logical, or legal, reason why an entity cannot perform different services for multiple related entities (*i.e.*, quality control services for EIP, and management services for CS Irwin and IBG). *Cf. Contra Experience Hendrix*, 2008 WL 3243896, at *7.

**Third**, GR's arguments related to the role of CS Irwin are misplaced. Contrary to GR's assertion, there is no confusion or misrepresentation over the fact that CS Irwin—████████████
and a related entity—handles payment processing for bookings at Eleven's hotels, among other things. SOF ¶7. Nor is there confusion over the fact that IBG—also ████████████ and a related entity—operates Eleven's hotels, among other things. SOF ¶6. GR's focus on the fact that CS Irwin played a role in the 2011 launch is misguided and irrelevant to its defense. Naked licensing concerns control over services rendered by the licensee—an outside agency could have advertised the event without creating a "naked license" that would invalidate EIP's marks. More importantly, GR fails to offer any evidence that overcomes the legal presumption that the Eleven entities operate as "related companies" under 15 U.S.C. § 1127 and their continued combined use of the ELEVEN Marks "shall not affect the validity of such mark[s]." 15 U.S.C. § 1055. At base, GR's claims of consumer deception are meritless. Consumers may be "undoubtedly oblivious" to Eleven's "corporate structures," such as which specific entity owns, licenses, or operates a property, but that does not invalidate Eleven's rights. *TMT N. Am.*, 124 F.3d 876.[24]

---

[22] GR's Statute of Frauds argument does not invalidate Eleven's prior licenses. The agreements carry a one-year term, could be fully performed within that term, and were fully performed. *Rubenstein v. Primedica Healthcare, Inc.*, 755 So. 2d 746, 748 (Fla. 4th Dist. Ct. App. 2000). Nor would GR have standing to invalidate the licenses on this basis, as it is not a party to them. *Bradshaw v. Integon Nat'l Ins. Co.*, 2019 WL 6716364, at *2 (S.D. Fla. Dec. 10, 2019).

[23] Notably, GR claims that it conducts "adequate" quality control over its own alleged licensees without having business licenses in Texas and Colorado, respectively.

[24] GR is wrong that Wilderness Machines, LLC and Frontier Cuisine LLC are "third-parties" (Opp 16-17); ██████████████████████████████. ROSMF ¶158.

## VI.   DEFENDANTS' LACHES AND RELATED DEFENSES FAIL.

The Opposition confirms that Defendants' kitchen-sink defenses of laches, waiver, acquiescence and estoppel have no merit.[25]

As to **laches**, Defendants have shown no delay or any prejudice and thus have not met their burden on any element. *Groucho's*, 683 F. App'x at 829. Defendants admit that the first Infringing Hotel was announced in January 2021, and that Eleven took action within *weeks* of learning of the properties. SOF ¶¶26, ¶46, 115. This alone defeats the laches defense. *Earth, Wind & Fire IP, LLC v. Substantial Music Grp. LLC*, 2024 WL 1025265, at *6, 13 (S.D. Fla. Mar. 4, 2024). Defendants' ancillary arguments fail. ***First***, Defendants cannot assert laches based on their prior nightclub services, which are not accused of infringement.[26] D.E. 451 at 2-6; D.E. 128 ¶¶67-69; D.E. 60 at 2, 13. *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1512 (11th Cir. 1984); *SunAmerica Corp. v. Sun Life Assurance Co. of Canada*, 77 F.3d 1325, 1345 (11th Cir. 1996); *Angel Flight of Georgia, Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1207 (11th Cir. 2008). ***Second***, for this same reason, GR's alleged prior practice of booking employees, talent, or events for its nightclub at *third-party* hotels (operating under their own, non-infringing names) cannot trigger the laches period, as GR was not offering hotel services under an infringing mark.[27] SOF ¶¶116-17; D.E. 451 at 2-3. Moreover, plaintiffs need not file suit as soon as they discover potential infringement, but rather, when "the likelihood of confusion looms large." *Kason Indus. v. Component Hardware Grp., Inc.*, 120 F.3d 1199, 1206 (11th Cir. 1997). Here, the infringement started when Defendants announced hotels/condos under ELEVEN-formative marks in January 2021. D.E. 451 ¶¶1-16, 76-134. Eleven promptly opposed GR's pending trademark applications and sent a cease and desist letter. *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 668 (5th Cir. 2000) (no delay where use involved new product). ***Third***, Defendants have not identified any prejudice. Defendants confusingly argue that they will be prejudiced because there is "a limited supply of real property being sold in a fast-paced urban real estate market." Opp. 6. This makes no sense and ignores that the Infringing Hotels ***are not scheduled to open until 2025-2027***; they can be rebranded under a

---

[25] The Opposition does not even argue the waiver defense, admitting it is not available in trademark cases and should be dismissed on summary judgment.

[26] Awareness of the E11EVEN *nightclub* is thus irrelevant. Indeed, Chad Pike testified that ██████████████ ████████████ unlike the hotels/condos at issue. ROSMF ¶159.

[27] GR's registration was not for "hotel services" and it claims to no offer such services. Opp. 6.

*new non-infringing name*. D.E. 451 ¶16. Defendants provide no evidence to the contrary.[28]

As to **estoppel**, Defendants must show a material misrepresentation by EIP causing Defendants' detrimental reliance. *Earth, Wind & Fire*, 2024 WL 1025265, at *5. There is no such evidence. Defendants point to a recent search report showing unrelated third-party use, but that is irrelevant. Estoppel requires conduct be directed to *the party invoking estoppel*, not actions (or lack thereof) as to third parties. *Buccellati Holding Italia SPA v. Laura Buccellati, LLC*, 5 F. Supp. 3d 1368 (S.D. Fla. 2014) (plaintiff's misrepresentation must be intended to *cause* defendant's reliance); *Adidas-Am., Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1075 (D. Or. 2008). Nor does estoppel apply when the plaintiff clearly intends to enforce against the defendant. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc*., 936 F.2d 889, 895 (6th Cir. 1991). Eleven enforced against Defendants within weeks of learning of their infringement, and the third Infringing Hotel was even announced after this litigation commenced. D.E. 117; D.E. 127; SOF ¶25. As to prejudice, Defendants merely rely on litigation costs, but such costs are irrelevant. *BeautyBank, Inc. v. Harvey Prince LLP,* 811 F. Supp. 2d 949, 958 (S.D.N.Y. 2011); *Sprint Commc'ns Co. L.P. v. Time Warner Cable, Inc*., 2017 WL 978107, at *6 (D. Kan. Mar. 14, 2017).[29] The defenses fail.

## VII.    11USA, PMG AND B17'S COUNTERCLAIMS AND DEFENSES FAIL.

11USA, PMG, and B17's attempts to challenge Eleven's valid marks and claim fair use for their WEST ELEVENTH Marks cannot succeed.

**Eleven's Marks Are Not Descriptive.** *First*, B17 admits it cannot challenge the validity of the registered ELEVEN Marks as descriptive, given Eleven's incontestable registrations. Opp. 19; SOF ¶2. B17 argues it is only challenging the validity of Eleven's "contestable and unregistered marks" as merely descriptive and lacking secondary meaning. Opp. 19. It fails, however, to identify *what* "contestable and unregistered marks" it means, leaving EIP and this Court to guess. This alone warrants dismissal of B17's claim. *See Aflatouni v. Select Portfolio Servicing, Inc.,* 2012 WL 5472172, at *4 (E.D. Tex. Nov. 9, 2012), *report and recommendation adopted*, 2013 WL 1181462 (E.D. Tex. Mar. 19, 2013) (granting summary judgment based on

---

[28] Defendants' acquiescence and estoppel arguments also fail because they ignore the distinction between Defendants' prior activities (*i.e.*, nightclubs and non-hotel services) and infringing activities (*i.e.*, hotels and accommodations). Eleven did not "acquiesce" to Defendants' infringement as there was no active or explicit consent. *MarketquestGrp., Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1294 (S.D. Cal. 2018).

[29] Defendants incorrectly assert that Eleven's Motion excluded GR's estoppel defense. Opp. 18. The Motion plainly identified all Defendants' estoppel defenses. Mot. 1.

failure to identify facts supporting claim with specificity). Regardless, courts have found that the conclusive presumption that an incontestable mark has acquired secondary meaning extends to the most salient feature of the mark, and thus applies to other marks with the same salient feature. *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 606 (9th Cir. 2005). Thus, Eleven's incontestable registrations for ELEVEN and its 11 logo also support the validity of Eleven's unregistered ELEVEN-formative marks (*e.g.*, ELEVEN EXPERIENCE). *Id.*; *see also Nightlight Sys., Inc. v. Nitelites Franchise Sys., Inc.*, 2007 WL 9698547, at *8 (N.D. Ga. Jan. 4, 2007).[30]

*Second*, the ELEVEN Marks are not descriptive. A mark is merely descriptive if it "immediately conveys knowledge of a quality, feature, function, or characteristic of the goods or services with which it is used." *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 963 (Fed. Cir. 2007). Here, the ELEVEN Marks have no clear relation to Eleven's services and, thus, are arbitrary. *Costa Farms, LLC v. Costa Tropicals & Flowers, Inc.*, 2013 WL 12092473 at *4 (S.D. Fla. Aug. 19, 2013) (noting "[a]n arbitrary mark is a word or phrase that bears no relationship to the product"); *Ford Motor Co. v. O.E. Wheel Distrib., LLC*, 868 F. Supp. 2d 1350, 1362 (M.D. Fla. 2012); *Am. Historic Racing Motorcycle Ass'n, Ltd. v. Team Obsolete Promotions*, 33 F. Supp. 2d 1000, 1005 (M.D. Fla. Dec. 8, 1998); Mot. 22-23; SOF ¶¶3-4, 15, 18, 20-24, 119-24. B17 claims Eleven "adopted the ELEVEN mark for its laudatory significance," but that is unsupported and immaterial as "***intent behind picking the name is irrelevant***;" consumer impression is what matters. *Uber Promotions, Inc. v. Uber Techs., Inc.*, 162 F. Supp. 3d 1253, 1267 (N.D. Fla. 2016); SOF ¶47. B17 offers no evidence that consumers perceive ELEVEN as descriptive of Eleven's services. That alone is dispositive. *SiLite, Inc. v. Creative Bath Prod., Inc.*, 1994 WL 484577, at *4 (N.D. Ill. Sept. 2, 1994) (affirming mark suggestive where defendant offered no evidence of consumer perception showing descriptiveness). Moreover, "Eleven" for hotel services is not a self-laudatory mark, unlike words like "Best," "Dependable," and "Foremost." McCarthy §11:17. At best, "ELEVEN" could be viewed as a characteristic of Eleven's high-quality services that requires consumers to use their imagination to connect the two and, thus, would be suggestive and

---

[30] B17's argument that the ELEVEN Marks are conceptually and commercially weak (Opp. 19) is a red herring as Eleven did not move on B17's counterclaim for non-infringement. Nevertheless, this argument fails. The strength of an incontestable registration (for purposes of likelihood of confusion) is presumed, as B17's own authority reflects. *Carnival Corp. v. SeaEscape Casino Cruises, Inc.*, 74 F. Supp. 2d 1261, 1265 (S.D. Fla. 1999).

inherently distinctive. Indeed, this Court found the phrase "It's a 10" (which conveys a far more direct meaning than ELEVEN) suggestive. *It's a 10, Inc. v. Beauty Elite Grp., Inc.*, 2013 WL 6834804, at \*4 (S.D. Fla. Dec. 23, 2013); *see also Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.*, 887 F. Supp. 2d 519, 532–533 (S.D.N.Y. 2012).

**Eleven's Marks Are Not Generic.** A generic mark is one that "refers to a class of which an individual service is a member (*e.g.*, 'liquor store' used in connection with the sale of liquor)." *Costa*, 2013 WL 12092473 at \*4. B17 argues that the mere fact that the word "eleven" is defined in dictionaries as a number that is "one more than ten" makes it generic. That is not the law.[31] The issue is whether "eleven" is so common that it identifies an identifiable ***class of products***. *Badia Spices, Inc. v. Gel Spice Co., Inc.*, 2017 WL 2082794 at \*2 (S.D. Fla. May 25, 2017). There is ***no*** evidence that "eleven" identifies hotel services generally, or any other category of services. To the contrary, both Eleven's and B17's experts testified that they did not find any evidence of the word "eleven" referring to a category of hotels. SOF ¶¶121-122, 124. That alone is sufficient to dismiss B17's claims. *Elliott v. Google, Inc.*, 860 F.3d 1151, 1157 (9th Cir. 2017). B17's argument about how the media uses "eleven" when discussing why EIP adopted the mark is equally unavailing. Opp. 21. Again, the inquiry is whether "eleven" "refer[s] to a class of which an individual service is a member." *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999). It unequivocally does not. B17's claim should be dismissed. *E.g., Heroes, Inc. v. The Boomer Esiason Hero's Found.*, 1997 WL 335807, at \*2 (D.D.C. June 16, 1997); *Navajo Nation v. Urban Outfitters, Inc.*, 212 F. Supp. 3d 1098, 1104 (D. N.M. 2016).

**B17's Use of the WEST ELEVENTH Marks Is Not a Descriptive Fair Use:** B17 has not met the elements of its fair use defense. *3Lions Publ'g, Inc. v. Interactive Media Corp.*, 389 F. Supp. 3d 1031, 1042 (M.D. Fla. 2019). ***First***, B17 argues that the WEST ELEVENTH Marks only describe the address and thus are used "in a descriptive sense" but this argument is wrong; the property address is 18 Northwest 11th Street. SOF ¶140. Tellingly, none of the cases that B17 cites found a Frankenstein-ed abbreviation of a street address was fair use.[32] Regardless, the WEST

---

[31] "Some of the strongest marks are 'common words,'" such as "SHELL, CAMEL, and APPLE," which are arbitrary for "gasoline, cigarettes and computers, respectively." *Visa Int'l Servs. Ass'n v. JSL Corp.*, 533 F. Supp. 2d 1089, 1096 (D. Nev. Dec. 27, 2007).

[32] *See Hard Candy LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1363 (11th Cir. 2019) ("hard candy" described sheen of makeup shade); *Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*, 125 F.3d 28, 30 (2d Cir. 1997) ("Seal it with a Kiss" phrase

ELEVENTH Marks are used as marks, including in the tower's name, logos, sales center, marketing materials, domain name, and building exterior. SOF ¶¶131-35. This is classic trademark use. *Bulbs 4 E. Side, Inc. v. Ricks*, 199 F. Supp. 3d 1151, 1166–67 (S.D. Tex. 2016) (fair use does not apply to domain name); *TCPIP Holding Co. v. Haar Commc'ns, Inc.*, 244 F.3d 88, 104 (2d Cir. 2001) (same); *see also DCS Real Est. Invs., LLC v. Yapor Corp.*, 2015 WL 12780447, at * 8 (M.D. Fla. Feb. 26, 2015). The use of the PMG and AIRBNB marks on branding materials does not negate this.[33] *Sands, Taylor & Wood Co, v. Quaker Oats Co.*, 978 F.2d 947, 954 (7th Cir. 1992). Regardless, geographically descriptive marks are not entitled to the descriptive fair use defense simply because they are geographic. *E.g.*, *Trilogy Healthcare of Louisville E., LLC v. Camelot Leasing, LLC*, 2019 WL 3991073, at *4 (W.D. Ky. Mar. 22, 2019).

*Second*, B17 argues that its decision not to file applications for the WEST ELEVENTH Marks proves that the Marks are not being used as trademarks. Opp. 23-24. Yet, B17 need not have filed applications, used a "TM" symbol, or tried to prevent others from using the marks for there to be trademark use. *Burger King* supports finding B17 is using a mark, as the marks are used "denominatively" on marketing and the planned building. SOF ¶¶131-35; *Burger King Corp. v. Pilgrim's Pride Corp.*, 705 F. Supp. 1522, 1529-30 (S.D. Fla. 1988). B17 could have used the *actual address* as the name, but it chose not to, and instead, used marks to highlight its connection to E11EVEN and District 11. D.E. 468 ¶¶33-34. That is trademark use.

*Third*, B17 misrepresents the law; whether its Marks have acquired secondary meaning is irrelevant to fair use. Opp. 23. *Brother Records, Inc. v. Jardine*, 318 F.3d 900, 905 (9th Cir. 2003); *Commodores Ent. Corp. v. Thomas McClary*, 2015 WL 12843872, at *4 (M.D. Fla. Mar. 10, 2015). The issue is whether the Marks are used as attention-getting symbols and so as marks; they are. *Beer Nuts*, 711 F.2d at 938; *Sands*, 978 F.2d at 954. B17 cites no cases analyzing secondary meaning in the context of a fair use defense.

## CONCLUSION

For the foregoing reasons, Eleven's Motion should be granted in its entirety.

---

conveyed an instruction); *Setai Hotel Acquisitions, LLC v. Luxury Rentals Miami Beach, Inc.*, 2016 WL 7217730, at *2-3 (S.D. Fla. Dec. 9, 2016) ("Setai" nominatively referred to The Setai Hotel).
[33] Using another mark does not mean that the WEST ELEVENTH Marks are not marks, too. *Beer Nuts, Inc. v. Clover Foods Co.*, 711 F.2d 934, 938 (10th Cir. 1983). B17's reliance on *Int'l Stamp Art, Inc. v. U.S. Postal Service*, is inapplicable. 456 F.3d 1270, 1275 (11th Cir. 2006). Unlike in that case, B17 is using an infringing mark, not a design element or a phrase.

Dated: November 8, 2024                    Respectfully submitted,

                                           /s/ Gavin C. Gaukroger
                                           Gavin C. Gaukroger
                                           Florida Bar No. 76489
                                           ggaukroger@bergersingerman.com
                                           BERGER SINGERMAN LLP
                                           1450 Brickell Avenue, Suite 1900
                                           Miami, FL 33131
                                           Telephone: (305) 755-9500

                                           Dale M. Cendali (admitted *pro hac vice*)
                                           dale.cendali@kirkland.com
                                           Claudia Ray (admitted *pro hac vice*)
                                           claudia.ray@kirkland.com
                                           Shanti Sadtler Conway (admitted *pro hac vice*)
                                           shanti.conway@kirkland.com
                                           Mary Mazzello (admitted *pro hac vice*)
                                           mary.mazzello@kirkland.com
                                           Eric Loverro (admitted *pro hac vice*)
                                           eric.loverro@kirkland.com
                                           Justin Taylor (admitted *pro hac vice*)
                                           justin.taylor@kirkland.com
                                           KIRKLAND & ELLIS LLP
                                           601 Lexington Avenue
                                           New York, NY  10022
                                           Telephone: (212) 446-4800

                                           Miranda D. Means (admitted *pro hac vice*)
                                           miranda.means@kirkland.com
                                           KIRKLAND & ELLIS LLP
                                           200 Clarendon Street
                                           Boston, MA 02116
                                           Telephone: (617) 385-7500

                                           *Attorneys for Eleven IP Holdings LLC, Grassy Creek LLC, CS Irwin LLC, Irwin Backcountry Guides, LLC, Chad Pike, and Alan Pike*